1 | DAVID J. DOW, Bar No. 179407
ddow@littler.com
2 | MATTHEW B. RILEY, Bar No. 257643
mriley@littler.com
3 | LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
4 | San Diego, California 92101.3577
Telephone: (619) 232-0441
5 | Facsimile: (619) 232-4302

6 | Attorneys for Defendants
FIRST STUDENT, INC., FIRST STUDENT
7 | MANAGEMENT, LLC, and FIRSTGROUP
AMERICA, INC. (erroneously sued as FIRST
8 | AMERICA)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| NORMA LOPEZ, CINDY MITCHELL, and VADA NEICE, on behalf of themselves and all others similarly situated, | Case No. 5:19-cv-01669 |
|---|---|
| | [San Bernardino County Superior Court Case No. CIVDS1920396] |
| Plaintiffs, | **NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446** |
| v. | |
| FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRST AMERICA, and DOES 1 through 10, inclusive, | Complaint filed: July 11, 2019 |
| Defendants. | |

NOTICE OF REMOVAL TO FEDERAL COURT
PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441,
AND 1446

Case No. 5:19-CV-01669

TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFFS, AND PLAINTIFFS' ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants First Student, Inc., First Student Management, LLC, and First Group America, Inc. (erroneously sued as First Group) (collectively, "Defendants") hereby remove the state court action described herein, filed by Plaintiffs Norma Lopez, Cindy Mitchell, and Vada Neice (collectively, "Plaintiffs") in the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 1332(d), 1441, and 1446. Defendants make the following allegations in support of their Notice of Removal:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice of Removal.

## II. VENUE

2. Plaintiffs originally brought this action in the Superior Court of the State of California, County of San Bernardino. Therefore, venue lies in the Central District of California pursuant to 28 U.S.C. sections 84(c), 1441(a), and 1446(a).

## III. PLEADINGS, PROCESS, AND ORDERS

3. On July 11, 2019, Plaintiffs filed an unverified Class Action Complaint against Defendants and various Doe defendants in the San Bernardino County Superior

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446
2.
Case No. 5:19-CV-01669

1  Court entitled *NORMA LOPEZ, CINDY MITCHELL, and VADA NEICE, on behalf of themselves and all others similarly situated, Plaintiffs, v. FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRST AMERICA, and DOES 1 through 10, inclusive, Defendants*, designated as Case No. CIVDS1920396 (the "Complaint"). (Declaration of Matthew B. Riley in Support of Notice of Removal to Federal Court ["Riley Decl."], ¶ 2.)

4. The Complaint asserts the following causes of action: (a) Failure to Pay Split Shift Wages (California Labor Code §§ 1197, 1194, and 1194.2, and Wage Order 9-2001); (b) Failure to Provide Adequate Wage Statements (California Labor Code § 226); and (c) Unlawful Business Practices (California Business & Professions Code § 17200 *et seq.*). In addition, Plaintiffs seek recovery of waiting time penalties pursuant to California Labor Code section 203. (Complaint, ¶ 25.) The allegations in the Complaint are incorporated into this Notice of Removal by reference without admitting the truth of any of them.

5. On August 2, 2019, Defendants First Student, Inc. and First Student Management, LLC were each served a copy of: (a) a Summons; (b) the Complaint; (c) a Certificate of Assignment; (d) an Initial Case Management Conference Order; (e) Guidelines for the Complex Litigation Program; (f) and a Civil Case Cover Sheet, through Defendants' registered agent for service of process, C T Corporation System.

6. Attached hereto as **Exhibit A** is a true and correct copy of the Complaint filed in the San Bernardino County Superior Court and served on Defendants First Student, Inc. and First Student Management, LLC through C T Corporation System. (Riley Decl., ¶ 3.)

7. Attached hereto as **Exhibit B** are true and correct copies of the two Summons, the Certificate of Assignment, the Initial Case Management Conference Order, the Guidelines for the Complex Litigation Program, and the Civil Case Cover Sheet served on Defendants First Student, Inc. and First Student Management, LLC through C T Corporation System. (Riley Decl., ¶ 3.)

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446

3.

Case No. 5:19-CV-01669

8. As of the date of this removal, Defendant FirstGroup America, Inc. has not been served with a Summons or Complaint. (Riley Decl., ¶ 4.)

9. On August 29, 2019, all three Defendants filed an Answer to Plaintiffs' Complaint in the San Bernardino County Superior Court. Attached hereto as **Exhibit C** is a true and correct copy of Defendants' Answer. (Riley Decl., ¶ 5.)

10. To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in the San Bernardino County Superior Court or served by any party other than as described above. To Defendants' knowledge, no proceedings related hereto have been heard in the San Bernardino County Superior Court. (Riley Decl., ¶ 6.)

## IV. TIMELINESS OF REMOVAL

11. An action may be removed from state court by filing a notice of removal – together with a copy of all process, pleadings, and orders served on the defendant – within thirty days of defendant receiving service of the initial pleading. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the thirty-day removal period runs from the service of the summons and complaint).

12. Removal of this action is timely because this Notice of Removal has been filed within thirty days of August 2, 2019, when Defendants were served with the Summons and Complaint. *See* 28 U.S.C. § 1446(b). Because Plaintiffs personally served the Summons and Complaint upon Defendants' agent for service of process on August 2, 2019, the thirty-day period for removal runs through September 3, 2019 (the thirtieth day falls on Sunday, September 1, 2019, and the removal deadline is extended to the following business day pursuant to Federal Rule of Civil Procedure 6(a)(1)(C)). *See Osgood v. Main Streat Mktg., LLC*, No. 16cv2415-GPC(BGS), 2016 WL 6698952, at *3 (S.D. Cal. Nov. 15, 2016) (where 30th day falls on Sunday the deadline to remove is extended to following business day pursuant to Federal Rule of Civil Procedure

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446    4.    Case No. 5:19-CV-01669

6(a)(1)(C)). As referenced above, this Notice of Removal also contains all process, pleadings, and orders that were served on Defendants. (*See* Exhibits A-B.)

## V. CAFA JURISDICTION

13. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, where there are at least 100 putative class members, and where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. section 1446. As set forth below, this case meets each CAFA requirement for removal, and is properly removed by the filing of this Notice of Removal.

### A. This is a Class Action.

14. Plaintiffs filed this action as a class action. (Complaint, ¶¶ 23-24.)

### B. The Proposed Class Contains At Least 100 Members.

15. The provisions of CAFA apply to proposed class actions involving 100 individuals or more. *See* 28 U.S.C. § 1332(d)(5)(B). This requirement is met in this case.

16. Plaintiffs bring their lawsuit on behalf of themselves and "[a]ll individuals whom FIRST STUDENT employed as Bus Aides, Monitors, and/or Attendants in California during the Class Period." (Complaint, ¶ 23.) Plaintiffs' Complaint defines "Class Period" as "the period beginning four years prior to the filing of this Complaint to the present", *i.e.*, July 11, 2015 to the present. (Complaint, ¶ 9.)

17. Defendants First Student, Inc. and First Student Management, LLC collectively employed at least 814 persons in the position of Aide/Monitor in the State of California from July 11, 2015 to August 4, 2019. (Declaration of Daniel Higley in Support of Notice of Removal to Federal Court ["Higley Decl."], ¶ 3.) Thus, CAFA's requirement that the action involve 100 or more individuals is satisfied. (*See also* Complaint, ¶ 19 ["Plaintiffs are informed and believe and thereon allege that,

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446

5.

Case No. 5:19-CV-01669

throughout the relevant time period of this action, FIRST STUDENT employed at least one hundred (100) Attendants.].)

### C. Defendants Are Not Governmental Entities.

18. CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(B).

19. Defendants First Student, Inc. and FirstGroup America, Inc. are corporations, and Defendant First Student Management, LLC is a limited liability company; thus, Defendants are not states, state officials, or other government entities exempt from CAFA. (Declaration of Brian Beechem in Support of Removal to Federal Court ["Beechem Decl."], ¶¶ 3-6.)

### D. There Is Diversity Between At Least One Putative Class Member And Any Defendant.

20. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes and not the citizenship of the unnamed putative class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiffs are citizens of a different state than Defendants.

21. For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that a person's domicile is the place he resides with the intention to remain). Furthermore, allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. *See Lew v. Moss*, 797 F.2d

747, 751 (9th Cir. 1986); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Overholt v. Airista Flow Inc.*, No. 17cv1337-MMA (AGS), 2018 WL 355231, at *4 (S.D. Cal. Jan. 10, 2018) (citations omitted).

22. Here, at the time Plaintiffs commenced this action and, upon information and belief, at the time of removal, Plaintiffs resided in and were citizens of the State of California. (*See also* Complaint, ¶¶ 9-11 [alleging that Plaintiffs worked in California].)

23. For diversity purposes, a corporation "shall be deemed a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(l). Defendants First Student, Inc. and FirstGroup America, Inc. are each incorporated under the laws of the State of Delaware and, pursuant to 28 U.S.C. section 1332(c)(1), Defendants First Student, Inc. and FirstGroup America, Inc. are therefore citizens of the State of Delaware. (Beechem Decl., ¶¶ 4, 6.)

24. Defendants First Student, Inc. and FirstGroup America, Inc. are also citizens of the State of Ohio because a corporation is deemed to be a citizen of the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). As clarified by the Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), Section 1332(c)(1)'s use of "the phrase 'principal place of business' refers to the place where a corporation's high level officers direct, control, and coordinate the corporation's activities," *i.e.*, its "nerve center." *Id.* at 80-81. Except in unusual circumstances, a corporation's corporate headquarters is its nerve center. *Id.* at 93-94.

25. Defendants First Student, Inc. and FirstGroup America, Inc. have their corporate headquarters at 600 Vine Street, Cincinnati, Ohio. (Beechem Decl., ¶¶ 4, 6.) A majority of Defendant First Student, Inc.'s and FirstGroup America, Inc.'s respective corporate decisions, including operational, executive, administrative, and policymaking

decisions, are made from their Cincinnati, Ohio headquarters. (Beechem Decl., ¶¶ 4, 6.) Defendant First Student, Inc.'s and FirstGroup America, Inc.'s respective management and administrative functions are located in Cincinnati, Ohio, including human resources, finance, treasury, legal, payroll, and safety. (Beechem Decl., ¶¶ 4, 6.) Defendant First Student, Inc.'s and FirstGroup America, Inc.'s respective "nerve center" and, thus, their respective principal place of business, is located in Cincinnati, Ohio. *See Hertz*, 559 U.S. at 92-93.

26. Accordingly, for purposes of diversity jurisdiction, Defendants First Student, Inc. and FirstGroup America, Inc. are each a citizen of the States of Delaware and Ohio, and not citizens of the State of California.

27. For diversity purposes, a limited liability company is deemed to be a citizen of every state of which its members are citizens. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("An LLC is a citizen of every state of which its owners/members are citizens.").

28. Here, Defendant First Student Management, LLC is a limited liability company organized under the laws of the State of Delaware. (Beechem Decl., ¶ 5.) At the time Plaintiff commenced this action and at the time of removal, Defendant First Student Management, LLC had a single member, Defendant First Student, Inc., which as noted above is a citizen of the States of Delaware and Ohio. (Beechem Decl., ¶¶ 4-5.) Defendant First Student, Inc. is not a citizen of the State of California.

29. Accordingly, for purposes of diversity jurisdiction, Defendant First Student Management, LLC is a citizen of the States of Delaware and Ohio, and not a citizen of the State of California.

30. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998)

("28 U.S.C. § 1441(a) explicitly provides that the citizenship of defendants sued under fictitious names shall be disregarded for purposes of removal.").

31. Accordingly, the named Plaintiffs are citizens of a state (California) different from Defendants (Delaware and Ohio), and diversity exists for purposes of CAFA jurisdiction. *See* 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### E. The Amount In Controversy Exceeds $5,000,000.

32. The removal statute requires a defendant seeking to remove a case to federal court to file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). In *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014), the Supreme Court recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* at 554. "[T]he defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court diversity jurisdiction. *Id.* at 553.

33. For purposes of determining whether the amount in controversy has been satisfied, the Court must presume that Plaintiffs will prevail on their claims. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "plaintiff prevails on liability.")). The ultimate inquiry is the amount that is put "in controversy" by the allegations of a plaintiff's complaint, not what a defendant might actually owe. *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants "are still free to challenge the actual amount of damages in subsequent proceedings and at trial" because they are only estimating the amount in controversy).

34. Defendants "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)).

35. In addition, Defendants may assume violation rates of 100% in calculating the amount in controversy when, as here, the complaint does not allege a more precise calculation. *See, e.g.*, *Ritenour v. Carrington Mortgage Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is reasonable for Defendants to assume a 100% violation rate."); *Thomas v. Aetna Health of Cal., Inc.*, No. 1:10-cv-01906-AWI-SKO, 2011 WL 2173715, at *20 (E.D. Cal. June 2, 2011); *Navarro v. Servisair, LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *8-9 (N.D. Cal. Aug. 14, 2008); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204–05 (E.D. Cal. 2008); *Alvarez v. Ltd. Express, LLC*, No. 07CV1051 IEG (NLS), 2007 WL 2317125, at *3 (S.D. Cal. Aug. 8, 2007); *Muniz v. Pilot Travel Centers LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007) (a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages." (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)). These courts recognize "that imposing overly stringent requirements on a defendant to proving the amount in controversy would run the risk of essentially asking defendants to prove the plaintiffs' case." *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *5 (N.D. Cal. June 14, 2013).

36. A defendant is thus not obligated "to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz*, 2007 WL 1302504, at *5 (citing *McGraw*, 863 F. Supp. 2d at 434); *see also Jones v. Tween Brands, Inc.*, No. 2:14-CV-1631-ODW (PLAx), 2014 WL

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446 — 10. — Case No. 5:19-CV-01669

1607636, at *2 (C.D. Cal. Apr. 22, 2014) (finding defendant did not need to provide payroll data to support removal because defendant "is not required to meet such a high burden.") (citing *Muniz*, 2007 WL 1302504, at *7); *Thomas*, 2011 WL 2173715, at *20 ("[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." (citing *Muniz*, 2007 WL 1302504, at *3)).

37. Defendants deny the validity and merit of the entirety of Plaintiffs' claims, the legal theories upon which they are ostensibly based, and the claims for monetary and other relief that flow therefrom. For purposes of removal only, however, and without conceding that Plaintiffs or the putative class are entitled to any damages or penalties whatsoever, it is readily apparent that the allegations of Plaintiffs' Complaint establish that the amount in controversy exceeds CAFA's jurisdictional minimum of $5,000,000.

38. When, as here, the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so. Defendants' Notice of Removal must simply include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S. Ct. at 554.

    **i.**    **Split Shift Premiums and Liquidated Damages**

39. Defendants are entitled to base their calculations, for purposes of calculating the amount in controversy, on the argument and allegations by Plaintiffs in their First Cause of Action in which they seek recovery of allegedly unpaid split shift premiums and liquidated damages. Specifically, Plaintiffs allege:

> During the Class Period, FIRST STUDENT has failed to pay split shift wages to its Attendants in California. In particular, Plaintiffs and the Class were required to work shifts that were split by non-paid, non-working periods of time established by FIRST STUDENT that were not bona fide rest or meal breaks.

(Complaint, ¶ 27.)

////

40. Based on this allegation, Plaintiffs claim that they and the putative class members "are entitled to recover unpaid split shift minimum wages [and] liquidated damages in an amount equal to the wages unlawfully unpaid. . . ." (Complaint, ¶ 34.)

41. Plaintiffs' claim entitlement to split shift premiums based on Section 4(C) of Industrial Welfare Commission ("IWC") Wage Order 9-2001, which provides: "When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment." Section 2(N) of IWC Wage Order 9-2001 defines "split shift" as "a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal periods."

42. Between July 11, 2015 and August 4, 2019, Defendants First Student, Inc. and First Student Management, LLC collectively employed at least 814 persons in the position of Aide/Monitor in the State of California. (Higley Decl., ¶ 3.) These employees worked a combined total of 42,813 workweeks during that time period, broken down by calendar year as follows: (a) 3,877 in 2015; (b) 9,017 in 2016; (c) 10,599 in 2017; (d) 12,211 in 2018; and (e) 7,109 in 2019. (Higley Decl., ¶ 3.) These employees typically work five days a week, Monday through Friday, and there may be occasional extra weekend work. (Declaration of Kim Mingo in Support of Notice of Removal to Federal Court, ¶ 2.)

43. Defendants "may make mathematical calculations using reasonable averages of, for example, hourly, monthly, and annual incomes of comparable employees when assessing the amount-in-controversy." *Garcia v. ACE Cash Express, Inc.*, No. SACV 14-0285-DOC (RNBx), 2014 WL 2468344, at *2 (C.D. Cal. May 30, 2014) (citing *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148-49 (C.D. Cal. 2010)). Accordingly, assuming that Aides/Monitors worked 5 days per week during each of the 42,813 workweeks they collectively worked from July 11, 2015 to August 4, 2019, and applying the applicable California minimum wage rate for each

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446

12.

Case No. 5:19-CV-01669

calendar year, the amount in controversy for Plaintiffs' claim for split shift premiums is $2,279,907.50:

- 2015 – 3,877 workweeks X 5 days per week X $9 minimum wage = $174,465;
- 2016 – 9,017 workweeks X 5 days per week X $10 minimum wage = $450,850;
- 2017 – 10,599 workweeks X 5 days per week X $10.50 minimum wage = $556,447.50;
- 2018 – 12,211 workweeks X 5 days per week X $11 minimum wage = $671,605; and
- 2019 – 7,109 workweeks X 5 days per week X $12 minimum wage = $426,540.

44. In addition, Plaintiffs seek recovery of "liquidated damages in an equal amount" pursuant to California Labor Code section 1194.2. (Complaint, ¶¶ 32-33.) Thus, the amount in controversy on Plaintiffs' claim for liquidated damages is $2,279,907.50.

45. Accordingly, the amount in controversy on Plaintiffs' First Cause of Action for allegedly unpaid split shift premiums and liquidated damages is **$4,559,815**.

### ii. Wage Statement Penalties

46. Defendants are also entitled to base their calculations, for purposes of calculating the amount in controversy, on the argument and allegations by Plaintiffs in their Second Cause of Action alleging failure to provide accurate wage statements. Plaintiffs allege that Defendants "knowingly and intentionally failed to furnish Plaintiffs and the other Class Members with timely, accurate, itemized statements showing the split shift wages earned by each of them, as required by Labor Code section 226(a)." (Complaint, ¶ 37.) Plaintiffs seek on behalf of themselves and the putative class members the recovery of penalties pursuant to California Labor Code section 226. (Complaint, ¶¶ 25, 40.)

47. Given Plaintiffs' allegation that Defendants failed to pay Aides/Monitors split shift wages pursuant to "common practices, policies and/or schemes" (Complaint, ¶ 21), it is reasonable to assume that, under Plaintiffs' theory, each wage statement issued to putative class members during the relevant period of time allegedly failed to include the "split shift wages" allegedly due. *See Duberry v. J. Crew Grp., Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, at *6-7 (C.D. Cal. July 28, 2015) (finding it reasonable to apply a 100% violation rate as to the inaccurate wage statement claim); *Korn*, 536 F. Supp. 2d at 1204 (courts may consider maximum penalty in calculating amount in controversy for wage statement claim).

48. Plaintiffs' wage statement claim is subject to a one-year statute of limitations. *See Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 462 (S.D. Cal. 2007) ("Recovery under § 226(a) constitutes a penalty and is therefore governed by a one-year statute of limitations under California Code of Civil Procedure § 340(a)."). During the period of July 11, 2018 to August 9, 2019, Defendants issued at least 6,612 wage statements to 422 Aides/Monitors in California. (Higley Decl., ¶ 4.) California Labor Code section 226(e) provides that "[a]n employee suffering injury as a result of a knowing and intentional failure by an employer to comply with [Labor Code section 226] subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." CAL. LABOR CODE § 226(e)(1). Accordingly, a conservative estimate of Plaintiffs' claim for Section 226 penalties, which takes into account Section 226(e)(1)'s $4,000 cap per employee, results in an amount in controversy for the statutory time period of **$640,100** ([$50 X 422 initial violations] + [$100 X 6,190 subsequent violations] = $640,100).

### iii. Waiting Time Penalty Claim

49. Defendants are also entitled to base their calculations, for purposes of calculating the amount in controversy, on Plaintiffs' request for waiting time penalties

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446    14.    Case No. 5:19-CV-01669

pursuant to Labor Code section 203.  (Complaint, ¶ 25.)   Given Plaintiffs' allegation that Defendants required Aides/Monitors to work split shifts but failed to pay them "split shift wages", it is reasonable to assume a 100% violation rate on the waiting time penalty claim.

50. Penalties under California Labor Code section 203(a) are calculated at an employee's final daily rate of pay (*i.e.*, the employee's final wage rate times the employee's average shift length) times the number of days of waiting time penalties (up to 30 days).  *See Mamika v. Barca*, 68 Cal. App. 4th 487, 491-93 (1998).  It therefore is reasonable to assume – for purposes of calculating the amount in controversy only – that none of the terminated putative class members were paid "split shift wages" allegedly due upon termination.  Taking the allegations in the Complaint as true, each of these employees is entitled to 30 days' wages in waiting time penalties under California Labor Code section 203.  *See* CAL. LAB. CODE § 203; *Giannini v. Northwestern Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. April 20, 2012) ("Defendants can properly assume that all members of the former employee subclass were entitled to maximum waiting time penalties under Labor Code section 203."); *Wilson v. Best Buy Co., Inc.*, No. 2:10-cv-3136-GEB-KJN, 2011 WL 445848, at *2 (E.D. Cal. Feb. 8, 2011) (finding defendant provided plausible evidence to support all former employees were entitled to thirty days of penalties based on allegation that plaintiff and class members did not receive their wages within 72 hours of termination); *Korn*, 536 F. Supp. 2d at 1206 n.4 (applying full 30 days' worth of wages for Section 203 penalties because plaintiff "cannot avoid satisfaction of the amount in controversy by arguing that the class plaintiffs may be awarded less than the statutory maximum.").

51. The statute of limitations on a claim for waiting time penalties is three years.  *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395 (2010) ("[N]o one disputes that when an employee sues to recover both unpaid final wages and the

resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages.").

52. During the period of July 11, 2016 to August 12, 2019, approximately 295 individuals employed as Aides/Monitors by Defendants First Student, Inc. and First Student Management, LLC in California had their employment terminated. (Higley Decl., ¶ 6.) Further, applying these 295 employees' respective final hourly rate, multiplied by 5 hours per day for the statutory maximum of 30 days, the amount in controversy at issue for Plaintiffs' claim for waiting time penalties is **$546,473**. *See Jones*, 2014 WL 1607636, at *3 (defendant could rely on assumption of 100% violation rate where plaintiff sought "the statutory penalty wages for each day [the class members] were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203")

        **iv.   Attorneys' Fees**

53. As set forth above, the amount placed in controversy by Plaintiffs' claims for alleged unpaid split shift premiums, wage statement penalties, and waiting time penalties is at least $5,746,388.

54. Plaintiffs also seek attorneys' fees (*see* Complaint, ¶¶ 5, 33, 34, 46, Prayer for Relief, ¶ j) which the Court should consider and include in the amount in controversy since the California Labor Code allows recovery of such fees. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("We hold that where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Attorneys' fee awards in California wage and hour class actions can total millions of dollars. *See, e.g.*, *McGuigan v. City of San Diego*, 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class action, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (affirming award of $727,000 in attorneys' fees plus a

1  multiplier that equates to total fees of $1,199,550 in class action involving violations of a living wage ordinance, the California Labor Code, as well as unfair competition and contract claims); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-5500 YGR, 2012 WL 699465 (N.D. Cal. Mar. 1, 2012) ("[I]t is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'" (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

61. Assuming that the amount in controversy as to Plaintiffs' claims for attorneys' fees is 25% of the aggregate amount in controversy for the claims for split shift premiums, wage statement penalties, and waiting time penalties, or $1,436,597, the **total amount in controversy is at least $7,182,985**.

55. Removal of this action is therefore proper as the aggregate value of Plaintiffs' class claims for statutory damages, statutory penalties, and attorneys' fees is well in excess of the CAFA jurisdictional requirement of $5,000,000. *See* 28 U.S.C. § 1332(d)(2).

56. In light of the above, there is no question that Plaintiffs' claims exceed the jurisdictional minimum. Accordingly, the "amount in controversy" requirement under CAFA is satisfied in this case.

**VII.   NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT**

57. Following the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiffs' counsel of record, Hunter Pyle and Vincent Chen of Hunter Pyle Law, and a copy of the Notice of Removal without its accompanying exhibits will be filed with the Clerk of the San Bernardino County Superior Court in accordance with 28 U.S.C. section 1446(d). (Riley Decl., ¶ 7.)

/ / / /

/ / / /

/ / / /

/ / / /

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446

17.

Case No. 5:19-CV-01669

Case 5:19-cv-01669-JGB-SHK   Document 1   Filed 08/30/19   Page 18 of 18   Page ID #:18

WHEREFORE, Defendants hereby remove this action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California.

Dated: August 30, 2019

                                  */s/ Matthew B. Riley*
DAVID J. DOW
MATTHEW B. RILEY
LITTLER MENDELSON, P.C.
Attorneys for Defendants
FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, and FIRSTGROUP AMERICA, INC. (erroneously sued as FIRST GROUP)

FIRMWIDE:166230758.1 070991.1175

501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

NOTICE OF REMOVAL TO FEDERAL COURT PURSUANT TO 28 U.S.C. SECTIONS 1332, 1441, AND 1446

18.

Case No. 5:19-CV-01669