**HUNTER PYLE, SBN 191125**
**KATHERINE FIESTER, SBN 301316**
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails:   hunter@hunterpylelaw.com;
          kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated;<br><br>            Plaintiffs,<br><br>      v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No.: 5:19-cv-01669-JGB-SHK<br><br>Class and Collective Action<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      October 18, 2021<br>Time:      9:00 a.m.<br>Ctrm:      1<br>Judge:     Hon. Jesus G. Bernal |

TO THE ABOVE-CAPTIONED COURT AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz ("Plaintiffs") on behalf of themselves and all similarly situated individuals, hereby move the Court to grant Plaintiffs' Motion for Preliminary Approval of Settlement ("Motion"). Defendants First Student, Inc., First Student Management, LLC, and Firstgroup America, Inc. ("Defendants") do not oppose this Motion. Hearing on this Motion will be held on Monday, October 18, 2021 at 9:00 a.m., in the Courtroom of the Honorable Jesus G. Bernal, located at the United States District Court for the Central District of California, U.S. Courthouse, 3470 Twelfth Street, Courtroom No. 1, Riverside, CA 92501.

Plaintiffs move the Court for an Order that:

1) Grants class certification of the following proposed settlement class under Federal Rule of Civil Procedure 23(b)(3): All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015, to July 24, 2021;

2) Preliminarily approves the proposed settlement as fair, reasonable and adequate;

3) Directs the Class Notice set forth as Exhibit A to the Settlement to be disseminated to Class Members;

4) Appoints Hunter Pyle Law as Class Counsel;

5) Appoints Simpluris, Inc. to serve as the Settlement Administrator; and

6) Sets deadlines for the Class Notice to be sent, objection and opt-out deadlines, and a hearing date and schedule for final approval of the Settlement and consideration of Plaintiffs' counsel's Motion for Attorneys' Fees, Costs, and Class Representative Service Award.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this Notice of Motion and Motion; the Memorandum of

Points and Authorities set forth below; the Declarations of Hunter Pyle ("Pyle Decl."),
Norma Lopez ("Lopez Decl."), Cindy Mitchell ("Mitchell Decl."), Vada Neice
("Neice Decl."), and Mary Diaz ("Diaz Decl.") and supporting exhibits; the pleadings,
records, and papers on file in this action; and all other evidence properly before the
Court.

DATED: September 17, 2021          HUNTER PYLE LAW


                                   By: /s/ Hunter Pyle_____
                                       Hunter Pyle
                                       Katherine Fiester

                                   Attorneys for Plaintiffs and the Putative Class

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

# **TABLE OF CONTENTS**

I.      Introduction ........................................................................................................ 1

II.     Summary of Litigation ...................................................................................... 1

III.    Summary of Settlement Terms .......................................................................... 2

        A. Class Definition ........................................................................................ 2

        B. Class Relief ............................................................................................... 3

                1.  Gross Settlement Amount ................................................................ 3

                2.  Distribution of Settlement Funds to Class Members ..................... 3

                3.  Any Uncashed Checks Will Be Distributed to a *Cy Pres* Beneficiary ...... 4

                4.  Opportunity to Object or Opt Out .................................................. 4

                5.  Released Claims ............................................................................... 4

                6.  Settlement Administration and Dissemination of the Notice to the Class. 4

                7.  Payment of Attorneys' Fees, Costs, and Expenses ........................ 5

                8.  The Court Retains Jurisdiction ....................................................... 5

IV.     Legal Argument ................................................................................................ 6

        A. Standards For Preliminary Approval of Settlements ................................ 6

        B. Conditional Certification of the Class is Appropriate ............................. 8

                1.  The Class is Numerous .................................................................... 8

                2.  Common Questions of Law and Fact Predominate ........................ 8

                3.  Plaintiffs' Claims Are Typical of the Class Claims ........................ 9

                4.  Plaintiffs and Plaintiffs' Counsel Adequately Represent the Class ........ 10

                5.  Class Treatment is Superior ........................................................... 11

        C. The Settlement Falls Within The Range of Possible Approval .................. 12

                1.  Competent Counsel Negotiated the Settlement at Arm's Length ........... 12

                2.  Plaintiffs and the Class Face Ongoing Risk in the Absence of Settlement 13

                3.  The Settlement Provides a Significant Recovery ...................................... 15

                        a.  Failure to Provide Split Shift Pay and Interest Thereon ..................... 16

                        b.  Liquidated Damages ................................................................... 17

                        c.  Wage Statement Penalties.............................................................. 17

                        d.  Waiting Time Penalties.................................................................. 18

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

e.  PAGA Penalties ................................................................19

D. The Court Should Approve The Proposed Notice ........................................20

E. The Requested Attorneys' Fees, Costs, and Service Awards Are Preliminarily

Reasonable..............................................................................22

1.  The requested attorneys' fees are preliminarily reasonable....................22

2.  The litigation costs incurred are preliminary reasonable........................25

3.  The Class Representative Service Awards are reasonable. ....................25

V.    Conclusion ........................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Acosta v. Frito-Lay, Inc.*
  2018 WL 2088278 (N.D. Cal. May 4, 2018) .......................................13, 14

*Alikhan v. Goodrich Corp.*
  2020 WL 4919382 (C.D. Cal. June 25, 2020) ....................................23, 24

*Amchem Products Inc. v. Woodward*
  (1997) 521 U.S. 591 ......................................................................11

*Bernstein v. Virgin America, Inc.*
  2016 WL 6576621 (N.D. Cal. Nov. 7, 2016).............................9, 10, 19

*Betancourt v. Advantage Human Resourcing, Inc.*
  2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ....................................14, 15

*Bower v. Cycle Gear, Inc.*
  2016 WL 4439875 (N.D. Cal. Aug. 23, 2016).......................................12

*Cabiness v. Educ. Fin. Solutions, LLC*
  2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ..................................13, 14

*Chalmers v. City of Los Angeles*
  796 F.2d 1205 (9th Cir. 1986)..........................................................25

*Chao v. Aurora Loan Servs., LLC*
  2014 WL 4421308 (N.D. Cal. Sept. 5, 2014) .......................................22

*Ching v. Siemens Indus., Inc.*
  2014 WL 2926210 (N.D. Cal. June 27, 2014) .......................................23

*Chu v. Wells Fargo Invs., LLC*
  2011 WL 672645 (N.D. Cal. Feb. 16, 2011).........................................20

*Chun-Hoon v. McKee Foods, Corp.*
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................14

*Churchill Vill., LLC v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004)....................................................6, 7, 21

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992)............................................................6

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Cotter v. Lyft, Inc.*
  176 F.Supp.3d 930 (N.D. Cal. 2016) ................................................................. 19, 20

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*
  244 F.3d 1152 (9th Cir. 2001) ....................................................................................... 9

*Destefano v. Zynga, Inc.*
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................... 16

*Ellis v. Costco Wholesale Corp.*
  657 F.3d 970 (9th Cir. 2011) ...................................................................................... 10

*Fernandez v. Victoria Secret Stores, LLC*
  2008 WL 8150856 (C.D. Cal. July 21, 2008) ......................................................... 24

*Fischel v. Equitable Life Assur. Society of U.S.*
  307 F.3d 997 (9th Cir. 2002) ...................................................................................... 24

*Franco v. Ruiz Food Prods.*
  2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................................................ 20

*Garcia v. Gordon Trucking*
  2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) .................................. 20

*Gaudin v. Saxon Mortg. Servs., LLC*
  2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ........................................................ 16

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ passim

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) ...................................................................................... 10

*Harris v. Vector Mktg. Corp.*
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) .................................................. 12, 25

*In re Omnivision Techs., Inc.*
  559 F.Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 12, 14, 15

*In re Pacific. Enterprises Securities. Litigation*
  47 F.3d 373 (9th Cir. 1995) ........................................................................................ 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*
  148 F.3d 283 (3d Cir. 1998) ....................................................................................... 21

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*In re Tableware Antitrust Litig.*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................6, 7

*In re Washington Public Power Supply System Securities Litigation*
    19 F.3d 1291 (9th Cir. 1994).......................................................................................24

*Ketchum v. Moses*
    24 Cal. 4th 1122 (2001)...............................................................................................24

*Lilly v. Jamba Juice Co.*
    2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) .............................................................7

*Linner v. Cellular Alaska P'Ship*
    151 F.3d 1234 (9th Cir. 1998)......................................................................................14

*Ma v. Covidien Holding, Inc.*
    2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ..............................................................16

*McKenzie v. Federal Exp. Corp.*
    2012 WL 2930201 (C.D. Cal. July 2, 2012) ..............................................................24

*Mendoza v. Tucson Sch. Dist. No. 1*
    623 F.2d 1338 (9th Cir.1980).......................................................................................21

*Miletak v. Allstate Ins. Co.*
    2010 WL 809579 (N.D. Cal. Mar. 5, 2010) .................................................................8

*Nordstrom Comm'n Cases*
    186 Cal. App. 4th 576 (2010).......................................................................................19

*O'Connor v. Uber Technologies, Inc.*
    201 F.Supp.3d 1110 (N.D. Cal. 2016) .........................................................................19

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*
    688 F.2d 615 (9th Cir. 1982)........................................................................................14

*Ontiveros v. Zamora*
    2014 WL 3057506 (E.D. Cal. July 7, 2014) .................................................................7

*Reyes v. Bakery and Confectionary Union and Indus. Int'l. Pension Fund*
    2017 WL 7243239 (N.D. Cal. Jan. 23, 2017) ............................................................12

*Rieckborn v. Velti PLC*
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015)..................................................................15

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010)......................................................................8

*Roes, 1-2 v. SFBSC Mgmt., LLC*
   944 F.3d 1035, 2019 WL 6721190 (9th Cir. 2019) ...................................6

*Satchell v. Fed. Express Corp.*
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .........................................12

*Schiller v. David's Bridal, Inc.*
   2012 WL 2117001 (E.D. Cal. June 11, 2012)..........................................20

*Serrano v. Priest*
   20 Cal. 3d 25 (1977)................................................................................24

*Steiner v. Am. Broad. Co.*
   248 F. App'x 780 (9th Cir. 2007)..............................................................24

*Stovall-Gusman v. W.W. Granger, Inc.*
   2015 WL 3776765 (N.D. Cal. June 17, 2015) ..........................................16

*Strube v. American Equity Inv. Life Ins. Co.*
   226 F.R.D. 688 (M.D. Fla. 2005) .............................................................11

*Thomas v. Cognizant Tech. Sols. U.S. Corp.*
   2013 WL 12371622 (C.D. Cal. June 24, 2013) ........................................16

*Thurman v. Bayshore Transit Management, Inc.*
   203 Cal. App. 4th 1112 (2012)..................................................................19

*Vizcaino v. Microsoft Corp.*
   290 F.3d 1043 (9th Cir. 2002)...................................................................24

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ...................................................................................8

*Williams v. First Nat'l Bank*
   216 U.S. 582 (1910) ...................................................................................6

*Wren v. RGIS Inventory Specialists*
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ............................................14

*ZB, N.A. v. Superior Court*
   8 Cal. 5th 175 (2019).................................................................................19

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Zinser v. Accufix Research Institute, Inc.*
    253 F.3d 1188 (9th Cir. 2001).................................................................9

**Statutes**

California Code of Civil Procedure
Section 1542.............................................................................................4

California Labor Code
Section 203.............................................................................................18
Section 226.......................................................................................17, 25
Section 2699...........................................................................................19

**Other Authorities**

U.S. Code, Title 28
Section 1715...........................................................................................21

California Business & Professional Code
Section 17200...........................................................................................1

**Rules**

Federal Rule of Civil Procedure
Rule 23...........................................................................................passim

**Regulations**

California Code of Regulations, Title 8
Section 13520.........................................................................................18

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz ("Plaintiffs"), on behalf of themselves and all others similarly situated, seek preliminary approval of a proposed $1,475,000 non-reversionary, class and representative action settlement[1] of this wage and hour case against Defendants First Student, Inc., First Student Management, LLC, and Firstgroup America, Inc.[2] ("Defendants") The Parties achieved the settlement after significant discovery and extensive arm's-length negotiations. The settlement will provide substantial monetary payments to approximately 879 Attendants.[3]  As set forth below, it also satisfies all the criteria for class certification and settlement approval under Federal Rule of Civil Procedure 23.

## II.   SUMMARY OF LITIGATION

Plaintiffs Norma Lopez, Cindy Mitchell and Vada Neice commenced this proposed class action against Defendants in San Bernardino County Superior Court on July 11, 2019. Plaintiffs alleged causes of action for: (1) failure to pay split shift wages; (2) failure to provide complete and accurate wage statements; and (3) unfair competition claims pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Pyle Decl. ¶ 17.

Plaintiffs subsequently gave notice to the California Labor and Workforce Development Agency ("LWDA") in order to administratively exhaust claims for civil penalties under California's Private Attorneys General Act ("PAGA") on July 15,

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Pyle Decl. *See* Pyle Decl. Ex. 1 ("Settlement"). The Class Notice is attached as Exhibit A to the Settlement. *See* Ex. A to Settlement. Unless otherwise defined herein, all capitalized terms herein have the same meanings as those in the Settlement Agreement.
[2] Defendants and Plaintiffs are collectively referred to herein as the "Parties."
[3] Attendants are sometimes referred to as Bus Aids or Bus Monitors. These terms are all synonymous.

2019. Plaintiffs submitted an amended PAGA notice on December 6, 2019. Pyle Decl. ¶ 18.

On August 30, 2019, Defendants removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").

On January 21, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC") adding Mary Diaz as a named plaintiff and causes of action for waiting time penalties and PAGA civil penalties on behalf of the State of California and all aggrieved employees. Pyle Decl. ¶ 21. Defendants then filed an answer denying liability and raising various affirmative defenses. *See* Dkt. 23 [Defendants' Answer].

The Parties conducted discovery, which included the production of timesheets and wage statements for 827 of the 879 (or 94 percent) of the estimated Class Members. Pyle Decl. ¶ 22. Plaintiffs retained a damages expert to conduct a thorough and detailed damages analysis for the Class.

The Parties agreed to mediate with the Hon. Steven Denton (Ret.) on May 12, 2021. *Id.* ¶ 23. After thorough arm's-length negotiations with Judge Denton's assistance, the Parties were able to agree to a complete resolution of the Action. *Id.* ¶ 24. The Parties then negotiated and executed a memorandum of understanding ("MOU") and, subsequently, a Joint Stipulation of Class and PAGA Representative Action Settlement and Release ("Settlement"). *Id.*

## III.    SUMMARY OF SETTLEMENT TERMS

### A. Class Definition

The Class is defined as: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (the "Class"). Settlement ¶ 1(d).

//

//

//

### B. Class Relief

#### 1. Gross Settlement Amount

Defendants have agreed to pay $1,475,000 (the "Gross Settlement Amount") to resolve the claims of Plaintiffs and Participating Class Members. The Gross Settlement Amount will be used to pay the following: (1) compensation to all Participating Class Members in settlement of their claims; (2) civil penalties paid to the State of California and PAGA Members in settlement of the PAGA claims (the "PAGA Payment") in the amount of $89,120; (3) court approved attorneys' fees (not to exceed 30% of the Gross Settlement Amount) and costs estimated to be no more than $45,000; (4) Settlement Administration Costs necessary to administer the Settlement, including payment for the services of the Settlement Administrator not to exceed $9,999; and (5) a service payment to each Plaintiff not to exceed $10,000, subject to Court approval.[4]  *See* Settlement ¶¶ 7-8.

#### 2. Distribution of Settlement Funds to Class Members

There will be a direct monetary distribution to the approximately 879 Class Members. Class Members will not need to file a claim or do anything affirmative to receive payment. Rather, they will simply receive a check for the amount due to them under the Settlement. Pyle Decl. ¶ 30.

Each Participating Class Member will receive a proportionate share of the Net Settlement Amount that is equal to the number of Workweeks they worked during the time period from July 11, 2015, to July 24, 2021 (the "Class Period") divided by the total number of Workweeks worked by all Participating Class Members during the Class Period. *See* Settlement ¶ 9(a). The average recovery per Class Member is anticipated to be at least $965.17. Pyle Decl. ¶ 30.

//

---

[4] Defendants will separately pay their portion of taxes, contributions, fees and any other amounts owed to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement. *See* Settlement ¶¶ 1(k), 7.

3

Each PAGA Member will also receive a proportionate share of the PAGA Members Payment that is equal to the number of Pay Periods they worked during the time period from July 15, 2018, to July 24, 2021 (the "PAGA Period") divided by the total number of Pay Periods worked by all PAGA Members during the PAGA Period. *See* Settlement ¶ 9(b).

### 3.  Any Uncashed Checks Will Be Distributed to a *Cy Pres* Beneficiary

All settlement funds will be paid out, and none will revert to Defendants. *See* Settlement ¶ 9. After all payments have been issued to the Participating Class Members, any amount remaining from uncashed checks will be paid to Legal Aid at Work ("LAAW").[5]

### 4.  Opportunity to Object or Opt Out

Class Members may object to or opt out of the Settlement. The Class Notice shall provide instructions and requirements for Class Members to object to the Settlement or to opt out of the Settlement.  Settlement ¶ 60; Ex. A to Settlement.

### 5.  Released Claims

If the Court grants final approval of the Settlement, the Participating Class Members will release Defendants from all claims as described in paragraph 39 of the Settlement. *See* Settlement ¶¶ 1(aa)-(cc), 39. There is no difference between the release and the claims in the FAC. Pyle Decl. ¶ 32. Plaintiffs will also provide a general release, including a release of all known and unknown claims under California Civil Code § 1542. *See* Settlement ¶ 41.

### 6.  Settlement Administration and Dissemination of the Notice to the Class

The Settlement allocates up to $9,999 to settlement administration costs. *Id.* ¶ 1(b). The Parties have agreed to use Simpluris, Inc. ("Simpluris") as the Settlement

---

[5] LAAW is a California-based nonprofit organization that provides legal aid to low-income, working families throughout the state, including in the area of wage and hour law. *Id.* LAAW's mission of enforcing worker protections through litigation and policy advocacy furthers the interests of California employees like the Attendants, Bus Aids or Bus Monitors here in preventing and remedying wage theft and other labor issues. Pyle Decl. ¶ 31.

Administrator. *Id.* ¶ 1(ee); Pyle Decl. ¶¶ 34-35. Simpluris has successfully administered a large number of wage and hour class action settlements in an efficient and effective manner. Pyle Decl. ¶¶ 34-36. Simpluris has provided a bid of $9,999 for the proposed work. *Id.* ¶ 34. Plaintiffs' counsel considered three bids before choosing Simpluris, which had the lowest bid. *Id.* ¶¶ 34-35

Simpluris will distribute the Class Notice, maintain a website, and maintain a telephone number to which Class Members can direct questions about the Settlement, and will administer and distribute all Settlement-related payments. *See* Settlement ¶¶ 28, 33; Ex. A to Settlement. Simpluris will provide a declaration attesting to the notice process prior to the Final Approval Hearing which Plaintiffs' counsel will file with the Court. *Id.* ¶¶ 23-25.

Defendants will provide Simpluris with the class data within 14 days of the Order Granting Preliminary Approval. *Id.* ¶ 15. The Notice will be sent by first-class mail to all Class Members within 14 business days after Defendants provide Simpluris with the class data. *Id.* ¶ 18. Simpluris will update mailing addresses through the National Change of Address database before mailing. All returned mail will be skip-traced and promptly re-mailed. *Id.* ¶ 17.

**7.  Payment of Attorneys' Fees, Costs, and Expenses**

As discussed in below in section IV(E), should the Court grant preliminary approval, Plaintiffs will file a motion for an award of attorneys' fees of up to $442,500 (30% of the Gross Settlement Amount), and for reimbursement of reasonable costs, estimated to be no more than $45,000, to be paid out of the Gross Settlement Amount. Pyle Decl. ¶¶ 65, 68; Settlement, ¶¶ 1(c), 8(c)-(d), 29.

**8.  The Court Retains Jurisdiction**

Under the terms of the Settlement Agreement, after entry of Judgment, the Court shall have continuing jurisdiction over the Settlement. Pyle Decl. ¶ 37; Settlement ¶ 30.

//

## IV.    LEGAL ARGUMENT

### A. STANDARDS FOR PRELIMINARY APPROVAL OF SETTLEMENTS

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources. As a result, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (noting that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

Even so, class action settlements require court approval. Fed. R. Civ. P. 23(e). Where a class action is settled prior to class certification, courts must employ "a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 2019 WL 6721190, at *10 (9th Cir. 2019).

There are two stages to the approval of a class action settlement. In the first stage, the parties must show "that the court will likely be able to ... (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004).

If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to ... certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class." *Ontiveros*

*v. Zamora*, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014). In the second stage, the court reviews any objections by class members and conducts a final fairness hearing to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. Rule 23(e).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 WL 1248027, at *6 (N.D. Cal. Mar. 18, 2015). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Factors the Court should consider include whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, courts in the Ninth Circuit have also considered the strength of the plaintiffs' case; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v.*

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness. *Hanlon*, 150 F.3d at 1026.

## B. CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

The Class here satisfies each of the requirements of Rule 23(a), namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Hanlon*, 150 F.3d at 1019. It also satisfies Rule 23(b)(3) in that common questions "predominate over any questions affecting only individual members," and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. The Class Is Numerous

The Class satisfies Rule 23(a)'s numerosity requirement. "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Miletak v. Allstate Ins. Co*., No. C 06-03778 JW, 2010 WL 809579, at *10 (N.D. Cal. Mar. 5, 2010) (citation omitted). Here, there are approximately 879 Class Members. Pyle Decl. ¶ 38. The numerosity requirement is thus easily satisfied.

### 2. Common Questions of Law and Fact Predominate

The commonality inquiry under Rule 23 (a)(2) and the predominance inquiry under Rule 23(b)(3) overlap and are thus examined together here. Rule 23(a)(2) is satisfied when there is a "common contention... of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Hayes*, 591 F.3d 1105, 1112 (9th Cir. 2010). The predominance inquiry under Rule 23(b)(3) focuses on whether the class is "sufficiently cohesive to warrant adjudication by representation."

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*., 244 F.3d 1152, 1162 (9th Cir. 2001).

Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1188, 1189 (9th Cir. 2001). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted).

Here, common questions of fact and law exist that predominate over individual issues. The central question presented is whether Plaintiffs and other Attendants have been deprived of their full pay when working split shifts. Plaintiffs' claims are the same as those of the proposed Class, and will be resolved in the same way. All Attendants are subject to the same policies, practices and procedures with respect to pay, and all are alleged to have suffered the same type of wage loss, i.e., unpaid wages when working split shifts. *See* Dkt. 18 [FAC].

Defendants' defenses are also common and predominant. Pyle Decl. ¶ 42. Defendants contend that liquidated damages are not available for failure to provide split shift pay. Defendants further argue that there are no wage statement violations because they did not intentionally fail to include split shift pay on wage statements. *See* Dkt. 23 [Defendants' Answer]. These defenses run to the Class as a whole. There are no claims or defenses individual to Plaintiffs that would predominate over common questions of fact and law. Commonality and predominance are thus satisfied. See*, e.g., Bernstein v. Virgin America, Inc*., No. 15-CV-02277-JST, 2016 WL 6576621, at *13 (N.D. Cal. Nov. 7, 2016) (predominance satisfied where pay policies run to class as a whole).

### 3. Plaintiffs' Claims Are Typical of the Class Claims

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts*

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

*Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims are typical of all other Class Members. Plaintiffs are current and former Attendants employed by Defendants. The Class consists of former and current Attendants, Bus Aids, and Monitors who have all been subject to the same pay policies and procedures of Defendants. Plaintiffs assert the same legal claims on behalf of themselves and the proposed Class and seek to recover damages as a result of Defendants' common course of conduct. Plaintiffs' claims therefore are "typical" within the meaning of Rule 23(a). *See, e.g., Bernstein*, 2016 WL 6576621, at *14-15.

### 4.  Plaintiffs And Plaintiffs' Counsel Adequately Represent the Class

A representative plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs have fairly and adequately represented the Class. They have no interests that are in conflict with other Class Members, have experienced the same alleged legal violations, and have been vigorously prosecuting the case on behalf of the Class. Pyle Decl. ¶¶ 43, 69-71; *see generally* Lopez Decl. ¶¶ 1-17; Mitchell Decl. ¶¶ 1-17; Neice Decl. ¶¶ 1-16; and Diaz Decl. ¶¶ 1-16.

Additionally, Plaintiffs' counsel has considerable experience in litigating complex class actions, including wage and hour class actions, are familiar with the legal and factual issues involved, and are highly qualified. Pyle Decl. ¶¶ 3-16. The

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

work performed by Plaintiffs' counsel in this matter, as well as their substantial experience, demonstrates ample basis for finding that they are well qualified to serve as class counsel. *Id.* ¶ 44. The adequacy requirement is thus satisfied.

### 5.  Class Treatment Is Superior

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." A court considers the following factors to determine superiority for settlement purposes: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)-(C).[6] Superiority is to be assessed through a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.

Here, a class action is superior to other available methods for litigating Class Members' claims against Defendants. As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. Class certification is particularly appropriate since resolving class members' claims en masse will ensure an efficient and fair distribution of the settlement fund. Individual claims would "prove uneconomic for a potential plaintiff," because "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. The Class Members' interest in individual litigation is therefore low and concentration of litigation is particularly desirable.

---

[6] Courts do not consider the fourth factor, i.e., the difficulties of managing a class action, in the context of settlement. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems"). In addition, some courts have found the that third factor, the "forum" inquiry, is "conceptually irrelevant in the context of a settlement." *See Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

## C. THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

All relevant factors weigh in favor of preliminary approval of the Settlement as fair, adequate, and reasonable for the following reasons:

### 1.  Competent Counsel Negotiated the Settlement at Arm's Length

The Settlement represents the culmination of intensive arm's-length negotiations, after extensive discovery, with the assistance of a professional mediator. Pyle Decl. ¶¶ 22-24. Plaintiffs and the interests of the Class were represented in settlement negotiations by attorneys who have considerable experience in wage and hour litigation and who are well-versed in the legal and factual issues. *Id.* ¶¶ 3-16, 26. Defendants were similarly represented by counsel with extensive experience defending complex litigation, including wage and hour class actions. *Id.* ¶ 26. The settlement negotiations were contested and conducted in good faith. *Id.*

The participation of Judge Denton, a well-respected neutral, in this case supports the conclusion that the Settlement is the result of arm's-length negotiations. *See Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's length bargaining."); *see also Satchell v. Fed. Express Corp.*, No 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016 WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016); and *Reyes v. Bakery and Confectionary Union and Indus. Int'l. Pension Fund*, No. 14-cv-05596-JST, 2017 WL 7243239, at *5 (N.D. Cal. Jan. 23, 2017).

Further, Plaintiffs' counsel support the Settlement Agreement. *See In re Omnivision Techs., Inc.*, 559 F.Supp. 2d 1036, 1043 (N.D. Cal. 2008) (holding "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness"). Plaintiffs' counsel has litigated a number of class action cases, including actions such as this one presenting workers in the bus transportation

12

industry, and have reached approved settlement agreements in many of them. Pyle Decl. ¶¶ 3-16; *see also Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-cv-01109-JST, 2019 WL 1369929, at *6 (N.D. Cal. Mar. 26, 2019).  ("Class Counsel have extensive experience litigating class action and consumer protection cases. That they advocate in favor of the Settlement weighs in favor of approval."); *see also Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278, at *9 (N.D. Cal. May 4, 2018) (giving value to opinion of counsel who had been named class counsel in multiple class actions); *In re Pacific. Enterprises Securities. Litigation*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."). Plaintiffs' counsel consider the Settlement, which compares favorably to previous settlements that courts have approved, to be an excellent result. Pyle Decl. ¶¶ 26, 62-64.[7]

In sum, the Settlement is the product of an adversarial and careful negotiation conducted with the assistance of a well-respected and experienced neutral and involving experienced and skilled class counsel.

### 2.  Plaintiffs and the Class Face Ongoing Risk in the Absence of Settlement

Defendants deny all of the substantive allegations in the action. Therefore, because liability is highly contested, both sides will incur significant time, expenses, and risk if this Action continues. Pyle Decl. ¶ 48.

While Plaintiffs and Plaintiffs' counsel believe Plaintiffs would ultimately succeed in obtaining certification of the Class and in prevailing on the merits at trial, the litigation in this action to date has informed the Parties of the risks of continued litigation. *Id.* Plaintiffs engaged in substantive discovery prior to the settlement negotiations. *Id* ¶ 22. Plaintiffs and Defendants thus "have sufficient information to

---

[7] Plaintiffs' lead counsel's experience with comparable class action settlements is set forth in his declaration. *See* Pyle Decl. ¶¶ 62-64.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    make an informed decision about settlement." *Linner v. Cellular Alaska P'Ship*, 151

2    F.3d 1234, 1239 (9th Cir. 1998); *see also Cabiness*, 2019 WL 1369929, at *5.

3         Specifically, Plaintiffs conducted relevant discovery, including the exchange of

4    thousands of pages of documents. Pyle Decl. ¶ 22. Plaintiffs then retained a damages

5    expert to conduct a thorough and detailed damages analysis. *Id.* Plaintiffs understand

6    that there are still "barriers plaintiffs must overcome in making their case." *Chun-*

7    *Hoon v. McKee Foods, Corp*., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). In light of

8    this analysis, Plaintiffs and Plaintiffs' counsel recognize that Defendants have raised

9    factual and legal defenses in the action that present a risk that Plaintiffs may not

10   prevail, that a class might not be certified for trial, and that the claims of one or more

11   Class Members may be defeated. Pyle Decl. ¶ 26.

12        Moreover, the outcome of this action, should it proceed to further motion

13   practice and/or trial, is by no means certain. In addition, even if the Plaintiffs received

14   a favorable judgment, post-trial motions and an appeal would be likely. *See*

15   *Betancourt v. Advantage Human Resourcing, Inc*., No. 14-cv-01788-JST, 2016 WL

16   344532, at *4 (N.D. Cal. Jan. 28, 2016). "[I]t is the very uncertainty of outcome in

17   litigation and avoidance of wastefulness and expensive litigation that induce

18   consensual settlements." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of*

19   *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Even though the Parties are

20   prepared to go to trial, considering the reality of a likely appeal, "it could be years

21   before Plaintiffs see a dollar." *In re Omnivision Techs., Inc*., 559 F. Supp. 2d at 1042;

22   *see also Wren v. RGIS Inventory Specialists*, C–06–05778 JCS, 2011 WL 1230826, at

23   *7 (N.D. Cal. Apr. 1, 2011) (finding that the risk, expense, complexity, and duration

24   of further litigation point in favor of approving a settlement even though plaintiffs'

25   claims had survived summary judgment).

26        The Parties' informed decision-making and negotiation, in light of the risks

27   known from initial discovery and litigation, favor approval of the Settlement. *See*

28   *Acosta*, 2018 WL 2088278, at *9.

### 3.  The Settlement Provides a Significant Recovery

The Settlement provides a significant recovery for the Class in the face of disputed claims. First, the average settlement distribution to the approximately 879 Class Members will exceed $965.17 and will be distributed to Participating Class Members directly, without a claims process. Pyle Decl. ¶ 30. Class Members who do not opt out will receive checks directly from the Settlement Administrator and will thus readily and easily receive the benefits of the Settlement. *Id.*

Second, the proposed distribution plan is straightforward and fair to all Class Members. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citing *In re Omnivision Techs., Inc*., 559 F.Supp. 2d at 1045.

Here, the Settlement treats all Class Members equitably. *See* Fed. R. Civ. P. 23(e). The Settlement Administrator will obtain detailed information from Defendants as to Class Members' employment data. Settlement ¶ 15. Net Settlement Payments will be determined by using the number of Workweeks the Class Member worked during the Class Period divided by the total number of Workweeks worked by all Participating Class Members during the Class Period. *Id.* ¶ 9(a).

The PAGA Members Payment will similarly be allocated based on the number of Pay Periods the PAGA Member worked during the PAGA Period divided by the total number of Pay Periods worked by all PAGA Members during the PAGA Period. *Id.* ¶ 9(b).

Third, the Settlement represents a reasonable compromise of claims in comparison to the potential full value of such claims. The Gross Settlement Amount of $1,475,000 will provide strong recompense to Class Members. In evaluating the amount of a settlement, "the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Betancourt*, 2016 WL 344532, at *5.

At mediation, Plaintiffs calculated the total potential value of the action to be $2,571,366.33. Pyle Decl. ¶ 46. The proposed Settlement of $1,475,000 thus represents 57% of the total potential value. *Id.* The recovery obtained here as a percentage of the total potential value therefore exceeds that of many approved wage and hour class settlements. *See, e.g., Thomas v. Cognizant Tech. Sols. U.S. Corp.*, No. SACV111123JSTANX, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval in wage and hour action where total settlement amount represented approximately 10% of potential value, and net settlement amount represented 7.3% of valuation); *Ma v. Covidien Holding, Inc.*, No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (granting preliminary approval of wage and hour settlement for 9.1%); *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (approving class settlement providing for "14 percent of likely recoverable aggregate damages at trial," and "9.5 percent of those" damages after "deductions for attorneys' fees and costs and administration costs"); *Gaudin v. Saxon Mortg. Servs., LLC*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (approving class settlement providing "13.6% recovery of the maximum possible recoverable damages").

Furthermore, Plaintiffs' counsel assigned a reasonable settlement value to each of the claims asserted on behalf of the Class Members. Pyle Decl. ¶ 47. Plaintiffs' counsel estimates the total reasonable settlement value of those claims to be $1,357,578.06. *Id.* The Gross Settlement Amount therefore exceeds the reasonable settlement value of the Class Members' claims as follows:

### a. Failure to Provide Split Shift Pay and Interest Thereon

Plaintiffs' unpaid wages claim arises out of Defendants' practice of not paying split shift pay. Plaintiffs retained a damages expert to calculate the damages based on

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  Defendants' production of timesheets and wage statements for 827 of the 879 Class
2  Members.[8] *Id.* ¶ 49. At the time of mediation Plaintiffs' expert estimated that
3  Defendants were liable to the Class Members for $582,355.59 in split shift pay,
4  including interest. *Id.*

5      Plaintiffs gave little weight to Defendants' defenses to the split shift pay claim.
6  Accordingly, Plaintiffs only discounted their claim for split shift pay by twenty
7  percent (multiplying by .80) to account for the risks involved in certifying a class and
8  maintaining certification through trial. Accordingly, Plaintiff calculated the reasonable
9  settlement value of the split shift claim to be $465,884.87. *Id.* ¶ 50.

10        **b.  Liquidated Damages**

11      Plaintiffs' claim for liquidated damages is derivative of their claim for failure to
12  provide split shift pay. At the time of mediation, Plaintiffs' expert estimated
13  Defendants' liability to the Class Members for liquidated damages claim to be
14  $582,355.59. *Id.* ¶ 51.

15      However, Defendants contend that they owe no liquidated damages because
16  their failure to pay slit shift wages was in good faith. *See* Labor Code § 1194.2(b);
17  Pyle Decl. ¶ 52. Under these circumstances, it is reasonable to discount Plaintiffs'
18  liquidated damages claim by twenty percent (multiplying by .80) to account for the
19  risks involved in certifying a class and maintaining certification through trial, and by
20  an additional thirty-five percent (multiplying by .65) to account for the risk of
21  Defendants prevailing on its defense. Pyle Decl. ¶ 52. Accordingly, Plaintiffs
22  determined that the reasonable settlement value of the liquidated damages claim was
23  $302,824.91. *Id.*

24        **c.  Wage Statement Penalties**

25      At the time of mediation, Plaintiffs' expert calculated the maximum recovery
26  for Plaintiffs' wage statement claim under Labor Code section 226(e) to be $426,500.

27

28  ---
[8] Plaintiffs' expert used the records for the 827 Class Members to extrapolate damages
for the remaining 52 Class Members. *Id.* ¶ 49.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    *Id.* ¶ 53. However, Defendants deny any wage statement violations and claim that

2    whatever conduct occurred was not knowing and intentional, as required by Section

3    226. *Id.*

4        Under these circumstances, it is reasonable to discount Plaintiffs' wage

5    statement penalties claim by twenty percent (multiplying by .80) to account for the

6    risks involved in certifying a class and maintaining certification through trial, and by

7    an additional thirty-five percent (multiplying by .65) to account for the risk of

8    Defendants prevailing on their defenses. Accordingly, Plaintiff calculated the

9    reasonable settlement value of the wage statement claim to be $221,780. *Id.* ¶ 54.

10        **d.  Waiting Time Penalties**

11        Plaintiffs allege that Defendants have failed to timely pay compensation and

12    wages to Class Members upon their termination or resignation from employment, as

13    required by Labor Code sections 201 and 202.[9] *Id.* ¶ 55. At the time of mediation,

14    Plaintiffs' damages expert calculated the maximum waiting time penalties owed to

15    Class Members whose employment terminated within three years prior to filing the

16    Complaint to be $534,555.15. *Id.*

17        In response, Defendants argue that there is a good faith dispute as to whether

18    any unpaid wages are due and any failure to pay wages was not willful. *Id.* ¶ 56; *see*

19    *also* Labor Code § 203; 8 C.C.R. § 13520 (providing the definition of "willful").

20    Under these circumstances, it is reasonable to discount Plaintiffs' waiting time penalty

21    claim by twenty percent (multiplying by .80) to account for the risk of Defendants

22    prevailing to account for the risks involved in certifying a class and maintaining

23    certification through trial, and by an additional thirty-five percent (multiplying by .65)

24    to account for the risks that Defendants will prevail on their defenses. Accordingly,

25    Plaintiffs determined that the reasonable settlement value of the waiting time penalties

26    claim was $277,968.68. Pyle Decl. ¶ 56.

27

28

---

[9] This claim is derivative of Plaintiffs' claim for failure to provide split shift pay.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

### e.  PAGA Penalties

With respect to PAGA, assigning a penalty of $100 per pay period, and not stacking (compounding) penalties, results in approximately $445,600 in civil penalties.[10] *Id.* ¶ 57; *see also Bernstein v. Virgin Am., Inc*., 3 F.4th 1127, 1144 (9th Cir. 2021) (noting that subsequent PAGA penalties ($200 for subsequent violations per pay period) can be limited if a defendant has not been notified that it is violating the Labor Code.)  Courts have broad discretion to reduce penalty amounts under PAGA. *See* Cal. Lab. Code § 2699(e)(2). Courts typically reduce PAGA penalties where there is unsettled law during the pendency of the litigation, where the case presents a matter of first impression that the court had to rule upon, or where an employer demonstrates a serious attempt to comply with the law. *See Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112 (2012); *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 941 (N.D. Cal. 2016).

Courts have also approved hybrid class action and PAGA settlements where only a fraction of the settlement was allocated to PAGA. *See, e.g., Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (settlement approved where $0 out of nearly $9 million settlement allocated to PAGA penalties); *Cotter*, 193 F.Supp.3d at 1037 (approving allocation of $1,000,000 to PAGA claims out of $27,000,000 settlement). In such cases, it is prudent to permit a higher compromise of the PAGA penalties to allow Class Members to receive the maximum amount of reimbursement for unpaid wages. *See, e.g, ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 196–97 (2019) (PAGA promotes the Labor Code's broad remedial purpose of protecting workers by increasing civil penalties while preserving and enhancing workers' rights to recover for lost wages); *O'Connor v. Uber Technologies, Inc*., 201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016) (courts may apply a "sliding scale" when reviewing PAGA penalties).

---

[10] There are 4465 total Pay Periods at issue for the PAGA claims in the Action.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1        Here, Defendants contend that they have compelling defenses to Plaintiffs'

2  underlying claims. Pyle Decl. ¶¶ 49-56. Under these circumstances, it is reasonable to

3  reduce the PAGA penalty to $20 per pay period, or $89,120. *Id.* ¶ 58. Accordingly,

4  the proposed Settlement of PAGA penalties for $89,120 is reasonable. *See, e.g.,*

5  *Cotter*, 193 F.Supp.3d at 1037; *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS

6  160052, at *32–33 (E.D. Cal. Oct. 31, 2012) (approving the amount of $10,000 out of

7  $3.7 million toward settlement of PAGA claims); *Schiller v. David's Bridal, Inc*.,

8  2012 WL 2117001, at *14 (E.D. Cal. June 11, 2012) (approving the amount of $7,500

9  out of $518,245 toward settlement of PAGA claims); *Chu v. Wells Fargo Invs., LLC*,

10  2011 WL 672645, at *2–3 (N.D. Cal. Feb. 16, 2011) (approving the amount of

11  $10,000 out of $6.9 million toward settlement of PAGA claims); *Franco v. Ruiz Food*

12  *Prods*., 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving the amount

13  of $10,000 out of $2.5 million toward settlement of PAGA claims).

14        In sum, Plaintiffs calculated the combined reasonable settlement value of the

15  claims in this case, including the PAGA claim, to be $1,357,578.06. Pyle Decl. ¶ 47.

16  The proposed Settlement of $1,475,000 exceeds that amount. A certain and substantial

17  result for Class Members now, rather than a contingent one at some indefinite time

18  years in the future, favors preliminary approval of the Settlement.

19  **D. THE COURT SHOULD APPROVE THE PROPOSED NOTICE**

20        The Parties also seek approval of the proposed Notice and notice procedures.

21  Rule 23(c)(2) provides that Class Members must receive the "best notice that is

22  practicable under the circumstances, including individual notice to all members who

23  can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2). Similarly, Rule

24  23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class

25  members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P.

26  23(e)(1). "The combination of reasonable notice, the opportunity to be heard and the

27  opportunity to withdraw from the class satisfy the due process requirements of the

28

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;**
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Fifth Amendment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

Under the Settlement, Simpluris, an experienced class action administrator with a proven track record in administering class settlements, will serve as the Settlement Administrator. Pyle Decl. ¶¶ 3-16. Simpluris will send direct notice by first class mail to Class Members. Settlement ¶ 11. Class Members will then have forty-five (45) days to opt out or to object to the Settlement. *Id.* ¶¶ 1(z), 20, 22. Defendants will also comply with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, within 10 business days of the filing of this Motion. *Id.* ¶ 12.

To satisfy Rule 23(c)(2), a notice must state "in plain, easily understood language," information about "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)." Fed. R. Civ. P. 23(c)(2). In addition, notice of a proposed settlement must inform class members about the settlement's general terms, that the class members can seek complete information from the court files, and that any class member may be heard. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980)).

The proposed Notice here meets these requirements. *See* Ex. A to Settlement. The proposed mail and website notice is written in plain English and describes: (1) the nature of the claims in the case; (2) a description of the Class; (3) a description of the Settlement and the relief to be provided; (4) the consequences of opting out or remaining in the Class; and (5) how to get more information from this Court about the Settlement, the parties involved and the procedures to follow to object or opt out. *Id.*

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

The Notice includes the deadline to object to the Settlement, and the date of the Fairness Hearing. *Id.* The Notice states that Class Members can enter an appearance through counsel if desired. *Id.* Finally, the Notice makes clear that Class Members do not need to do anything to receive benefits under the Settlement. *Id.*

Accordingly, the Notice meets all requirements and fully apprises Class Members about their options. *See Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308, at *6 (N.D. Cal. Sept. 5, 2014) (approving notice which "describes the nature of the action, summarizes the terms of the settlement, identifies the different classes and provides instruction on how to opt out and object, and the proposed fees and expenses to be paid to Plaintiffs' counsel and the claims administrator").

In addition, the Notice also includes: (1) Plaintiffs' counsel's contact information; (2) the URL for the settlement website; (3) instructions on how to access the case docket via PACER or in person; (4) the date of the final approval hearing and a statement that the date may change without further notice; and (5) a statement advising Class Members how to determine if the Final Approval Hearing is continued.

The Notice also complies with the federal rules and due process and maximizes the opportunity for Class Members to understand the Settlement, and to respond appropriately if they so choose.

Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and manner of notice to the Class.[11]

### E. THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ARE PRELIMINARILY REASONABLE[12]

#### 1. The requested attorneys' fees are preliminarily reasonable

Plaintiffs' counsel will file a separate motion requesting approval of their fees and costs at least thirty days before the date that Class Members must object or opt out

---

[11] Plaintiffs' Proposed Order Granting Preliminary Approval sets forth a proposed schedule for further proceedings.
[12] All requested attorneys' fees, litigation costs, and service awards are preliminary and subject to final approval of the Court at the final approval stage.

of the Settlement. Plaintiffs' counsel will seek attorneys' fees of up to $442,500 or 30%[13] of the Gross Settlement Amount, which is within the range for attorneys' fees in these types of cases. Pyle Decl. ¶ 56; *see, e.g.*, *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (finding "the request for attorneys' fees in the amount of 30% of the Gross Settlement Amount falls within the range of acceptable attorneys' fees in Ninth Circuit cases"); *Alikhan v. Goodrich Corp*., No. CV176756JGBRAOX, 2020 WL 4919382, at *9 (C.D. Cal. June 25, 2020) (awarding attorneys' fees that amount to just shy of 30% of the settlement fund).

This request is justified because the proposed Settlement of $1,475,000 represents 57% of the total potential value of the claims at issue, and more than the reasonable settlement value of those claims. Pyle Decl. ¶ 46.

To date, Plaintiffs' counsel has expended over 379.2 hours working on this matter amounting to $254,367.50 in attorneys' fees as follows:

| Name | Hours Worked | Rate | Amount |
|---|---|---|---|
| Hunter Pyle | 188.7 | $ 850.00 | $ 160,395.00 |
| Vincent Chen | 136.4 | $ 500.00 | $ 68,200.00 |
| Katherine Fiester | 41.6 | $ 500.00 | $ 20,800.00 |
| Chad Saunders | 9.6 | $ 450.00 | $ 4,320.00 |
| Darlene Sanchez (Paralegal) | 2.9 | $ 225.00 | $ 652.50 |
| **Totals** | **379.2** | | **$ 254,367.50** |

*Id.* ¶ 66.

By the time Plaintiffs' counsel request approval of their fees and costs, Plaintiffs' counsel expect to work at least an additional 60 hours for purposes of final approval and the extensive work related to settlement administration. Considering this additional time, Plaintiffs' counsel's lodestar will be closer to $298,367.50. *Id.* ¶ 67.

However, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their

---

[13] While the Settlement allows for attorneys' fees up to one third or 33.33%, Plaintiffs' counsel intends to seek attorneys' fees of no more than 30 percent of the Gross Settlement Amount.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (quoting *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Courts may enhance this lodestar figure by a multiplier to account for a range of factors, such as the contingent nature of a case and the degree of success achieved. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-36 (2001); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977).

Furthermore, multipliers are routine in class action contingency cases and are commonly accepted in the context of a lodestar cross-check of a percentage fee. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (affirming order awarding common fund fees where lodestar cross-check resulted in a multiplier of 3.65); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of 6.85 "falls well within the range of multipliers that courts have allowed.").

Here, Plaintiffs' counsel took this case on a purely contingent fee basis. Pyle Decl. ¶ 66. Furthermore, they achieved an excellent result. The requested fee of $442,500 represents a multiplier of less than 1.5, which is reasonable given that lodestar multipliers range from 1.0 to 4.0. *See Fernandez v. Victoria Secret Stores, LLC*, Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at **12, 16 (C.D. Cal. July 21, 2008) (awarding 34% of the common fund as attorneys' fees, which represented a multiplier to the lodestar amount: "Both of these increases appropriately award class counsel for their risk in taking this case on a contingency basis and litigating the case with diligence and skill."); *Alikhan v. Goodrich Corp.*, No. CV176756JGBRAOX, 2020 WL 4919382, at *9 (C.D. Cal. June 25, 2020) (applying a 2.25 lodestar multiplier to award fees amounting to just shy of 30% of the settlement fund); *McKenzie v. Federal Exp. Corp.*, Case No. CV 10-02420 GAF (PLAx), 2012 WL 2930201 (C.D. Cal. July 2, 2012) (awarding multiplier of 3.2 in class action settlement where plaintiff alleged violations of Labor Code section 226).

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Accordingly, because Plaintiffs' counsel's lodestar will amount to $442,500 with a reasonable multiplier of less than 1.5 at the conclusion of the case, the 30% requested fee award should be preliminarily approved.

### 2.  The litigation costs incurred are preliminary reasonable

To date, Plaintiffs' counsel has incurred just over $42,450 in necessary and reasonable litigation costs. Pyle Decl. ¶ 68. Attorneys are entitled to "recover as part of the award of attorney's fees those out of pocket expenses that "would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986). Here, Plaintiffs will provide detailed a cost itemization at the final approval stage that includes costs incurred to retain a damages expert, necessary and reasonable travel expenses, court costs, and service fees.

### 3.  The Class Representative Service Awards are reasonable.

The Settlement allows for service awards of up to $10,000 for each Plaintiff. Each Plaintiff has provided a declaration demonstrating that she took great personal and professional risk in bringing this lawsuit and that she has diligently represented the class. Pyle Decl. ¶¶ 43, 69-71; *see generally* Lopez Decl. ¶¶ 1-17; Mitchell Decl. ¶¶ 1-17; Neice Decl. ¶¶ 1-16; and Diaz Decl. ¶¶ 1-16.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant their Motion for Preliminary Approval of Settlement in its entirety.

DATED: September 17, 2021          HUNTER PYLE LAW


By:  /s/ Hunter Pyle
     Hunter Pyle
     Katherine Fiester
Attorneys for Plaintiffs and the Putative Class