# EXHIBIT 1

DAVID J. DOW, Bar No. 179407
ddow@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
Telephone: 619.232.0441
Facsimile:  619.232.4302

Attorneys for Defendants
FIRST STUDENT, INC.; FIRST STUDENT
MANAGEMENT, LLC; and FIRSTGROUP
AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, and VADA NEICE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRST AMERICA, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:19-cv-01669-JGB-SHK<br><br>**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION PURSUANT TO THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715** |

**<u>NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION</u>**

**<u>PURSUANT TO THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715</u>**

TO THE ATTORNEY GENERAL OF THE UNITED STATES AND THE OFFICE OF THE ATTORNEYS GENERAL FOR THE STATES OF ARIZONA, CALIFORNIA, GEORGIA, ILLINOIS, INDIANA, KENTUCKY, NEVADA, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, TEXAS, AND WEST VIRGINIA:

PLEASE TAKE NOTICE that pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), notice is hereby given by Defendants First Student, Inc., First Student Management, LLC and FirstGroup America, Inc. to the Office of the Attorney General of the United States and the Offices of the Attorneys General for the States of Arizona, California, Georgia, Illinois, Indiana, Kentucky, Nevada, New Mexico, New York, North Carolina, Oregon, Texas and West Virginia with regard to the settlement of the above-captioned wage and hour class action.

1. On September 17, 2021, Plaintiffs Norma Lopez, Cindy Mitchell and Vada Neice ("Plaintiffs") in the above-captioned action filed a Notice of Motion and Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion"), along with supporting papers.

2. This Notice includes the following documents in accordance with the CAFA requirements set forth in 28 U.S.C. § 1715:

    a.    **Exhibit A:** The Class Action Complaint filed by Plaintiffs in the Superior Court of the State of California for the County of San Bernardino, Case No. CIV DS 1920396, on July 11, 2019. *See* 28 U.S.C. § 1715(b)(1).

    b.    **Exhibit B:** The First Amended Class Action Complaint filed by Plaintiff in the United States District Court for the Central District of California, Case No. 5:19-cv-01669-JGB-SHK, on January 21, 2020. *See* 28 U.S.C. § 1715(b)(1).

| | |
|---|---|
| 1 | c. **Exhibit C:** The proposed Notice of Pendency of Class Action and |
| 2 | Proposed Settlement ("Notice of Settlement"), including a statement |
| 3 | of the right to request exclusion, intended to be distributed to Class |
| 4 | Members to inform them of their rights with regard to the Settlement |
| 5 | upon preliminary approval by the Court. *See* 28 U.S.C. § |
| 6 | 1715(b)(3). |

d. **Exhibit D:** The Joint Stipulation of Class Action and PAGA Representative Action Settlement and Release ("Settlement Agreement") executed by the parties that is the operative settlement document in the instant matter, which includes as an exhibits the Settlement Notice. *See* 28 U.S.C § 1715(b)(4).

e. **Exhibit E:** Plaintiff's Preliminary Approval Motion and supporting documents, including: (i) Plaintiff's Memorandum of Points and Authorities; (ii) the Declaration of Hunter Pyle in Support of Plaintiffs' Motion for Preliminary Approval of Settlement; (iii) the Declaration of Mary Diaz in Support of Plaintiffs' Motion for Preliminary Approval of Settlement; (iv) the Declaration of Norma Lopez in Support of Plaintiffs' Motion for Preliminary Approval of Settlement; (v) the Declaration of Cindy Mitchell; (vi) the Declaration of Vada Neice in Support of Plaintiffs' Motion for Preliminary Approval of Settlement; and (vii) the [Proposed] Order Conditionally Certifying Settlement Class and granting Preliminary Approval of Class Action Settlement.

f. **Exhibit F:** A list of the names of Class Members, based on information currently available, who reside in each State and the estimated proportionate share of the settlement for each Class Member. *See* 28 U.S.C. § 1715(b)(7)(A). An estimated 55% of the total settlement amount will be distributed to Class Members.

3.     This Notice provides the following information in accordance with 28 U.S.C. § 1715:

      a.    Pursuant to 28 U.S.C. § 1715(b)(2), notice is hereby given that the next scheduled judicial hearing is on the Preliminary Approval Motion, which is set for hearing on October 18, 2021 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jesus G. Bernal, United States District Court Judge, in Courtroom 1 of the United States District Court for the Central District of California, located at the U.S. Courthouse, 3470 Twelfth

      b.    Street, Courtroom No. 1, Riverside, CA 92501.

      c.    Aside from Exhibit D, no other settlement or other agreement has been contemporaneously made between Class Counsel and Defense Counsel. *See* 28 U.S.C. § 1715(b)(5).

      d.    No final judgment or notice of dismissal has been filed in this matter, nor are there written opinions that have been issued relating to the materials described in 28 U.S.C. § 1715(b)(3) through (6). *See* 28 U.S.C. § 1715(b)(6), (8).

Dated:   September 27, 2021

                                          s/ David J. Dow
                                          DAVID J. DOW
                                        LITTLER MENDELSON, P.C.
                                        Attorneys for Defendants
                                        FIRST STUDENT, INC.; FIRST STUDENT MANAGEMENT, LLC; and FIRSTGROUP AMERICA, INC.

4830-9115-2380.1 / 070991-1175

# EXHIBIT A

HUNTER PYLE, SBN 191125
VINCENT CHEN, SBN 311883
HUNTER PYLE LAW
428 Thirteenth Street, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Email: hunter@hunterpylelaw.com; vchen@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUL 11 2019

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, and VADA NEICE, on behalf of themselves and all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRST AMERICA, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CIV DS 1920396 <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** <br><br> 1. **FAILURE TO PAY SPLIT SHIFT WAGES** (Labor Code §§ 1197, 1194, and 1194.2; Wage Order 9-2001); <br> 2. **FAILURE TO PROVIDE ADEQUATE WAGE STATEMENTS** (Labor Code § 226); and <br> 3. **UNLAWFUL BUSINESS PRACTICES** (Business & Professions Code §§ 17200, *et seq.*). <br><br> **DEMAND FOR JURY TRIAL** |

# I.    INTRODUCTION

1.    This is a class action under Code of Civil Procedure section 382, brought by plaintiffs NORMA LOPEZ, CINDY MITCHELL, and VADA NEICE ("Plaintiffs").

2.    Plaintiffs seek to represent a class comprised of current and former Attendants, also called Bus Aides and Bus Monitors (jointly referred to herein as "Attendants") employed by defendants FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, and FIRST AMERICA ("FIRST STUDENT") in the State of California ("Class Members").

3.    FIRST STUDENT is a private contractor providing bus transportation services for students in various school districts throughout California.  FIRST STUDENT employs Attendants who perform various tasks that are centered around assisting the students.

4.    FIRST STUDENT requires Attendants to work split shifts.  However, FIRST STUDENT fails to pay Attendants split shift wages as required by Wage Order 9-2001 and the California Labor Code.  FIRST STUDENT also fails to include split shift wages on Plaintiffs' and Class Members' wage statements.

5.    Plaintiffs bring claims on behalf of Class Members for unpaid split shift wages, liquidated damages, interest, wage statement penalties, and attorneys' fees and costs, under Labor Code sections 226, 1194, 1194.2, and 1197, and Code of Civil Procedure section 1021.5. Plaintiffs, on behalf of themselves and the Class Members, also seek equitable and injunctive relief for these violations pursuant to Business and Professions Code sections 17200-17208 (also referred to herein as the "UCL").

# II.    JURISDICTION

6.    Venue is proper in this judicial district, pursuant to Code of Civil Procedure section 395(a).  FIRST STUDENT maintains offices and transacts business in San Bernardino, California. The unlawful acts alleged herein have occurred in and have a direct effect on Plaintiffs and those similarly situated within the State of California and the County of San Bernardino.  Additionally, FIRST STUDENT employs or has employed Plaintiffs and Class Members in San Bernardino County.

7.    This Court has jurisdiction over this class action pursuant to Article 6, section 10 of the California Constitution and California Code of Civil Procedure section 410.10.

8.    Plaintiffs are informed and believe, and thereon allege, that Plaintiffs' and Class Members' monetary claims total less than $75,000.00 per person.

### III.  PARTIES

#### A.  PLAINTIFFS

9.    Plaintiff NORMA LOPEZ is an Attendant who has been employed by FIRST STUDENT at its San Fernando, California facility during the period beginning four years prior to the filing of this Complaint to the present (the "Class Period").

10.    Plaintiff CINDY MITCHELL is an Attendant who has been employed by FIRST STUDENT at its Hesperia, California facility during the Class Period.

11.    Plaintiff VADA NEICE is an Attendant who has been employed by FIRST STUDENT at its Hesperia, California facility during the Class Period.

#### B.  DEFENDANTS

12.    Defendant FIRST STUDENT, INC. is a Delaware corporation with an office located in Hesperia, California.  Defendant FIRST STUDENT, INC. conducts business in the State of California and the County of San Bernardino.

13.    Defendant FIRST STUDENT MANAGEMENT, LLC is a Delaware limited liability company with an office located in Hesperia, California.  Defendant FIRST STUDENT MANAGEMENT, LLC conducts business in the State of California and the County of San Bernardino.

14.    Defendant FIRST AMERICA is a business entity, form unknown, with an office located in Hesperia, California.  Defendant FIRST AMERICA conducts business in the State of California and the County of San Bernardino.

15.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the persons and entities sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue them by such fictitious names under Code of Civil Procedure section

474. Plaintiffs are informed and believe, and based thereon allege, that each of the parties designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known.

16.    Plaintiffs are informed and believe that each of the defendants is liable to Plaintiffs and the Class Members as an "employer," as that term is defined in section 2(G) of Wage Order No. 9-2001. As employers of Plaintiffs sand the Class Members throughout the relevant time period hereto, defendants, and each of them, are either solely or jointly and severally liable for the economic damages, including statutory penalties, owed to Plaintiffs and Class Members under common law and by statute.

## IV.    STATEMENT OF FACTS

17.    FIRST STUDENT operates facilities throughout California.

18.    FIRST STUDENT's Attendants assist students by, among other things, ensuring that their seat belts are properly buckled, strapping down wheelchairs, and helping students transfer to other buses. Attendants also communicate with caregivers and parents regarding students' health and other issues.

19.    Plaintiffs are informed and believe and thereon allege that, throughout the relevant time period of this action, FIRST STUDENT employed at least one hundred (100) Attendants.

20.    At all times relevant hereto, the California Labor Code and Wage Order No. 9-2001 have applied to Plaintiffs and to all Class Members.

21.    Plaintiffs are informed and believe and thereon allege that, through common practices, policies and/or schemes, FIRST STUDENT failed to pay split shift wages to Plaintiffs and Class Members as required under California law.

22.    FIRST STUDENT controls all work details, including Attendants' schedules and work locations, the specific work duties to be performed, and the manner in which the work duties are performed. Based on the foregoing and other relevant factors, Plaintiffs and other Attendants are and were employees of FIRST STUDENT.

# V.    CLASS ACTION ALLEGATIONS

23.    Plaintiffs bring this lawsuit as a class action pursuant to Code of Civil Procedure section 382 on behalf of themselves and all similarly situated employees. The class that Plaintiffs seek to represent ("Class") is defined as:

All individuals whom FIRST STUDENT employed as Bus Aides, Monitors, and/or Attendants in California at any time during the Class Period.

24.    The claims herein have been brought and may properly be maintained as a class action under Code of Civil Procedure section 382 because there is a well-defined community of interest among Class Members with respect to the claims asserted herein and the Class is easily ascertainable:

a.    <u>Ascertainability and Numerosity</u>:  The potential members of the Class as defined herein are so numerous that joinder would be impracticable. Plaintiffs are informed and believe and on such information and belief allege that FIRST STUDENT has employed at least one hundred (100) Class Members in California during the Class Period. The names and addresses of the Class Members are available from FIRST STUDENT. Notice can be provided to the Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

b.    <u>Commonality</u>:  There are questions of law and fact common to Plaintiffs and Class Members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

i.    Whether FIRST STUDENT has violated Labor Code sections 1194, 1194.2, and 1197 by failing to pay split shift wages to Attendants;

ii.    Whether FIRST STUDENT has violated Labor Code section 226 by failing to include split shift wages on Attendants' wage statements;

iii.    What relief is necessary to remedy FIRST STUDENT's unfair and unlawful conduct as herein alleged; and

iv.    Other questions of law and fact.

- 4 -

c.    Typicality:  Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class have sustained injuries-in-fact due to their damages arising out of and caused by FIRST STUDENT's common course of conduct in violation of law, as alleged herein.

d.    Adequacy of Representation:  Plaintiffs are members of the Class that they seek to represent, and will fairly and adequately represent and protect the interests of the Class Members.  Counsel representing Plaintiffs are competent and experienced in litigating wage and hour class actions.

e.    Superiority of Class Action:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class Member has suffered injury and is entitled to recover by reason of FIRST STUDENT's illegal policies and/or practices as alleged herein.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Further, the prosecution of separate actions against FIRST STUDENT by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for FIRST STUDENT.

## VI.    DAMAGES

25.    As a direct, foreseeable, and proximate result of FIRST STUDENT'S conduct, Plaintiffs and similarly situated Attendants are owed, among other things, compensation plus interest, liquidated damages, wage statement penalties under Labor Code section 226, waiting time penalties under Labor Code section 203, and other statutory penalties, in an amount that exceeds $25,000, the precise amount of which will be proven at trial.

**LOPEZ v. FIRST STUDENT, INC.**
**COMPLAINT AND JURY DEMAND**

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO PAY SPLIT SHIFT WAGES
#### (Labor Code §§ 1197, 1194, and 1194.2; Wage Order 9-2001)

26.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

27.     During the Class Period, FIRST STUDENT has failed to pay split shift wages to its Attendants in California. In particular, Plaintiffs and the Class were required to work shifts that were split by non-paid, non-working periods of time established by FIRST STUDENT that were not bona fide rest or meal breaks.

28.     California Labor Code section 1197, entitled "Pay of Less Than Minimum Wage" states:

> The minimum wages for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

29.     The applicable split shift minimum wages for Attendants is found in Wage Order 9-2001(4)(C), which states:

> When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

30.     The definition of a split shift is found in Wage Order 9-2001(2)(N), which states:

> "Split shift" means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal period.

31.     Minimum wage provisions are enforceable by private civil action pursuant to California Labor Code section 1194(a) which states:

> Notwithstanding any agreement to work for lesser wage, any employee receiving less than the legal minimum wage or legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or

- 6 -

overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit.

32.   California Labor Code section 1194.2 states:

> In any action under Section 1194... to recover wages because of the payment of wage less than the minimum wages fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

33.   As such, Plaintiffs, individually and on behalf of the Class, may bring this action for minimum split shift wages, liquidated damages, interest, cost of suit, and attorney's fees pursuant to section 1194(a).

34.   WHEREFORE, Plaintiffs and the Class are entitled to recover unpaid split shift minimum wages, liquidated damages in an amount equal to the wages unlawfully unpaid, interest thereon, and reasonable attorney's fees and costs of suit pursuant to California Labor Code section 1194(a).

## SECOND CAUSE OF ACTION
## WAGE STATEMENT PENALTIES
### (Labor Code § 226)

35.   The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

36.   Labor Code section 226(a) requires employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the wages earned by the employee.  Labor Code section 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial violation and one hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00).

37.     FIRST STUDENT knowingly and intentionally failed to furnish Plaintiffs and the other Class Members with timely, accurate, itemized statements showing the split shift wages earned by each of them, as required by Labor Code section 226(a).

38.     Plaintiffs and other Class Members were damaged by this failure because, among other things, they could not determine whether FIRST STUDENT had paid them all wages due.

39.     As a result, FIRST STUDENT is liable to Plaintiffs and the Class Members for the amounts provided by Labor Code section 226(b).

40.     Plaintiffs, on behalf of themselves and the proposed Class, request wage statement penalties pursuant to Labor Code section 226 and relief as described below.

### THIRD CAUSE OF ACTION
### UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES
### (Business & Professions Code §§ 17200, *et seq.*)

41.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

42.     FIRST STUDENT's failure to pay compensation that is legally required under Wage Order No. 9 and the Labor Code, as alleged above, constitutes an unlawful and/or unfair activity prohibited by Business and Professions Code section 17200. Plaintiffs reserve the right to identify additional unfair and unlawful practices by FIRST STUDENT as further investigation and discovery warrants.

43.     Moreover, Business and Professions Code section 17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices. Plaintiffs seek a court order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to them and Class Members, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

44.     Plaintiffs and all Class Members are "persons" within the meaning of Business and Professions Code section 17204 who have suffered injury in fact as a result of FIRST STUDENT's unfair competition, and who comply with the requirements of Code of Civil Procedure section 382, as set forth above, and therefore have standing to bring this claim for injunctive relief, restitution, and other appropriate equitable relief.

45.     As a result of its unlawful and/or unfair acts, FIRST STUDENT has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs and Class Members. FIRST STUDENT should be enjoined from this activity and made to restore to Plaintiffs and proposed Class Members their wrongfully withheld wages, interest thereon, and related liquidated damages, pursuant to Business and Professions Code sections 17202 and 17203.

46.     Private enforcement of these rights is necessary, as no other agency has raised a claim to protect these workers.  There is a financial burden incurred in pursuing this action that would be unjust to place upon Plaintiffs, as the burden of enforcing workforce-wide rights is disproportionately greater than that of enforcing only individual claims.  Additionally, Plaintiffs and Attendants are low-income workers who cannot afford to spend part of their wages on enforcing others' wage rights.  Therefore, it would be against the interests of justice to force payment of attorneys' fees from Plaintiffs' recovery in this action.  Accordingly, attorneys' fees are appropriate and Plaintiffs seek them pursuant to Code of Civil Procedure section 1021.5.

47.     Plaintiffs, on behalf of themselves and the Class, request restitution of unpaid wages, wage premiums, injunctive relief and other relief as described below.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the above-described Class of similarly situated Attendants, request relief as follows:

a.     Certification of the above-described Class as a class action, pursuant to Code of Civil Procedure section 382;

b.     Certification of the above-described Class as a representative class under Business and Professions Code section 17200;

- 9 -

c.    Provision of Class Notice to all Attendants who worked for FIRST STUDENT during the Class Period;

d.    A declaratory judgment that FIRST STUDENT has knowingly and intentionally violated Business and Professions Code sections 17200-17208, by the conduct set forth above.

e.    A declaratory judgment that FIRST STUDENT's violations as described above were willful;

f.    An equitable accounting to identify, locate, and restore to all current and former Attendants the wages that are due;

g.    An award to Plaintiffs and the Class Members of damages in the amount of unpaid wages, and liquidated damages, including interest thereon, subject to proof at trial;

h.    An order requiring FIRST STUDENT to pay restitution of all amounts owed to Plaintiffs and similarly situated Attendants for FIRST STUDENT's failure to pay legally required wages, and interest thereon, in an amount according to proof, pursuant to Business & Professions Code section 17203;

i.    An award to Plaintiffs and the Class Members of statutory penalties because of FIRST STUDENT's failure to provide Plaintiffs and the Class Members with itemized wage statements that comply with the requirements of Labor Code section 226;

j.    An award to Plaintiffs and the Class Members of reasonable attorneys' fees and costs, pursuant to Code of Civil Procedure section 1021.5 and Labor Code sections 218.5, 1194, and/or other applicable law; and

k.    An award to Plaintiffs and the Class Members of such other and further relief as this Court deems just and proper.

LOPEZ v. FIRST STUDENT, INC.
COMPLAINT AND JURY DEMAND

Dated: July 11, 2019

HUNTER PYLE LAW

By: 
Hunter Pyle

Attorneys for Plaintiffs and the Putative Class

- 11 -

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs, individually and on behalf of all other similarly situated Class Members, demand

3  a jury trial of this matter on all claims so triable.

4  Dated: July 11, 2019                HUNTER PYLE LAW

5

6                                      By: _____
                                           Hunter Pyle
7

8                                      Attorneys for Plaintiffs and the Putative Class

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 12 -

LOPEZ v. FIRST STUDENT, INC.
COMPLAINT AND JURY DEMAND

# EXHIBIT B

1  **HUNTER PYLE, SBN 191125**
**VINCENT CHEN, SBN 311883**
2  HUNTER PYLE LAW
428 Thirteenth Street, Eleventh Floor
3  Oakland, California 94612
Telephone: (510) 444-4400
4  Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com;
5          vchen@hunterpylelaw.com
6
Attorneys for Plaintiffs and the Putative Class
7
8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ on behalf of themselves and all others similarly situated; | Case No. 5:19-cv-01669-JGB-SHK |
| | **CLASS ACTION** |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| v. | 1. **FAILURE TO PAY SPLIT SHIFT WAGES (Labor Code §§ 1197, 1194, and 1194.2; Wage Order 9-2001);** |
| FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive, | 2. **FAILURE TO PROVIDE ADEQUATE WAGE STATEMENTS (Labor Code § 226);** |
| Defendants. | 3. **WAITING TIME PENALTIES (Labor Code §§ 201, 202 & 203);** |
| | 4. **UNLAWFUL BUSINESS PRACTICES (Business & Professions Code §§ 17200, *et seq.*); and** |
| | 5. **PENALTIES UNDER THE PRIVATE ATTORNEYS GENERAL ACT (Labor Code §§ 2698 *et seq.*).** |
| | **DEMAND FOR JURY TRIAL** |

# I.    INTRODUCTION

1.    This is a class action under Federal Rule of Civil Procedure 23, brought by plaintiffs NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ ("Plaintiffs").

2.    Plaintiffs seek to represent a class comprised of current and former Attendants, also called Bus Aides and Bus Monitors (jointly referred to herein as "Attendants") employed by defendants FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, and FIRSTGROUP AMERICA, INC. ("FIRST STUDENT") in the State of California ("Class Members").

3.    FIRST STUDENT is a private contractor providing bus transportation services for students in various school districts throughout California.  FIRST STUDENT employs Attendants who perform various tasks that are centered around assisting the students.

4.    FIRST STUDENT requires Attendants to work split shifts.  However, FIRST STUDENT fails to pay Attendants split shift wages as required by Wage Order 9-2001 and the California Labor Code.  FIRST STUDENT also fails to include split shift wages on Plaintiffs' and Class Members' wage statements.

5.    Plaintiffs bring claims on behalf of Class Members for unpaid split shift wages, liquidated damages, interest, wage statement penalties, waiting time penalties, and attorneys' fees and costs, under Labor Code sections 203, 226, 1194, 1194.2, and 1197, and Code of Civil Procedure section 1021.5.  Plaintiffs, on behalf of themselves and the Class Members, also seek equitable and injunctive relief for these violations pursuant to Business and Professions Code sections 17200-17208 (also referred to herein as the "UCL").

6.    Plaintiffs LOPEZ, MITCHELL, and NEICE also bring a claim seeking civil penalties under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code section 2698, *et seq.*, on a representative basis, on behalf of other Aggrieved Employees.

# II.    JURISDICTION

7.    On or about December 19, 2019, the above-captioned Court ruled that it has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA").

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

## III.    PARTIES

### A.    PLAINTIFFS

8.    Plaintiff NORMA LOPEZ is an Attendant who has been employed by FIRST STUDENT at its San Fernando, California facility during the period beginning four years prior to the filing of this Complaint to the present (the "Class Period").

9.    Plaintiff CINDY MITCHELL is an Attendant who has been employed by FIRST STUDENT at its Hesperia, California facility during the Class Period.

10.    Plaintiff VADA NEICE is an Attendant who has been employed by FIRST STUDENT at its Hesperia, California facility during the Class Period.

11.    Plaintiff MARY DIAZ is an Attendant who was employed by FIRST STUDENT at its Palmdale, California facility from approximately July 2016 through June 2019.

### B.    DEFENDANTS

12.    Defendant FIRST STUDENT, INC. is a Delaware corporation with an office located in Hesperia, California.  Defendant FIRST STUDENT, INC. conducts business in the State of California and the County of San Bernardino.

13.    Defendant FIRST STUDENT MANAGEMENT, LLC is a Delaware limited liability company with an office located in Hesperia, California.  Defendant FIRST STUDENT MANAGEMENT, LLC conducts business in the State of California and the County of San Bernardino.

14.    Defendant FIRSTGROUP AMERICA, INC. is a Delaware corporation with an office located in Hesperia, California.  Defendant FIRSTGROUP AMERICA, INC. conducts business in the State of California and the County of San Bernardino.

15.    Plaintiffs are informed and believe that each of the defendants is liable to Plaintiffs and the Class Members as an "employer," as that term is defined in section 2(G) of Wage Order No. 9-2001.  As employers of Plaintiffs and the Class Members throughout the relevant time period hereto, defendants, and each of them, are either solely or jointly and severally liable for the

economic damages, including statutory penalties, owed to Plaintiffs and Class Members under common law and by statute.

## IV.    STATEMENT OF FACTS

16.    FIRST STUDENT operates facilities throughout California.

17.    FIRST STUDENT's Attendants assist students by, among other things, ensuring that their seat belts are properly buckled, strapping down wheelchairs, and helping students transfer to other buses.  Attendants also communicate with caregivers and parents regarding students' health and other issues.

18.    Plaintiffs are informed and believe and thereon allege that, throughout the relevant time period of this action, FIRST STUDENT employed at least one hundred (100) Attendants.

19.    At all times relevant hereto, the California Labor Code and Wage Order No. 9-2001 have applied to Plaintiffs and to all Class Members.

20.    Plaintiffs are informed and believe and thereon allege that, through common practices, policies and/or schemes, FIRST STUDENT failed to pay split shift wages to Plaintiffs and Class Members as required under California law.

21.    FIRST STUDENT controls all work details, including Attendants' schedules and work locations, the specific work duties to be performed, and the manner in which the work duties are performed.  Based on the foregoing and other relevant factors, Plaintiffs and other Attendants are and were employees of FIRST STUDENT.

## V.    CLASS ACTION ALLEGATIONS

22.    Plaintiffs bring this lawsuit as a class action pursuant to  Federal Rule of Civil Procedure 23 on behalf of themselves and all similarly situated employees.  The class that Plaintiffs seek to represent ("Class") is defined as:

All individuals whom FIRST STUDENT employed as Bus Aides, Monitors, and/or Attendants in California at any time during the Class Period.

- 3 -

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

23. The claims herein have been brought and may properly be maintained as a class action because there is a well-defined community of interest among Class Members with respect to the claims asserted herein and the Class is easily ascertainable:

a. <u>Ascertainability and Numerosity</u>: The potential members of the Class as defined herein are so numerous that joinder would be impracticable. Plaintiffs are informed and believe and on such information and belief allege that FIRST STUDENT has employed at least one hundred (100) Class Members in California during the Class Period. The names and addresses of the Class Members are available from FIRST STUDENT. Notice can be provided to the Class Members via first class mail using techniques and a form of notice similar to those customarily used in class action lawsuits of this nature.

b. <u>Commonality</u>: There are questions of law and fact common to Plaintiffs and Class Members that predominate over any questions affecting only individual members of the Class. These common questions of law and fact include, without limitation:

    i. Whether FIRST STUDENT has violated Labor Code sections 1194, 1194.2, and 1197 by failing to pay split shift wages to Attendants;

    ii. Whether FIRST STUDENT has violated Labor Code sections 201, 202, and 203 by failing to pay Attendants all wages upon separation from employment;

    iii. Whether FIRST STUDENT has violated Labor Code section 226 by failing to include split shift wages on Attendants' wage statements;

    iv. What relief is necessary to remedy FIRST STUDENT's unfair and unlawful conduct as herein alleged; and

    v. Other questions of law and fact.

c. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all members of the Class have sustained injuries-in-fact due to their damages arising out of and caused by FIRST STUDENT's common course of conduct in violation of law, as alleged herein.

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

d.     <u>Adequacy of Representation</u>:  Plaintiffs are members of the Class that they seek to represent, and will fairly and adequately represent and protect the interests of the Class Members.  Counsel representing Plaintiffs are competent and experienced in litigating wage and hour class actions.

e.     <u>Superiority of Class Action</u>:  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all Class Members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.  Each Class Member has suffered injury and is entitled to recover by reason of FIRST STUDENT's illegal policies and/or practices as alleged herein.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Further, the prosecution of separate actions against FIRST STUDENT by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for FIRST STUDENT.

## VI.   DAMAGES

24.     As a direct, foreseeable, and proximate result of FIRST STUDENT's conduct, Plaintiffs and similarly situated Attendants are owed, among other things, compensation plus interest, liquidated damages, wage statement penalties under Labor Code section 226, waiting time penalties under Labor Code section 203, and other statutory penalties, in an amount that exceeds $25,000, the precise amount of which will be proven at trial.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FAILURE TO PAY SPLIT SHIFT WAGES
### (Labor Code §§ 1197, 1194, and 1194.2; Wage Order 9-2001)

25.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

26.     During the Class Period, FIRST STUDENT has failed to pay split shift wages to its Attendants in California.  In particular, Plaintiffs and the Class were required to work shifts that were split by non-paid, non-working periods of time established by FIRST STUDENT that were not bona fide rest or meal breaks.

27.     California Labor Code section 1197, entitled "Pay of Less Than Minimum Wage" states:

> The minimum wages for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

28.     The applicable split shift minimum wages for Attendants is found in Wage Order 9-2001(4)(C), which states:

> When an employee works a split shift, one (1) hour's pay at the minimum wage shall be paid in addition to the minimum wage for that workday, except when the employee resides at the place of employment.

29.     The definition of a split shift is found in Wage Order 9-2001(2)(N), which states:

> "Split shift" means a work schedule, which is interrupted by non-paid non-working periods established by the employer, other than bona fide rest or meal period.

30.     Minimum wage provisions are enforceable by private civil action pursuant to California Labor Code section 1194(a) which states:

> Notwithstanding any agreement to work for lesser wage, any employee receiving less than the legal minimum wage or legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit.

31.     California Labor Code section 1194.2 states:

> In any action under Section 1194… to recover wages because of the payment of wage less than the minimum wages fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

32.     As such, Plaintiffs, individually and on behalf of the Class, may bring this action for minimum split shift wages, liquidated damages, interest, cost of suit, and attorney's fees pursuant to section 1194(a).

33.     WHEREFORE, Plaintiffs and the Class are entitled to recover unpaid split shift minimum wages, liquidated damages in an amount equal to the wages unlawfully unpaid, interest thereon, and reasonable attorney's fees and costs of suit pursuant to California Labor Code section 1194(a).

## SECOND CAUSE OF ACTION
## WAGE STATEMENT PENALTIES
### (Labor Code § 226)

34.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

35.     Labor Code section 226(a) requires employers semi-monthly or at the time of each payment of wages to furnish each employee with a statement itemizing, among other things, the wages earned by the employee.  Labor Code section 226(b) provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the total hours worked by the employee, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50.00) for the initial violation and one hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00).

36.     FIRST STUDENT knowingly and intentionally failed to furnish Plaintiffs and the other Class Members with timely, accurate, itemized statements showing the split shift wages earned by each of them, as required by Labor Code section 226(a).

37.     Plaintiffs and other Class Members were damaged by this failure because, among other things, they could not determine whether FIRST STUDENT had paid them all wages due.

38.     As a result, FIRST STUDENT is liable to Plaintiffs and the Class Members for the amounts provided by Labor Code section 226(b).

39.     Plaintiffs, on behalf of themselves and the proposed Class, request wage statement penalties pursuant to Labor Code section 226 and relief as described below.

### THIRD CAUSE OF ACTION
### WAITING TIME PENALTIES
### (Labor Code §§ 201, 202, and 203)

40.     The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiff MARY DIAZ alleges as follows a cause of action on behalf of herself and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

41.     Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owing to said employee immediately upon discharge.  Labor Code section 202 requires an employer to promptly pay compensation due and owing to said employee within 72 hours of that employee's termination of employment by resignation.  Labor Code section 203 provides that if an employer willfully fails to pay compensation promptly upon discharge or resignation, as required under sections 201 and 202, then the employer is liable for waiting time penalties in the form of continued compensation for up to 30 workdays.

42.     FIRST STUDENT willfully failed and refused, and continues to willfully fail and refuse, to timely pay compensation and wages, including unpaid split shift wages, to Plaintiff MARY DIAZ and to other Class Members who are no longer employed by FIRST STUDENT, as required by Labor Code sections 201-202.  As a result, FIRST STUDENT is liable to Plaintiff MARY DIAZ and other Class Members who are no longer employed by FIRST STUDENT for waiting time penalties, together with interest thereon and attorneys' fees and costs, under Labor Code section 203.

43.     Plaintiff MARY DIAZ, on behalf of herself and the proposed Class, requests waiting time penalties pursuant to Labor Code section 203 and relief as described below.

//

//

//

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

## FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES
### (Business & Professions Code §§ 17200, *et seq.*)

44. The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the above-described Class of similarly situated Attendants employed by FIRST STUDENT in California.

45. FIRST STUDENT's failure to pay compensation that is legally required under Wage Order No. 9 and the Labor Code, as alleged above, constitutes an unlawful and/or unfair activity prohibited by Business and Professions Code section 17200. Plaintiffs reserve the right to identify additional unfair and unlawful practices by FIRST STUDENT as further investigation and discovery warrants.

46. Moreover, Business and Professions Code section 17203 provides that the Court may restore to an aggrieved party any money or property acquired by means of unlawful and unfair business practices. Plaintiffs seek a court order requiring an audit and accounting of the payroll records to determine the amount of restitution of all unpaid wages owed to them and Class Members, according to proof, as well as a determination of the amount of funds to be paid to current and former employees that can be identified and located pursuant to a court order and supervision.

47. Plaintiffs and all Class Members are "persons" within the meaning of Business and Professions Code section 17204 who have suffered injury in fact as a result of FIRST STUDENT's unfair competition, and who comply with the requirements of Federal Rule of Civil Procedure 23, as set forth above, and therefore have standing to bring this claim for injunctive relief, restitution, and other appropriate equitable relief.

48. As a result of its unlawful and/or unfair acts, FIRST STUDENT has reaped and continues to reap unfair benefits and illegal profits at the expense of Plaintiffs and Class Members. FIRST STUDENT should be enjoined from this activity and made to restore to Plaintiffs and

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

proposed Class Members their wrongfully withheld wages, interest thereon, and related liquidated damages, pursuant to Business and Professions Code sections 17202 and 17203.

49.    Private enforcement of these rights is necessary, as no other agency has raised a claim to protect these workers.  There is a financial burden incurred in pursuing this action that would be unjust to place upon Plaintiffs, as the burden of enforcing workforce-wide rights is disproportionately greater than that of enforcing only individual claims.  Additionally, Plaintiffs and Attendants are low-income workers who cannot afford to spend part of their wages on enforcing others' wage rights.  Therefore, it would be against the interests of justice to force payment of attorneys' fees from Plaintiffs' recovery in this action.  Accordingly, attorneys' fees are appropriate and Plaintiffs seek them pursuant to Code of Civil Procedure section 1021.5.

50.    Plaintiffs, on behalf of themselves and the Class, request restitution of unpaid wages, split shift wages, liquidated damages, injunctive relief and other relief as described below.

### FIFTH CAUSE OF ACTION
### PENALTIES UNDER THE PRIVATE ATTORNEYS GENERAL ACT
**(Labor Code §§ 2698, *et seq.*)**

51.    The allegations of each of the preceding paragraphs are realleged and incorporated herein by reference.  Plaintiffs LOPEZ, MITCHELL, and NEICE bring this cause of action on behalf of themselves and other non-exempt hourly Attendants (also called Bus Aides and Bus Monitors) employed by FIRST STUDENT in California ("aggrieved employees").

52.    Pursuant to Labor Code section 2699.3(a), on July 15, 2019, Plaintiffs LOPEZ, MITCHELL, and NEICE gave notice by electronic filing and by certified mail to FIRST STUDENT and the Labor Workforce Development Agency ("LWDA") of the factual and legal basis for the labor law violations alleged in this complaint.  The LWDA has not provided notice pursuant to Labor Code section 2699.3(a)(2)(A), and 65 calendar days have passed since the postmark date of Plaintiffs LOPEZ's, MITCHELL's, and NEICE's LWDA notice.  Therefore, Plaintiffs LOPEZ, MITCHELL, and NEICE are entitled to commence a civil action pursuant to Labor Code section 2699.

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

53.     Labor Code section 2699(f) provides, in pertinent part:  "For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . . If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

54.     Labor Code section 2699(g)(1) provides, in pertinent part:  "[A]n aggrieved employee may recover the civil penalty described in subdivision (f) in a civil action . . . filed on behalf of himself or herself and other current or former employees against whom one or more of the alleged violations was committed.  Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."

55.     Plaintiffs LOPEZ, MITCHELL, and NEICE are aggrieved employees as defined by Labor Code section 2699(a).

56.     Plaintiffs LOPEZ's, MITCHELL's, and NEICE's cause of action under Labor Code section 2698, *et seq.* is based on the following allegations:

     a.     Violations of Labor Code section 558 for failing to pay minimum wages. Specifically, FIRST STUDENT does not pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees one (1) hour of pay at the minimum wage for each workday that a split shift is worked as required by Wage Order No. 9 and Labor Code sections 1182.11-1182.13, 1194, 1194.2, 1197, and 1198.

     b.     Violations of Labor Code section 1197.1 for failing to pay minimum wages. Specifically, FIRST STUDENT does not pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees one (1) hour of pay at the minimum wage for each workday that a split shift is worked as required by Wage Order No. 9 and Labor Code sections 1182.11-1182.13, 1194, 1194.2, 1197, and 1198.

     c.     Violations of Labor Code section 1197.1 for failing to pay liquidated damages as a result of FIRST STUDENT's failure to pay Plaintiffs LOPEZ, MITCHELL, and

NEICE and other Aggrieved Employees minimum wages. Specifically, FIRST STUDENT does not pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees one (1) hour of pay at the minimum wage for each workday that a split shift is worked as required by Wage Order No. 9 and Labor Code sections 1182.11-1182.13, 1194, 1194.2, 1197, and 1198.

d. Violations of Labor Code section 1197.1 for failing to pay applicable penalties imposed under Labor Code section 203 for FIRST STUDENT's failure to timely pay other Aggrieved Employees all wages due at the time of their termination. Specifically, FIRST STUDENT does not pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees one (1) hour of pay at the minimum wage for each workday that a split shift is worked as required by Wage Order No. 9 and Labor Code sections 1182.11-1182.13, 1194, 1194.2, 1197, and 1198.

e. Violations of Labor Code sections 1182.11-1182.13, 1194, 1194.2, 1197, and 1198 for FIRST STUDENT's failure to pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees minimum wages. Specifically, FIRST STUDENT does not pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees one (1) hour of pay at the minimum wage for each workday that a split shift is worked as required by Wage Order No. 9 and Labor Code sections 1182.11-1182.13, 1194, 1194.2, 1197 and 1198.

f. Violations of Labor Code sections 201 through 203, requiring the timely payment of wages. FIRST STUDENT has not paid other Aggrieved Employees who are no longer employed with FIRST STUDENT all wages owed and due at the time of termination of their employment.

g. Violations of Labor Code section 226, requiring employers to provide specific information on employees' itemized wage statements. FIRST STUDENT does not list all wages earned for work performed by Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees.

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

h.    Violations of Labor Code sections 204 and 210, based on FIRST STUDENT's

failure to pay Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved

Employees all minimum wages earned, including one (1) hour of pay at the

minimum wage for each workday that a split shift is worked, on their regular

payday.

57.    As a direct and proximate result of FIRST STUDENT's unlawful practices and

policies, Plaintiffs LOPEZ, MITCHELL, and NEICE and other Aggrieved Employees have suffered

and continue to suffer monetary losses.

58.    Plaintiffs LOPEZ, MITCHELL, and NEICE, on behalf of themselves and other

Aggrieved Employees, request civil penalties against FIRST STUDENT for violations of the Labor

Code, as provided under Labor Code section 2699(f), plus reasonable attorneys' fees and costs, as

provided under Labor Code section 2699(g)(1), in amounts to be proved at trial.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the above-described Class of

similarly situated Attendants, request relief as follows:

a.    Certification of the above-described Class as a class action, pursuant to Federal Rule

of Civil Procedure 23;

b.    Certification of the above-described Class as a representative class under Business

and Professions Code section 17200;

c.    Provision of Class Notice to all Attendants who worked for FIRST STUDENT

during the Class Period;

d.    A declaratory judgment that FIRST STUDENT has knowingly and intentionally

violated Business and Professions Code sections 17200-17208, by the conduct set

forth above;

e.    A declaratory judgment that FIRST STUDENT's violations as described above

were willful;

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

1    f.    An equitable accounting to identify, locate, and restore to all current and former
2          Attendants the wages that are due;

3    g.    An award to Plaintiffs and the Class Members of damages in the amount of unpaid
4          wages including split shift wages, and liquidated damages, including interest
5          thereon, subject to proof at trial;

6    h.    An order requiring FIRST STUDENT to pay restitution of all amounts owed to
7          Plaintiffs and similarly situated Attendants for FIRST STUDENT's failure to pay
8          legally required wages, and interest thereon, in an amount according to proof,
9          pursuant to Business & Professions Code section 17203;

10   i.    An award to Plaintiffs and the Class Members of statutory penalties because of
11         FIRST STUDENT's failure to provide Plaintiffs and the Class Members with
12         itemized wage statements that comply with the requirements of Labor Code section
13         226;

14   j.    An award of payments due to them as waiting time penalties as to those Class
15         Members whom are no longer employed by FIRST STUDENT, pursuant to Labor
16         Code section 203;

17   k.    An award of civil penalties under Labor Code section 2698, *et seq.*;

18   l.    An award to Plaintiffs and the Class Members of reasonable attorneys' fees and
19         costs, pursuant to Code of Civil Procedure section 1021.5 and Labor Code sections
20         218.5, 1194, and/or other applicable law; and

21   m.    An award to Plaintiffs and the Class Members of such other and further relief as this
22         Court deems just and proper.

23   Dated: January 21, 2020                    HUNTER PYLE LAW

24

25                                              By: /s/ Hunter Pyle
                                                    Hunter Pyle
26
                                                Attorneys for Plaintiffs and the Putative Class
27

28

LOPEZ v. FIRST STUDENT, INC.
FIRST AMENDED COMPLAINT

Case 5:19-cv-01669-JGB-SHK Document 45-1 Filed 10/13/21 Page 36 of 246 Page ID
Case 5:19-cv-01669-JGB-SHK Document 18-1 Filed 01/21/20 Page 16 of 16 Page ID #:262
#:553

## **DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of all other similarly situated Class Members, demand a jury trial of this matter on all claims so triable.

Dated: January 21, 2020

HUNTER PYLE LAW

By: /s/ Hunter Pyle
   Hunter Pyle

Attorneys for Plaintiffs and the Putative Class

**LOPEZ v. FIRST STUDENT, INC.**
**FIRST AMENDED COMPLAINT**

# EXHIBIT C

# EXHIBIT A

## NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

*Lopez, et al. v. First Student, Inc., et al.*, Central District of California
Case No. 5:19-cv-01669-JGB-SHK

TO: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (hereinafter the "Class" or "Class Member(s)").

*THIS NOTICE CONTAINS IMPORTANT LEGAL INFORMATION THAT MAY AFFECT YOU*
YOU ARE NOT BEING SUED

*The United States District Court for the Central District of California authorized this notice. This is not a solicitation from a lawyer.*

- This notice contains important information about your legal rights as part of a class action settlement. Please read it fully and carefully.

- Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz ("Plaintiffs") have sued First Student, Inc., First Student Management, LLC and FirstGroup America, Inc. ("Defendants"). Plaintiffs worked as an Attendant, Bus Aid or Bus Monitor for First Student, Inc. or First Student Management, LLC. Their case is pending in the United States District Court for the Central District of California (Case No. 5:19-cv-01669-JGB-SHK). Plaintiffs and Defendants are referred to herein collectively as the "Parties."

- Plaintiffs' allegations are brought on their own behalf and on behalf of individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (the "Class Period").

- Plaintiffs have asserted a variety of claims, described in more detail below, against Defendants that pertain to payment of wages and hours of work.

- Defendants contend that their policies and practices have complied with the law at all times.

- The Court has not decided whether Defendants did anything wrong.

- Plaintiffs and Defendants also disagree as to the amounts of money or other types of relief that should be awarded to them and/or the Class in the event that Plaintiffs prevail at trial.

- The Parties agree that there are significant risks on both sides of the case.

QUESTIONS? CALL _____

1

EXHIBIT A TO EXHIBIT 1

- The Parties agree that continued litigation would be expensive and would result in significant expenses in terms of attorney fees and costs, without necessarily benefitting the Class.

- To avoid the risks of litigation and to provide an immediate benefit to the Class, the Parties have agreed to settle the case (the "Settlement").

- Under the Settlement, Defendants will pay a total of $1,475,000.00, to be apportioned and paid among identified members of the Class, after deductions for Court-approved payment of settlement administration costs, penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), payment of service awards to the Plaintiffs, litigation costs, attorneys' fees, and subject to withholdings for employee taxes, deductions and contributions.

| YOUR OPTIONS | |
|---|---|
| Do Nothing | You will receive a proportionate share of the Settlement if final approval is granted and will give up any right to bring any claims in the future that are part of the Settlement. |
| Opt Out of the Settlement | If you opt yourself out of the Settlement, you will not receive a portion of the non-PAGA Settlement payment.  But, you will retain the right to assert claims that are included in the Settlement.  By doing so, you will bear the risk that you may lose those claims.  To opt out, you must timely write to the Class Administrator and follow the procedures described below. |
| Object to the Settlement | If you disagree with any aspect of this Settlement, you may assert your objections by timely writing to the Class Administrator and filing with the Court your objection according to the procedures described below. If you opt out, you may not object.  If you object, you will still be bound by the Settlement, if approved by the Court. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement. Payments will be made only if the Court grants final approval of the Settlement and after appeals (if any) are resolved. Please be patient.

QUESTIONS? CALL _____

2

EXHIBIT A TO EXHIBIT 1

# BASIC INFORMATION

## 1. Why did I get this notice package and why should I read this Notice?

The records of Defendants indicate that you have been a member of the Class.  If the Court approves the Settlement and you do not opt out, you will receive a payment and your legal rights may be affected.  Thus, you have a right to information about the Settlement and your legal rights.  That is the intent of this notice.

## 2. What is this lawsuit about?

Plaintiffs have asserted the following claims against Defendants on behalf of the Class:  (1) failure to pay split shift premiums, including the minimum wage; (2) failure to provide accurate wage statements; (3) waiting time penalties; (4) unfair competition, based on the foregoing claims; and (5) penalties under the PAGA, based on the foregoing claims.  These claims are referred to herein as the "Claims."

Defendants deny that the Claims are valid, deny that the Court should permit Plaintiffs to bring the Claims on behalf of the Class, and contend that they complied with the law at all times.

## 3. What is a class action?

In a class action, one or more people called named plaintiffs sue on behalf of people who they allege have similar claims.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendants on the Claims being settled.  Plaintiffs think they could win a significant amount of wages, penalties, and interest on behalf of the Class if they were to win at trial. On the other hand, Defendants deny all liability and believe that Plaintiffs would not have won anything in the case. Both sides have agreed to the Settlement for the Claims. That way, the risks and costs of trial, for both sides, are eliminated, and the Class can be provided with an immediate benefit. Plaintiffs, Defendants, and their attorneys all believe that this Settlement is best for the Class and the Parties.

The Court has given its preliminary approval to this settlement as fair and reasonable to the Class and has appointed Plaintiffs to act as the Class Representatives, and for their attorneys to act as attorneys for the Class with regard to the Settlement (the "Class Counsel").  The Court has determined that these are adequate representatives for the Class.

EXHIBIT A TO EXHIBIT 1

### 5. How do I know if I am part of the settlement?

Everyone who fits this description is a Class Member:

>All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021.

### 6. Are there exceptions to being included?

Yes.  If you are a Class Member, you may opt out as stated in Section 13 below. If you do not opt out, you are a Class Member who will receive part of the Settlement if approved.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can call the Class Administrator at [Number] or write to the Class Administrator at [address]. This is the Class Administrator's mailing address for all written communications described herein. You also may contact Class Counsel identified below for more information.

### 8. How much money is the Settlement for and how is it allocated?

Defendants have agreed to pay a total of $1,475,000.00 to settle all Claims in this lawsuit. Class Members will be paid out of the Net Settlement Fund (the "Fund"), which is the $1,475,000.00 total settlement amount minus the following payments: (1) fees to the Settlement Administrator (estimated at $9,999.00) for the costs of administrating the Settlement; (2) the costs of litigation as approved by the Court in an amount not to exceed $60,000.00; (3) PAGA penalties of $89,120.00, including a payment to the California Labor and Workforce Development Agency (LWDA) for its share of PAGA penalties; (4) a service award to each of the Plaintiffs not to exceed $10,000 each for serving as the Class Representatives and assisting in prosecuting the case; and (5) attorneys' fees up to the amount approved by the Court, not to exceed 33.33% ($491,617.50) of the total settlement amount.

Of the Fund, the remaining PAGA penalties ($22,280.00) are to be paid to PAGA Members, defined as Class Members employed by Defendants between July 15, 2018 to July 24, 2021 (the "PAGA Period"). That amount will be distributed pro rata based on pay periods to each PAGA Member. The remaining amount of the Fund will be distributed to Class Members based on their number of workweeks during the Class Period.

### 9. How much will my payment be and what is the information used to calculate my share?

Based on the calculation described above, it is currently estimated that your share of the Net Settlement Fund will be _____. Your share of the PAGA penalties is estimated to be an

additional _____. This amount could change, depending on how many Class Members opt-out, and/or further determinations by the Class Administrator and/or rulings of the Court.

Of your share of the Net Settlement fund, 60% will be reported as "1099" miscellaneous income by the Class Administrator to federal and state tax authorities. 40% will be reported as "W-2" income subject to withholdings, deductions and contributions in relation to wage payments. The withholding rate for the W-2 income may not be the same as you have used but is a customary one used in class action settlements. For Class Members who opt-out of the non-PAGA portion of the Settlement will only receive payments based on the PAGA penalties for which IRS 1099 Forms shall be issued. You are responsible for all employee tax liability in relation to payments to you under the Settlement. This Notice is not tax advice. Do not ask Class Counsel, or Defendants or its counsel for tax advice, as they will not provide it. They are not responsible for the tax advice. You should consult your own tax advisor.

Defendants' records show that the following information pertinent to the calculation of your estimated settlement share:

Your number of workweeks as an Attendant, Bus Aid or Bus Monitor during the Class Period is _____.

Your number of pay periods as an Attendant, Bus Aid or Bus Monitor during the PAGA Period is _____.

If you disagree with this information, you must notify the Class Administrator by writing to them at the address in paragraph 7. You must sign your notification, and include your full name, address, telephone number, last four digits of your social security number, the reason(s) that you dispute the information, and all supporting documentation. Your notification must be postmarked no later than [45 days from mailing]. The Class Administrator will make a final decision.

## 10. How can I get a payment?

You do not need to do anything to receive a Settlement Payment. However, it is important that you immediately notify the Class Administrator if your mailing address is different from the address to which this Notice was sent.

## 11. When will I receive a payment?

Payments will be distributed pursuant to a schedule established by the Settlement and by the Court. Presently, the expected date of payment is estimated to be _____. This could change depending on factors influencing the Class Administrator's tasks, any objections to the Settlement, and/or actions by the Court.

QUESTIONS? CALL _____

5

EXHIBIT A TO EXHIBIT 1

## 12. What am I giving up to get a payment?

Upon entry of judgment, each member of the Class (except those who properly opt out) on behalf of each of them and each of their heirs, executors, administrators, and assigns, do hereby and forever release, First Student, Inc., First Student Management, LLC, FirstGroup America, Inc., their past, present, and future parents, subsidiaries, divisions, and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire them in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable (the "Released Parties) from any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged in the original and amended Complaints in the Action, or which could have been alleged based on the facts alleged in the original and amended Complaints in the Action during the Class Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 et seq.; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. "Released Claims" includes any and all claims for benefits based on the above-referenced claims under any benefit plan, program or policy sponsored or maintained by Defendants, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq., but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan. "Released Claims" also includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.,

PAGA Members further release the Released Parties from any and all claims for penalties under PAGA, alleged in the original and amended Complaint or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts alleged in the original and amended Complaints or Plaintiffs' letters to the LWDA, arising during the PAGA Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 et seq.; (viii) violations of the

applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. ("Released PAGA Claims").

### 13. How do I opt out of the settlement?

To exclude yourself from the Settlement, you must send a signed letter by mail to the Class Administrator stating words to the effect: "I wish to be excluded from the Class." You must also include your name, mailing address, telephone number, and the last four digits of your social security number. Your exclusion request must be postmarked no later than [45 days from mailing] and sent to the Class Administrator at the address in paragraph 7.

If you exclude yourself, you will not receive any money from the Net Settlement Amount for the non-PAGA portion of the Settlement. You cannot object to the Settlement, and you will not be legally bound by non-PAGA portion of the Settlement if approved. Class Members do not have the right to opt-out from the PAGA portion of the Settlement. If you ask to be excluded for the Settlement, and you are a PAGA Member, you will continue to receive your PAGA portion of the Settlement and be bound by the Released PAGA Claims.

### 14. If I don't exclude myself, can I sue Defendants for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims that this Settlement resolves. If you have a pending lawsuit or the same claims that are being settled against Defendants, speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit if it involves the same claims.

### 15. If I exclude myself, can I get money from this settlement?

If you exclude yourself, you will not receive any money from the Net Settlement Amount, you cannot object to the Settlement, and you will not be legally bound by the Settlement if approved. Class Members shall not have the right to opt-out from the PAGA portion of the Settlement. If you ask to be excluded for the Settlement, and you are a PAGA Member, you will continue to receive your portion of the PAGA Members Payment of the Settlement.

### 16. Who is my lawyer if I am included in the Class?

The Court has appointed as Class Counsel the following attorneys: Hunter Pyle and Katherine Fiester of Hunter Pyle Law, 1300 Broadway, 11th Floor, Oakland, CA 94612, (510) 444-4400, hunter@hunterpylelaw.com, kfiester@hunterpylelaw.com. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. If you have questions about this Settlement, you may contact Class Counsel.

## 17. How do I object to the Settlement going forward?

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement because the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

To object to the Settlement, a Class Member must postmark a valid Notice of Objection to the Settlement Administrator on or before the Response Deadline. Any objection to the proposed settlement must be in writing and signed. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers should include: (i) the objector's full name, signature, address, and telephone number; (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; and (iv) a statement whether the objector intends to appear at the Final Approval Hearing.

The Parties will file all Notices of Objection with the Court in advance of the Final Approval Hearing.

Any Class Member who does not object in the manner described above shall be deemed to have waived any objections, and shall be foreclosed from objecting to the fairness or adequacy of the proposed Settlement, the payment of attorneys' fees and costs, the service payments to the Class Representative, the claims process, and any and all other aspects of the Settlement. Likewise, even if you file an objection, you will be bound by the terms of the Settlement, including applicable releases as set forth above, unless the Settlement is not finally approved by the Court.

## 18. What Is the difference between objecting and opting out?

Objecting is simply saying that you do not like something about the Settlement and do not want it approved. Opting out is saying that you do not want to be part of the Class and participate in the Settlement. If you opt out, you have no basis to object because the case no longer affects you.

## 19. When and where will the Court decide whether to approve the settlement

The Court will hold a Final Approval Hearing at _____ on _____, [insert court information]. At this hearing, the Court will make a final decision as to whether the Settlement is fair, reasonable, and adequate. If you or other Class Members object to the Settlement, the Court will consider the objections. The Judge will listen to people who have asked to speak at the hearing. At or after the hearing, the Court will decide whether to grant final approval to the Settlement.

QUESTIONS? CALL _____

8

EXHIBIT A TO EXHIBIT 1

The Final Approval Hearing may be continued without further notice to Class Members. You are advised to check the settlement website at [INSERT LINK TO WEBSITE PROVIDED BY ADMINISTRATOR] or the Court's Public Access to Court Electronic Records (PACER) website at https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CACDC site to confirm that the date has not been changed.

## 20. Do I have to come to the hearing?

No. Class Counsel will answer questions the Judge may have. You are welcome to come at your own expense. If you properly submit an objection, you don't have to come to Court to talk about it. As long as you properly submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## 21. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. You cannot appear and speak at the hearing if you opt out.

## 22. What happens if I do nothing at all?

If you do nothing, or fail to act timely, you will receive your share of the settlement, but you will be barred from bringing the released claims in paragraph 12 against Defendants.

## 23. No retaliation from Defendants if you are included in Class or opt out to be excluded from Class

California law makes it unlawful to retaliate against an employee for participating in a lawsuit like this one.

## 24. Are there more details about the settlement?

This Notice is intended as a summary and does not fully describe this action, the claims, the defenses, or the proposed Settlement, which is subject to the terms and conditions of the Settlement Agreement filed with the Court and as preliminarily approved by the Court. For further information, you may call or contact the Class Administrator (see paragraph 7 for contact information) or Class Counsel (see paragraph 16 for contact information).

The Class Administrator also maintains a website at which some important documents in this case are available. The link to the website is [insert].

You may also obtain more information by accessing the Court docket in this case through the Public Access to Court Electronic Records (PACER) website https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CACDC or by visiting the office of the Clerk of the United States District Court, located on the 1st Floor of the United States District Court, Central District of

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

California, Edward R. Roybal Federal Building & U.S. Courthouse located at 255 East Temple Street Los Angeles, CA 90012, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE OR DEFENDANTS OR THEIR COUNSEL WITH INQUIRIES.**

Date: _____

This Notice has been approved by the Judge of the United States District Court for the Central District of California responsible for overseeing and deciding this case.

QUESTIONS? CALL _____

10

EXHIBIT A TO EXHIBIT 1

# EXHIBIT D

HUNTER PYLE, SBN 191125
KATHERINE FIESTER, SBN 301316
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Email: hunter@hunterpylelaw.com;
Email: kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

DAVID J. DOW, Bar No. 179407
ddow@littler.com
JOCELYN D. HANNAH, Bar No. 224666
jhannah@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
Telephone: 619.232.0441 /Fax: 619.232.4302

Attorneys for Defendants
FIRST STUDENT, INC.; FIRST STUDENT
MANAGEMENT, LLC; and FIRSTGROUP
AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:19-cv-01669-JGB-SHK<br><br>**JOINT STIPULATION OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT AND RELEASE** |

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

EXHIBIT 1

1
2
3      <u>**JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE**</u>

4                  This Joint Stipulation of Class and PAGA Representative Action

5      Settlement and Release states the proposed terms of the class action settlement of the

6      above-entitled action.  The terms stated below are agreed to and binding on Plaintiffs

7      Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz (collectively, "Plaintiffs")

8      and Defendants First Student, Inc., First Student Management, LLC and FirstGroup

9      America, Inc. ("Defendants").  Once approved by the Court, the Settlement shall be

10     binding under the terms stated herein on Plaintiffs, Defendants, and the Class Members

11     (as defined below).

12                           <u>**SUMMARY OF THE SETTLEMENT**</u>

13                  The Parties herein, as stated in more detail in the terms and definitions

14     below, have agreed to settle on a class basis all claims asserted by Plaintiffs for various

15     alleged violations of the California Labor Code and the Unfair Competition Law.  The

16     class consists of all individuals employed by First Student, Inc. or First Student

17     Management, LLC in the State of California as non-exempt Attendants, Bus Aids and

18     Bus Monitors during the class period defined below. The Parties conducted mediation

19     of this case on May 12, 2021 with Hon. Steve Denton, during which the Parties agreed

20     that all claims alleged herein, as defined below, would be settled on a class basis for the

21     maximum amount of One Million Four Hundred Seventy Five Thousand Dollars

22     ($1,475,000.00), with no portion of the settlement reverting back to Defendants.  Of

23     that settlement amount, Eighty Nine Thousand One Hundred Twenty Dollars

24     ($89,120.00) would be designated as PAGA Penalties under the Private Attorneys

25     General Act, seventy-five percent (75%) of which will be paid to the  California Labor

26     and Workforce Development Agency and twenty-five percent (25%) of which will be

27     paid to members of the class in accordance with the terms herein below.

28

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

2
EXHIBIT 1

**DEFINITIONS**

1.      The following definitions are applicable to this Settlement, in addition to other terms defined elsewhere in the Settlement:

a.      "Action" shall mean the following lawsuit: *Lopez, et al. v. First Student, Inc., et al.*, Central District of California Case No. 5:19-cv-01669-JGB-SHK including the original and First Amended Complaint.

b.      "Attorneys' Costs" means reasonable attorneys' costs approved by the Court for Class Counsel's litigation and resolution of the Actions incurred and to be incurred by Class Counsel in the Actions up to, but not to exceed, Sixty Thousand Dollars ($60,000.00). Attorneys' Costs shall be paid to Class Counsel.  The Attorneys' Costs shall be paid from the Gross Settlement Amount.

c.      "Attorneys' Fee Award" means the attorneys' fees agreed upon by the Parties herein and approved by the Court for Class Counsel's litigation and resolution of the Action up to, but not to exceed, thirty three and one third percent (33.33%) of the Gross Settlement Amount.  Attorneys' Fees shall be paid to Class Counsel from the Gross Settlement Amount.

d.      "Class" and "Class Members" for purposes of this Settlement shall be defined as: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time during the Class Period. The persons identified in this paragraph are "Class Members" and are collectively referred to as "the Class."

e.      "Class Counsel" shall mean Hunter Pyle and Katherine Fiester of Hunter Pyle Law.

f.       "Class Period" shall mean the time period from July 11, 2015 through July 24, 2021 ("Class Period").

g.      "Class Representative Service Award" shall mean an award up to, but not to exceed, Ten Thousand Dollars ($10,000.00) to each of the Plaintiffs in

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

3

EXHIBIT 1

recognition of Plaintiffs' efforts and work in prosecuting the Action on behalf of Class Members, risks undertaken for the payment of costs in the event of loss, and the giving of a general release of all claims.  The Class Representative Service Awards shall be paid from the Gross Settlement Amount.

h.    "The Court" shall mean the Central District of California, The Honorable Jesus G. Bernal, Case No. 5:19-cv-01669-JGB-SHK, or such other Central District Judge as may be assigned to hear this matter.

i.    "Defendants" shall mean Defendants First Student, Inc., First Student Management, LLC and FirstGroup America, Inc.

j.    "Effective Date" shall be thirty one (31) calendar days from the date of entry of an Order Granting Final Approval of the Settlement and Entering Judgment described below. However, if an appeal is filed within thirty (30) days of entry of an Order Granting Final Approval of the Settlement and Entering Judgment, then the Effective Date shall be the latest of: (i) the date of final affirmance of the Order Granting Final Approval; (ii) the date of final dismissal of any appeal from the Order Granting Final Approval of the Settlement and Entering Judgment or the final dismissal of any proceeding to review the Order Granting Final Approval that has the effect of confirming the Order Granting Final Approval with no avenue for additional appeal or review available.

k.    "Employer Taxes" means Defendants' share of employer-sided payroll taxes to be paid on that portion of the Class Member's Individual Settlement Payment characterized as wages, i.e. FICA, FUTA, payroll taxes, and/or any similar tax or charge.  The Employer Taxes will be paid outside of and in addition to the Gross Settlement Amount.

l.    "Gross Settlement Amount" (or "GSA") shall mean the maximum non-reversionary amount of One Million Four Hundred Seventy Five Thousand Dollars ($1,475,000.00) payable by Defendants as provided for by this Agreement.

m.    "Individual Settlement Payment" means the amount each Class

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

4

EXHIBIT 1

Member shall be entitled to receive pursuant to the Settlement. This payment will include compensation pursuant to the terms of this Agreement for all Workweeks during the Class Period and the number of Pay Periods worked during the PAGA Period.  Class Members who opt-out of the non-PAGA portion of the Settlement shall only receive payment based on the number of Pay Periods worked during the PAGA Period.

n. "LWDA Payment" means the seventy-five percent (75%) portion of the PAGA Penalties to be paid to the California Labor and Workforce Development Agency ("LWDA") pursuant to the PAGA.

o. "Net Settlement Amount" shall mean the Gross Settlement Amount less (a) the Class Representative Service Awards, (b) Settlement Administration Costs, (c) Attorneys' Fees Award, (d) Attorneys' Costs, and the (e) PAGA Penalties.

p. "Notice Packet" shall mean the Notice of Proposed Class Action Settlement substantially in the form attached as **Exhibit A**;

q. "Parties" shall mean collectively, Plaintiffs and Defendants.

r. "Pay Period(s)" means any Pay Period in which a PAGA Member worked one day in that Pay Period during the PAGA Period, excepting those dates/times taken for vacations and leaves of absences.

s. "Plaintiffs" and "Class Representatives" shall mean Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz.

t. "PAGA" shall mean the Private Attorneys General Act of 2004, California Labor Code section 2698, *et seq.*

u. "PAGA Member(s)" means those Class Members who worked any time during the PAGA Period.

v. "PAGA Members Payment" means the twenty-five percent (25%) portion of the PAGA Penalties to be paid to PAGA Members pursuant to the PAGA.

w. "PAGA Penalties" means civil penalties under the PAGA agreed upon by the Parties and approved by the Court up to, but not to exceed, Eighty Nine Thousand One Huundred Twenty Dollars ($89,120.00), seventy-five percent (75%) of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

5

EXHIBIT 1

which will be paid to the California Labor and Workforce Development Agency ("LWDA Payment"), and the remaining twenty-five percent (25%) ("PAGA Members Payment") shall be distributed proportionately to PAGA Members.

x.    "PAGA Period" means that period of time from July 15, 2018 to July 24, 2021 in which PAGA Members worked.

y.    "Participating Class Member(s)" means any Class Member who does not return a valid and timely request to be excluded from the non-PAGA portion of the Settlement.  All Participating Class Members will be mailed their Individual Settlement Payment without the need to return a claim form.

z.    "Response Deadline" means the deadline by which Class Members must postmark and return to the Administrator signed, dated, and timely requests for exclusion from the non-PAGA portion of the Settlement, objections to the Settlement and/or disputes concerning the number of Workweeks during the Class Period and/or number Pay Periods worked during the PAGA Period.  The Response Deadline will be forty-five (45) calendar days from the initial mailing of the Notice Packets by the Settlement Administrator, unless the 45th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator, unless the 15th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open.  The Response Deadline may also be extended by express agreement between Class Counsel and Defendant.

aa.    "Released Claims" means any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged in the original and amended Complaints in the Action, or which could have been alleged based on the facts alleged

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

6

EXHIBIT 1

in the original and amended Complaints in the Action during the Class Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 *et seq.*; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. "Released Claims" includes any and all claims for benefits based on the above-referenced claims under any benefit plan, program or policy sponsored or maintained by Defendants, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.*, but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan. "Released Claims" also includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.

bb.    "Released PAGA Claims" means any and all claims for penalties under PAGA, alleged in the original and amended Complaint or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts alleged in the original and amended Complaints or Plaintiffs' letters to the LWDA, arising during the PAGA Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

7

EXHIBIT 1

Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 *et seq.*; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period.

cc. "Released Parties" means First Student, Inc., First Student Management, LLC, FirstGroup America, Inc., their past, present, and future parents, subsidiaries, divisions, and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire them in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable.

dd. "Settlement" or "Agreement" or "Settlement Agreement" shall mean this Joint Stipulation of Class Action Settlement and Release.

ee. "Settlement Administrator" means Simpluris or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court for the purposes of administering this Settlement.

ff. "Settlement Administration Costs" means the costs allocated from the Gross Settlement Amount to pay for administration of the settlement, as described in this Agreement, including required tax calculations and tax reporting to the appropriate governmental entities in connection with the Individual Settlement Payments (as defined below), issuing of 1099 and W-2 IRS Forms, address updates

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

8

EXHIBIT 1

through the National Change of Address database (prior to the mailing of the Notice Packets, distributing Notice Packets, skip-tracing Notice Packets returned as undeliverable, calculating and distributing the Individual Settlement Payments, weekly status reports, resolving disputed claims with the aid of the Parties' counsel, and providing all reports and declarations deemed necessary by the Parties in an amount not to exceed $9,999.00.

gg.    "Workweek" means any week in which a Class Member worked one day in that week during the Class Period, excepting those dates/times taken for vacations and leaves of absences.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

2.    On July 11, 2019, Plaintiffs Norma Lopez, Cindy Mitchell and Vada Neice filed their class action Complaint on behalf of themselves and a putative class. Plaintiffs alleged causes of action against Defendants for: (1) Failure to pay split shift wages; (2) Failure to provide complete and accurate wage statements; and (3) Unfair competition.

3.    On August 30, 2019, Defendants removed the Action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").

4.    On January 21, 2020, Plaintiffs filed a First Amended Complaint adding Mary Diaz as a named Plaintiff and adding causes of action for waiting time penalties and PAGA penalties.

5.    The Parties conducted discovery, including the production of putative class member information and time and payroll records. The Parties recognize the issues in the Action will likely only be resolved with further extensive and costly proceedings; recognize that further litigation shall cause inconvenience, distraction, disruption, delay and expense disproportionate to the potential benefits of litigation; and recognize the risk and uncertainty of the outcome inherent in any litigation. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with Defendants for the consideration and on the terms of this Settlement is

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

9

EXHIBIT 1

fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and defenses asserted by Defendants. While Defendants specifically deny all liability in the Action, they have agreed to enter into this Settlement to avoid the cost and business disruption associated with further defense of the Action.

6. The Parties participated in a mediation of this case on May 12, 2021 with Hon. Steven Denton (Ret.). During the course of the mediation, the Parties agreed to fully, finally, and forever compromise and settle all claims asserted in the Action for the Gross Settlement Amount. To achieve a complete release of Defendants, each Class Member will be informed that in exchange for their Individual Settlement Payment, each Participating Class Member will release the Released Claims as against the Released Parties and each PAGA Member will release the PAGA Released Claims as against the Released Parties.

## **TERMS OF THE CLASS SETTLEMENT**

7. <u>Gross Settlement Amount</u>. Defendants shall pay the Gross Settlement Amount to resolve the Action on a class-wide basis. In addition to the Gross Settlement Amount, Defendants shall pay the Employer Taxes due on the portion of the Individual Settlement Payments allocated to wages. Under no circumstances shall Defendants be obligated to pay any more than the Gross Settlement Amount and the Employer Taxes.

8. <u>Allocation of the Gross Settlement Amount</u>. From the Gross Settlement Amount, and subject to the approval of the Court, the Parties agree to the following allocations:

a. <u>Class Representative Service Awards</u>. Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz shall each be paid a Class Representative Service Award of up to $10,000 in recognition of Plaintiffs' effort and work in prosecuting the Action on behalf of Class Members, and undertaking the burdens and risks for the payment of costs in the event of loss. The Class Representative Service Awards shall be paid in addition to Plaintiffs' Individual Settlement Payments, and

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

10

EXHIBIT 1

Plaintiffs shall give a general release of all claims against Defendants in exchange for the Class Representative Service Awards. Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on their Class Representative Service Awards. Any portion of the Class Representative Service Awards not awarded to Plaintiffs shall remain with the Net Settlement Amount.

b. <u>Settlement Administration Costs</u>. The Settlement Administrator shall be paid "Settlement Administration Costs" in an amount not to exceed $9,999.00;

c. <u>Attorneys' Fee Award</u>. Class Counsel shall be paid an Attorneys' Fee Award of up to $491,617.50, thirty three and one third (33.33) percent of the Gross Settlement Amount;

d. <u>Attorneys' Costs</u>. Class Counsel shall be paid an award for reimbursement of their Attorneys' Costs in an amount of up to $60,000.00;

e. <u>PAGA Penalties</u>. PAGA Penalties of $66,840.00 (75% of $89,120.00) shall be paid to the LWDA and $22,280.00 (25% of $89,120.00) to Class Members who have worked during Pay Periods in the PAGA Period. Class Members shall not have the right to opt out of the PAGA portion of this Settlement.

9. <u>Allocation of the Net Settlement Amount and PAGA Members Payment</u>. The Net Settlement Amount, estimated at $784,263.50, and the PAGA Members Payment estimated to be $22,280.00 shall be allocated to Class Members based on the formula described below. Any portion of the Class Representative Service Award, the Settlement Administration Costs, the Attorneys' Fees Award, the Attorneys' Cost, and/or the PAGA Penalties not approved by the Court shall be included in the Net Settlement Amount. No portion of the Net Settlement Amount shall revert to or be retained by Defendants under any circumstance. The Net Settlement Amount and PAGA Members Payment shall be distributed to Participating Class Members and PAGA Members on a proportionate basis as follows:

a. <u>Payment to Participating Class Members.</u> Each Participating Class Member shall receive a proportionate share of the Net Settlement Amount

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

11

EXHIBIT 1

that is equal to (i) the number of Workweeks he/she worked during the Class Period divided by (ii) the total number of Workweeks worked by all Participating Class Members during the Class Period.

b. <u>PAGA Members Payment</u>.    Each PAGA Member will receive a proportionate share of the PAGA Members Payment that is equal to (i) the number of Pay Periods he/she worked during the PAGA Period divided by (ii) the total number of Pay Periods worked by all PAGA Members during the PAGA Period.

c.    <u>Individual Settlement Payments</u>.  Participating Class Members shall receive an Individual Settlement Payment calculated as set forth in paragraph 9(a)-(b) above.  Class Members who opt out of the non-PAGA portion of the settlement shall receive only an Individual Settlement Payment representing payment for the PAGA Members Payment as set forth in paragraph 9(b).  In the event that a Class Member should dispute the information upon which his or her Individual Settlement Payment is calculated, and it is determined by the Administrator from the information and/or documentation provided by that Class or PAGA Member that an amount more than that initially calculated is payable to any Participating Class Member or PAGA Member pursuant to the Settlement, that additional amount will be paid from the Gross Settlement Amount.  In no event shall Defendants ever be required to pay any amount greater than the Gross Settlement Amount plus the Employer Taxes.

10.    <u>No Credit Toward Benefit Plans</u>.  Unless otherwise required by any applicable benefit plan, the Individual Settlement Payments made to Participating Class Members and PAGA Members, as well as any other payments made pursuant to this Settlement, shall not be construed as compensation for nor utilized to calculate any additional benefits under any benefit plans to which any Class Members may otherwise be eligible, including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan. Unless otherwise required by any applicable benefit plan, this Settlement shall not

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

12

EXHIBIT 1

affect any rights, contributions, or amounts to which any Class Members may be entitled under any benefit plans.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

11.  <u>Preliminary Approval</u>:  Upon execution of this Settlement, Plaintiffs shall file a Motion for Order Granting Preliminary Approval of the Class Action Settlement which requests the following: (i) preliminary approval of the Settlement, subject only to the objections of Class Members and final review by the Court; (ii) conditional certification of a class for purposes of settlement only; (iii) a schedule for final approval hearing regarding the proposed Settlement, including payment of Attorneys' Fees and Attorneys' Costs, and Class Representative Service Awards; (iv) approval as to form and content of the proposed Notice Packet; (v) a schedule for the procedures for the Response Deadline; and (vi) a schedule for the mailing of the Notice Packet by first class mail to the Class Members**.**  Plaintiffs' Counsel will provide counsel for Defendants with a draft of the motion for preliminary approval including the proposed Order Granting Preliminary Approval at least seven (7) calendar days before it is filed with the Court for Defendants' review and input.  Defendants shall not oppose the Preliminary Approval Motion and may, in their sole option, file a declaration of non-opposition. Concurrently with the filing of the Preliminary Approval Motion, counsel for Plaintiffs shall submit a copy of this Agreement to the LWDA, and provide proof of said submission to the Court and counsel for Defendant.

12.  <u>CAFA Notice</u>:  Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within ten (10) business days after the filing of the Motion for Preliminary Approval, Defendants will, provide notice pursuant to 28 U.S.C. § 1715.  Defendants will file a declaration with the Court confirming compliance with the notice provisions of 28 U.S.C. § 1715.  The Parties will request the Court to make a finding that the notice provisions of 28 U.S.C. § 1715 have been satisfied in the Motion for Final Approval of the Settlement.

13.  <u>Class Action Certification for Settlement Purposes Only</u>.  The Parties agree

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

13

EXHIBIT 1

1  to stipulate to certification of the Class for purposes of the Settlement only. If, for any

2  reason, the Settlement is not approved, the stipulation to certification shall be void. The

3  Parties further agree that certification for purposes of the Settlement is not an admission

4  that class action certification is proper under the standards applied to contested

5  certification motions and that this Settlement shall not be admissible in this or any other

6  proceeding as evidence that either: (i) a class action should be certified or

7  (ii) Defendants are liable to Plaintiffs or any Class Member, other than according to the

8  Settlement's terms.

9  **SETTLEMENT ADMINISTRATION**

10  14.  <u>Settlement Administrator</u>. The Parties each represent that they do not have

11  any financial interest in the Settlement Administrator or otherwise have a relationship

12  with the Settlement Administrator that could create a conflict of interest.

13  15.  <u>Class Data</u>. Within 14 days of the Order Granting Preliminary Approval,

14  Defendants shall provide to the Settlement Administrator for each identifiable member

15  of the Class the following information: name, address, social security number,

16  telephone number, dates of employment, and the number of work weeks worked during

17  the Class Period and the number of Pay Periods worked during the PAGA Period based

18  on their business and payroll records ("Class Data List"). The Class Data List and

19  information shall remain confidential. The Settlement Administrator shall only use this

20  information to facilitate notice, administration of the Settlement, and for distribution of

21  Individual Settlement Payments to Participating Class Members. The Parties agree to

22  cooperate in the administration of the Settlement and to make all reasonable efforts to

23  control and minimize the costs and expenses incurred in administration of the

24  Settlement.

25  16.  <u>Duty to Protect Class Data</u>. The Settlement Administrator shall represent

26  and warrant that it shall: (i) provide reasonable and appropriate administrative, physical

27  and technical safeguards for the Class Data List that it receives from Defendants; (ii) not

28  disclose the Class Data List to Class Counsel, Named Plaintiffs, any party or third

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

14

EXHIBIT 1

parties, including agents or subcontractors, without Defendant's consent and keep the Class Data List confidential; (iii) not disclose or otherwise use the Class Data other than to carry out its duties as set forth herein; and (iv) promptly provide Defendants with notice if it becomes aware that the Class Data List becomes subject to unauthorized access, use, or disclosure.

17.  <u>Confirmation of Contact Information in the Class Data List</u>.  Following receipt of the Class Data List from Defendants, and prior to mailing, the Settlement Administrator shall perform a search of the National Change of Address Database to update and correct stale Class Member addresses.  If any Notice Packet is returned to the Settlement Administrator as non-deliverable on or before the Response Deadline, within three days of its receipt, the Settlement Administrator shall send it promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto, and the Settlement Administrator shall indicate the date of such re-mailing on the Notice Packet. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address by using a skip-trace, or other search using the name, address and/or social security number of the Class Member involved, and shall, within three days of learning the correct address, re-mail the Notice Packet.  Should a Notice Packet associated with a currently employed Class Member be returned to the Administrator, it shall immediately inform Defendants to obtain a more current mailing address for that Class Member to re-mail the Notice Packet.

18.  <u>Notice by First-Class U.S. Mail</u>.  Within fourteen (14) business days following Defendants' provision of the Class Data List to the Settlement Administrator as set forth in Paragraph 15, supra, the Administrator shall mail the individualized Notice Packet by First Class U.S. Mail.  Each individualized Notice of Class Action Settlement ("Notice" – Exhibit "A") shall include the Class Member's dates of employment and the number of Workweeks during the Class Period and the number of Pay Periods worked during the PAGA Period and the estimated Individual Settlement Payment amount.  The Notice will also inform the Class of their right to opt-out of the

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

15

EXHIBIT 1

non-PAGA portion of the Settlement and that they each will be mailed their Individual Settlement Payment at the address on file with the Administrator.  The Notice will also inform the Class of the manner and deadline to submit (1) requests for exclusion from the non-PAGA portion of the Settlement, (2) objections to the Settlement; and (3) disputes concerning the number of Workweeks during the Class Period or the number of Pay Periods worked during the PAGA Period.  The Notice further informs the Class of the claims to be released, including if they do not request to be excluded, and the date, time, and place set for the Final Approval Hearing.

19.    <u>Disputed Workweek and/or Pay Period Information</u>.  Class Members may contact the Settlement Administrator with questions regarding the number of Workweeks they have been assigned during the Class Period or the number of Pay Periods.  Class Members may produce evidence to the Settlement Administrator showing that such information is inaccurate.  There is a rebuttable presumption that Defendants' personnel and payroll records are correct, but Class Members may, should they disagree with Defendants' records, provide documentation to show contrary employment dates and/or records of Workweeks or Pay Periods no later than the Response Deadline.  The dispute must: (i) set forth the name, address, telephone number and last four digits of the social security number of the Class Member submitting the dispute; (ii) be signed by the Class Member; (iii) be timely returned to the Settlement Administrator; (iv) clearly state the reason(s) that the Class Member disputes the information provided contained in the Notice Packet; and (v) be postmarked on or before the Response Deadline.  All disputes shall be decided by the Settlement Administrator within ten (10) business days of the Response Deadline.

20.    <u>Request for Exclusion Procedures</u>. Any Class Member wishing to opt-out from the non-PAGA portions of the Settlement must sign and postmark a written Request for Exclusion to the Settlement Administrator, in the manner set forth in the Notice, by the Response Deadline.  The Request for Exclusion must: (i) set forth the name, address, telephone number and last four digits of the Social Security number of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

EXHIBIT 1

the Class Member requesting the exclusion; (ii) be signed by the Class Member; (iii) be timely returned to the Settlement Administrator; (iv) clearly state that the Class Member does not wish to be included in the non-PAGA portion of the Settlement and does not wish to receive any payment or other benefits therefrom; and (v) be postmarked on or before the Response Deadline. The postmark date shall be the exclusive means to determine whether a Request for Exclusion has been timely submitted. No Request for Exclusion may be made on behalf of a group of Class Members. Workweeks by Class Members who have submitted a valid and timely Request for Exclusion shall be deducted from the aggregate number of Workweeks. Class Members shall not have the right to opt-out from the PAGA portion of the Settlement.

21. <u>Defective Submissions</u>. If a Class Member's Request for Exclusion is defective as to any of the requirements listed herein, that Class Member shall be given an opportunity to cure the defect(s). The Settlement Administrator shall mail the Class Member a cure letter within three (3) business days of receiving the defective submission to advise the Class Member that his or her submission is defective and that the defect must be cured to render the Request for Exclusion valid. The Class Member shall have until (i) the Response Deadline or (ii) ten (10) calendar days from the date of the cure letter, whichever date is later, to postmark a revised Request for Exclusion. If the revised Request for Exclusion is not postmarked within that period, it shall be deemed untimely. Class Members shall be limited to one cure letter advising them of the defect. A Class Member who submits an invalid or untimely request to be excluded will remain a Class Member, will receive their Individual Settlement Payment and be bound by the releases and judgment entered as set forth herein. The invalid and untimely request for exclusion shall be deemed null and void.

22. <u>Objection Procedures</u>. To object to the Settlement, a Class Member must postmark a valid Notice of Objection to the Settlement Administrator on or before the Response Deadline. The Notice of Objection must be signed by the Class Member and contain all information required by this Settlement and as set forth in the Notice of Class

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

17

EXHIBIT 1

Action Settlement, including:   (i) the objector's full name, signature, address, and telephone number; (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; and (iv) a statement whether the objector intends to appear at the Final Approval Hearing.  The postmark date shall be deemed the exclusive means for determining that the Notice of Objection is timely.  Only Class Members who have not opted out of the class portion of the Settlement may object.  Any Class Member who does not submit a timely written objection to the Settlement, or who fails to otherwise comply with the specific and technical requirements of this Paragraph as provided in the Notice, shall be foreclosed from objecting to the Settlement and seeking any adjudication or review of the Settlement, by appeal or otherwise.  Class Members who postmark timely Notices of Objection shall have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from the Final Approval and Judgment.  Class Counsel shall not represent any Class Members with respect to any such objections to this Settlement.  The Parties shall file all Notices of Objection, valid or invalid, timely or untimely, with the Court in advance of the Final Approval/Settlement Fairness Hearing. If the Court overrules the Class Member's objection, or if the Court approves the Settlement despite any objections, the Class Member will be deemed to be a Participating Class Member and will be bound by the terms of this Agreement, and will be mailed their Individual Settlement Payment.

23.   Settlement Administrator Reports Regarding Class Member Participation. The Settlement Administrator shall provide Defendants' counsel and Class Counsel a biweekly report that certifies the number of Class Members who have submitted valid Requests for Exclusion, objections to the Settlement, and whether any Class Member has submitted a challenge to any information contained in their Notices.  The Settlement Administrator shall provide to counsel for both Parties any updated reports regarding

EXHIBIT 1

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

the administration of the Settlement as needed or requested.  Not later than fourteen (14) days after the final Response Deadline, the Settlement Administrator will provide the Parties with a complete and accurate list of all Participating Class Members, all Non-Participating Class Members, and all Class Members who objected to the Settlement Agreement.

24.    <u>Settlement Administrator Declaration</u>. Not later than twenty-eight (28) court days prior to the Final Approval Hearing, the Settlement Administrator will provide the Parties with its declaration of due diligence setting forth its compliance with its obligations under this Agreement to be filed with the Court, and will supplement its declaration as needed or as requested by the Court.

25.    <u>Settlement Administrator Final Report</u>. By no later than five (5) calendar days following the Effective Date, the Settlement Administrator shall provide counsel for both Parties with the aggregate number of Workweeks by Participating Class Members during the Class Period, and aggregate number of Pay Periods worked by PAGA Members during the PAGA Period. Upon completion of administration of the Settlement, the Settlement Administrator shall provide a written declaration under oath to certify such completion to the Court and counsel for all Parties.

26.    <u>Defendants' Right to Rescind</u>.  Defendants shall have, in their sole discretion, the right to void and withdraw from the Settlement if, at any time prior to Final Approval, five percent (5%) or more of Class Members timely and validly Request Exclusion from the non-PAGA portion of the Settlement.  Defendants must exercise this right of rescission in writing to Class Counsel within thirty (30) calendar days after the latest date any Class Member may timely submit his or her Request for Exclusion.  If Defendants exercise their right of rescission pursuant to this paragraph, Defendants shall be responsible for all costs incurred by the Settlement Administrator.

27.    <u>Plaintiffs' Right to Rescind</u>.  If the total number of Class Members exceeds 967, Plaintiffs may, at their option, void the agreement and/or attempt to reach some other agreement to preserve the settlement.  Plaintiffs must exercise this right of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

19

EXHIBIT 1

1  rescission in writing to Defendants within fourteen (14) business days after receiving

2  notice from Defendants that the total number of Class Members exceeds 967.  If

3  Plaintiffs exercise their right of rescission pursuant to this paragraph, Plaintiffs shall be

4  responsible for all costs incurred by the Settlement Administrator.

5  **FINAL APPROVAL**

6  28.  <u>Final Settlement Approval Hearing and Entry of Judgment</u>.  Upon

7  expiration of the Response Deadline as ordered by the Court at the time of the

8  Preliminary Approval Hearing, a Final Approval Hearing shall be conducted to

9  determine the Final Approval of the Settlement along with the amounts properly

10  payable for:  (i) Individual Settlement Payments; (ii) the Class Representative Service

11  Awards;  (iii) Attorneys'  Fee  Award;  (iv) Attorneys'  Costs;  (v) Settlement

12  Administration Costs; and (vi) PAGA Penalties.  The Final Approval Hearing shall not

13  be held earlier than thirty (30) calendar days after the Response Deadline.  Class

14  Counsel shall be responsible for drafting all documents necessary to obtain final

15  approval.  The Motion for Order Granting Final Approval and Entering Judgment shall

16  include Class Counsel's application for the Class Counsel's Attorneys' Fees and Costs,

17  the Class Representative Service Awards, and the Administrator's expenses.  A draft of

18  such motion shall be provided to Counsel for Defendant seven business days prior to its

19  filing with the Court.  Plaintiffs agree not to file their motion and/or application without

20  Defendant's review and input.  The Settlement Administrator shall maintain on its

21  website a section for this Settlement which includes a copy of the Motion for

22  Preliminary Approval, along with any accompanying exhibits, and the operative

23  complaint.  It shall be updated after Judgment is entered with a copy of the final

24  Judgment.

25  29.  <u>Attorneys' Fee Award and Costs</u>.  Defendants shall not object to Class

26  Counsel's request of reasonable Attorneys' Fees of up to $491,617.50 (33.33% of the

27  Gross Settlement Amount) and their reasonable Attorneys' Costs estimated at

28  $60,000.00 Class Counsel's application for Attorneys' Fees and Costs award shall be

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619.232.0441

20

EXHIBIT 1

1    included within the Motion for Order Granting Final Approval of Class Action

2    Settlement, unless the Court instructs otherwise.

3        30.    Judgment and Continued Jurisdiction.  Concurrent with the Motion for

4    Order Granting Final Approval of the Class Action Settlement, the Parties shall present

5    an Order Granting Final Approval and Entering Judgment to the Court, in a form

6    mutually agreed to by the Parties, for approval. After entry of the Judgment, the Court

7    shall have continuing jurisdiction over the Settlement as required by law, including:

8    (i) the interpretation and enforcement of the terms of the Settlement; (ii) settlement

9    administration matters; and (iii) such post-Judgment matters as may be appropriate

10   under court rules or as set forth in this Settlement.

11       31.    Funding of the Settlement.  Defendants shall transmit the Gross Settlement

12   Amount to the Administrator together with the amount representing the Employer

13   Taxes (to be communicated by the Administrator to Defendants at least (5) business

14   days before transmittal of the Gross Settlement Amount).  The Administrator shall

15   deposit the Gross Settlement Amount into a Qualified Settlement Account, from which

16   the Settlement Administrator will have the authority to distribute money in accordance

17   with the terms of this Settlement Agreement.  Defendants shall transmit the Gross

18   Settlement Amount and the Employer Taxes, within fifteen (15) days following the

19   Effective Date of Settlement.

20       32.    No Effective Date.  If there is no Effective Date: (i) the Settlement

21   Agreement shall have no force and effect and no Party shall be bound by any of its

22   terms; (ii) Defendants shall have no obligation to make any payments required under

23   this Agreement; (iii) the Parties shall evenly distribute and pay any Administration

24   Costs incurred up until the date that the Settlement ceases to exist; and (iv) the

25   Settlement Agreement and all negotiations, statements, proceedings, and data relating

26   thereto shall be protected as privileged settlement communications and shall be without

27   prejudice to the rights of any of the Parties, all of whom shall be restored to their

28   respective positions in the Action prior to the date of execution of the Settlement

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

21

EXHIBIT 1

Agreement.  In such event, the Parties shall work cooperatively to request a conference with the Court in which to attempt to resolve any issues that the Court has raised regarding the Agreement so that it can gain the Court's approval, or alternatively, effectuate their intent to resume the Action.

33.    <u>Distribution and Timing of Payments</u>.   Within ten (10) calendar days following receipt of the Gross Settlement Amount and the Employer Taxes, the Settlement Administrator shall issue payments to: (i) Participating Class Members, (ii) PAGA Members, (iii) Plaintiffs, (iv) Class Counsel, and (v) the Labor Workforce and Development Agency. However, payments shall not be issued to Class Members whose Notice Packets are returned as undeliverable and for whom no forwarding address can be located. Individual Settlement Payments for such Class Members shall be held by the Settlement Administrator unless claimed by the Class Member, and shall be paid to the *cy pres* beneficiary as set forth below if unclaimed by the end of the one hundred eighty (180) calendar day period to cash settlement checks as set forth below. The Settlement Administrator shall also issue a payment to itself for the Court-approved amount for its services.

34.    <u>Un-cashed Settlement Checks</u>.   Settlement checks shall remain valid for a period of one hundred eighty (180) calendar days after mailing, at which time the checks shall become null and void.  Thirty (30) days following the mailing of the Individual Settlement Payment Checks, the Administrator shall mail a postcard to each Participating Class Member and PAGA Member whose check is uncashed to remind them of the void date.  Any funds represented by Individual Settlement Payment checks remaining un-cashed for more than 180 calendar days after issuance shall be delivered to Legal Aid at Work.  Participating Class Members and PAGA Members who fail to cash their checks within the 180 day period shall remain bound by the Settlement as set forth herein.

35.    <u>Administration of Taxes by the Settlement Administrator</u>.   The Settlement Administrator shall be responsible for issuing to Plaintiffs, Participating Class

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

22

EXHIBIT 1

Members, PAGA Members and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement. The Settlement Administrator shall also be responsible for calculating and processing all payroll taxes and penalties for payment to the appropriate government authorities.

### TAX TREATMENT OF SETTLEMENT AMOUNTS

36.    <u>Tax Treatment of Individual Settlement Payments</u>.  The Parties have agreed to allocate the Individual Settlement Payment as follows:  for Participating Class Members – 40% to wages for which an IRS W-2 Form shall be issued, 60% to interest and penalties for which IRS 1099 Forms shall be issued.  Normal employee-side payroll taxes and withholding shall be deducted from the wage portion of the payment pursuant to state and federal law.  For Class Members who opt-out of the non-PAGA portion of the Settlement, the entirety of the Individual Settlement Payments shall be allocated to penalties for which IRS 1099 Forms shall be issued.

37.    <u>Class Member and Plaintiffs' Responsibility for Taxes</u>.    Participating Class Members and PAGA Members are responsible to pay appropriate taxes due on the Individual Settlement Payments they receive, and Plaintiffs are responsible for paying the appropriate taxes due on the Class Representative Service Payments.  All Individual Settlement Payments shall be deemed paid to such Class Members solely in the year in which such payments are issued. Counsel does not purport this communication to constitute tax or legal advice.  If this Settlement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal or state tax issue, such advice is not intended or written to be used, and cannot be used, by any person to avoid penalties under the federal Internal Revenue Code or any state tax code. The Notice of Class Action Settlement will advise Class Members that they shall be solely responsible for the payment of any taxes and penalties assessed on their respective Individual Settlement Payments.

38.    Class Counsel shall be issued an IRS Form 1099 for any fees and costs awarded by the Court.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

23
EXHIBIT 1

**RELEASE BY THE CLASS**

39. <u>Settlement Terms Bind All PAGA Members and Class Members Who Do Not Request Exclusion</u>. As of the Effective Date, Plaintiffs and all Participating Class Members (on behalf of each of them and each of their heirs, executors, administrators, and assigns) irrevocably and unconditionally fully release and forever discharge the Released Parties from any and all Released Claims that accrued during the Class Period, as set forth herein. As of the Effective Date, Plaintiffs and all PAGA Members (on behalf of each of them and each of their heirs, executors, administrators, and assigns) irrevocably and unconditionally fully release and forever discharge the Released Parties from any and all PAGA Released Claims that accrued during the PAGA Period as set forth herein.

40. <u>Circular 230 Disclaimer</u>. EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

24

EXHIBIT 1

DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

41. <u>Release by Plaintiffs and Class Representatives</u>. As of the Effective Date, Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz (on each of their behalf and on behalf of each of their heirs, executors, administrators, and assigns), but not on behalf of other Class Members, knowingly and voluntarily releases and forever discharges the Released Parties from any and all claims, known and unknown, asserted and unasserted, that they each had or may have had against Defendants or any of the Released Parties. Such claims include, but are not limited to: breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of emotional distress, defamation, misrepresentation, and fraud; retaliation claims; common law claims; any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations: Fair Labor Standards Act, 29 U.S.C. §§ 200, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Americans with Disabilities Act of 1990, as amended; The Age Discrimination in Employment Act of 1967, as amended; the Older Workers Benefit Protection Act; the Employment Retirement Income Security Act of 1974, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Family and Medical

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

25

EXHIBIT 1

Leave Act of 1993, as amended; the Fair Labor Standards Act; the California Fair Employment and Housing Act – Cal. Gov't Code § 12900 *et seq.*; the California Family Rights Act – Cal. Gov't Code § 12945.2 *et seq.*; the California Unruh Civil Rights Act – Civ. Code § 51 *et seq.*; the California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; the California Occupational Safety and Health Act, as amended – Cal. Lab. Code § 6300 *et seq.*, and any applicable regulations thereunder; the California Business and Professions, Civil, Government and Labor Code; the Labor Code Private Attorneys General Act of 2004 – Cal. Lab. Code § 2698 *et seq.*; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by Plaintiffs, excluding any claims that cannot be released as a matter of law. To the extent the foregoing release is a release to which California Civil Code section 1542 or similar provisions of other applicable law may apply, Plaintiffs expressly waive any and all rights and benefits conferred upon them by the provisions of California Civil Code section 1542 or similar provisions of applicable law which are as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Thus, notwithstanding the provisions of California Civil Code section 1542, and to implement a full and complete release and discharge, Plaintiffs each expressly acknowledge this Settlement is intended to include in its effect, without limitation, all known and unknown claims, including any claims they do not know or suspect to exist in their favor against the Released Parties at the time of signing this Settlement, and that this Settlement contemplates the extinguishment of any such claim or claims. Plaintiffs each acknowledges they may later discover facts different from or in addition to those

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

26

EXHIBIT 1

they now know or believe to be true regarding the matters released or described in this Settlement, and nonetheless agrees that the releases and agreements contained in this Settlement shall remain fully effective in all respects notwithstanding any later discovery of any different or additional facts. Plaintiffs each assume any and all risks of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Settlement or with regard to any facts now unknown to each of them relating to such matters.

42. <u>No Prior Assignments</u>. The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

## **ADDITIONAL TERMS**

43. <u>Exhibits Incorporated by Reference</u>. The terms of this Settlement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. Any Exhibits to this Settlement are an integral part of the Settlement.

44. <u>No Publicity</u>. Plaintiffs and Class Counsel agree not to publicize the settlement, including in communications with the press; however, nothing in this Agreement shall prevent Plaintiffs and Class Counsel from engaging in direct communications with Class Members about the settlement, and nothing in this Agreement shall prevent Class Counsel from identifying the Settlement on their website, so long as Class Counsel does not mention Defendants by name and instead refers to them only as a transportation company. Class Counsel agrees to limit any such language on their website to the following: "Class action for failure to pay split shift wages due to California bus attendants settles for $1.475 million." Class Counsel is further permited to discuss the Settlement, including Defendants' names, the case number, etc. in future Court declarations and in such communications as are reasonably

EXHIBIT 1

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

necessary for purposes of meeting their responsibilities as class representatives and Class Counsel.

45. <u>Entire Agreement</u>. This Settlement and attached Exhibits constitute the entirety of the Parties' settlement terms. No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties. The Parties expressly recognize California Civil Code section 1625 and California Code of Civil Procedure section 1856(a), which provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and the Parties agree that no such extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Settlement.

46. <u>Amendment or Modification</u>. No amendment, change, or modification to this Settlement shall be valid unless in writing and signed, either by the Parties or their counsel.

47. <u>Authorization to Enter Into Settlement</u>. Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Settlement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement to effectuate its terms and to execute any other documents required to effectuate the terms of this Settlement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement. If the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

48. <u>Binding on Successors and Assigns</u>. This Settlement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

49. <u>California Law Governs</u>. All terms of this Settlement and Exhibits hereto

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

28

EXHIBIT 1

shall be governed by and interpreted according to the laws of the State of California.

50.  Execution and Counterparts.  This Settlement is subject only to the execution of all Parties.  However, the Settlement may be executed in one or more counterparts and by DocuSign.  All executed counterparts and each of them, including facsimile and scanned copies of the signature page, shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves original signed counterparts.

51.  Acknowledgement that the Settlement is Fair and Reasonable.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of the Action and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential.  The Parties further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement.

52.  Acknowledgement of Future Legislation.  Each Party recognizes that legislation, could affect the outcome of the Action.  The Parties, nevertheless, enter into this settlement to avoid risk of loss and to avoid uncertainty with the interpretation, nature, and applicability of future legislation.

53.  Invalidity of Any Provision.  Before declaring any provision of this Settlement invalid, the Court shall first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement valid and enforceable.

54.  Waiver of Certain Appeals.  The Parties agree to waive appeals and to stipulate to class certification for purposes of this Settlement only; except, however, that Plaintiffs or Class Counsel may appeal any reduction to the Attorneys' Fees or the Attorneys' Costs below the amounts they request from the Court, and either party may appeal any court order that materially alters the Settlement terms.

55.  Non-Admission of Liability.  The Parties enter into this Settlement to

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

29

EXHIBIT 1

resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation.  In entering into this Settlement, Defendants and the Released Parties do not admit, and specifically deny, that Defendants or any Released Parties violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to their employees.  Neither this Settlement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants (or any Released Parties) of any such violations or failures to comply with any applicable law.  Except as necessary in a proceeding to enforce the terms of this Settlement, this Settlement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendants (or any Released Parties) or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

56. <u>Waiver</u>.  No waiver of any condition or covenant contained in this Settlement or failure to exercise a right or remedy by any of the Parties hereto shall be considered to imply or constitute a further waiver by such Party of the same or any other condition, covenant, right or remedy.

57. <u>Enforcement Actions</u>.  In the event that one or more of the Parties institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including reasonable expert witness fees incurred in connection with any enforcement actions.

58. <u>Mutual Preparation</u>.  The Parties have had a full opportunity to negotiate the terms and conditions of this Settlement.  Accordingly, this Settlement shall not be

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

30
EXHIBIT 1

construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Settlement.

59.  <u>Representation By Counsel</u>.  The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Settlement, and that this Settlement has been executed with the consent and advice of counsel.  Further, Plaintiffs and Class Counsel warrant and represent that there are no liens on the Settlement.  Class Counsel also represents that there are no attorneys who have or could have any liens with respect to any aspect of this Settlement, or any funds received by the Named Plaintiffs.

60.  <u>All Terms Subject to Final Court Approval</u>.  All amounts and procedures described in this Settlement herein shall be subject to final Court approval.

61.  <u>Cooperation and Execution of Necessary Documents</u>.  All Parties shall cooperate in good faith and execute all documents to the extent reasonably necessary to effectuate the terms of this Settlement.

62.  <u>Binding Agreement</u>.  The Parties warrant that they understand and have full authority to enter into this Settlement, and further intend that this Settlement shall be fully enforceable and binding on all parties, and agree that it shall be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.

63.  <u>Notices</u>.  Unless otherwise specifically provided, all notices, demands or other communications given shall be in writing and shall be deemed to have been duly given by the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

31
EXHIBIT 1

**To Plaintiffs and the Class**:

HUNTER PYLE LAW
Hunter Pyle
Katherine Fiester
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
          kfiester@hunterpylelaw.com

**To Defendants**:

David J. Dow
LITTLER MENDELSON, P.C.
501 West Broadway, Suite 900
San Diego, CA  92101

**AGREED.**

                                       **PLAINTIFF NORMA LOPEZ**

Dated: 9/3/2021

Norma Lopez

**PLAINTIFF CINDY MITCHELL**

Dated: _____

Cindy Mitchell

**PLAINTIFF VADA NEICE**

Dated: _____

Vada Neice

**PLAINTIFF MARY DIAZ**

Dated: _____

Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101,3577
619.232.0441

32

EXHIBIT 1

**To Plaintiffs and the Class**:

HUNTER PYLE LAW
Hunter Pyle
Katherine Fiester
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
        kfiester@hunterpylelaw.com

**To Defendants**:

David J. Dow
LITTLER MENDELSON, P.C.
501 West Broadway, Suite 900
San Diego, CA  92101

**AGREED.**

**PLAINTIFF NORMA LOPEZ**

Dated: _____

Norma Lopez

**PLAINTIFF CINDY MITCHELL**

Dated: 9/3/2021

Cindy Mitchell

**PLAINTIFF VADA NEICE**

Dated: _____

Vada Neice

**PLAINTIFF MARY DIAZ**

Dated: _____

Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619.232.0441

32
EXHIBIT 1

1    **To Plaintiffs and the Class**:

2

3    HUNTER PYLE LAW
     Hunter Pyle
4    Katherine Fiester
     1300 Broadway, Eleventh Floor
5    Oakland, California 94612
     Telephone: (510) 444-4400
6    Facsimile: (510) 444-4410
7    Emails: hunter@hunterpylelaw.com
8            kfiester@hunterpylelaw.com

9    **To Defendants**:

10   David J. Dow
11   LITTLER MENDELSON, P.C.
     501 West Broadway, Suite 900
12   San Diego, CA  92101

13

14   **AGREED.**

15                              **PLAINTIFF NORMA LOPEZ**

16

17   Dated: _____     _____
                                  Norma Lopez
18

19                              **PLAINTIFF CINDY MITCHELL**

20   Dated: _____     _____
21                                Cindy Mitchell

22                              **PLAINTIFF VADA NEICE**

23

24   Dated: 9/3/2021             _____
                                 Vada Neice
25

26                              **PLAINTIFF MARY DIAZ**

27
     Dated: _____     _____
28                                Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101-3577
619.232.0441

32
EXHIBIT 1

**To Plaintiffs and the Class**:

HUNTER PYLE LAW
Hunter Pyle
Katherine Fiester
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
          kfiester@hunterpylelaw.com

**To Defendants**:

David J. Dow
LITTLER MENDELSON, P.C.
501 West Broadway, Suite 900
San Diego, CA  92101

**AGREED.**

**PLAINTIFF NORMA LOPEZ**

Dated: _____

Norma Lopez

**PLAINTIFF CINDY MITCHELL**

Dated: _____

Cindy Mitchell

**PLAINTIFF VADA NEICE**

Dated: _____

Vada Neice

**PLAINTIFF MARY DIAZ**

Dated: 9/3/2021

Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101,3577
619.232.0441

32

EXHIBIT 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANTS FIRST STUDENT, INC.,
FIRST STUDENT MANAGEMENT, LLC
AND FIRSTGROUP AMERICA, INC.**

Dated: _9.8.21_

By: _____

NAME: _Michael Petrucci_
TITLE: _Secretary_

**APPROVED AS TO FORM:**

Dated: _September 7, 2021_

_____

Hunter Pyle
Katherine Fiester
HUNTER PYLE LAW
Attorneys for Plaintiffs

Dated: _9/7/21_

_____

David J. Dow
LITTLER MENDELSON, P.C.
Attorneys for Defendants

EXHIBIT 1

**EXHIBIT A**

**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

*Lopez, et al. v. First Student, Inc., et al.*, Central District of California
Case No. 5:19-cv-01669-JGB-SHK

TO: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (hereinafter the "Class" or "Class Member(s)").

*THIS NOTICE CONTAINS IMPORTANT LEGAL INFORMATION THAT MAY AFFECT YOU*
YOU ARE NOT BEING SUED

*The United States District Court for the Central District of California authorized this notice.*
*This is not a solicitation from a lawyer.*

- This notice contains important information about your legal rights as part of a class action settlement. Please read it fully and carefully.

- Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz ("Plaintiffs") have sued First Student, Inc., First Student Management, LLC and FirstGroup America, Inc. ("Defendants"). Plaintiffs worked as an Attendant, Bus Aid or Bus Monitor for First Student, Inc. or First Student Management, LLC. Their case is pending in the United States District Court for the Central District of California (Case No. 5:19-cv-01669-JGB-SHK). Plaintiffs and Defendants are referred to herein collectively as the "Parties."

- Plaintiffs' allegations are brought on their own behalf and on behalf of individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (the "Class Period").

- Plaintiffs have asserted a variety of claims, described in more detail below, against Defendants that pertain to payment of wages and hours of work.

- Defendants contend that their policies and practices have complied with the law at all times.

- The Court has not decided whether Defendants did anything wrong.

- Plaintiffs and Defendants also disagree as to the amounts of money or other types of relief that should be awarded to them and/or the Class in the event that Plaintiffs prevail at trial.

- The Parties agree that there are significant risks on both sides of the case.

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

- The Parties agree that continued litigation would be expensive and would result in significant expenses in terms of attorney fees and costs, without necessarily benefitting the Class.

- To avoid the risks of litigation and to provide an immediate benefit to the Class, the Parties have agreed to settle the case (the "Settlement").

- Under the Settlement, Defendants will pay a total of $1,475,000.00, to be apportioned and paid among identified members of the Class, after deductions for Court-approved payment of settlement administration costs, penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), payment of service awards to the Plaintiffs, litigation costs, attorneys' fees, and subject to withholdings for employee taxes, deductions and contributions.

| YOUR OPTIONS | |
|---|---|
| Do Nothing | You will receive a proportionate share of the Settlement if final approval is granted and will give up any right to bring any claims in the future that are part of the Settlement. |
| Opt Out of the Settlement | If you opt yourself out of the Settlement, you will not receive a portion of the non-PAGA Settlement payment. But, you will retain the right to assert claims that are included in the Settlement. By doing so, you will bear the risk that you may lose those claims. To opt out, you must timely write to the Class Administrator and follow the procedures described below. |
| Object to the Settlement | If you disagree with any aspect of this Settlement, you may assert your objections by timely writing to the Class Administrator and filing with the Court your objection according to the procedures described below. If you opt out, you may not object. If you object, you will still be bound by the Settlement, if approved by the Court. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement. Payments will be made only if the Court grants final approval of the Settlement and after appeals (if any) are resolved. Please be patient.

QUESTIONS? CALL _____

2

EXHIBIT A TO EXHIBIT 1

# BASIC INFORMATION

| 1. Why did I get this notice package and why should I read this Notice? |
| --- |

The records of Defendants indicate that you have been a member of the Class.  If the Court approves the Settlement and you do not opt out, you will receive a payment and your legal rights may be affected.  Thus, you have a right to information about the Settlement and your legal rights. That is the intent of this notice.

| 2. What is this lawsuit about? |
| --- |

Plaintiffs have asserted the following claims against Defendants on behalf of the Class:  (1) failure to pay split shift premiums, including the minimum wage; (2) failure to provide accurate wage statements; (3) waiting time penalties; (4) unfair competition, based on the foregoing claims; and (5) penalties under the PAGA, based on the foregoing claims.  These claims are referred to herein as the "Claims."

Defendants deny that the Claims are valid, deny that the Court should permit Plaintiffs to bring the Claims on behalf of the Class, and contend that they complied with the law at all times.

| 3. What is a class action? |
| --- |

In a class action, one or more people called named plaintiffs sue on behalf of people who they allege have similar claims.

| 4. Why is there a settlement? |
| --- |

The Court did not decide in favor of Plaintiffs or Defendants on the Claims being settled.  Plaintiffs think they could win a significant amount of wages, penalties, and interest on behalf of the Class if they were to win at trial. On the other hand, Defendants deny all liability and believe that Plaintiffs would not have won anything in the case. Both sides have agreed to the Settlement for the Claims. That way, the risks and costs of trial, for both sides, are eliminated, and the Class can be provided with an immediate benefit. Plaintiffs, Defendants, and their attorneys all believe that this Settlement is best for the Class and the Parties.

The Court has given its preliminary approval to this settlement as fair and reasonable to the Class and has appointed Plaintiffs to act as the Class Representatives, and for their attorneys to act as attorneys for the Class with regard to the Settlement (the "Class Counsel").  The Court has determined that these are adequate representatives for the Class**.**

EXHIBIT A TO EXHIBIT 1

### 5. How do I know if I am part of the settlement?

Everyone who fits this description is a Class Member:

> All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021.

### 6. Are there exceptions to being included?

Yes. If you are a Class Member, you may opt out as stated in Section 13 below. If you do not opt out, you are a Class Member who will receive part of the Settlement if approved.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can call the Class Administrator at [Number] or write to the Class Administrator at [address]. This is the Class Administrator's mailing address for all written communications described herein. You also may contact Class Counsel identified below for more information.

### 8. How much money is the Settlement for and how is it allocated?

Defendants have agreed to pay a total of $1,475,000.00 to settle all Claims in this lawsuit. Class Members will be paid out of the Net Settlement Fund (the "Fund"), which is the $1,475,000.00 total settlement amount minus the following payments: (1) fees to the Settlement Administrator (estimated at $9,999.00) for the costs of administrating the Settlement; (2) the costs of litigation as approved by the Court in an amount not to exceed $60,000.00; (3) PAGA penalties of $89,120.00, including a payment to the California Labor and Workforce Development Agency (LWDA) for its share of PAGA penalties; (4) a service award to each of the Plaintiffs not to exceed $10,000 each for serving as the Class Representatives and assisting in prosecuting the case; and (5) attorneys' fees up to the amount approved by the Court, not to exceed 33.33% ($491,617.50) of the total settlement amount.

Of the Fund, the remaining PAGA penalties ($22,280.00) are to be paid to PAGA Members, defined as Class Members employed by Defendants between July 15, 2018 to July 24, 2021 (the "PAGA Period"). That amount will be distributed pro rata based on pay periods to each PAGA Member. The remaining amount of the Fund will be distributed to Class Members based on their number of workweeks during the Class Period.

### 9. How much will my payment be and what is the information used to calculate my share?

Based on the calculation described above, it is currently estimated that your share of the Net Settlement Fund will be _____. Your share of the PAGA penalties is estimated to be an

QUESTIONS? CALL _____

4

EXHIBIT A TO EXHIBIT 1

additional _____. This amount could change, depending on how many Class Members opt-out, and/or further determinations by the Class Administrator and/or rulings of the Court.

Of your share of the Net Settlement fund, 60% will be reported as "1099" miscellaneous income by the Class Administrator to federal and state tax authorities. 40% will be reported as "W-2" income subject to withholdings, deductions and contributions in relation to wage payments. The withholding rate for the W-2 income may not be the same as you have used but is a customary one used in class action settlements. For Class Members who opt-out of the non-PAGA portion of the Settlement will only receive payments based on the PAGA penalties for which IRS 1099 Forms shall be issued. You are responsible for all employee tax liability in relation to payments to you under the Settlement. This Notice is not tax advice. Do not ask Class Counsel, or Defendants or its counsel for tax advice, as they will not provide it. They are not responsible for the tax advice. You should consult your own tax advisor.

Defendants' records show that the following information pertinent to the calculation of your estimated settlement share:

Your number of workweeks as an Attendant, Bus Aid or Bus Monitor during the Class Period is _____.

Your number of pay periods as an Attendant, Bus Aid or Bus Monitor during the PAGA Period is _____.

If you disagree with this information, you must notify the Class Administrator by writing to them at the address in paragraph 7. You must sign your notification, and include your full name, address, telephone number, last four digits of your social security number, the reason(s) that you dispute the information, and all supporting documentation. Your notification must be postmarked no later than [45 days from mailing]. The Class Administrator will make a final decision.

## 10. How can I get a payment?

You do not need to do anything to receive a Settlement Payment. However, it is important that you immediately notify the Class Administrator if your mailing address is different from the address to which this Notice was sent.

## 11. When will I receive a payment?

Payments will be distributed pursuant to a schedule established by the Settlement and by the Court. Presently, the expected date of payment is estimated to be _____. This could change depending on factors influencing the Class Administrator's tasks, any objections to the Settlement, and/or actions by the Court.

QUESTIONS? CALL _____

5

EXHIBIT A TO EXHIBIT 1

## 12. What am I giving up to get a payment?

Upon entry of judgment, each member of the Class (except those who properly opt out) on behalf of each of them and each of their heirs, executors, administrators, and assigns, do hereby and forever release, First Student, Inc., First Student Management, LLC, FirstGroup America, Inc., their past, present, and future parents, subsidiaries, divisions, and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire them in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable (the "Released Parties) from any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged in the original and amended Complaints in the Action, or which could have been alleged based on the facts alleged in the original and amended Complaints in the Action during the Class Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 et seq.; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. "Released Claims" includes any and all claims for benefits based on the above-referenced claims under any benefit plan, program or policy sponsored or maintained by Defendants, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq., but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan. "Released Claims" also includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.,

PAGA Members further release the Released Parties from any and all claims for penalties under PAGA, alleged in the original and amended Complaint or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts alleged in the original and amended Complaints or Plaintiffs' letters to the LWDA, arising during the PAGA Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 et seq.; (viii) violations of the

applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. ("Released PAGA Claims").

### 13. How do I opt out of the settlement?

To exclude yourself from the Settlement, you must send a signed letter by mail to the Class Administrator stating words to the effect: "I wish to be excluded from the Class." You must also include your name, mailing address, telephone number, and the last four digits of your social security number. Your exclusion request must be postmarked no later than [45 days from mailing] and sent to the Class Administrator at the address in paragraph 7.

If you exclude yourself, you will not receive any money from the Net Settlement Amount for the non-PAGA portion of the Settlement. You cannot object to the Settlement, and you will not be legally bound by non-PAGA portion of the Settlement if approved. Class Members do not have the right to opt-out from the PAGA portion of the Settlement. If you ask to be excluded for the Settlement, and you are a PAGA Member, you will continue to receive your PAGA portion of the Settlement and be bound by the Released PAGA Claims.

### 14. If I don't exclude myself, can I sue Defendants for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims that this Settlement resolves. If you have a pending lawsuit or the same claims that are being settled against Defendants, speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit if it involves the same claims.

### 15. If I exclude myself, can I get money from this settlement?

If you exclude yourself, you will not receive any money from the Net Settlement Amount, you cannot object to the Settlement, and you will not be legally bound by the Settlement if approved. Class Members shall not have the right to opt-out from the PAGA portion of the Settlement. If you ask to be excluded for the Settlement, and you are a PAGA Member, you will continue to receive your portion of the PAGA Members Payment of the Settlement.

### 16. Who is my lawyer if I am included in the Class?

The Court has appointed as Class Counsel the following attorneys: Hunter Pyle and Katherine Fiester of Hunter Pyle Law, 1300 Broadway, 11th Floor, Oakland, CA 94612, (510) 444-4400, hunter@hunterpylelaw.com, kfiester@hunterpylelaw.com. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. If you have questions about this Settlement, you may contact Class Counsel.

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

## 17. How do I object to the Settlement going forward?

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement because the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

To object to the Settlement, a Class Member must postmark a valid Notice of Objection to the Settlement Administrator on or before the Response Deadline. Any objection to the proposed settlement must be in writing and signed. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers should include: (i) the objector's full name, signature, address, and telephone number; (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; and (iv) a statement whether the objector intends to appear at the Final Approval Hearing.

The Parties will file all Notices of Objection with the Court in advance of the Final Approval Hearing.

Any Class Member who does not object in the manner described above shall be deemed to have waived any objections, and shall be foreclosed from objecting to the fairness or adequacy of the proposed Settlement, the payment of attorneys' fees and costs, the service payments to the Class Representative, the claims process, and any and all other aspects of the Settlement. Likewise, even if you file an objection, you will be bound by the terms of the Settlement, including applicable releases as set forth above, unless the Settlement is not finally approved by the Court.

## 18. What Is the difference between objecting and opting out?

Objecting is simply saying that you do not like something about the Settlement and do not want it approved. Opting out is saying that you do not want to be part of the Class and participate in the Settlement. If you opt out, you have no basis to object because the case no longer affects you.

## 19. When and where will the Court decide whether to approve the settlement

The Court will hold a Final Approval Hearing at _____ on _____, [insert court information]. At this hearing, the Court will make a final decision as to whether the Settlement is fair, reasonable, and adequate. If you or other Class Members object to the Settlement, the Court will consider the objections. The Judge will listen to people who have asked to speak at the hearing. At or after the hearing, the Court will decide whether to grant final approval to the Settlement.

QUESTIONS? CALL _____

8

EXHIBIT A TO EXHIBIT 1

The Final Approval Hearing may be continued without further notice to Class Members. You are advised to check the settlement website at [INSERT LINK TO WEBSITE PROVIDED BY ADMINISTRATOR] or the Court's Public Access to Court Electronic Records (PACER) website at https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CACDC site to confirm that the date has not been changed.

### 20. Do I have to come to the hearing?

No. Class Counsel will answer questions the Judge may have. You are welcome to come at your own expense. If you properly submit an objection, you don't have to come to Court to talk about it. As long as you properly submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 21. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. You cannot appear and speak at the hearing if you opt out.

### 22. What happens if I do nothing at all?

If you do nothing, or fail to act timely, you will receive your share of the settlement, but you will be barred from bringing the released claims in paragraph 12 against Defendants.

### 23. No retaliation from Defendants if you are included in Class or opt out to be excluded from Class

California law makes it unlawful to retaliate against an employee for participating in a lawsuit like this one.

### 24. Are there more details about the settlement?

This Notice is intended as a summary and does not fully describe this action, the claims, the defenses, or the proposed Settlement, which is subject to the terms and conditions of the Settlement Agreement filed with the Court and as preliminarily approved by the Court. For further information, you may call or contact the Class Administrator (see paragraph 7 for contact information) or Class Counsel (see paragraph 16 for contact information).

The Class Administrator also maintains a website at which some important documents in this case are available. The link to the website is [insert].

You may also obtain more information by accessing the Court docket in this case through the Public Access to Court Electronic Records (PACER) website https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CACDC or by visiting the office of the Clerk of the United States District Court, located on the 1st Floor of the United States District Court, Central District of

QUESTIONS? CALL _____

9

EXHIBIT A TO EXHIBIT 1

California, Edward R. Roybal Federal Building & U.S. Courthouse located at 255 East Temple Street Los Angeles, CA 90012, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE OR DEFENDANTS OR THEIR COUNSEL WITH INQUIRIES.**

Date: _____

This Notice has been approved by the Judge of the United States District Court for the Central District of California responsible for overseeing and deciding this case.

QUESTIONS? CALL _____

10

EXHIBIT A TO EXHIBIT 1

# EXHIBIT E

HUNTER PYLE, SBN 191125
KATHERINE FIESTER, SBN 301316
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails:  hunter@hunterpylelaw.com;
        kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 5:19-cv-01669-JGB-SHK<br><br>Class and Collective Action<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     October 18, 2021<br>Time:     9:00 a.m.<br>Ctrm:     1<br>Judge:    Hon. Jesus G. Bernal |

1   TO THE ABOVE-CAPTIONED COURT AND TO ALL PARTIES AND

2   THEIR COUNSEL OF RECORD:

3   PLEASE TAKE NOTICE that Plaintiffs Norma Lopez, Cindy Mitchell, Vada

4   Neice, and Mary Diaz ("Plaintiffs") on behalf of themselves and all similarly situated

5   individuals, hereby move the Court to grant Plaintiffs' Motion for Preliminary

6   Approval of Settlement ("Motion"). Defendants First Student, Inc., First Student

7   Management, LLC, and Firstgroup America, Inc. ("Defendants") do not oppose this

8   Motion. Hearing on this Motion will be held on Monday, October 18, 2021 at 9:00

9   a.m., in the Courtroom of the Honorable Jesus G. Bernal, located at the United States

10  District Court for the Central District of California, U.S. Courthouse, 3470 Twelfth

11  Street, Courtroom No. 1, Riverside, CA 92501.

12  Plaintiffs move the Court for an Order that:

13  1) Grants class certification of the following proposed settlement class under
14     Federal Rule of Civil Procedure 23(b)(3): All individuals employed by First
15     Student, Inc. or First Student Management, LLC in the position of
       Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-
16     exempt employees at any time from July 11, 2015, to July 24, 2021;

17  2) Preliminarily approves the proposed settlement as fair, reasonable and
18     adequate;

19  3) Directs the Class Notice set forth as Exhibit A to the Settlement to be
       disseminated to Class Members;
20

21  4) Appoints Hunter Pyle Law as Class Counsel;

22  5) Appoints Simpluris, Inc. to serve as the Settlement Administrator; and

23  6) Sets deadlines for the Class Notice to be sent, objection and opt-out
24     deadlines, and a hearing date and schedule for final approval of the
       Settlement and consideration of Plaintiffs' counsel's Motion for Attorneys'
25     Fees, Costs, and Class Representative Service Award.

26  Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e).

27  The Motion is based on this Notice of Motion and Motion; the Memorandum of

28

i
**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Points and Authorities set forth below; the Declarations of Hunter Pyle ("Pyle Decl."), Norma Lopez ("Lopez Decl."), Cindy Mitchell ("Mitchell Decl."), Vada Neice ("Neice Decl."), and Mary Diaz ("Diaz Decl.") and supporting exhibits; the pleadings, records, and papers on file in this action; and all other evidence properly before the Court.

DATED: September 17, 2021          HUNTER PYLE LAW


                                   By: /s/ Hunter Pyle
                                       Hunter Pyle
                                       Katherine Fiester

                                   Attorneys for Plaintiffs and the Putative Class

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

# **TABLE OF CONTENTS**

I.  Introduction ............................................................................................... 1

II.  Summary of Litigation ............................................................................. 1

III.  Summary of Settlement Terms ............................................................... 2

    A. Class Definition ..................................................................................... 2

    B. Class Relief ........................................................................................... 3

        1.  Gross Settlement Amount ................................................................ 3

        2.  Distribution of Settlement Funds to Class Members .................... 3

        3.  Any Uncashed Checks Will Be Distributed to a *Cy Pres* Beneficiary ...... 4

        4.  Opportunity to Object or Opt Out ................................................... 4

        5.  Released Claims ................................................................................ 4

        6.  Settlement Administration and Dissemination of the Notice to the Class. 4

        7.  Payment of Attorneys' Fees, Costs, and Expenses ........................ 5

        8.  The Court Retains Jurisdiction ........................................................ 5

IV.  Legal Argument ....................................................................................... 6

    A. Standards For Preliminary Approval of Settlements ........................ 6

    B. Conditional Certification of the Class is Appropriate ...................... 8

        1.  The Class is Numerous ..................................................................... 8

        2.  Common Questions of Law and Fact Predominate ........................ 8

        3.  Plaintiffs' Claims Are Typical of the Class Claims ....................... 9

        4.  Plaintiffs and Plaintiffs' Counsel Adequately Represent the Class ........ 10

        5.  Class Treatment is Superior ........................................................... 11

    C. The Settlement Falls Within The Range of Possible Approval ...... 12

        1.  Competent Counsel Negotiated the Settlement at Arm's Length ........... 12

        2.  Plaintiffs and the Class Face Ongoing Risk in the Absence of Settlement 13

        3.  The Settlement Provides a Significant Recovery .......................... 15

            a.  Failure to Provide Split Shift Pay and Interest Thereon ..................... 16

            b.  Liquidated Damages ................................................................. 17

            c.  Wage Statement Penalties ....................................................... 17

            d.  Waiting Time Penalties ............................................................ 18

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

e.  PAGA Penalties ...................................................................................19

D. The Court Should Approve The Proposed Notice .......................................20

E. The Requested Attorneys' Fees, Costs, and Service Awards Are Preliminarily

Reasonable..................................................................................................22

1.  The requested attorneys' fees are preliminarily reasonable...................22

2.  The litigation costs incurred are preliminary reasonable........................25

3.  The Class Representative Service Awards are reasonable. ....................25

V.    Conclusion.............................................................................................25

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Acosta v. Frito-Lay, Inc.*
  2018 WL 2088278 (N.D. Cal. May 4, 2018) ...................................... 13, 14

*Alikhan v. Goodrich Corp.*
  2020 WL 4919382 (C.D. Cal. June 25, 2020) ..................................... 23, 24

*Amchem Products Inc. v. Woodward*
  (1997) 521 U.S. 591 ....................................................................... 11

*Bernstein v. Virgin America, Inc.*
  2016 WL 6576621 (N.D. Cal. Nov. 7, 2016) ................................... 9, 10, 19

*Betancourt v. Advantage Human Resourcing, Inc.*
  2016 WL 344532 (N.D. Cal. Jan. 28, 2016) ....................................... 14, 15

*Bower v. Cycle Gear, Inc.*
  2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ........................................ 12

*Cabiness v. Educ. Fin. Solutions, LLC*
  2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ..................................... 13, 14

*Chalmers v. City of Los Angeles*
  796 F.2d 1205 (9th Cir. 1986) ............................................................ 25

*Chao v. Aurora Loan Servs., LLC*
  2014 WL 4421308 (N.D. Cal. Sept. 5, 2014) ......................................... 22

*Ching v. Siemens Indus., Inc.*
  2014 WL 2926210 (N.D. Cal. June 27, 2014) ........................................ 23

*Chu v. Wells Fargo Invs., LLC*
  2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .......................................... 20

*Chun-Hoon v. McKee Foods, Corp.*
  716 F. Supp. 2d 848 (N.D. Cal. 2010) .................................................. 14

*Churchill Vill., LLC v. Gen. Elec.*
  361 F.3d 566 (9th Cir. 2004) ....................................................... 6, 7, 21

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ............................................................. 6

v

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Cotter v. Lyft, Inc.*
  176 F.Supp.3d 930 (N.D. Cal. 2016) ............................................................... 19, 20

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc*.
  244 F.3d 1152 (9th Cir. 2001) ............................................................................. 9

*Destefano v. Zynga, Inc*.
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ........................................................ 16

*Ellis v. Costco Wholesale Corp*.
  657 F.3d 970 (9th Cir. 2011) ............................................................................. 10

*Fernandez v. Victoria Secret Stores, LLC*
  2008 WL 8150856 (C.D. Cal. July 21, 2008) ...................................................... 24

*Fischel v. Equitable Life Assur. Society of U.S*.
  307 F.3d 997 (9th Cir. 2002) ............................................................................. 24

*Franco v. Ruiz Food Prods*.
  2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .................................................... 20

*Garcia v. Gordon Trucking*
  2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) .................................. 20

*Gaudin v. Saxon Mortg. Servs., LLC*
  2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) .................................................... 16

*Hanlon v. Chrysler Corp*.
  150 F.3d 1011 (9th Cir. 1998) ....................................................................passim

*Hanon v. Dataproducts Corp*.
  976 F.2d 497 (9th Cir. 1992) ............................................................................. 10

*Harris v. Vector Mktg. Corp*.
  2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ............................................... 12, 25

*In re Omnivision Techs., Inc*.
  559 F.Supp. 2d 1036 (N.D. Cal. 2008) ...................................................... 12, 14, 15

*In re Pacific. Enterprises Securities. Litigation*
  47 F.3d 373 (9th Cir. 1995) ............................................................................... 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*
  148 F.3d 283 (3d Cir. 1998) ............................................................................... 21

*In re Tableware Antitrust Litig.*
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .................................................................6, 7

*In re Washington Public Power Supply System Securities Litigation*
   19 F.3d 1291 (9th Cir. 1994) ....................................................................................24

*Ketchum v. Moses*
   24 Cal. 4th 1122 (2001) ...........................................................................................24

*Lilly v. Jamba Juice Co.*
   2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ..........................................................7

*Linner v. Cellular Alaska P'Ship*
   151 F.3d 1234 (9th Cir. 1998) ..................................................................................14

*Ma v. Covidien Holding, Inc.*
   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ............................................................16

*McKenzie v. Federal Exp. Corp.*
   2012 WL 2930201 (C.D. Cal. July 2, 2012) ............................................................24

*Mendoza v. Tucson Sch. Dist. No. 1*
   623 F.2d 1338 (9th Cir.1980) ...................................................................................21

*Miletak v. Allstate Ins. Co.*
   2010 WL 809579 (N.D. Cal. Mar. 5, 2010) ..............................................................8

*Nordstrom Comm'n Cases*
   186 Cal. App. 4th 576 (2010) ...................................................................................19

*O'Connor v. Uber Technologies, Inc.*
   201 F.Supp.3d 1110 (N.D. Cal. 2016) .....................................................................19

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*
   688 F.2d 615 (9th Cir. 1982) ....................................................................................14

*Ontiveros v. Zamora*
   2014 WL 3057506 (E.D. Cal. July 7, 2014) ..............................................................7

*Reyes v. Bakery and Confectionary Union and Indus. Int'l. Pension Fund*
   2017 WL 7243239 (N.D. Cal. Jan. 23, 2017) ..........................................................12

*Rieckborn v. Velti PLC*
   2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .............................................................15

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*Rodriguez v. Hayes*
  591 F.3d 1105 (9th Cir. 2010)...............................................................8

*Roes, 1-2 v. SFBSC Mgmt., LLC*
  944 F.3d 1035, 2019 WL 6721190 (9th Cir. 2019) ................................6

*Satchell v. Fed. Express Corp.*
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................12

*Schiller v. David's Bridal, Inc.*
  2012 WL 2117001 (E.D. Cal. June 11, 2012).......................................20

*Serrano v. Priest*
  20 Cal. 3d 25 (1977)..............................................................................24

*Steiner v. Am. Broad. Co.*
  248 F. App'x 780 (9th Cir. 2007)...........................................................24

*Stovall-Gusman v. W.W. Granger, Inc.*
  2015 WL 3776765 (N.D. Cal. June 17, 2015) .......................................16

*Strube v. American Equity Inv. Life Ins. Co.*
  226 F.R.D. 688 (M.D. Fla. 2005) ...........................................................11

*Thomas v. Cognizant Tech. Sols. U.S. Corp.*
  2013 WL 12371622 (C.D. Cal. June 24, 2013) .....................................16

*Thurman v. Bayshore Transit Management, Inc.*
  203 Cal. App. 4th 1112 (2012)..............................................................19

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002)................................................................24

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) .................................................................................8

*Williams v. First Nat'l Bank*
  216 U.S. 582 (1910) .................................................................................6

*Wren v. RGIS Inventory Specialists*
  2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .........................................14

*ZB, N.A. v. Superior Court*
  8 Cal. 5th 175 (2019)..............................................................................19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

*Zinser v. Accufix Research Institute, Inc.*
    253 F.3d 1188 (9th Cir. 2001) .................................................................9

**Statutes**

California Code of Civil Procedure
Section 1542 ...................................................................................................4

California Labor Code
Section 203 ..................................................................................................18
Section 226 ...........................................................................................17, 25
Section 2699 ...............................................................................................19

**Other Authorities**

U.S. Code, Title 28
Section 1715 ...............................................................................................21

California Business & Professional Code
Section 17200 ...............................................................................................1

**Rules**

Federal Rule of Civil Procedure
Rule 23 ................................................................................................passim

**Regulations**

California Code of Regulations, Title 8
Section 13520 .............................................................................................18

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz ("Plaintiffs"), on behalf of themselves and all others similarly situated, seek preliminary approval of a proposed $1,475,000 non-reversionary, class and representative action settlement[1] of this wage and hour case against Defendants First Student, Inc., First Student Management, LLC, and Firstgroup America, Inc.[2] ("Defendants") The Parties achieved the settlement after significant discovery and extensive arm's-length negotiations. The settlement will provide substantial monetary payments to approximately 879 Attendants.[3]  As set forth below, it also satisfies all the criteria for class certification and settlement approval under Federal Rule of Civil Procedure 23.

### II.    SUMMARY OF LITIGATION

Plaintiffs Norma Lopez, Cindy Mitchell and Vada Neice commenced this proposed class action against Defendants in San Bernardino County Superior Court on July 11, 2019. Plaintiffs alleged causes of action for: (1) failure to pay split shift wages; (2) failure to provide complete and accurate wage statements; and (3) unfair competition claims pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Pyle Decl. ¶ 17.

Plaintiffs subsequently gave notice to the California Labor and Workforce Development Agency ("LWDA") in order to administratively exhaust claims for civil penalties under California's Private Attorneys General Act ("PAGA") on July 15,

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Pyle Decl. *See* Pyle Decl. Ex. 1 ("Settlement"). The Class Notice is attached as Exhibit A to the Settlement. *See* Ex. A to Settlement. Unless otherwise defined herein, all capitalized terms herein have the same meanings as those in the Settlement Agreement.

[2] Defendants and Plaintiffs are collectively referred to herein as the "Parties."

[3] Attendants are sometimes referred to as Bus Aids or Bus Monitors. These terms are all synonymous.

1

2019. Plaintiffs submitted an amended PAGA notice on December 6, 2019. Pyle Decl. ¶ 18.

On August 30, 2019, Defendants removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").

On January 21, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC") adding Mary Diaz as a named plaintiff and causes of action for waiting time penalties and PAGA civil penalties on behalf of the State of California and all aggrieved employees. Pyle Decl. ¶ 21. Defendants then filed an answer denying liability and raising various affirmative defenses. *See* Dkt. 23 [Defendants' Answer].

The Parties conducted discovery, which included the production of timesheets and wage statements for 827 of the 879 (or 94 percent) of the estimated Class Members. Pyle Decl. ¶ 22. Plaintiffs retained a damages expert to conduct a thorough and detailed damages analysis for the Class.

The Parties agreed to mediate with the Hon. Steven Denton (Ret.) on May 12, 2021. *Id.* ¶ 23. After thorough arm's-length negotiations with Judge Denton's assistance, the Parties were able to agree to a complete resolution of the Action. *Id.* ¶ 24. The Parties then negotiated and executed a memorandum of understanding ("MOU") and, subsequently, a Joint Stipulation of Class and PAGA Representative Action Settlement and Release ("Settlement"). *Id.*

## III.  <u>SUMMARY OF SETTLEMENT TERMS</u>

### A. Class Definition

The Class is defined as: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (the "Class"). Settlement ¶ 1(d).

//

//

//

**B. Class Relief**

**1. Gross Settlement Amount**

Defendants have agreed to pay $1,475,000 (the "Gross Settlement Amount") to resolve the claims of Plaintiffs and Participating Class Members. The Gross Settlement Amount will be used to pay the following: (1) compensation to all Participating Class Members in settlement of their claims; (2) civil penalties paid to the State of California and PAGA Members in settlement of the PAGA claims (the "PAGA Payment") in the amount of $89,120; (3) court approved attorneys' fees (not to exceed 30% of the Gross Settlement Amount) and costs estimated to be no more than $45,000; (4) Settlement Administration Costs necessary to administer the Settlement, including payment for the services of the Settlement Administrator not to exceed $9,999; and (5) a service payment to each Plaintiff not to exceed $10,000, subject to Court approval.[4]  *See* Settlement ¶¶ 7-8.

**2. Distribution of Settlement Funds to Class Members**

There will be a direct monetary distribution to the approximately 879 Class Members. Class Members will not need to file a claim or do anything affirmative to receive payment. Rather, they will simply receive a check for the amount due to them under the Settlement. Pyle Decl. ¶ 30.

Each Participating Class Member will receive a proportionate share of the Net Settlement Amount that is equal to the number of Workweeks they worked during the time period from July 11, 2015, to July 24, 2021 (the "Class Period") divided by the total number of Workweeks worked by all Participating Class Members during the Class Period. *See* Settlement ¶ 9(a). The average recovery per Class Member is anticipated to be at least $965.17. Pyle Decl. ¶ 30.

//

---

[4] Defendants will separately pay their portion of taxes, contributions, fees and any other amounts owed to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement. *See* Settlement ¶¶ 1(k), 7.

3

1    Each PAGA Member will also receive a proportionate share of the PAGA

2    Members Payment that is equal to the number of Pay Periods they worked during the

3    time period from July 15, 2018, to July 24, 2021 (the "PAGA Period") divided by the

4    total number of Pay Periods worked by all PAGA Members during the PAGA Period.

5    *See* Settlement ¶ 9(b).

6    **3. Any Uncashed Checks Will Be Distributed to a *Cy Pres* Beneficiary**

7    All settlement funds will be paid out, and none will revert to Defendants. *See*

8    Settlement ¶ 9. After all payments have been issued to the Participating Class

9    Members, any amount remaining from uncashed checks will be paid to Legal Aid at

10   Work ("LAAW").[5]

11   **4. Opportunity to Object or Opt Out**

12   Class Members may object to or opt out of the Settlement. The Class Notice

13   shall provide instructions and requirements for Class Members to object to the

14   Settlement or to opt out of the Settlement. Settlement ¶ 60; Ex. A to Settlement.

15   **5. Released Claims**

16   If the Court grants final approval of the Settlement, the Participating Class

17   Members will release Defendants from all claims as described in paragraph 39 of the

18   Settlement. *See* Settlement ¶¶ 1(aa)-(cc), 39. There is no difference between the

19   release and the claims in the FAC. Pyle Decl. ¶ 32. Plaintiffs will also provide a

20   general release, including a release of all known and unknown claims under California

21   Civil Code § 1542. *See* Settlement ¶ 41.

22   **6. Settlement Administration and Dissemination of the Notice to the Class**

23   The Settlement allocates up to $9,999 to settlement administration costs. *Id.* ¶

24   1(b). The Parties have agreed to use Simpluris, Inc. ("Simpluris") as the Settlement

25

26   ───────────────
     [5] LAAW is a California-based nonprofit organization that provides legal aid to low-
     income, working families throughout the state, including in the area of wage and hour
27   law. *Id.* LAAW's mission of enforcing worker protections through litigation and
     policy advocacy furthers the interests of California employees like the Attendants, Bus
28   Aids or Bus Monitors here in preventing and remedying wage theft and other labor
     issues. Pyle Decl. ¶ 31.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Administrator. *Id.* ¶ 1(ee); Pyle Decl. ¶¶ 34-35. Simpluris has successfully administered a large number of wage and hour class action settlements in an efficient and effective manner. Pyle Decl. ¶¶ 34-36. Simpluris has provided a bid of $9,999 for the proposed work. *Id.* ¶ 34. Plaintiffs' counsel considered three bids before choosing Simpluris, which had the lowest bid. *Id.* ¶¶ 34-35

Simpluris will distribute the Class Notice, maintain a website, and maintain a telephone number to which Class Members can direct questions about the Settlement, and will administer and distribute all Settlement-related payments. *See* Settlement ¶¶ 28, 33; Ex. A to Settlement. Simpluris will provide a declaration attesting to the notice process prior to the Final Approval Hearing which Plaintiffs' counsel will file with the Court. *Id.* ¶¶ 23-25.

Defendants will provide Simpluris with the class data within 14 days of the Order Granting Preliminary Approval. *Id.* ¶ 15. The Notice will be sent by first-class mail to all Class Members within 14 business days after Defendants provide Simpluris with the class data. *Id.* ¶ 18. Simpluris will update mailing addresses through the National Change of Address database before mailing. All returned mail will be skip-traced and promptly re-mailed. *Id.* ¶ 17.

### 7. Payment of Attorneys' Fees, Costs, and Expenses

As discussed in below in section IV(E), should the Court grant preliminary approval, Plaintiffs will file a motion for an award of attorneys' fees of up to $442,500 (30% of the Gross Settlement Amount), and for reimbursement of reasonable costs, estimated to be no more than $45,000, to be paid out of the Gross Settlement Amount. Pyle Decl. ¶¶ 65, 68; Settlement, ¶¶ 1(c), 8(c)-(d), 29.

### 8. The Court Retains Jurisdiction

Under the terms of the Settlement Agreement, after entry of Judgment, the Court shall have continuing jurisdiction over the Settlement. Pyle Decl. ¶ 37; Settlement ¶ 30.

//

## IV.    LEGAL ARGUMENT

### A. STANDARDS FOR PRELIMINARY APPROVAL OF SETTLEMENTS

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Settlement spares litigants the uncertainty, delay and expense of a trial, and reduces the burden on judicial resources. As a result, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *see also Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (noting that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

Even so, class action settlements require court approval. Fed. R. Civ. P. 23(e). Where a class action is settled prior to class certification, courts must employ "a more probing inquiry than may normally be required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 2019 WL 6721190, at *10 (9th Cir. 2019).

There are two stages to the approval of a class action settlement. In the first stage, the parties must show "that the court will likely be able to ... (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see* also Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004).

If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to ... certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, "the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class." *Ontiveros*

*v. Zamora*, No. 2:08-567 WBS DAD, 2014 WL 3057506, at *2 (E.D. Cal. July 7, 2014). In the second stage, the court reviews any objections by class members and conducts a final fairness hearing to make a final determination of whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. Rule 23(e).

Within this framework, preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998, 2015 WL 1248027, at *6 (N.D. Cal. Mar. 18, 2015). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

Factors the Court should consider include whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, courts in the Ninth Circuit have also considered the strength of the plaintiffs' case; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v.*

1    *Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The proposed settlement must be

2    "taken as a whole, rather than the individual component parts" in the examination for

3    overall fairness. *Hanlon*, 150 F.3d at 1026.

4    **B. CONDITIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

5        The Class here satisfies each of the requirements of Rule 23(a), namely, (1)

6    numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See*

7    *Hanlon*, 150 F.3d at 1019. It also satisfies Rule 23(b)(3) in that common questions

8    "predominate over any questions affecting only individual members," and class

9    resolution is "superior to other available methods for the fair and efficient adjudication

10   of the controversy." Fed. R. Civ. P. 23(b)(3).

11       **1.  The Class Is Numerous**

12       The Class satisfies Rule 23(a)'s numerosity requirement. "[G]enerally if the

13   named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the

14   first prong of Rule 23(a) has been met." *Miletak v. Allstate Ins. Co*., No. C 06-03778

15   JW, 2010 WL 809579, at *10 (N.D. Cal. Mar. 5, 2010) (citation omitted). Here, there

16   are approximately 879 Class Members. Pyle Decl. ¶ 38. The numerosity requirement

17   is thus easily satisfied.

18       **2.  Common Questions of Law and Fact Predominate**

19       The commonality inquiry under Rule 23 (a)(2) and the predominance inquiry

20   under Rule 23(b)(3) overlap and are thus examined together here. Rule 23(a)(2) is

21   satisfied when there is a "common contention... of such a nature that it is capable of

22   classwide resolution--which means that determination of its truth or falsity will

23   resolve an issue that is central to the validity of each one of the claims in one stroke."

24   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "The commonality

25   requirement will be satisfied if the named plaintiffs share at least one question of fact

26   or law with the grievances of the prospective class." *Rodriguez v. Hayes*, 591 F.3d

27   1105, 1112 (9th Cir. 2010). The predominance inquiry under Rule 23(b)(3) focuses on

28   whether the class is "sufficiently cohesive to warrant adjudication by representation."

*Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

Central to predominance is "the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1188, 1189 (9th Cir. 2001). "When common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citation omitted).

Here, common questions of fact and law exist that predominate over individual issues. The central question presented is whether Plaintiffs and other Attendants have been deprived of their full pay when working split shifts. Plaintiffs' claims are the same as those of the proposed Class, and will be resolved in the same way. All Attendants are subject to the same policies, practices and procedures with respect to pay, and all are alleged to have suffered the same type of wage loss, i.e., unpaid wages when working split shifts. *See* Dkt. 18 [FAC].

Defendants' defenses are also common and predominant. Pyle Decl. ¶ 42. Defendants contend that liquidated damages are not available for failure to provide split shift pay. Defendants further argue that there are no wage statement violations because they did not intentionally fail to include split shift pay on wage statements. *See* Dkt. 23 [Defendants' Answer]. These defenses run to the Class as a whole. There are no claims or defenses individual to Plaintiffs that would predominate over common questions of fact and law. Commonality and predominance are thus satisfied. See*, e.g., Bernstein v. Virgin America, Inc.*, No. 15-CV-02277-JST, 2016 WL 6576621, at *13 (N.D. Cal. Nov. 7, 2016) (predominance satisfied where pay policies run to class as a whole).

### 3. Plaintiffs' Claims Are Typical of the Class Claims

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts*

---

9

1  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Typicality refers to the nature of the claim

2  or defense of the class representative, and not to the specific facts from which it arose

3  or the relief sought." *Id.* "[R]epresentative claims are 'typical' if they are reasonably

4  co-extensive with those of absent class members; they need not be substantially

5  identical." *Hanlon*, 150 F.3d at 1020.

6      Here, Plaintiffs' claims are typical of all other Class Members. Plaintiffs are

7  current and former Attendants employed by Defendants. The Class consists of former

8  and current Attendants, Bus Aids, and Monitors who have all been subject to the same

9  pay policies and procedures of Defendants. Plaintiffs assert the same legal claims on

10 behalf of themselves and the proposed Class and seek to recover damages as a result

11 of Defendants' common course of conduct. Plaintiffs' claims therefore are "typical"

12 within the meaning of Rule 23(a). *See, e.g., Bernstein*, 2016 WL 6576621, at *14-15.

13 **4.  Plaintiffs And Plaintiffs' Counsel Adequately Represent the Class**

14     A representative plaintiff must "fairly and adequately protect the interests of the

15 class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will

16 adequately represent a class, courts must resolve two questions: (1) do the named

17 plaintiffs and their counsel have any conflicts of interest with other class members and

18 (2) will the named plaintiffs and their counsel prosecute the action vigorously on

19 behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir.

20 2011) (quoting *Hanlon*, 150 F.3d at 1020).

21     Here, Plaintiffs have fairly and adequately represented the Class. They have no

22 interests that are in conflict with other Class Members, have experienced the same

23 alleged legal violations, and have been vigorously prosecuting the case on behalf of

24 the Class. Pyle Decl. ¶¶ 43, 69-71; *see generally* Lopez Decl. ¶¶ 1-17; Mitchell Decl.

25 ¶¶ 1-17; Neice Decl. ¶¶ 1-16; and Diaz Decl. ¶¶ 1-16.

26     Additionally, Plaintiffs' counsel has considerable experience in litigating

27 complex class actions, including wage and hour class actions, are familiar with the

28 legal and factual issues involved, and are highly qualified. Pyle Decl. ¶¶ 3-16. The

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

work performed by Plaintiffs' counsel in this matter, as well as their substantial experience, demonstrates ample basis for finding that they are well qualified to serve as class counsel. *Id.* ¶ 44. The adequacy requirement is thus satisfied.

### 5. Class Treatment Is Superior

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." A court considers the following factors to determine superiority for settlement purposes: (a) class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; and (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(A)-(C).[6] Superiority is to be assessed through a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023.

Here, a class action is superior to other available methods for litigating Class Members' claims against Defendants. As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. Class certification is particularly appropriate since resolving class members' claims en masse will ensure an efficient and fair distribution of the settlement fund. Individual claims would "prove uneconomic for a potential plaintiff," because "litigation costs would dwarf potential recovery." *Hanlon*, 150 F.3d at 1023. The Class Members' interest in individual litigation is therefore low and concentration of litigation is particularly desirable.

---

[6] Courts do not consider the fourth factor, i.e., the difficulties of managing a class action, in the context of settlement. *Amchem Products Inc. v. Woodward* (1997) 521 U.S. 591, 620 (in deciding whether to certify a class for settlement purposes, a district court "need not inquire whether the case, if tried, would present intractable management problems"). In addition, some courts have found the that third factor, the "forum" inquiry, is "conceptually irrelevant in the context of a settlement." *See Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005). "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. Of Iowa*, 1998 WL 133747, at *19 (M.D. Fla. 1998).

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## C. THE SETTLEMENT FALLS WITHIN THE RANGE OF POSSIBLE APPROVAL

All relevant factors weigh in favor of preliminary approval of the Settlement as fair, adequate, and reasonable for the following reasons:

### 1. Competent Counsel Negotiated the Settlement at Arm's Length

The Settlement represents the culmination of intensive arm's-length negotiations, after extensive discovery, with the assistance of a professional mediator. Pyle Decl. ¶¶ 22-24. Plaintiffs and the interests of the Class were represented in settlement negotiations by attorneys who have considerable experience in wage and hour litigation and who are well-versed in the legal and factual issues. *Id.* ¶¶ 3-16, 26. Defendants were similarly represented by counsel with extensive experience defending complex litigation, including wage and hour class actions. *Id.* ¶ 26. The settlement negotiations were contested and conducted in good faith. *Id.*

The participation of Judge Denton, a well-respected neutral, in this case supports the conclusion that the Settlement is the result of arm's-length negotiations. *See Harris v. Vector Mktg. Corp.*, No. 08-cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's length bargaining."); *see also Satchell v. Fed. Express Corp.*, No 03-cv-2659-SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016 WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016); and *Reyes v. Bakery and Confectionary Union and Indus. Int'l. Pension Fund*, No. 14-cv-05596-JST, 2017 WL 7243239, at *5 (N.D. Cal. Jan. 23, 2017).

Further, Plaintiffs' counsel support the Settlement Agreement. *See In re Omnivision Techs., Inc.*, 559 F.Supp. 2d 1036, 1043 (N.D. Cal. 2008) (holding "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness"). Plaintiffs' counsel has litigated a number of class action cases, including actions such as this one presenting workers in the bus transportation

industry, and have reached approved settlement agreements in many of them. Pyle Decl. ¶¶ 3-16; *see also Cabiness v. Educ. Fin. Solutions, LLC*, No. 16-cv-01109-JST, 2019 WL 1369929, at *6 (N.D. Cal. Mar. 26, 2019). ("Class Counsel have extensive experience litigating class action and consumer protection cases. That they advocate in favor of the Settlement weighs in favor of approval."); *see also Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278, at *9 (N.D. Cal. May 4, 2018) (giving value to opinion of counsel who had been named class counsel in multiple class actions); *In re Pacific. Enterprises Securities. Litigation*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."). Plaintiffs' counsel consider the Settlement, which compares favorably to previous settlements that courts have approved, to be an excellent result. Pyle Decl. ¶¶ 26, 62-64.[7]

In sum, the Settlement is the product of an adversarial and careful negotiation conducted with the assistance of a well-respected and experienced neutral and involving experienced and skilled class counsel.

### 2. Plaintiffs and the Class Face Ongoing Risk in the Absence of Settlement

Defendants deny all of the substantive allegations in the action. Therefore, because liability is highly contested, both sides will incur significant time, expenses, and risk if this Action continues. Pyle Decl. ¶ 48.

While Plaintiffs and Plaintiffs' counsel believe Plaintiffs would ultimately succeed in obtaining certification of the Class and in prevailing on the merits at trial, the litigation in this action to date has informed the Parties of the risks of continued litigation. *Id.* Plaintiffs engaged in substantive discovery prior to the settlement negotiations. *Id* ¶ 22. Plaintiffs and Defendants thus "have sufficient information to

---

[7] Plaintiffs' lead counsel's experience with comparable class action settlements is set forth in his declaration. *See* Pyle Decl. ¶¶ 62-64.

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   make an informed decision about settlement." *Linner v. Cellular Alaska P'Ship*, 151

2   F.3d 1234, 1239 (9th Cir. 1998); *see also Cabiness*, 2019 WL 1369929, at *5.

3       Specifically, Plaintiffs conducted relevant discovery, including the exchange of

4   thousands of pages of documents. Pyle Decl. ¶ 22. Plaintiffs then retained a damages

5   expert to conduct a thorough and detailed damages analysis. *Id.* Plaintiffs understand

6   that there are still "barriers plaintiffs must overcome in making their case." *Chun-*

7   *Hoon v. McKee Foods, Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). In light of

8   this analysis, Plaintiffs and Plaintiffs' counsel recognize that Defendants have raised

9   factual and legal defenses in the action that present a risk that Plaintiffs may not

10  prevail, that a class might not be certified for trial, and that the claims of one or more

11  Class Members may be defeated. Pyle Decl. ¶ 26.

12      Moreover, the outcome of this action, should it proceed to further motion

13  practice and/or trial, is by no means certain. In addition, even if the Plaintiffs received

14  a favorable judgment, post-trial motions and an appeal would be likely. *See*

15  *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14-cv-01788-JST, 2016 WL

16  344532, at *4 (N.D. Cal. Jan. 28, 2016). "[I]t is the very uncertainty of outcome in

17  litigation and avoidance of wastefulness and expensive litigation that induce

18  consensual settlements." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of*

19  *San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Even though the Parties are

20  prepared to go to trial, considering the reality of a likely appeal, "it could be years

21  before Plaintiffs see a dollar." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1042;

22  *see also Wren v. RGIS Inventory Specialists*, C–06–05778 JCS, 2011 WL 1230826, at

23  *7 (N.D. Cal. Apr. 1, 2011) (finding that the risk, expense, complexity, and duration

24  of further litigation point in favor of approving a settlement even though plaintiffs'

25  claims had survived summary judgment).

26      The Parties' informed decision-making and negotiation, in light of the risks

27  known from initial discovery and litigation, favor approval of the Settlement. *See*

28  *Acosta*, 2018 WL 2088278, at *9.

---

14

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

### 3. The Settlement Provides a Significant Recovery

The Settlement provides a significant recovery for the Class in the face of disputed claims. First, the average settlement distribution to the approximately 879 Class Members will exceed $965.17 and will be distributed to Participating Class Members directly, without a claims process. Pyle Decl. ¶ 30. Class Members who do not opt out will receive checks directly from the Settlement Administrator and will thus readily and easily receive the benefits of the Settlement. *Id.*

Second, the proposed distribution plan is straightforward and fair to all Class Members. "It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits." *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 WL 468329, at *8 (N.D. Cal. Feb. 3, 2015) (citing *In re Omnivision Techs., Inc.*, 559 F.Supp. 2d at 1045.

Here, the Settlement treats all Class Members equitably. *See* Fed. R. Civ. P. 23(e). The Settlement Administrator will obtain detailed information from Defendants as to Class Members' employment data. Settlement ¶ 15. Net Settlement Payments will be determined by using the number of Workweeks the Class Member worked during the Class Period divided by the total number of Workweeks worked by all Participating Class Members during the Class Period. *Id.* ¶ 9(a).

The PAGA Members Payment will similarly be allocated based on the number of Pay Periods the PAGA Member worked during the PAGA Period divided by the total number of Pay Periods worked by all PAGA Members during the PAGA Period. *Id.* ¶ 9(b).

Third, the Settlement represents a reasonable compromise of claims in comparison to the potential full value of such claims. The Gross Settlement Amount of $1,475,000 will provide strong recompense to Class Members. In evaluating the amount of a settlement, "the Court may compare the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation." *Betancourt*, 2016 WL 344532, at *5.

15

PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

At mediation, Plaintiffs calculated the total potential value of the action to be $2,571,366.33. Pyle Decl. ¶ 46. The proposed Settlement of $1,475,000 thus represents 57% of the total potential value. *Id.* The recovery obtained here as a percentage of the total potential value therefore exceeds that of many approved wage and hour class settlements. *See, e.g., Thomas v. Cognizant Tech. Sols. U.S. Corp*., No. SACV111123JSTANX, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval in wage and hour action where total settlement amount represented approximately 10% of potential value, and net settlement amount represented 7.3% of valuation); *Ma v. Covidien Holding, Inc*., No. SACV 12-02161-DOC, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (granting preliminary approval of wage and hour settlement for 9.1%); *Destefano v. Zynga, Inc*., No. 12-cv-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (approving class settlement providing for "14 percent of likely recoverable aggregate damages at trial," and "9.5 percent of those" damages after "deductions for attorneys' fees and costs and administration costs"); *Gaudin v. Saxon Mortg. Servs., LLC*, No. 11-cv-01663-JST, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (approving class settlement providing "13.6% recovery of the maximum possible recoverable damages").

Furthermore, Plaintiffs' counsel assigned a reasonable settlement value to each of the claims asserted on behalf of the Class Members. Pyle Decl. ¶ 47. Plaintiffs' counsel estimates the total reasonable settlement value of those claims to be $1,357,578.06. *Id.* The Gross Settlement Amount therefore exceeds the reasonable settlement value of the Class Members' claims as follows:

### a. Failure to Provide Split Shift Pay and Interest Thereon

Plaintiffs' unpaid wages claim arises out of Defendants' practice of not paying split shift pay. Plaintiffs retained a damages expert to calculate the damages based on

16

Defendants' production of timesheets and wage statements for 827 of the 879 Class Members.[8] *Id.* ¶ 49. At the time of mediation Plaintiffs' expert estimated that Defendants were liable to the Class Members for $582,355.59 in split shift pay, including interest. *Id.*

Plaintiffs gave little weight to Defendants' defenses to the split shift pay claim. Accordingly, Plaintiffs only discounted their claim for split shift pay by twenty percent (multiplying by .80) to account for the risks involved in certifying a class and maintaining certification through trial. Accordingly, Plaintiff calculated the reasonable settlement value of the split shift claim to be $465,884.87. *Id.* ¶ 50.

### b. Liquidated Damages

Plaintiffs' claim for liquidated damages is derivative of their claim for failure to provide split shift pay. At the time of mediation, Plaintiffs' expert estimated Defendants' liability to the Class Members for liquidated damages claim to be $582,355.59. *Id.* ¶ 51.

However, Defendants contend that they owe no liquidated damages because their failure to pay slit shift wages was in good faith. *See* Labor Code § 1194.2(b); Pyle Decl. ¶ 52. Under these circumstances, it is reasonable to discount Plaintiffs' liquidated damages claim by twenty percent (multiplying by .80) to account for the risks involved in certifying a class and maintaining certification through trial, and by an additional thirty-five percent (multiplying by .65) to account for the risk of Defendants prevailing on its defense. Pyle Decl. ¶ 52. Accordingly, Plaintiffs determined that the reasonable settlement value of the liquidated damages claim was $302,824.91. *Id.*

### c. Wage Statement Penalties

At the time of mediation, Plaintiffs' expert calculated the maximum recovery for Plaintiffs' wage statement claim under Labor Code section 226(e) to be $426,500.

---

[8] Plaintiffs' expert used the records for the 827 Class Members to extrapolate damages for the remaining 52 Class Members. *Id.* ¶ 49.

17

1   *Id.* ¶ 53. However, Defendants deny any wage statement violations and claim that

2   whatever conduct occurred was not knowing and intentional, as required by Section

3   226. *Id.*

4       Under these circumstances, it is reasonable to discount Plaintiffs' wage

5   statement penalties claim by twenty percent (multiplying by .80) to account for the

6   risks involved in certifying a class and maintaining certification through trial, and by

7   an additional thirty-five percent (multiplying by .65) to account for the risk of

8   Defendants prevailing on their defenses. Accordingly, Plaintiff calculated the

9   reasonable settlement value of the wage statement claim to be $221,780. *Id.* ¶ 54.

10       **d.  Waiting Time Penalties**

11       Plaintiffs allege that Defendants have failed to timely pay compensation and

12   wages to Class Members upon their termination or resignation from employment, as

13   required by Labor Code sections 201 and 202.[9] *Id.* ¶ 55. At the time of mediation,

14   Plaintiffs' damages expert calculated the maximum waiting time penalties owed to

15   Class Members whose employment terminated within three years prior to filing the

16   Complaint to be $534,555.15. *Id.*

17       In response, Defendants argue that there is a good faith dispute as to whether

18   any unpaid wages are due and any failure to pay wages was not willful. *Id.* ¶ 56; *see*

19   *also* Labor Code § 203; 8 C.C.R. § 13520 (providing the definition of "willful").

20   Under these circumstances, it is reasonable to discount Plaintiffs' waiting time penalty

21   claim by twenty percent (multiplying by .80) to account for the risk of Defendants

22   prevailing to account for the risks involved in certifying a class and maintaining

23   certification through trial, and by an additional thirty-five percent (multiplying by .65)

24   to account for the risks that Defendants will prevail on their defenses. Accordingly,

25   Plaintiffs determined that the reasonable settlement value of the waiting time penalties

26   claim was $277,968.68. Pyle Decl. ¶ 56.

27

28   ──────────────

[9] This claim is derivative of Plaintiffs' claim for failure to provide split shift pay.

### e. PAGA Penalties

With respect to PAGA, assigning a penalty of $100 per pay period, and not stacking (compounding) penalties, results in approximately $445,600 in civil penalties.[10] *Id.* ¶ 57; *see also Bernstein v. Virgin Am., Inc*., 3 F.4th 1127, 1144 (9th Cir. 2021) (noting that subsequent PAGA penalties ($200 for subsequent violations per pay period) can be limited if a defendant has not been notified that it is violating the Labor Code.) Courts have broad discretion to reduce penalty amounts under PAGA. *See* Cal. Lab. Code § 2699(e)(2). Courts typically reduce PAGA penalties where there is unsettled law during the pendency of the litigation, where the case presents a matter of first impression that the court had to rule upon, or where an employer demonstrates a serious attempt to comply with the law. *See Thurman v. Bayshore Transit Management, Inc*., 203 Cal. App. 4th 1112 (2012); *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 941 (N.D. Cal. 2016).

Courts have also approved hybrid class action and PAGA settlements where only a fraction of the settlement was allocated to PAGA. *See, e.g., Nordstrom Comm'n Cases*, 186 Cal. App. 4th 576, 589 (2010) (settlement approved where $0 out of nearly $9 million settlement allocated to PAGA penalties); *Cotter*, 193 F.Supp.3d at 1037 (approving allocation of $1,000,000 to PAGA claims out of $27,000,000 settlement). In such cases, it is prudent to permit a higher compromise of the PAGA penalties to allow Class Members to receive the maximum amount of reimbursement for unpaid wages. *See, e.g, ZB, N.A. v. Superior Court*, 8 Cal. 5th 175, 196–97 (2019) (PAGA promotes the Labor Code's broad remedial purpose of protecting workers by increasing civil penalties while preserving and enhancing workers' rights to recover for lost wages); *O'Connor v. Uber Technologies, Inc*., 201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016) (courts may apply a "sliding scale" when reviewing PAGA penalties).

---

[10] There are 4465 total Pay Periods at issue for the PAGA claims in the Action.

Here, Defendants contend that they have compelling defenses to Plaintiffs' underlying claims. Pyle Decl. ¶¶ 49-56. Under these circumstances, it is reasonable to reduce the PAGA penalty to $20 per pay period, or $89,120. *Id.* ¶ 58. Accordingly, the proposed Settlement of PAGA penalties for $89,120 is reasonable. *See, e.g., Cotter*, 193 F.Supp.3d at 1037; *Garcia v. Gordon Trucking*, 2012 U.S. Dist. LEXIS 160052, at *32–33 (E.D. Cal. Oct. 31, 2012) (approving the amount of $10,000 out of $3.7 million toward settlement of PAGA claims); *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *14 (E.D. Cal. June 11, 2012) (approving the amount of $7,500 out of $518,245 toward settlement of PAGA claims); *Chu v. Wells Fargo Invs., LLC*, 2011 WL 672645, at *2–3 (N.D. Cal. Feb. 16, 2011) (approving the amount of $10,000 out of $6.9 million toward settlement of PAGA claims); *Franco v. Ruiz Food Prods.*, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving the amount of $10,000 out of $2.5 million toward settlement of PAGA claims).

In sum, Plaintiffs calculated the combined reasonable settlement value of the claims in this case, including the PAGA claim, to be $1,357,578.06. Pyle Decl. ¶ 47. The proposed Settlement of $1,475,000 exceeds that amount. A certain and substantial result for Class Members now, rather than a contingent one at some indefinite time years in the future, favors preliminary approval of the Settlement.

## D. THE COURT SHOULD APPROVE THE PROPOSED NOTICE

The Parties also seek approval of the proposed Notice and notice procedures. Rule 23(c)(2) provides that Class Members must receive the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Fed. R. Civ. P. 23(c)(2). Similarly, Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the propos[ed] [settlement]." Fed. R. Civ. P. 23(e)(1). "The combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfy the due process requirements of the

Fifth Amendment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).

Under the Settlement, Simpluris, an experienced class action administrator with a proven track record in administering class settlements, will serve as the Settlement Administrator. Pyle Decl. ¶¶ 3-16. Simpluris will send direct notice by first class mail to Class Members. Settlement ¶ 11. Class Members will then have forty-five (45) days to opt out or to object to the Settlement. *Id.* ¶¶ 1(z), 20, 22. Defendants will also comply with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, within 10 business days of the filing of this Motion. *Id.* ¶ 12.

To satisfy Rule 23(c)(2), a notice must state "in plain, easily understood language," information about "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)." Fed. R. Civ. P. 23(c)(2). In addition, notice of a proposed settlement must inform class members about the settlement's general terms, that the class members can seek complete information from the court files, and that any class member may be heard. "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill.*, 361 F.3d at 575 (citing *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir.1980)).

The proposed Notice here meets these requirements. *See* Ex. A to Settlement. The proposed mail and website notice is written in plain English and describes: (1) the nature of the claims in the case; (2) a description of the Class; (3) a description of the Settlement and the relief to be provided; (4) the consequences of opting out or remaining in the Class; and (5) how to get more information from this Court about the Settlement, the parties involved and the procedures to follow to object or opt out. *Id.*

PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

The Notice includes the deadline to object to the Settlement, and the date of the Fairness Hearing. *Id.* The Notice states that Class Members can enter an appearance through counsel if desired. *Id.* Finally, the Notice makes clear that Class Members do not need to do anything to receive benefits under the Settlement. *Id.*

Accordingly, the Notice meets all requirements and fully apprises Class Members about their options. *See Chao v. Aurora Loan Servs., LLC*, 2014 WL 4421308, at *6 (N.D. Cal. Sept. 5, 2014) (approving notice which "describes the nature of the action, summarizes the terms of the settlement, identifies the different classes and provides instruction on how to opt out and object, and the proposed fees and expenses to be paid to Plaintiffs' counsel and the claims administrator").

In addition, the Notice also includes: (1) Plaintiffs' counsel's contact information; (2) the URL for the settlement website; (3) instructions on how to access the case docket via PACER or in person; (4) the date of the final approval hearing and a statement that the date may change without further notice; and (5) a statement advising Class Members how to determine if the Final Approval Hearing is continued.

The Notice also complies with the federal rules and due process and maximizes the opportunity for Class Members to understand the Settlement, and to respond appropriately if they so choose.

Accordingly, Plaintiffs respectfully request that the Court approve the proposed form and manner of notice to the Class.[11]

## E. THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ARE PRELIMINARILY REASONABLE[12]

### 1. The requested attorneys' fees are preliminarily reasonable

Plaintiffs' counsel will file a separate motion requesting approval of their fees and costs at least thirty days before the date that Class Members must object or opt out

---

[11] Plaintiffs' Proposed Order Granting Preliminary Approval sets forth a proposed schedule for further proceedings.

[12] All requested attorneys' fees, litigation costs, and service awards are preliminary and subject to final approval of the Court at the final approval stage.

22

of the Settlement. Plaintiffs' counsel will seek attorneys' fees of up to $442,500 or 30%[13] of the Gross Settlement Amount, which is within the range for attorneys' fees in these types of cases. Pyle Decl. ¶ 56; *see, e.g.*, *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014) (finding "the request for attorneys' fees in the amount of 30% of the Gross Settlement Amount falls within the range of acceptable attorneys' fees in Ninth Circuit cases"); *Alikhan v. Goodrich Corp*., No. CV176756JGBRAOX, 2020 WL 4919382, at *9 (C.D. Cal. June 25, 2020) (awarding attorneys' fees that amount to just shy of 30% of the settlement fund).

This request is justified because the proposed Settlement of $1,475,000 represents 57% of the total potential value of the claims at issue, and more than the reasonable settlement value of those claims. Pyle Decl. ¶ 46.

To date, Plaintiffs' counsel has expended over 379.2 hours working on this matter amounting to $254,367.50 in attorneys' fees as follows:

| Name | Hours Worked | Rate | Amount |
|---|---|---|---|
| Hunter Pyle | 188.7 | $ 850.00 | $ 160,395.00 |
| Vincent Chen | 136.4 | $ 500.00 | $ 68,200.00 |
| Katherine Fiester | 41.6 | $ 500.00 | $ 20,800.00 |
| Chad Saunders | 9.6 | $ 450.00 | $ 4,320.00 |
| Darlene Sanchez (Paralegal) | 2.9 | $ 225.00 | $ 652.50 |
| **Totals** | **379.2** | | **$ 254,367.50** |

*Id.* ¶ 66.

By the time Plaintiffs' counsel request approval of their fees and costs, Plaintiffs' counsel expect to work at least an additional 60 hours for purposes of final approval and the extensive work related to settlement administration. Considering this additional time, Plaintiffs' counsel's lodestar will be closer to $298,367.50. *Id.* ¶ 67.

However, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their

---

[13] While the Settlement allows for attorneys' fees up to one third or 33.33%, Plaintiffs' counsel intends to seek attorneys' fees of no more than 30 percent of the Gross Settlement Amount.

normal hourly rates for winning contingency cases." *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002) (quoting *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1299 (9th Cir. 1994)). Courts may enhance this lodestar figure by a multiplier to account for a range of factors, such as the contingent nature of a case and the degree of success achieved. *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-36 (2001); *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977).

Furthermore, multipliers are routine in class action contingency cases and are commonly accepted in the context of a lodestar cross-check of a percentage fee. *See, e.g., Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051, n.6 (9th Cir. 2002) (affirming order awarding common fund fees where lodestar cross-check resulted in a multiplier of 3.65); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of 6.85 "falls well within the range of multipliers that courts have allowed.").

Here, Plaintiffs' counsel took this case on a purely contingent fee basis. Pyle Decl. ¶ 66. Furthermore, they achieved an excellent result. The requested fee of $442,500 represents a multiplier of less than 1.5, which is reasonable given that lodestar multipliers range from 1.0 to 4.0. *See Fernandez v. Victoria Secret Stores, LLC*, Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at **12, 16 (C.D. Cal. July 21, 2008) (awarding 34% of the common fund as attorneys' fees, which represented a multiplier to the lodestar amount: "Both of these increases appropriately award class counsel for their risk in taking this case on a contingency basis and litigating the case with diligence and skill."); *Alikhan v. Goodrich Corp.*, No. CV176756JGBRAOX, 2020 WL 4919382, at *9 (C.D. Cal. June 25, 2020) (applying a 2.25 lodestar multiplier to award fees amounting to just shy of 30% of the settlement fund); *McKenzie v. Federal Exp. Corp.*, Case No. CV 10-02420 GAF (PLAx), 2012 WL 2930201 (C.D. Cal. July 2, 2012) (awarding multiplier of 3.2 in class action settlement where plaintiff alleged violations of Labor Code section 226).

**PLAINTIFFS' NOTICE OF AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Accordingly, because Plaintiffs' counsel's lodestar will amount to $442,500 with a reasonable multiplier of less than 1.5 at the conclusion of the case, the 30% requested fee award should be preliminarily approved.

### 2. The litigation costs incurred are preliminary reasonable

To date, Plaintiffs' counsel has incurred just over $42,450 in necessary and reasonable litigation costs. Pyle Decl. ¶ 68. Attorneys are entitled to "recover as part of the award of attorney's fees those out of pocket expenses that "would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986). Here, Plaintiffs will provide detailed a cost itemization at the final approval stage that includes costs incurred to retain a damages expert, necessary and reasonable travel expenses, court costs, and service fees.

### 3. The Class Representative Service Awards are reasonable.

The Settlement allows for service awards of up to $10,000 for each Plaintiff. Each Plaintiff has provided a declaration demonstrating that she took great personal and professional risk in bringing this lawsuit and that she has diligently represented the class. Pyle Decl. ¶¶ 43, 69-71; *see generally* Lopez Decl. ¶¶ 1-17; Mitchell Decl. ¶¶ 1-17; Neice Decl. ¶¶ 1-16; and Diaz Decl. ¶¶ 1-16.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask the Court to grant their Motion for Preliminary Approval of Settlement in its entirety.

DATED: September 17, 2021      HUNTER PYLE LAW

By: /s/ Hunter Pyle
      Hunter Pyle
      Katherine Fiester
Attorneys for Plaintiffs and the Putative Class

1  **HUNTER PYLE, SBN 191125**
2  **KATHERINE FIESTER, SBN 301316**
   HUNTER PYLE LAW
3  1300 Broadway, Eleventh Floor
   Oakland, California 94612
4  Telephone: (510) 444-4400
   Facsimile: (510) 444-4410
5  Emails:   hunter@hunterpylelaw.com;
6            kfiester@hunterpylelaw.com
7
8  Attorneys for Plaintiffs and the Putative Class

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**
11

12  NORMA LOPEZ, CINDY MITCHELL,      Case No.: 5:19-cv-01669-JGB-SHK
    VADA NEICE, and MARY DIAZ, on
13  behalf of themselves and all others   Class and Collective Action
    similarly situated;
14                                          **DECLARATION OF HUNTER PYLE**
15              Plaintiffs,               **IN SUPPORT OF PLAINTIFFS'**
                                          **MOTION FOR PRELIMINARY**
16        v.                              **APPROVAL OF SETTLEMENT**
17
18  FIRST STUDENT, INC., FIRST          Date:      October 18, 2021
    STUDENT MANAGEMENT, LLC,           Time:      9:00 a.m.
19  FIRSTGROUP AMERICA, INC., and      Ctrm:      1
    DOES 1 through 10, inclusive,      Judge:     Hon. Jesus G. Bernal
20
21              Defendants.
22
23
24
25
26
27
28

I, Hunter Pyle, declare as follows:

1.     I am a member in good standing of the Bar of the State of California and principal of the law firm Hunter Pyle Law, in Oakland, California.  I am counsel of record for Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz ("Plaintiffs") and the putative class. I have personal knowledge of the facts set forth in this declaration and could and would testify competently to them.

2.     Attached hereto as **Exhibit 1** is the Joint Stipulation of Class and PAGA Representative Action Settlement and Release executed by the Parties (the "Settlement"). Exhibit A to the Settlement is the Proposed Notice of Class Action Settlement.

## MY BACKGROUND AND EXPERIENCE

3.     In 1997, I received a J.D. from Boalt Hall School of Law at the University of California at Berkeley.

4.     As a law student, I clerked for Professor David Feller, one of the premier scholars in the field of labor and employment law.  I also worked as a law clerk at Eggleston, Siegel & Lewitter; Beeson, Tayer & Bodine; and Davis, Cowell & Bowe. Each of these firms represents employees in the labor and employment context.

5.     I have been practicing law since December 1997.  From December 1997 through October 2003, I was an associate at Siegel & Yee in Oakland, where I focused my practice mainly on employment law.  In that capacity, I was the primary attorney for numerous employment law cases that resolved prior to trial, handling all aspects of these cases.  Additionally, I served as second chair in approximately ten trials.

6.     In October 2003, I left Siegel & Yee and became a partner at Sundeen Salinas & Pyle.  In 2017, I left Sundeen Salinas & Pyle and created Hunter Pyle Law.  Since that time, most of my cases have involved employment law, and many

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

of them have involved wage and hour matters. Over the past ten years, I have tried approximately fifteen cases to verdict.

7.     I have been approved as class counsel in the following cases (among others), which resolved favorably for the class members: *Jackson v. ACE* (Alameda County Superior Court case no. RG05241698; settled for $1.1 million); *Beasley, et al., v. Allied Cash Advanc*e (Alameda County Superior Court case no. 07359698; settled for $400,000); *Schakow v. Lerner New York, Inc., et al.* (Contra Costa County case no. MSC08-01145; settled for $850,000); *Brown, et al. v. George S. May International Company* (Alameda County Superior Court case no. 08413991; settled for $750,000); *Miriam Aquino Ruelas, et al. v. Neilmed Products, Inc.* (Sonoma County Case No. SCV245231; settled for approximately $600,000); *Randolph et al. v. AT&T Wireless Services, Inc., et al.* (Alameda County Superior Court case no. RG05193855; settled for approximately $70 million); *Booker II, et al. v. Auto Guardian, et al.* (Alameda Superior Court case No. RG11562117; settled for $775,000); *Alonzo, et al. v. First Transit, Inc.* (Los Angeles Superior Court case no. BC433932; settled for $2 million); *Lopez, et al. v. City of Montebello* (Los Angeles Superior Court case no. BC553076; settled for $1 million); *Sadiq v. Greatwide Dedicated Transport II, LLC* (Alameda County Superior Court case no. RG15789114; settled for $762,500); *Kostyuk v. Golden State Overnight Delivery Service, Inc.* (Alameda County Superior Court case no. RG14727191; settled for $1.25 million); *Newcomb, et al. v. J.B. Hunt Transport, Inc*. (Alameda County Superior Court case no. RG16815734; settled for $750,000); *Hooper v. URS Midwest, Inc.,* (San Bernardino Superior Court Case No. CIV DS1607489; settled for approximately $3 million); *Brooks, et al. v. Chariot Transit, Inc.* (San Francisco Superior Court case no. CGC-16-554398; settled for $750,000); *Austin, et al. v. Foodliner, Inc*. (United States District Court, Northern District of California case no. 4:16-cv-07185-HSG; settled for $1.2 million); *Castro, et al. v. ABM Industries, Inc., et al.* (United States District Court, Northern District of California case no. 4:17-cv-

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

03026-YGR; settled for $5,400,000) and *Toolajian v. Air Methods Corporation,* (Northern District of California case no. 18-cv-06722-AGT; certified class and PAGA action; settled for $1.75 million.).

8.  Each of these cases, except for the *Randolph* case, was a wage and hour class action. (*Randolph* was a consumer class action.)

9.  I am the primary contributor to an employment law related blog, www.workersrightsblog.com.  Additionally, I am a co-author of "Civil Penalties under the California Private Attorneys General Act (PAGA)," Employment Damages and Remedies (CEB 2014).  I have also served as the updating editor for the Employee and Union Member Guide to Labor Law (West), Chapter 2 ("Opposing Discriminatory Discharges").

10.  In 2006, 2007, 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016, and 2017 I have organized and/or presented at annual CLEs put on by the Alameda County Bar Association regarding employment law and class actions.  The faculty for these CLEs has included the Honorable Richard A. Kramer, the Honorable Ronald Sabraw, the Honorable Bonnie Sabraw, the Honorable Robert Freedman, the Honorable Steven Brick, the Honorable George Hernandez II, the Honorable David Flinn, Jenna Whitman, Walter Stemmler and Phillip Obbard.

11.  I am a Lecturer at U.C. Berkeley Law School (formerly known as Boalt Hall). From 2014 to 2016, I, along with one other Lecturer, taught the employment law course to second and third year law students. The course materials included a survey of California wage and hour law.  From 2017 to present I have taught an advanced seminar on California Wage and Hour Law.

12.  Almost every year from 2011 to present I have served on the faculty of the Stanford Law School Trial Advocacy Workshop.

13.  Almost every year from 2011 to present, I have been a panelist at annual seminars put on by Bridgeport regarding California wage and hour law, including the Wage and Hour Litigation Seminar.

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

14.     I have made numerous other presentations regarding wage and hour law and class actions. For example, in 2019 and 2020, I spoke on several panels regarding California's Private Attorneys General Act. I have also spoken on separate panels discussing trends in class action litigation.

15.     I am a member of the California State Bar Labor and Employment Law Section.  In addition, I regularly serve as a volunteer attorney at the Workers' Rights Clinic put on by the Legal Aid Society of San Francisco Employment Law Center.  I am also a member or past member of the Alameda County Bar Association Labor and Employment Section and Trial Practice Section.

16.     My extensive experience in litigating employment wage and hour matters was integral in evaluating the strengths and weaknesses of the case against Defendants and negotiating a fair and reasonable settlement.

**SUMMARY OF LITIGATION, BACKGROUND & INVESTIGATION**

17.     Plaintiffs Norma Lopez, Cindy Mitchell and Vada Neice commenced this proposed class action against Defendants in San Bernardino County Superior Court on July 11, 2019. Plaintiffs alleged causes of action for: (1) failure to pay split shift wages; (2) failure to provide complete and accurate wage statements; and (3) unfair competition claims pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*.

18.     Plaintiffs subsequently gave notice to the California Labor Workforce Development Agency ("LWDA") to administratively exhaust their claims for related civil penalties under the California Private Attorneys General Act, Labor Code § 2698 *et seq*. ("PAGA") on July 15, 2019.

19.     On August 30, 2019, Defendants removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").  Plaintiffs filed a motion to remand on October 21, 2019. The Court denied Plaintiffs' motion on December 2, 2019.

20.     Plaintiffs submitted an amended PAGA notice to the LWDA on December 6, 2019 to encompass claims for minimum wage.

21.     On January 21, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC") adding Mary Diaz as a named plaintiff, and causes of action for waiting time penalties and PAGA civil penalties on behalf of the State of California and all aggrieved employees. The FAC seeks monetary damages, statutory penalties, and restitution for the class claims, civil penalties for the PAGA claim, certification of the class, and a declaratory judgment.

22.     Plaintiffs' counsel is aware of Defendants' practices and procedures concerning payment related to working split shifts. Plaintiffs conducted substantial discovery in this matter, including the exchange of thousands of pages of documents. Defendants produced timesheets and wage statements for 827 of the 879 (or 94%) of the estimated Class Members.  Plaintiffs then hired a damages expert to conduct a throughout damages analysis for the Class.

23.     Thereafter, the Parties agreed to mediate the action with the Hon. Steven Denton (Ret.) on May 12, 2021.

24.     After thorough arm's-length negotiations with Hon. Steven Denton's assistance, the Parties were able to reach agreement as to a complete resolution of the Action. Thereafter, the Parties negotiated and executed a memorandum of understanding ("MOU"). The Parties then negotiated the terms of the Settlement in a long-form stipulation.

25.     Based on a thorough investigation and evaluation of this case, Plaintiffs' counsel and Plaintiffs have concluded that the settlement with Defendants for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and potential appellate issues.

26.     The Settlement represents the culmination of intensive arm's-length negotiations, after extensive discovery, with the assistance of a professional mediator. Plaintiffs and the interests of the Class were represented in settlement negotiations by a team of attorneys who have considerable experience in wage and hour litigation, and who are, therefore, well-versed in the legal and factual issues. Defendants were similarly represented by counsel with extensive experience defending complex litigation, including wage and hour class actions.  The settlement negotiations were contested and conducted in good faith. Plaintiffs and Plaintiffs' counsel recognize that Defendants have raised factual and legal defenses in the action that present a risk that Plaintiffs may not prevail, that a class might not be certified for trial, and that the claims of one or more Class Members may be defeated. Plaintiffs' counsel consider this Settlement to be an excellent result.

## SUMMARY OF SETTLEMENT TERMS

27.     The Court has not yet certified a class.  The parties have reached a class-wide settlement and Plaintiffs request, by this motion, that the Court certify the class for settlement purposes.

28.     The Class is defined as: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (the "Class" or "Class Members.")

29.     Defendants have agreed to pay $1,475,000.00[1] (the "Gross Settlement Amount") to resolve the claims of Plaintiffs and Participating Class Members.  The Gross Settlement Amount will be used to pay the following: (1) compensation to all Participating Class Members in settlement of their claims; (2) civil penalties paid to the State of California and PAGA Members in settlement of the PAGA claims (the

---

[1] Defendants will separately pay their portion of taxes, contributions, fees and any other amounts owed to government agencies and/or tax authorities in relation to any payments pursuant to the Agreement.

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

"PAGA Payment") in the amount of $89,120.00; (3) court approved attorneys' fees (not to exceed one-third (or 33.33 percent) of the Gross Settlement Amount) and costs estimated to be no more than $45,000; (4) Settlement Administration Costs necessary to administer the Settlement, including payment for the services of the Settlement Administrator not to exceed $9,999; and (5) a service payment to each Plaintiff not to exceed $10,000 subject to Court approval.

30.     There will be a direct monetary distribution to the approximately 879 Class Members.  Class Members will not need to file a claim or do anything affirmative to receive payment; they will simply receive a check for the amount due to them under the Settlement. The average recovery per class member is anticipated to be at least $965.17.

31.     All settlement funds will be paid out, and none will revert to Defendants.  After all payments have been issued to the Participating Class Members, after reasonable efforts have been made to locate Class Members, any amount remaining Net Settlement Amounts from uncashed checks will be paid to Legal Aid at Work ("LAAW"). LAAW is a California-based nonprofit organization that provides legal aid to low-income, working families throughout the state, including in the area of wage and hour law.   LAAW's mission of enforcing worker protections through litigation and policy advocacy furthers the interests of California employees like the Attendants, Bus Aids or Bus Monitors here in preventing and remedying wage theft and other labor issues.

32.     If the Court grants final approval of the Settlement, the Class will be deemed to have released Defendants from all claims as described in paragraph 39 of the Settlement Agreement.  There is no difference between the claims to be released and the claims in the FAC.

33.     Plaintiffs will also provide a general release, including a release of unknown claims under California Civil Code § 1542.

34.     The Parties have agreed to use Simpluris, Inc. as the Settlement Administrator.  Simpluris has successfully administered a large number of wage and hour class action settlements in an efficient and effective manner. Simpluris provided a settlement administration bid amounting to $9,999.

35.     Plaintiffs' counsel received three bids from third-party settlement administrators for this case before choosing Simpluris. Simpluris had the lowest bid. I worked with Simpluris on several occasions and have had very positive experiences with their effective and efficient settlement administration skills.

36.     In the past two years, my firm has previously engaged Simpluris as the settlement administrator in the following cases:

| Case Name | First Mailing/Distribution Date |
|---|---|
| *Ortega et al. v. JBA Trucking Company et al* | 6/28/2019 |
| *Winston, et al. v. Comcast Spectacor Holding Company LLC et al* | 1/10/2020 |
| *Botros v. Walgreen Co.* | 7/2/2020 |
| *Terry et al. v. WeDriveU* | 8/26/2021 |

37.     Under the terms of the Settlement Agreement, after entry of the Judgment, the Court shall have continuing jurisdiction over the Settlement as required by law, including: (i) the interpretation and enforcement of the terms of the Settlement; (ii) settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement.

**OTHER INFORMATION REGARDING THE SETTLEMENT**

38.     The proposed Settlement Class satisfies Rule 23(a)'s numerosity requirement.  Here, there are approximately 879 Class Members.

39.     Plaintiffs' claims are typical of all other Class Members in that Plaintiffs were/are Attendants, Bus Aids or Bus Monitors of Defendants, seeking to

1    represent a Class of former and current Attendant, Bus Aid or Bus Monitors who

2    have all been subject to the same pay policies and procedures of Defendants.

3            40.    Plaintiffs assert the same legal claims on behalf of themselves and the

4    proposed Settlement Class and seeks to recover damages as a result of Defendants'

5    common course of conduct.  These satisfy Rule 23(a)'s typicality requirements.

6            41.    Plaintiffs and the Class they seek to represent share common interests

7    with respect to seeking compensation for Defendants' alleged violations of

8    California's wage laws.  The central question presented is whether Plaintiffs and

9    Attendants, Bus Aid or Bus Monitor of Defendants have been deprived of their full

10   pay when working split shifts. Plaintiffs' claims are the same as those of the

11   proposed Class, and will be resolved in the same way. All Attendants, Bus Aids or

12   Bus Monitors are subject to the same policies, practices and procedures with respect

13   to pay, and all are alleged to have suffered the same type of wage loss, i.e., unpaid

14   wages when working split shifts.

15           42.    Defendants' defenses are also common and predominant. Defendants

16   contend that liquidated damages are not available for failure to provide split shift

17   pay. Defendants further argue that there are no wage statement violations because

18   they did not intentionally fail to include split shift pay on wage statements. These

19   defenses run to the proposed Class as a whole. There are no claims or defenses

20   individual to Plaintiffs that would predominate over common questions of fact and

21   law.

22           43.    Plaintiffs have fairly and adequately represented the Class.  In addition,

23   Plaintiffs have no interests that are antagonistic to the Class.  Plaintiff have actively

24   participated in this litigation and has worked closely with Plaintiffs' counsel to

25   prosecute the claims.

26           44.    This case has been vigorously litigated thus far. Plaintiffs' counsel

27   conducted extensive investigation into the facts of this case. Moreover, during the

28   course of the litigation, my firm: (1) drafted and filed the complaint and First

---

**9**

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Amended Complaint; (2) exhausted PAGA remedies; (3) drafted a motion to remand and reply; (4) propounded multiple sets of written discovery; (5) reviewed voluminous documents; (6) retained an expert to analyze time and payroll data; (7) interviewed multiple putative class members; (8) prepared for mediation; (9) negotiated the MOU and the long-form settlement agreement; and (10) drafted the motion for preliminary approval and supporting documents. The work performed by Plaintiffs' counsel in this matter, as well as their substantial experience, provides more than ample basis for finding that they are well qualified to serve as class counsel.

45.     There is no concern of collusion in this case.  Plaintiffs' counsel are not slated to receive a disproportionate distribution of the settlement.  The bulk of the Parties' negotiations occurred during a settlement conference presided over by Hon. Steven Denton (Ret.)

**VALUATION OF THE CLAIMS AT ISSUE**

46.     At mediation, Plaintiffs calculated the total potential value of the action to be $2,571,366.33. The proposed Settlement of $1,475,000 represents 57% of the total potential value.

47.     As set forth below, Plaintiffs' counsel assigned a reasonable settlement value to each of the claims asserted on behalf of the Class Members. Plaintiffs' counsel estimates the total reasonable settlement value of those claims, including PAGA to be $1,357,578.06.

48.     Defendants deny all of the substantive allegations in the action. Therefore, because liability is highly contested, both sides will incur significant time, expenses, and risk if this Action continues. While Plaintiffs and Plaintiffs' counsel believe Plaintiffs would ultimately succeed in obtaining certification of the Class and in prevailing on the merits at trial, the litigation in this action to date has informed the Parties of the risks of continued litigation. The Settlement provides a fair and

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

reasonable monetary recovery for the Class in the face of disputed claims. Plaintiffs conducted the following analysis of potential damages for each of the class claims.

### *Failure to Provide Split Shift Pay Claim*

49.     Plaintiffs' unpaid wages claim arises out of Defendants' practice of not paying split shift pay. Plaintiffs retained a damages expert to calculate the damages based on Defendants' production of timesheets and wage statements for 827 of the 879 Class Members.[2] At the time of mediation Plaintiffs' expert estimated that Defendants would be liable to the Class Members for $582,355.59 in split shift pay, including interest.

50.     Plaintiffs do not find Defendants' defenses to their split shift pay claim compelling. Under these circumstances, it is reasonable to only discount Plaintiffs' claim for split shift pay by twenty percent (multiplying by .80) to account for the risks involved in certifying a class and maintaining certification through trial. Accordingly, Plaintiff calculated the reasonable settlement value of this claim to be $465,884.87.

### *Liquidated Damages Claim*

51.     Plaintiffs' claim for liquidated damages is derivative of their claim for failure to provide split shift pay. At the time of mediation, Plaintiffs' expert estimated Defendants' liability to the Class Members for liquidated damages claim to be $582,355.59.

52.     However, Defendants contend that they owe no liquidated damages because their failure to pay slit shift wages was in good faith. See Labor Code § 1194.2(b).  Under these circumstances, it is reasonable to discount Plaintiffs' unpaid wages claim by twenty percent (multiplying by .80) to account for the risks involved in certifying a class and maintaining certification through trial, and by an additional thirty-five percent (multiplying by .65) to account for the risk of Defendants

---

[2] The expert then used the records for the 827 Class Members to extrapolate damages for the remaining 52 Class Members.

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

prevailing on its defense. Accordingly, Plaintiffs determined that the reasonable settlement value of this claim was $302,824.91.

### *Wage Statement Penalties Claim*

53. At the time of mediation, Plaintiffs' expert calculated the maximum recovery for Plaintiffs' wage statement claim under Labor Code section 226(e) to be $426,500.00. However, Defendants deny any wage statement violations and claim that whatever conduct occurred was not knowing and intentional, as required by Section 226.

54. Under these circumstances, it is reasonable to discount Plaintiffs' wage statement penalties claim by twenty percent (multiplying by .80) to account for the risks involved in certifying a class and maintaining certification through trial, and by an additional thirty-five percent (multiplying by .65) to account for the risk of Defendants prevailing on their defenses. Accordingly, Plaintiff calculated the reasonable settlement value of this claim to be $221,780.00. wage statement claim therefore exceeds the reasonable settlement value.

### *Waiting Time Penalties Claim*

55. Plaintiffs allege that Defendants have failed to timely pay compensation and wages to Class Members upon their termination or resignation from employment, as required by Labor Code sections 201 and 202.[3] At the time of mediation, Plaintiffs' damages expert calculated the maximum waiting time penalties owed to Class Members whose employment terminated within three years prior to filing the Complaint to be $534,555.15.

56. In response, Defendants argue that there is a good faith dispute that any unpaid wages are due and any failure to pay wages was not willful. See Labor Code § 203; 8 C.C.R. § 13520 (providing the definition of "willful"). Under these circumstances, it is reasonable to discount Plaintiffs' waiting time penalty claim by

---

[3] This claim is derivative of Plaintiffs' claim for failure to provide split shift pay.

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

twenty percent (multiplying by .80) to account for the risk of Defendants prevailing to account for the risks involved in certifying a class and maintaining certification through trial, and by an additional thirty-five percent (multiplying by .65) to account for the risks that Defendants will prevail on their defenses. Accordingly, Plaintiffs determined that the reasonable settlement value of this claim was $277,968.68.

### *PAGA Penalties Claim*

57.     With respect to PAGA, there are 4465 total Pay Periods at issue for the PAGA claims in the Action. Assigning a penalty of $100 per pay period, and not stacking (compounding) penalties, results approximately $445,600.00 in damages.

58.     Here, as described above, Defendants contend that they have compelling defenses to Plaintiffs' underlying claims. Under these circumstances, it is reasonable to reduce the PAGA penalty to $20 per pay period, or $89,120.00.

### NOTICE PROCEDURE

59.     Under the Settlement Agreement, Simpluris, an experienced class action administrator with a proven track record in administering class settlements, will serve as the Settlement Administrator. Simpluris will send direct notice by first class mail to Class Members. Class Members will have forty-five (45) days to opt out or to object to the Settlement. Defendants will also comply with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, within 10 business days of the filing of this Motion.

60.     The proposed mail and website notice is written in plain English and describes: (1) the nature of the claims in the case; (2) a description of the Class; (3) a description of the Settlement and the relief to be provided; (4) the consequences of opting out or remaining in the Class; and (5) how to get more information from this Court about the Settlement, the parties involved and the procedures to follow to object or opt out. The Notice includes the deadline to object to the Settlement, and the date of the Fairness Hearing.  The Notice states that Class Members can enter an

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

appearance through counsel if desired. Finally, the Notice makes clear that Class Members do not need to do anything to receive benefits under the Settlement.

61.     In addition, the proposed Notice Packet also includes: (1) Plaintiffs' counsel's contact information; (2) the URL for the settlement website; (3) instructions on how to access the case docket via PACER or in person; (4) the date of the final approval hearing and a statement that the date may change without further notice; and (5) a statement advising Class Members how to determine if the Final Approval Hearing is continued.

## COMPARABLE CLASS ACTION SETTLEMENTS

62.     In *Ortega, et al. v. JBA Trucking Company*, Case No. BC583827 (Los Angeles Superior Court) the Court approved a $500,000 settlement on behalf of 59 truck drivers for claims for failure to: pay minimum wage and overtime, provide meal breaks, permit rest breaks, reimburse business expenses, provide adequate wage statements, waiting time penalties and PAGA claims. $21,420 was allocated to PAGA, $6,000 to administrative costs, litigation costs of $65,000, and Class Representative Awards of $10,000 to each of the three named Plaintiffs in the case.

63.     In *Austin, et al. v. Foodliner, Inc*. (United States District Court, Northern District of California case no. 4:16-cv-07185-HSG), the court approved a non-reversionary settlement of $1,200,000 on behalf of 217 truck drivers. The claims were brought on behalf of low wage workers for failure to pay minimum wage for time worked during nonproductive time and rest periods, as well as for meal and rest period violations. Hunter Pyle was class counsel. Of the total settlement fund, $300,000 was requested and awarded in attorneys' fees, $22,221.97 was requested and awarded in litigation costs, $81,405 was allocated to PAGA (75% of which was paid to the Labor Workforce and Development Agency), $10,000 was awarded to one of the five class representatives, $5,000 was awarded to each of the remaining four class representatives and $4,500 was allocated to administrative expenses. The average recovery per class member was $3,558.64.

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

64.   In *Hooper v. URS Midwest, Inc.*, Case No. CIV DS1607489 (San Bernardino County Superior Court), the court approved a non-reversionary settlement of approximately $3,000,000 on behalf of 351 truck drivers. The claims were brought on behalf of low wage workers for failure to pay minimum wage for time worked during nonproductive time and rest periods, as well as for meal and rest period violations. Hunter Pyle was class counsel along with two other firms. Of the total settlement fund, $993,069.75 was requested and awarded in attorneys' fees, $25,226.89 was requested and awarded in litigation costs, $30,000 was allocated to PAGA (75% of which was paid to the Labor Workforce and Development Agency), $10,000 was awarded to each of the three class representatives, and $25,000 was allocated to administrative expenses. The average recovery per class member was $1,836.37, which included reimbursements under Labor Code § 2802 for drivers' use of their personal cell phone for business purposes. The remainder of settlement funds from uncashed checks was $2,080.67. That amount was sent to the State of California's Unclaimed Wages Fund.

**THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ARE PRELIMINARILY REASONABLE**

***Attorney's Fees***

65.   Prior to the hearing on the motion for final approval of the Settlement, Plaintiffs' counsel will file a separate motion requesting approval of their attorneys' fees and costs. Plaintiffs' counsel will seek attorneys' fees of up to $442,500 or 30% of the Gross Settlement Amount, plus reasonable expenses advanced and carried by Plaintiffs' counsel during this litigation.

66.   Here, Plaintiffs' counsel took this case on a purely contingent fee basis. To date, my firm has expended over 379.2 hours working on this matter amounting to $254,367.50 in attorneys' fees as follows:

//

//

| Name | Hours Worked | Rate | Amount |
|---|---|---|---|
| Hunter Pyle | 188.7 | $ 850.00 | $ 160,395.00 |
| Vincent Chen | 136.4 | $ 500.00 | $ 68,200.00 |
| Katherine Fiester | 41.6 | $ 500.00 | $ 20,800.00 |
| Chad Saunders | 9.6 | $ 450.00 | $ 4,320.00 |
| Darlene Sanchez (Paralegal) | 2.9 | $ 225.00 | $ 652.50 |
| Totals | 379.2 | | $ 254,367.50 |

67.     By the time my firm requests approval of their fees and costs, I expect my firm to work at least an additional 60 hours for purposes of final approval and the extensive work related to settlement administration. Considering this additional time Plaintiffs' counsel's lodestar will be closer to $298,367.50. This accounts for an additional 40 hours for Mr. Pyle at an hourly rate of $850 and 20 hours for Ms. Fiester at an hourly rate of $500.

### Litigation Costs

68.     My firm has advanced all litigation costs for this matter. To date, Plaintiffs' counsel has incurred just over $42,450 in necessary and reasonable litigation costs. I estimate that reasonable costs in this matter should not exceed $45,000. Plaintiffs will provide detailed cost itemization at the final approval stage that includes costs incurred to retain a damages expert, necessary and reasonable travel expenses, court costs, and service fees.

### Named Plaintiffs' Service to the Settlement Class

69.     Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz have performed substantial service on behalf of the class since this case was filed. Plaintiffs have actively participated in the litigation by assisting Plaintiffs' counsel in with background investigation and evaluation of the claims, searching for and providing documents related to the case, drafting the complaint and First Amended Complaint and LWDA notices, drafting Plaintiffs' motion for remand, participating in case strategy meetings, participating in the mediation process, assisting with the

motion for preliminary approval, and diligently staying updated about the progress of the case.

70.     At the final approval stage, my firm will ask the Court to approve a service award to each of the Plaintiffs of $10,000 to be paid out of the Settlement Fund to recognize Plaintiffs for their time and effort serving as class representatives.

71.     Plaintiffs are low-wage workers who took great personal and professional risk in bringing this lawsuit.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, and that this declaration was executed on September 17, 2021, in Oakland, California.


_____/s/ Hunter Pyle_____
Hunter Pyle

**DECLARATION OF HUNTER PYLE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# EXHIBIT 1

EXHIBIT 1

HUNTER PYLE, SBN 191125
KATHERINE FIESTER, SBN 301316
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Email: hunter@hunterpylelaw.com;
Email: kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

DAVID J. DOW, Bar No. 179407
ddow@littler.com
JOCELYN D. HANNAH, Bar No. 224666
jhannah@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
Telephone: 619.232.0441 /Fax: 619.232.4302

Attorneys for Defendants
FIRST STUDENT, INC.; FIRST STUDENT
MANAGEMENT, LLC; and FIRSTGROUP
AMERICA, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated, | Case No. 5:19-cv-01669-JGB-SHK |
| Plaintiffs, | **JOINT STIPULATION OF CLASS AND PAGA REPRESENTATIVE ACTION SETTLEMENT AND RELEASE** |
| v. | |
| FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive, | |
| Defendants. | |

EXHIBIT 1

## JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

This Joint Stipulation of Class and PAGA Representative Action Settlement and Release states the proposed terms of the class action settlement of the above-entitled action. The terms stated below are agreed to and binding on Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz (collectively, "Plaintiffs") and Defendants First Student, Inc., First Student Management, LLC and FirstGroup America, Inc. ("Defendants"). Once approved by the Court, the Settlement shall be binding under the terms stated herein on Plaintiffs, Defendants, and the Class Members (as defined below).

## SUMMARY OF THE SETTLEMENT

The Parties herein, as stated in more detail in the terms and definitions below, have agreed to settle on a class basis all claims asserted by Plaintiffs for various alleged violations of the California Labor Code and the Unfair Competition Law. The class consists of all individuals employed by First Student, Inc. or First Student Management, LLC in the State of California as non-exempt Attendants, Bus Aids and Bus Monitors during the class period defined below. The Parties conducted mediation of this case on May 12, 2021 with Hon. Steve Denton, during which the Parties agreed that all claims alleged herein, as defined below, would be settled on a class basis for the maximum amount of One Million Four Hundred Seventy Five Thousand Dollars ($1,475,000.00), with no portion of the settlement reverting back to Defendants. Of that settlement amount, Eighty Nine Thousand One Hundred Twenty Dollars ($89,120.00) would be designated as PAGA Penalties under the Private Attorneys General Act, seventy-five percent (75%) of which will be paid to the California Labor and Workforce Development Agency and twenty-five percent (25%) of which will be paid to members of the class in accordance with the terms herein below.

EXHIBIT 1

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

**DEFINITIONS**

1.      The following definitions are applicable to this Settlement, in addition to other terms defined elsewhere in the Settlement:

a.      "Action" shall mean the following lawsuit: *Lopez, et al. v. First Student, Inc., et al.*, Central District of California Case No. 5:19-cv-01669-JGB-SHK including the original and First Amended Complaint.

b.      "Attorneys' Costs" means reasonable attorneys' costs approved by the Court for Class Counsel's litigation and resolution of the Actions incurred and to be incurred by Class Counsel in the Actions up to, but not to exceed, Sixty Thousand Dollars ($60,000.00). Attorneys' Costs shall be paid to Class Counsel.  The Attorneys' Costs shall be paid from the Gross Settlement Amount.

c.      "Attorneys' Fee Award" means the attorneys' fees agreed upon by the Parties herein and approved by the Court for Class Counsel's litigation and resolution of the Action up to, but not to exceed, thirty three and one third percent (33.33%) of the Gross Settlement Amount.  Attorneys' Fees shall be paid to Class Counsel from the Gross Settlement Amount.

d.      "Class" and "Class Members" for purposes of this Settlement shall be defined as: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time during the Class Period. The persons identified in this paragraph are "Class Members" and are collectively referred to as "the Class."

e.      "Class Counsel" shall mean Hunter Pyle and Katherine Fiester of Hunter Pyle Law.

f.      "Class Period" shall mean the time period from July 11, 2015 through July 24, 2021 ("Class Period").

g.      "Class Representative Service Award" shall mean an award up to, but not to exceed, Ten Thousand Dollars ($10,000.00) to each of the Plaintiffs in

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

3

EXHIBIT 1

recognition of Plaintiffs' efforts and work in prosecuting the Action on behalf of Class Members, risks undertaken for the payment of costs in the event of loss, and the giving of a general release of all claims. The Class Representative Service Awards shall be paid from the Gross Settlement Amount.

h. "The Court" shall mean the Central District of California, The Honorable Jesus G. Bernal, Case No. 5:19-cv-01669-JGB-SHK, or such other Central District Judge as may be assigned to hear this matter.

i. "Defendants" shall mean Defendants First Student, Inc., First Student Management, LLC and FirstGroup America, Inc.

j. "Effective Date" shall be thirty one (31) calendar days from the date of entry of an Order Granting Final Approval of the Settlement and Entering Judgment described below. However, if an appeal is filed within thirty (30) days of entry of an Order Granting Final Approval of the Settlement and Entering Judgment, then the Effective Date shall be the latest of: (i) the date of final affirmance of the Order Granting Final Approval; (ii) the date of final dismissal of any appeal from the Order Granting Final Approval of the Settlement and Entering Judgment or the final dismissal of any proceeding to review the Order Granting Final Approval that has the effect of confirming the Order Granting Final Approval with no avenue for additional appeal or review available.

k. "Employer Taxes" means Defendants' share of employer-sided payroll taxes to be paid on that portion of the Class Member's Individual Settlement Payment characterized as wages, i.e. FICA, FUTA, payroll taxes, and/or any similar tax or charge. The Employer Taxes will be paid outside of and in addition to the Gross Settlement Amount.

l. "Gross Settlement Amount" (or "GSA") shall mean the maximum non-reversionary amount of One Million Four Hundred Seventy Five Thousand Dollars ($1,475,000.00) payable by Defendants as provided for by this Agreement.

m. "Individual Settlement Payment" means the amount each Class

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

4

EXHIBIT 1

Member shall be entitled to receive pursuant to the Settlement. This payment will include compensation pursuant to the terms of this Agreement for all Workweeks during the Class Period and the number of Pay Periods worked during the PAGA Period. Class Members who opt-out of the non-PAGA portion of the Settlement shall only receive payment based on the number of Pay Periods worked during the PAGA Period.

n.  "LWDA Payment" means the seventy-five percent (75%) portion of the PAGA Penalties to be paid to the California Labor and Workforce Development Agency ("LWDA") pursuant to the PAGA.

o.  "Net Settlement Amount" shall mean the Gross Settlement Amount less (a) the Class Representative Service Awards, (b) Settlement Administration Costs, (c) Attorneys' Fees Award, (d) Attorneys' Costs, and the (e) PAGA Penalties.

p.  "Notice Packet" shall mean the Notice of Proposed Class Action Settlement substantially in the form attached as **Exhibit A**;

q.  "Parties" shall mean collectively, Plaintiffs and Defendants.

r.  "Pay Period(s)" means any Pay Period in which a PAGA Member worked one day in that Pay Period during the PAGA Period, excepting those dates/times taken for vacations and leaves of absences.

s.  "Plaintiffs" and "Class Representatives" shall mean Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz.

t.  "PAGA" shall mean the Private Attorneys General Act of 2004, California Labor Code section 2698, *et seq.*

u.  "PAGA Member(s)" means those Class Members who worked any time during the PAGA Period.

v.  "PAGA Members Payment" means the twenty-five percent (25%) portion of the PAGA Penalties to be paid to PAGA Members pursuant to the PAGA.

w.  "PAGA Penalties" means civil penalties under the PAGA agreed upon by the Parties and approved by the Court up to, but not to exceed, Eighty Nine Thousand One Huundred Twenty Dollars ($89,120.00), seventy-five percent (75%) of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

5

EXHIBIT 1

which will be paid to the California Labor and Workforce Development Agency ("LWDA Payment"), and the remaining twenty-five percent (25%) ("PAGA Members Payment") shall be distributed proportionately to PAGA Members.

x.    "PAGA Period" means that period of time from July 15, 2018 to July 24, 2021 in which PAGA Members worked.

y.    "Participating Class Member(s)" means any Class Member who does not return a valid and timely request to be excluded from the non-PAGA portion of the Settlement. All Participating Class Members will be mailed their Individual Settlement Payment without the need to return a claim form.

z.    "Response Deadline" means the deadline by which Class Members must postmark and return to the Administrator signed, dated, and timely requests for exclusion from the non-PAGA portion of the Settlement, objections to the Settlement and/or disputes concerning the number of Workweeks during the Class Period and/or number Pay Periods worked during the PAGA Period. The Response Deadline will be forty-five (45) calendar days from the initial mailing of the Notice Packets by the Settlement Administrator, unless the 45th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. The Response Deadline will be extended fifteen (15) calendar days for any Class Member who is re-mailed a Notice Packet by the Settlement Administrator, unless the 15th day falls on a Sunday or Federal holiday, in which case the Response Deadline will be extended to the next day on which the U.S. Postal Service is open. The Response Deadline may also be extended by express agreement between Class Counsel and Defendant.

aa.    "Released Claims" means any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged in the original and amended Complaints in the Action, or which could have been alleged based on the facts alleged

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

6

EXHIBIT 1

in the original and amended Complaints in the Action during the Class Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 *et seq.*; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. "Released Claims" includes any and all claims for benefits based on the above-referenced claims under any benefit plan, program or policy sponsored or maintained by Defendants, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, *et seq.*, but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan. "Released Claims" also includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.

bb.     "Released PAGA Claims" means any and all claims for penalties under PAGA, alleged in the original and amended Complaint or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts alleged in the original and amended Complaints or Plaintiffs' letters to the LWDA, arising during the PAGA Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

7

EXHIBIT 1

Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 *et seq.*; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period.

cc.      "Released Parties" means First Student, Inc., First Student Management, LLC, FirstGroup America, Inc., their past, present, and future parents, subsidiaries, divisions, and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire them in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable.

dd.      "Settlement" or "Agreement" or "Settlement Agreement" shall mean this Joint Stipulation of Class Action Settlement and Release.

ee.      "Settlement Administrator" means Simpluris or any other third-party class action settlement administrator agreed to by the Parties and approved by the Court for the purposes of administering this Settlement.

ff.      "Settlement Administration Costs" means the costs allocated from the Gross Settlement Amount to pay for administration of the settlement, as described in this Agreement, including required tax calculations and tax reporting to the appropriate governmental entities in connection with the Individual Settlement Payments (as defined below), issuing of 1099 and W-2 IRS Forms, address updates

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

8

EXHIBIT 1

through the National Change of Address database (prior to the mailing of the Notice Packets, distributing Notice Packets, skip-tracing Notice Packets returned as undeliverable, calculating and distributing the Individual Settlement Payments, weekly status reports, resolving disputed claims with the aid of the Parties' counsel, and providing all reports and declarations deemed necessary by the Parties in an amount not to exceed $9,999.00.

gg. "Workweek" means any week in which a Class Member worked one day in that week during the Class Period, excepting those dates/times taken for vacations and leaves of absences.

## SUMMARY OF THE LITIGATION AND SETTLEMENT

2. On July 11, 2019, Plaintiffs Norma Lopez, Cindy Mitchell and Vada Neice filed their class action Complaint on behalf of themselves and a putative class. Plaintiffs alleged causes of action against Defendants for: (1) Failure to pay split shift wages; (2) Failure to provide complete and accurate wage statements; and (3) Unfair competition.

3. On August 30, 2019, Defendants removed the Action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA").

4. On January 21, 2020, Plaintiffs filed a First Amended Complaint adding Mary Diaz as a named Plaintiff and adding causes of action for waiting time penalties and PAGA penalties.

5. The Parties conducted discovery, including the production of putative class member information and time and payroll records. The Parties recognize the issues in the Action will likely only be resolved with further extensive and costly proceedings; recognize that further litigation shall cause inconvenience, distraction, disruption, delay and expense disproportionate to the potential benefits of litigation; and recognize the risk and uncertainty of the outcome inherent in any litigation. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with Defendants for the consideration and on the terms of this Settlement is

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

9

EXHIBIT 1

fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay and defenses asserted by Defendants. While Defendants specifically deny all liability in the Action, they have agreed to enter into this Settlement to avoid the cost and business disruption associated with further defense of the Action.

6. The Parties participated in a mediation of this case on May 12, 2021 with Hon. Steven Denton (Ret.). During the course of the mediation, the Parties agreed to fully, finally, and forever compromise and settle all claims asserted in the Action for the Gross Settlement Amount. To achieve a complete release of Defendants, each Class Member will be informed that in exchange for their Individual Settlement Payment, each Participating Class Member will release the Released Claims as against the Released Parties and each PAGA Member will release the PAGA Released Claims as against the Released Parties.

## **TERMS OF THE CLASS SETTLEMENT**

7. <u>Gross Settlement Amount</u>. Defendants shall pay the Gross Settlement Amount to resolve the Action on a class-wide basis. In addition to the Gross Settlement Amount, Defendants shall pay the Employer Taxes due on the portion of the Individual Settlement Payments allocated to wages. Under no circumstances shall Defendants be obligated to pay any more than the Gross Settlement Amount and the Employer Taxes.

8. <u>Allocation of the Gross Settlement Amount</u>. From the Gross Settlement Amount, and subject to the approval of the Court, the Parties agree to the following allocations:

a. <u>Class Representative Service Awards</u>. Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz shall each be paid a Class Representative Service Award of up to $10,000 in recognition of Plaintiffs' effort and work in prosecuting the Action on behalf of Class Members, and undertaking the burdens and risks for the payment of costs in the event of loss. The Class Representative Service Awards shall be paid in addition to Plaintiffs' Individual Settlement Payments, and

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

10

EXHIBIT 1

Plaintiffs shall give a general release of all claims against Defendants in exchange for the Class Representative Service Awards. Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on their Class Representative Service Awards. Any portion of the Class Representative Service Awards not awarded to Plaintiffs shall remain with the Net Settlement Amount.

        b.   <u>Settlement Administration Costs</u>. The Settlement Administrator shall be paid "Settlement Administration Costs" in an amount not to exceed $9,999.00;

        c.   <u>Attorneys' Fee Award</u>. Class Counsel shall be paid an Attorneys' Fee Award of up to $491,617.50, thirty three and one third (33.33) percent of the Gross Settlement Amount;

        d.   <u>Attorneys' Costs</u>. Class Counsel shall be paid an award for reimbursement of their Attorneys' Costs in an amount of up to $60,000.00;

        e.   <u>PAGA Penalties</u>. PAGA Penalties of $66,840.00 (75% of $89,120.00) shall be paid to the LWDA and $22,280.00 (25% of $89,120.00) to Class Members who have worked during Pay Periods in the PAGA Period. Class Members shall not have the right to opt out of the PAGA portion of this Settlement.

        9.   <u>Allocation of the Net Settlement Amount and PAGA Members Payment</u>. The Net Settlement Amount, estimated at $784,263.50, and the PAGA Members Payment estimated to be $22,280.00 shall be allocated to Class Members based on the formula described below. Any portion of the Class Representative Service Award, the Settlement Administration Costs, the Attorneys' Fees Award, the Attorneys' Cost, and/or the PAGA Penalties not approved by the Court shall be included in the Net Settlement Amount. No portion of the Net Settlement Amount shall revert to or be retained by Defendants under any circumstance. The Net Settlement Amount and PAGA Members Payment shall be distributed to Participating Class Members and PAGA Members on a proportionate basis as follows:

        a.   <u>Payment to Participating Class Members.</u> Each Participating Class Member shall receive a proportionate share of the Net Settlement Amount

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

11

EXHIBIT 1

that is equal to (i) the number of Workweeks he/she worked during the Class Period divided by (ii) the total number of Workweeks worked by all Participating Class Members during the Class Period.

b. <u>PAGA Members Payment</u>. Each PAGA Member will receive a proportionate share of the PAGA Members Payment that is equal to (i) the number of Pay Periods he/she worked during the PAGA Period divided by (ii) the total number of Pay Periods worked by all PAGA Members during the PAGA Period.

c. <u>Individual Settlement Payments</u>. Participating Class Members shall receive an Individual Settlement Payment calculated as set forth in paragraph 9(a)-(b) above. Class Members who opt out of the non-PAGA portion of the settlement shall receive only an Individual Settlement Payment representing payment for the PAGA Members Payment as set forth in paragraph 9(b). In the event that a Class Member should dispute the information upon which his or her Individual Settlement Payment is calculated, and it is determined by the Administrator from the information and/or documentation provided by that Class or PAGA Member that an amount more than that initially calculated is payable to any Participating Class Member or PAGA Member pursuant to the Settlement, that additional amount will be paid from the Gross Settlement Amount. In no event shall Defendants ever be required to pay any amount greater than the Gross Settlement Amount plus the Employer Taxes.

10. <u>No Credit Toward Benefit Plans</u>. Unless otherwise required by any applicable benefit plan, the Individual Settlement Payments made to Participating Class Members and PAGA Members, as well as any other payments made pursuant to this Settlement, shall not be construed as compensation for nor utilized to calculate any additional benefits under any benefit plans to which any Class Members may otherwise be eligible, including, but not limited to profit-sharing plans, bonus plans, 401(k) plans, stock purchase plans, vacation plans, sick leave plans, PTO plans, and any other benefit plan. Unless otherwise required by any applicable benefit plan, this Settlement shall not

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

12
EXHIBIT 1

affect any rights, contributions, or amounts to which any Class Members may be entitled under any benefit plans.

## PRELIMINARY APPROVAL OF THE SETTLEMENT

11.  <u>Preliminary Approval</u>:  Upon execution of this Settlement, Plaintiffs shall file a Motion for Order Granting Preliminary Approval of the Class Action Settlement which requests the following: (i) preliminary approval of the Settlement, subject only to the objections of Class Members and final review by the Court; (ii) conditional certification of a class for purposes of settlement only; (iii) a schedule for final approval hearing regarding the proposed Settlement, including payment of Attorneys' Fees and Attorneys' Costs, and Class Representative Service Awards; (iv) approval as to form and content of the proposed Notice Packet; (v) a schedule for the procedures for the Response Deadline; and (vi) a schedule for the mailing of the Notice Packet by first class mail to the Class Members**.**  Plaintiffs' Counsel will provide counsel for Defendants with a draft of the motion for preliminary approval including the proposed Order Granting Preliminary Approval at least seven (7) calendar days before it is filed with the Court for Defendants' review and input.  Defendants shall not oppose the Preliminary Approval Motion and may, in their sole option, file a declaration of non-opposition. Concurrently with the filing of the Preliminary Approval Motion, counsel for Plaintiffs shall submit a copy of this Agreement to the LWDA, and provide proof of said submission to the Court and counsel for Defendant.

12.  <u>CAFA Notice</u>:  Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), within ten (10) business days after the filing of the Motion for Preliminary Approval, Defendants will, provide notice pursuant to 28 U.S.C. § 1715.  Defendants will file a declaration with the Court confirming compliance with the notice provisions of 28 U.S.C. § 1715.  The Parties will request the Court to make a finding that the notice provisions of 28 U.S.C. § 1715 have been satisfied in the Motion for Final Approval of the Settlement.

13.  <u>Class Action Certification for Settlement Purposes Only</u>.  The Parties agree

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

13

EXHIBIT 1

to stipulate to certification of the Class for purposes of the Settlement only. If, for any reason, the Settlement is not approved, the stipulation to certification shall be void. The Parties further agree that certification for purposes of the Settlement is not an admission that class action certification is proper under the standards applied to contested certification motions and that this Settlement shall not be admissible in this or any other proceeding as evidence that either: (i) a class action should be certified or (ii) Defendants are liable to Plaintiffs or any Class Member, other than according to the Settlement's terms.

## SETTLEMENT ADMINISTRATION

14. <u>Settlement Administrator</u>. The Parties each represent that they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

15. <u>Class Data</u>. Within 14 days of the Order Granting Preliminary Approval, Defendants shall provide to the Settlement Administrator for each identifiable member of the Class the following information: name, address, social security number, telephone number, dates of employment, and the number of work weeks worked during the Class Period and the number of Pay Periods worked during the PAGA Period based on their business and payroll records ("Class Data List"). The Class Data List and information shall remain confidential. The Settlement Administrator shall only use this information to facilitate notice, administration of the Settlement, and for distribution of Individual Settlement Payments to Participating Class Members. The Parties agree to cooperate in the administration of the Settlement and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement.

16. <u>Duty to Protect Class Data</u>. The Settlement Administrator shall represent and warrant that it shall: (i) provide reasonable and appropriate administrative, physical and technical safeguards for the Class Data List that it receives from Defendants; (ii) not disclose the Class Data List to Class Counsel, Named Plaintiffs, any party or third

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

14

EXHIBIT 1

parties, including agents or subcontractors, without Defendant's consent and keep the Class Data List confidential; (iii) not disclose or otherwise use the Class Data other than to carry out its duties as set forth herein; and (iv) promptly provide Defendants with notice if it becomes aware that the Class Data List becomes subject to unauthorized access, use, or disclosure.

17.    <u>Confirmation of Contact Information in the Class Data List</u>.  Following receipt of the Class Data List from Defendants, and prior to mailing, the Settlement Administrator shall perform a search of the National Change of Address Database to update and correct stale Class Member addresses.  If any Notice Packet is returned to the Settlement Administrator as non-deliverable on or before the Response Deadline, within three days of its receipt, the Settlement Administrator shall send it promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto, and the Settlement Administrator shall indicate the date of such re-mailing on the Notice Packet. If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine the correct address by using a skip-trace, or other search using the name, address and/or social security number of the Class Member involved, and shall, within three days of learning the correct address, re-mail the Notice Packet.  Should a Notice Packet associated with a currently employed Class Member be returned to the Administrator, it shall immediately inform Defendants to obtain a more current mailing address for that Class Member to re-mail the Notice Packet.

18.    <u>Notice by First-Class U.S. Mail</u>.  Within fourteen (14) business days following Defendants' provision of the Class Data List to the Settlement Administrator as set forth in Paragraph 15, supra, the Administrator shall mail the individualized Notice Packet by First Class U.S. Mail.  Each individualized Notice of Class Action Settlement ("Notice" – Exhibit "A") shall include the Class Member's dates of employment and the number of Workweeks during the Class Period and the number of Pay Periods worked during the PAGA Period and the estimated Individual Settlement Payment amount.  The Notice will also inform the Class of their right to opt-out of the

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

15

EXHIBIT 1

non-PAGA portion of the Settlement and that they each will be mailed their Individual Settlement Payment at the address on file with the Administrator. The Notice will also inform the Class of the manner and deadline to submit (1) requests for exclusion from the non-PAGA portion of the Settlement, (2) objections to the Settlement; and (3) disputes concerning the number of Workweeks during the Class Period or the number of Pay Periods worked during the PAGA Period. The Notice further informs the Class of the claims to be released, including if they do not request to be excluded, and the date, time, and place set for the Final Approval Hearing.

19. <u>Disputed Workweek and/or Pay Period Information</u>. Class Members may contact the Settlement Administrator with questions regarding the number of Workweeks they have been assigned during the Class Period or the number of Pay Periods. Class Members may produce evidence to the Settlement Administrator showing that such information is inaccurate. There is a rebuttable presumption that Defendants' personnel and payroll records are correct, but Class Members may, should they disagree with Defendants' records, provide documentation to show contrary employment dates and/or records of Workweeks or Pay Periods no later than the Response Deadline. The dispute must: (i) set forth the name, address, telephone number and last four digits of the social security number of the Class Member submitting the dispute; (ii) be signed by the Class Member; (iii) be timely returned to the Settlement Administrator; (iv) clearly state the reason(s) that the Class Member disputes the information provided contained in the Notice Packet; and (v) be postmarked on or before the Response Deadline. All disputes shall be decided by the Settlement Administrator within ten (10) business days of the Response Deadline.

20. <u>Request for Exclusion Procedures</u>. Any Class Member wishing to opt-out from the non-PAGA portions of the Settlement must sign and postmark a written Request for Exclusion to the Settlement Administrator, in the manner set forth in the Notice, by the Response Deadline. The Request for Exclusion must: (i) set forth the name, address, telephone number and last four digits of the Social Security number of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

EXHIBIT 1

the Class Member requesting the exclusion; (ii) be signed by the Class Member; (iii) be timely returned to the Settlement Administrator; (iv) clearly state that the Class Member does not wish to be included in the non-PAGA portion of the Settlement and does not wish to receive any payment or other benefits therefrom; and (v) be postmarked on or before the Response Deadline. The postmark date shall be the exclusive means to determine whether a Request for Exclusion has been timely submitted. No Request for Exclusion may be made on behalf of a group of Class Members. Workweeks by Class Members who have submitted a valid and timely Request for Exclusion shall be deducted from the aggregate number of Workweeks. Class Members shall not have the right to opt-out from the PAGA portion of the Settlement.

21. <u>Defective Submissions</u>. If a Class Member's Request for Exclusion is defective as to any of the requirements listed herein, that Class Member shall be given an opportunity to cure the defect(s). The Settlement Administrator shall mail the Class Member a cure letter within three (3) business days of receiving the defective submission to advise the Class Member that his or her submission is defective and that the defect must be cured to render the Request for Exclusion valid. The Class Member shall have until (i) the Response Deadline or (ii) ten (10) calendar days from the date of the cure letter, whichever date is later, to postmark a revised Request for Exclusion. If the revised Request for Exclusion is not postmarked within that period, it shall be deemed untimely. Class Members shall be limited to one cure letter advising them of the defect. A Class Member who submits an invalid or untimely request to be excluded will remain a Class Member, will receive their Individual Settlement Payment and be bound by the releases and judgment entered as set forth herein. The invalid and untimely request for exclusion shall be deemed null and void.

22. <u>Objection Procedures</u>. To object to the Settlement, a Class Member must postmark a valid Notice of Objection to the Settlement Administrator on or before the Response Deadline. The Notice of Objection must be signed by the Class Member and contain all information required by this Settlement and as set forth in the Notice of Class

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

EXHIBIT 1

Action Settlement, including: (i) the objector's full name, signature, address, and telephone number; (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; and (iv) a statement whether the objector intends to appear at the Final Approval Hearing. The postmark date shall be deemed the exclusive means for determining that the Notice of Objection is timely. Only Class Members who have not opted out of the class portion of the Settlement may object. Any Class Member who does not submit a timely written objection to the Settlement, or who fails to otherwise comply with the specific and technical requirements of this Paragraph as provided in the Notice, shall be foreclosed from objecting to the Settlement and seeking any adjudication or review of the Settlement, by appeal or otherwise. Class Members who postmark timely Notices of Objection shall have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit written objections to the Settlement or appeal from the Final Approval and Judgment. Class Counsel shall not represent any Class Members with respect to any such objections to this Settlement. The Parties shall file all Notices of Objection, valid or invalid, timely or untimely, with the Court in advance of the Final Approval/Settlement Fairness Hearing. If the Court overrules the Class Member's objection, or if the Court approves the Settlement despite any objections, the Class Member will be deemed to be a Participating Class Member and will be bound by the terms of this Agreement, and will be mailed their Individual Settlement Payment.

23. <u>Settlement Administrator Reports Regarding Class Member Participation</u>. The Settlement Administrator shall provide Defendants' counsel and Class Counsel a biweekly report that certifies the number of Class Members who have submitted valid Requests for Exclusion, objections to the Settlement, and whether any Class Member has submitted a challenge to any information contained in their Notices. The Settlement Administrator shall provide to counsel for both Parties any updated reports regarding

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

18

EXHIBIT 1

1    the administration of the Settlement as needed or requested.  Not later than fourteen

2    (14) days after the final Response Deadline, the Settlement Administrator will provide

3    the Parties with a complete and accurate list of all Participating Class Members, all Non-

4    Participating Class Members, and all Class Members who objected to the Settlement

5    Agreement.

6        24.    Settlement Administrator Declaration. Not later than twenty-eight (28)

7    court days prior to the Final Approval Hearing, the Settlement Administrator will

8    provide the Parties with its declaration of due diligence setting forth its compliance with

9    its obligations under this Agreement to be filed with the Court, and will supplement its

10   declaration as needed or as requested by the Court.

11       25.    Settlement Administrator Final Report. By no later than five (5) calendar

12   days following the Effective Date, the Settlement Administrator shall provide counsel

13   for both Parties with the aggregate number of Workweeks by Participating Class

14   Members during the Class Period, and aggregate number of Pay Periods worked by

15   PAGA Members during the PAGA Period. Upon completion of administration of the

16   Settlement, the Settlement Administrator shall provide a written declaration under oath

17   to certify such completion to the Court and counsel for all Parties.

18       26.    Defendants' Right to Rescind.  Defendants shall have, in their sole

19   discretion, the right to void and withdraw from the Settlement if, at any time prior to

20   Final Approval, five percent (5%) or more of Class Members timely and validly

21   Request Exclusion from the non-PAGA portion of the Settlement.  Defendants must

22   exercise this right of rescission in writing to Class Counsel within thirty (30) calendar

23   days after the latest date any Class Member may timely submit his or her Request for

24   Exclusion.  If Defendants exercise their right of rescission pursuant to this paragraph,

25   Defendants shall be responsible for all costs incurred by the Settlement Administrator.

26       27.    Plaintiffs' Right to Rescind.  If the total number of Class Members exceeds

27   967, Plaintiffs may, at their option, void the agreement and/or attempt to reach some

28   other agreement to preserve the settlement.  Plaintiffs must exercise this right of

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

19

EXHIBIT 1

rescission in writing to Defendants within fourteen (14) business days after receiving notice from Defendants that the total number of Class Members exceeds 967. If Plaintiffs exercise their right of rescission pursuant to this paragraph, Plaintiffs shall be responsible for all costs incurred by the Settlement Administrator.

**FINAL APPROVAL**

28. <u>Final Settlement Approval Hearing and Entry of Judgment</u>. Upon expiration of the Response Deadline as ordered by the Court at the time of the Preliminary Approval Hearing, a Final Approval Hearing shall be conducted to determine the Final Approval of the Settlement along with the amounts properly payable for: (i) Individual Settlement Payments; (ii) the Class Representative Service Awards; (iii) Attorneys' Fee Award; (iv) Attorneys' Costs; (v) Settlement Administration Costs; and (vi) PAGA Penalties. The Final Approval Hearing shall not be held earlier than thirty (30) calendar days after the Response Deadline. Class Counsel shall be responsible for drafting all documents necessary to obtain final approval. The Motion for Order Granting Final Approval and Entering Judgment shall include Class Counsel's application for the Class Counsel's Attorneys' Fees and Costs, the Class Representative Service Awards, and the Administrator's expenses. A draft of such motion shall be provided to Counsel for Defendant seven business days prior to its filing with the Court. Plaintiffs agree not to file their motion and/or application without Defendant's review and input. The Settlement Administrator shall maintain on its website a section for this Settlement which includes a copy of the Motion for Preliminary Approval, along with any accompanying exhibits, and the operative complaint. It shall be updated after Judgment is entered with a copy of the final Judgment.

29. <u>Attorneys' Fee Award and Costs</u>. Defendants shall not object to Class Counsel's request of reasonable Attorneys' Fees of up to $491,617.50 (33.33% of the Gross Settlement Amount) and their reasonable Attorneys' Costs estimated at $60,000.00 Class Counsel's application for Attorneys' Fees and Costs award shall be

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

20

EXHIBIT 1

included within the Motion for Order Granting Final Approval of Class Action Settlement, unless the Court instructs otherwise.

30.    Judgment and Continued Jurisdiction.  Concurrent with the Motion for Order Granting Final Approval of the Class Action Settlement, the Parties shall present an Order Granting Final Approval and Entering Judgment to the Court, in a form mutually agreed to by the Parties, for approval. After entry of the Judgment, the Court shall have continuing jurisdiction over the Settlement as required by law, including: (i) the interpretation and enforcement of the terms of the Settlement; (ii) settlement administration matters; and (iii) such post-Judgment matters as may be appropriate under court rules or as set forth in this Settlement.

31.    Funding of the Settlement.  Defendants shall transmit the Gross Settlement Amount to the Administrator together with the amount representing the Employer Taxes (to be communicated by the Administrator to Defendants at least (5) business days before transmittal of the Gross Settlement Amount).  The Administrator shall deposit the Gross Settlement Amount into a Qualified Settlement Account, from which the Settlement Administrator will have the authority to distribute money in accordance with the terms of this Settlement Agreement.  Defendants shall transmit the Gross Settlement Amount and the Employer Taxes, within fifteen (15) days following the Effective Date of Settlement.

32.    No Effective Date.  If there is no Effective Date: (i) the Settlement Agreement shall have no force and effect and no Party shall be bound by any of its terms; (ii) Defendants shall have no obligation to make any payments required under this Agreement; (iii) the Parties shall evenly distribute and pay any Administration Costs incurred up until the date that the Settlement ceases to exist; and (iv) the Settlement Agreement and all negotiations, statements, proceedings, and data relating thereto shall be protected as privileged settlement communications and shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Action prior to the date of execution of the Settlement

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

21

EXHIBIT 1

Agreement. In such event, the Parties shall work cooperatively to request a conference with the Court in which to attempt to resolve any issues that the Court has raised regarding the Agreement so that it can gain the Court's approval, or alternatively, effectuate their intent to resume the Action.

33. <u>Distribution and Timing of Payments</u>. Within ten (10) calendar days following receipt of the Gross Settlement Amount and the Employer Taxes, the Settlement Administrator shall issue payments to: (i) Participating Class Members, (ii) PAGA Members, (iii) Plaintiffs, (iv) Class Counsel, and (v) the Labor Workforce and Development Agency. However, payments shall not be issued to Class Members whose Notice Packets are returned as undeliverable and for whom no forwarding address can be located. Individual Settlement Payments for such Class Members shall be held by the Settlement Administrator unless claimed by the Class Member, and shall be paid to the *cy pres* beneficiary as set forth below if unclaimed by the end of the one hundred eighty (180) calendar day period to cash settlement checks as set forth below. The Settlement Administrator shall also issue a payment to itself for the Court-approved amount for its services.

34. <u>Un-cashed Settlement Checks</u>. Settlement checks shall remain valid for a period of one hundred eighty (180) calendar days after mailing, at which time the checks shall become null and void. Thirty (30) days following the mailing of the Individual Settlement Payment Checks, the Administrator shall mail a postcard to each Participating Class Member and PAGA Member whose check is uncashed to remind them of the void date. Any funds represented by Individual Settlement Payment checks remaining un-cashed for more than 180 calendar days after issuance shall be delivered to Legal Aid at Work. Participating Class Members and PAGA Members who fail to cash their checks within the 180 day period shall remain bound by the Settlement as set forth herein.

35. <u>Administration of Taxes by the Settlement Administrator</u>. The Settlement Administrator shall be responsible for issuing to Plaintiffs, Participating Class

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

22

EXHIBIT 1

Members, PAGA Members and Class Counsel any W-2, 1099, or other tax forms as may be required by law for all amounts paid pursuant to this Settlement. The Settlement Administrator shall also be responsible for calculating and processing all payroll taxes and penalties for payment to the appropriate government authorities.

## TAX TREATMENT OF SETTLEMENT AMOUNTS

36. <u>Tax Treatment of Individual Settlement Payments</u>. The Parties have agreed to allocate the Individual Settlement Payment as follows: for Participating Class Members – 40% to wages for which an IRS W-2 Form shall be issued, 60% to interest and penalties for which IRS 1099 Forms shall be issued. Normal employee-side payroll taxes and withholding shall be deducted from the wage portion of the payment pursuant to state and federal law. For Class Members who opt-out of the non-PAGA portion of the Settlement, the entirety of the Individual Settlement Payments shall be allocated to penalties for which IRS 1099 Forms shall be issued.

37. <u>Class Member and Plaintiffs' Responsibility for Taxes</u>. Participating Class Members and PAGA Members are responsible to pay appropriate taxes due on the Individual Settlement Payments they receive, and Plaintiffs are responsible for paying the appropriate taxes due on the Class Representative Service Payments. All Individual Settlement Payments shall be deemed paid to such Class Members solely in the year in which such payments are issued. Counsel does not purport this communication to constitute tax or legal advice. If this Settlement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal or state tax issue, such advice is not intended or written to be used, and cannot be used, by any person to avoid penalties under the federal Internal Revenue Code or any state tax code. The Notice of Class Action Settlement will advise Class Members that they shall be solely responsible for the payment of any taxes and penalties assessed on their respective Individual Settlement Payments.

38. Class Counsel shall be issued an IRS Form 1099 for any fees and costs awarded by the Court.

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

23

EXHIBIT 1

**RELEASE BY THE CLASS**

39.    Settlement Terms Bind All PAGA Members and Class Members Who Do Not Request Exclusion.   As of the Effective Date, Plaintiffs and all Participating Class Members (on behalf of each of them and each of their heirs, executors, administrators, and assigns) irrevocably and unconditionally fully release and forever discharge the Released Parties from any and all Released Claims that accrued during the Class Period, as set forth herein.  As of the Effective Date, Plaintiffs and all PAGA Members (on behalf of each of them and each of their heirs, executors, administrators, and assigns) irrevocably and unconditionally fully release and forever discharge the Released Parties from any and all PAGA Released Claims that accrued during the PAGA Period as set forth herein.

40.    Circular 230 Disclaimer. EACH PARTY TO THIS AGREEMENT (FOR PURPOSES OF THIS SECTION, THE "ACKNOWLEDGING PARTY" AND EACH PARTY TO THIS AGREEMENT OTHER THAN THE ACKNOWLEDGING PARTY, AN "OTHER PARTY") ACKNOWLEDGES AND AGREES THAT (1) NO PROVISION OF THIS AGREEMENT, AND NO WRITTEN COMMUNICATION OR DISCLOSURE BETWEEN OR AMONG THE PARTIES OR THEIR ATTORNEYS AND OTHER ADVISERS, IS OR WAS INTENDED TO BE, NOR WILL ANY SUCH COMMUNICATION OR DISCLOSURE CONSTITUTE OR BE CONSTRUED OR BE RELIED UPON AS, TAX ADVICE WITHIN THE MEANING OF UNITED STATES TREASURY DEPARTMENT CIRCULAR 230 (31 CFR PART 10, AS AMENDED); (2) THE ACKNOWLEDGING PARTY (A) HAS RELIED EXCLUSIVELY UPON HIS, HER, OR ITS OWN, INDEPENDENT LEGAL AND TAX COUNSEL FOR ADVICE (INCLUDING TAX ADVICE) IN CONNECTION WITH THIS AGREEMENT, (B) HAS NOT ENTERED INTO THIS AGREEMENT BASED UPON THE RECOMMENDATION OF ANY OTHER PARTY OR ANY ATTORNEY OR ADVISOR TO ANY OTHER PARTY, AND (C) IS NOT ENTITLED TO RELY UPON ANY COMMUNICATION OR

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

24
EXHIBIT 1

DISCLOSURE BY ANY ATTORNEY OR ADVISER TO ANY OTHER PARTY TO AVOID ANY TAX PENALTY THAT MAY BE IMPOSED ON THE ACKNOWLEDGING PARTY; AND (3) NO ATTORNEY OR ADVISER TO ANY OTHER PARTY HAS IMPOSED ANY LIMITATION THAT PROTECTS THE CONFIDENTIALITY OF ANY SUCH ATTORNEY'S OR ADVISER'S TAX STRATEGIES (REGARDLESS OF WHETHER SUCH LIMITATION IS LEGALLY BINDING) UPON DISCLOSURE BY THE ACKNOWLEDGING PARTY OF THE TAX TREATMENT OR TAX STRUCTURE OF ANY TRANSACTION, INCLUDING ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.

41. <u>Release by Plaintiffs and Class Representatives</u>. As of the Effective Date, Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz (on each of their behalf and on behalf of each of their heirs, executors, administrators, and assigns), but not on behalf of other Class Members, knowingly and voluntarily releases and forever discharges the Released Parties from any and all claims, known and unknown, asserted and unasserted, that they each had or may have had against Defendants or any of the Released Parties. Such claims include, but are not limited to: breaches of contract, whether written, oral or implied; violations of any public policy; tort claims, including but not limited to intentional infliction of emotional distress and negligent infliction of emotional distress, defamation, misrepresentation, and fraud; retaliation claims; common law claims; any other claims for damages, costs, fees, or other expenses, including attorneys' fees; and any violations of the following statutes, laws, and regulations: Fair Labor Standards Act, 29 U.S.C. §§ 200, *et seq.,* Title VII of the Civil Rights Act of 1964, as amended; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Americans with Disabilities Act of 1990, as amended; The Age Discrimination in Employment Act of 1967, as amended; the Older Workers Benefit Protection Act; the Employment Retirement Income Security Act of 1974, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Family and Medical

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

25

EXHIBIT 1

Leave Act of 1993, as amended; the Fair Labor Standards Act; the California Fair Employment and Housing Act – Cal. Gov't Code § 12900 *et seq.*; the California Family Rights Act – Cal. Gov't Code § 12945.2 *et seq.*; the California Unruh Civil Rights Act – Civ. Code § 51 *et seq.*; the California Whistleblower Protection Law – Cal. Lab. Code § 1102.5; the California Occupational Safety and Health Act, as amended – Cal. Lab. Code § 6300 *et seq.*, and any applicable regulations thereunder; the California Business and Professions, Civil, Government and Labor Code; the Labor Code Private Attorneys General Act of 2004 – Cal. Lab. Code § 2698 *et seq.*; and any other federal, state, or local civil employment law, statute, regulation, or ordinance capable of being released by Plaintiffs, excluding any claims that cannot be released as a matter of law.  To the extent the foregoing release is a release to which California Civil Code section 1542 or similar provisions of other applicable law may apply, Plaintiffs expressly waive any and all rights and benefits conferred upon them by the provisions of California Civil Code section 1542 or similar provisions of applicable law which are as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

Thus, notwithstanding the provisions of California Civil Code section 1542, and to implement a full and complete release and discharge, Plaintiffs each expressly acknowledge this Settlement is intended to include in its effect, without limitation, all known and unknown claims, including any claims they do not know or suspect to exist in their favor against the Released Parties at the time of signing this Settlement, and that this Settlement contemplates the extinguishment of any such claim or claims.  Plaintiffs each acknowledges they may later discover facts different from or in addition to those

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

26
EXHIBIT 1

they now know or believe to be true regarding the matters released or described in this Settlement, and nonetheless agrees that the releases and agreements contained in this Settlement shall remain fully effective in all respects notwithstanding any later discovery of any different or additional facts. Plaintiffs each assume any and all risks of any mistake in connection with the true facts involved in the matters, disputes, or controversies described in this Settlement or with regard to any facts now unknown to each of them relating to such matters.

42.     No Prior Assignments.  The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right herein released and discharged.

## ADDITIONAL TERMS

43.     Exhibits Incorporated by Reference.  The terms of this Settlement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein.  Any Exhibits to this Settlement are an integral part of the Settlement.

44.     No Publicity.  Plaintiffs and Class Counsel agree not to publicize the settlement, including in communications with the press; however, nothing in this Agreement shall prevent Plaintiffs and Class Counsel from engaging in direct communications with Class Members about the settlement, and nothing in this Agreement shall prevent Class Counsel from identifying the Settlement on their website, so long as Class Counsel does not mention Defendants by name and instead refers to them only as a transportation company.  Class Counsel agrees to limit any such language on their website to the following: "Class action for failure to pay split shift wages due to California bus attendants settles for $1.475 million." Class Counsel is further permited to discuss the Settlement, including Defendants' names, the case number, etc. in future Court declarations and in such communications as are reasonably

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

27

EXHIBIT 1

necessary for purposes of meeting their responsibilities as class representatives and Class Counsel.

45. <u>Entire Agreement</u>. This Settlement and attached Exhibits constitute the entirety of the Parties' settlement terms. No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties. The Parties expressly recognize California Civil Code section 1625 and California Code of Civil Procedure section 1856(a), which provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and the Parties agree that no such extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Settlement.

46. <u>Amendment or Modification</u>. No amendment, change, or modification to this Settlement shall be valid unless in writing and signed, either by the Parties or their counsel.

47. <u>Authorization to Enter Into Settlement</u>. Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Settlement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement to effectuate its terms and to execute any other documents required to effectuate the terms of this Settlement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement. If the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties may seek the assistance of the Court to resolve such disagreement.

48. <u>Binding on Successors and Assigns</u>. This Settlement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

49. <u>California Law Governs</u>. All terms of this Settlement and Exhibits hereto

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

28

EXHIBIT 1

shall be governed by and interpreted according to the laws of the State of California.

50.  **Execution and Counterparts**.  This Settlement is subject only to the execution of all Parties.  However, the Settlement may be executed in one or more counterparts and by DocuSign.  All executed counterparts and each of them, including facsimile and scanned copies of the signature page, shall be deemed to be one and the same instrument provided that counsel for the Parties shall exchange among themselves original signed counterparts.

51.  **Acknowledgement that the Settlement is Fair and Reasonable**.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of the Action and have arrived at this Settlement after arm's-length negotiations and in the context of adversarial litigation, taking into account all relevant factors, present and potential.  The Parties further acknowledge that they are each represented by competent counsel and that they have had an opportunity to consult with their counsel regarding the fairness and reasonableness of this Settlement.

52.  **Acknowledgement of Future Legislation**.  Each Party recognizes that legislation, could affect the outcome of the Action.  The Parties, nevertheless, enter into this settlement to avoid risk of loss and to avoid uncertainty with the interpretation, nature, and applicability of future legislation.

53.  **Invalidity of Any Provision**.  Before declaring any provision of this Settlement invalid, the Court shall first attempt to construe the provision as valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Settlement valid and enforceable.

54.  **Waiver of Certain Appeals**.  The Parties agree to waive appeals and to stipulate to class certification for purposes of this Settlement only; except, however, that Plaintiffs or Class Counsel may appeal any reduction to the Attorneys' Fees or the Attorneys' Costs below the amounts they request from the Court, and either party may appeal any court order that materially alters the Settlement terms.

55.  **Non-Admission of Liability**.  The Parties enter into this Settlement to

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

29

EXHIBIT 1

resolve the dispute that has arisen between them and to avoid the burden, expense and risk of continued litigation.  In entering into this Settlement, Defendants and the Released Parties do not admit, and specifically deny, that Defendants or any Released Parties violated any federal, state, or local law; violated any regulations or guidelines promulgated pursuant to any statute or any other applicable laws, regulations or legal requirements; breached any contract; violated or breached any duty; engaged in any misrepresentation or deception; or engaged in any other unlawful conduct with respect to their employees.  Neither this Settlement, nor any of its terms or provisions, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants (or any Released Parties) of any such violations or failures to comply with any applicable law.  Except as necessary in a proceeding to enforce the terms of this Settlement, this Settlement and its terms and provisions shall not be offered or received as evidence in any action or proceeding to establish any liability or admission on the part of Defendants (or any Released Parties) or to establish the existence of any condition constituting a violation of, or a non-compliance with, federal, state, local or other applicable law.

56. <u>Waiver</u>.  No waiver of any condition or covenant contained in this Settlement or failure to exercise a right or remedy by any of the Parties hereto shall be considered to imply or constitute a further waiver by such Party of the same or any other condition, covenant, right or remedy.

57. <u>Enforcement Actions</u>.  In the event that one or more of the Parties institutes any legal action or other proceeding against any other Party or Parties to enforce the provisions of this Settlement or to declare rights and/or obligations under this Settlement, the successful Party or Parties shall be entitled to recover from the unsuccessful Party or Parties reasonable attorneys' fees and costs, including reasonable expert witness fees incurred in connection with any enforcement actions.

58. <u>Mutual Preparation</u>.  The Parties have had a full opportunity to negotiate the terms and conditions of this Settlement.  Accordingly, this Settlement shall not be

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

30

EXHIBIT 1

construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that, because of the arms-length negotiations between the Parties, all Parties have contributed to the preparation of this Settlement.

59.  <u>Representation By Counsel</u>.  The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Settlement, and that this Settlement has been executed with the consent and advice of counsel.  Further, Plaintiffs and Class Counsel warrant and represent that there are no liens on the Settlement.  Class Counsel also represents that there are no attorneys who have or could have any liens with respect to any aspect of this Settlement, or any funds received by the Named Plaintiffs.

60.  <u>All Terms Subject to Final Court Approval</u>.  All amounts and procedures described in this Settlement herein shall be subject to final Court approval.

61.  <u>Cooperation and Execution of Necessary Documents</u>.  All Parties shall cooperate in good faith and execute all documents to the extent reasonably necessary to effectuate the terms of this Settlement.

62.  <u>Binding Agreement</u>.  The Parties warrant that they understand and have full authority to enter into this Settlement, and further intend that this Settlement shall be fully enforceable and binding on all parties, and agree that it shall be admissible and subject to disclosure in any proceeding to enforce its terms, notwithstanding any mediation confidentiality provisions that otherwise might apply under federal or state law.

63.  <u>Notices</u>.  Unless otherwise specifically provided, all notices, demands or other communications given shall be in writing and shall be deemed to have been duly given by the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

31

EXHIBIT 1

1 **To Plaintiffs and the Class**:

2
3 HUNTER PYLE LAW
   Hunter Pyle
4 Katherine Fiester
   1300 Broadway, Eleventh Floor
5 Oakland, California 94612
   Telephone: (510) 444-4400
6 Facsimile: (510) 444-4410
7 Emails: hunter@hunterpylelaw.com
8          kfiester@hunterpylelaw.com

9 **To Defendants**:

10 David J. Dow
   LITTLER MENDELSON, P.C.
11 501 West Broadway, Suite 900
12 San Diego, CA  92101

13
14 **AGREED.**

15                                **PLAINTIFF NORMA LOPEZ**

16 Dated: 9/3/2021

17 _____        Norma Lopez

18
19                                **PLAINTIFF CINDY MITCHELL**

20 Dated: _____

21                                Cindy Mitchell

22                                **PLAINTIFF VADA NEICE**

23
24 Dated: _____

25                                Vada Neice

26                                **PLAINTIFF MARY DIAZ**

27
28 Dated: _____

                                Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway,
Suite 900
San Diego, CA  92101,3577
619.232.0441

32
EXHIBIT 1

**To Plaintiffs and the Class**:

HUNTER PYLE LAW
Hunter Pyle
Katherine Fiester
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
        kfiester@hunterpylelaw.com

**To Defendants**:

David J. Dow
LITTLER MENDELSON, P.C.
501 West Broadway, Suite 900
San Diego, CA  92101

**AGREED.**

                                      **PLAINTIFF NORMA LOPEZ**

Dated: _____    _____
                                      Norma Lopez

                                      **PLAINTIFF CINDY MITCHELL**

Dated: 9/3/2021    _____
                                      Cindy Mitchell

                                      **PLAINTIFF VADA NEICE**

Dated: _____    _____
                                      Vada Neice

                                      **PLAINTIFF MARY DIAZ**

Dated: _____    _____
                                      Mary Diaz

EXHIBIT 1

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101,3577
619.232.0441

**To Plaintiffs and the Class**:

HUNTER PYLE LAW
Hunter Pyle
Katherine Fiester
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
          kfiester@hunterpylelaw.com

**To Defendants**:

David J. Dow
LITTLER MENDELSON, P.C.
501 West Broadway, Suite 900
San Diego, CA 92101

**AGREED.**

                                            **PLAINTIFF NORMA LOPEZ**

Dated: _____        _____
                                              Norma Lopez

                                            **PLAINTIFF CINDY MITCHELL**

Dated: _____        _____
                                              Cindy Mitchell

                                            **PLAINTIFF VADA NEICE**

Dated: 9/3/2021                   *Vada Neice*
                                            Vada Neice

                                            **PLAINTIFF MARY DIAZ**

Dated: _____        _____
                                              Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA 92101.3577
619.232.0441

32

EXHIBIT 1

**To Plaintiffs and the Class**:

HUNTER PYLE LAW
Hunter Pyle
Katherine Fiester
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails: hunter@hunterpylelaw.com
          kfiester@hunterpylelaw.com

**To Defendants**:

David J. Dow
LITTLER MENDELSON, P.C.
501 West Broadway, Suite 900
San Diego, CA  92101

**AGREED.**

**PLAINTIFF NORMA LOPEZ**

Dated: _____      _____
                                 Norma Lopez

**PLAINTIFF CINDY MITCHELL**

Dated: _____      _____
                                 Cindy Mitchell

**PLAINTIFF VADA NEICE**

Dated: _____      _____
                                 Vada Neice

**PLAINTIFF MARY DIAZ**

Dated: 9/3/2021                  _____
                                 Mary Diaz

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

32

EXHIBIT 1

**DEFENDANTS FIRST STUDENT, INC.,
FIRST STUDENT MANAGEMENT, LLC
AND FIRSTGROUP AMERICA, INC.**

Dated: 9.8.21

By: _____
NAME: Michael Petrucci
TITLE: Secretary

**APPROVED AS TO FORM:**

Dated: September 7, 2021

_____
Hunter Pyle
Katherine Fiester
HUNTER PYLE LAW
Attorneys for Plaintiffs

Dated: 9/7/21

_____
David J. Dow
LITTLER MENDELSON, P.C.
Attorneys for Defendants

EXHIBIT 1

**EXHIBIT A**

**NOTICE OF PENDENCY OF CLASS ACTION AND PROPOSED SETTLEMENT**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

*Lopez, et al. v. First Student, Inc., et al.*, Central District of California
Case No. 5:19-cv-01669-JGB-SHK

TO: All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (hereinafter the "Class" or "Class Member(s)").

*THIS NOTICE CONTAINS IMPORTANT LEGAL INFORMATION THAT MAY AFFECT YOU*
YOU ARE NOT BEING SUED

*The United States District Court for the Central District of California authorized this notice. This is not a solicitation from a lawyer.*

- This notice contains important information about your legal rights as part of a class action settlement. Please read it fully and carefully.

- Norma Lopez, Cindy Mitchell, Vada Neice and Mary Diaz ("Plaintiffs") have sued First Student, Inc., First Student Management, LLC and FirstGroup America, Inc. ("Defendants"). Plaintiffs worked as an Attendant, Bus Aid or Bus Monitor for First Student, Inc. or First Student Management, LLC. Their case is pending in the United States District Court for the Central District of California (Case No. 5:19-cv-01669-JGB-SHK). Plaintiffs and Defendants are referred to herein collectively as the "Parties."

- Plaintiffs' allegations are brought on their own behalf and on behalf of individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021 (the "Class Period").

- Plaintiffs have asserted a variety of claims, described in more detail below, against Defendants that pertain to payment of wages and hours of work.

- Defendants contend that their policies and practices have complied with the law at all times.

- The Court has not decided whether Defendants did anything wrong.

- Plaintiffs and Defendants also disagree as to the amounts of money or other types of relief that should be awarded to them and/or the Class in the event that Plaintiffs prevail at trial.

- The Parties agree that there are significant risks on both sides of the case.

- The Parties agree that continued litigation would be expensive and would result in significant expenses in terms of attorney fees and costs, without necessarily benefitting the Class.

- To avoid the risks of litigation and to provide an immediate benefit to the Class, the Parties have agreed to settle the case (the "Settlement").

- Under the Settlement, Defendants will pay a total of $1,475,000.00, to be apportioned and paid among identified members of the Class, after deductions for Court-approved payment of settlement administration costs, penalties pursuant to the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), payment of service awards to the Plaintiffs, litigation costs, attorneys' fees, and subject to withholdings for employee taxes, deductions and contributions.

| YOUR OPTIONS | |
|---|---|
| Do Nothing | You will receive a proportionate share of the Settlement if final approval is granted and will give up any right to bring any claims in the future that are part of the Settlement. |
| Opt Out of the Settlement | If you opt yourself out of the Settlement, you will not receive a portion of the non-PAGA Settlement payment. But, you will retain the right to assert claims that are included in the Settlement. By doing so, you will bear the risk that you may lose those claims. To opt out, you must timely write to the Class Administrator and follow the procedures described below. |
| Object to the Settlement | If you disagree with any aspect of this Settlement, you may assert your objections by timely writing to the Class Administrator and filing with the Court your objection according to the procedures described below. If you opt out, you may not object. If you object, you will still be bound by the Settlement, if approved by the Court. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement. Payments will be made only if the Court grants final approval of the Settlement and after appeals (if any) are resolved. Please be patient.

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

# BASIC INFORMATION

| 1. Why did I get this notice package and why should I read this Notice? |
|---|

The records of Defendants indicate that you have been a member of the Class. If the Court approves the Settlement and you do not opt out, you will receive a payment and your legal rights may be affected. Thus, you have a right to information about the Settlement and your legal rights. That is the intent of this notice.

| 2. What is this lawsuit about? |
|---|

Plaintiffs have asserted the following claims against Defendants on behalf of the Class: (1) failure to pay split shift premiums, including the minimum wage; (2) failure to provide accurate wage statements; (3) waiting time penalties; (4) unfair competition, based on the foregoing claims; and (5) penalties under the PAGA, based on the foregoing claims. These claims are referred to herein as the "Claims."

Defendants deny that the Claims are valid, deny that the Court should permit Plaintiffs to bring the Claims on behalf of the Class, and contend that they complied with the law at all times.

| 3. What is a class action? |
|---|

In a class action, one or more people called named plaintiffs sue on behalf of people who they allege have similar claims.

| 4. Why is there a settlement? |
|---|

The Court did not decide in favor of Plaintiffs or Defendants on the Claims being settled. Plaintiffs think they could win a significant amount of wages, penalties, and interest on behalf of the Class if they were to win at trial. On the other hand, Defendants deny all liability and believe that Plaintiffs would not have won anything in the case. Both sides have agreed to the Settlement for the Claims. That way, the risks and costs of trial, for both sides, are eliminated, and the Class can be provided with an immediate benefit. Plaintiffs, Defendants, and their attorneys all believe that this Settlement is best for the Class and the Parties.

The Court has given its preliminary approval to this settlement as fair and reasonable to the Class and has appointed Plaintiffs to act as the Class Representatives, and for their attorneys to act as attorneys for the Class with regard to the Settlement (the "Class Counsel"). The Court has determined that these are adequate representatives for the Class.

## 5. How do I know if I am part of the settlement?

Everyone who fits this description is a Class Member:

> All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021.

## 6. Are there exceptions to being included?

Yes. If you are a Class Member, you may opt out as stated in Section 13 below. If you do not opt out, you are a Class Member who will receive part of the Settlement if approved.

## 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can call the Class Administrator at [Number] or write to the Class Administrator at [address]. This is the Class Administrator's mailing address for all written communications described herein. You also may contact Class Counsel identified below for more information.

## 8. How much money is the Settlement for and how is it allocated?

Defendants have agreed to pay a total of $1,475,000.00 to settle all Claims in this lawsuit. Class Members will be paid out of the Net Settlement Fund (the "Fund"), which is the $1,475,000.00 total settlement amount minus the following payments: (1) fees to the Settlement Administrator (estimated at $9,999.00) for the costs of administrating the Settlement; (2) the costs of litigation as approved by the Court in an amount not to exceed $60,000.00; (3) PAGA penalties of $89,120.00, including a payment to the California Labor and Workforce Development Agency (LWDA) for its share of PAGA penalties; (4) a service award to each of the Plaintiffs not to exceed $10,000 each for serving as the Class Representatives and assisting in prosecuting the case; and (5) attorneys' fees up to the amount approved by the Court, not to exceed 33.33% ($491,617.50) of the total settlement amount.

Of the Fund, the remaining PAGA penalties ($22,280.00) are to be paid to PAGA Members, defined as Class Members employed by Defendants between July 15, 2018 to July 24, 2021 (the "PAGA Period"). That amount will be distributed pro rata based on pay periods to each PAGA Member. The remaining amount of the Fund will be distributed to Class Members based on their number of workweeks during the Class Period.

## 9. How much will my payment be and what is the information used to calculate my share?

Based on the calculation described above, it is currently estimated that your share of the Net Settlement Fund will be _____. Your share of the PAGA penalties is estimated to be an

QUESTIONS? CALL _____

4

EXHIBIT A TO EXHIBIT 1

additional _____. This amount could change, depending on how many Class Members opt-out, and/or further determinations by the Class Administrator and/or rulings of the Court.

Of your share of the Net Settlement fund, 60% will be reported as "1099" miscellaneous income by the Class Administrator to federal and state tax authorities. 40% will be reported as "W-2" income subject to withholdings, deductions and contributions in relation to wage payments. The withholding rate for the W-2 income may not be the same as you have used but is a customary one used in class action settlements. For Class Members who opt-out of the non-PAGA portion of the Settlement will only receive payments based on the PAGA penalties for which IRS 1099 Forms shall be issued. You are responsible for all employee tax liability in relation to payments to you under the Settlement. This Notice is not tax advice. Do not ask Class Counsel, or Defendants or its counsel for tax advice, as they will not provide it. They are not responsible for the tax advice. You should consult your own tax advisor.

Defendants' records show that the following information pertinent to the calculation of your estimated settlement share:

Your number of workweeks as an Attendant, Bus Aid or Bus Monitor during the Class Period is _____.

Your number of pay periods as an Attendant, Bus Aid or Bus Monitor during the PAGA Period is _____.

If you disagree with this information, you must notify the Class Administrator by writing to them at the address in paragraph 7. You must sign your notification, and include your full name, address, telephone number, last four digits of your social security number, the reason(s) that you dispute the information, and all supporting documentation. Your notification must be postmarked no later than [45 days from mailing]. The Class Administrator will make a final decision.

## 10. How can I get a payment?

You do not need to do anything to receive a Settlement Payment. However, it is important that you immediately notify the Class Administrator if your mailing address is different from the address to which this Notice was sent.

## 11. When will I receive a payment?

Payments will be distributed pursuant to a schedule established by the Settlement and by the Court. Presently, the expected date of payment is estimated to be _____. This could change depending on factors influencing the Class Administrator's tasks, any objections to the Settlement, and/or actions by the Court.

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

### 12. What am I giving up to get a payment?

Upon entry of judgment, each member of the Class (except those who properly opt out) on behalf of each of them and each of their heirs, executors, administrators, and assigns, do hereby and forever release, First Student, Inc., First Student Management, LLC, FirstGroup America, Inc., their past, present, and future parents, subsidiaries, divisions, and their respective past, present, and future officers, directors, employees, partners, shareholders, owners, agents, insurers, legal representatives, attorneys and all of their successors (including persons or entities who may acquire in the future), assigns, representatives, heirs, executors, and administrators and all other persons acting by, through, under or in concert with them that could be liable (the "Released Parties) from any and all claims, debts, rights, demands, obligations or liabilities of every nature and description, for damages, premiums, penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief alleged in the original and amended Complaints in the Action, or which could have been alleged based on the facts alleged in the original and amended Complaints in the Action during the Class Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 et seq.; (viii) violations of the applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. "Released Claims" includes any and all claims for benefits based on the above-referenced claims under any benefit plan, program or policy sponsored or maintained by Defendants, including, but not limited to the Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq., but not vested benefits under any pension or 401(k) plan or other ERISA-governed benefit plan. "Released Claims" also includes all types of relief available for the above-referenced claims, including any claims for damages, restitution, losses, premiums, penalties, fines, liens, attorneys' fees, costs, expenses, debts, interest, injunctive relief, declaratory relief, or liquidated damages.,

PAGA Members further release the Released Parties from any and all claims for penalties under PAGA, alleged in the original and amended Complaint or Plaintiffs' letters to the LWDA, or which could have been alleged based on the facts alleged in the original and amended Complaints or Plaintiffs' letters to the LWDA, arising during the PAGA Period, relating to the alleged failure to pay split shift premiums and derivative claims, including without limitation: (i) failure to pay split shift premiums pursuant to Labor Code sections 1197, 1194 and IWC Wage Order No. 9, (ii) failure to pay minimum wages pursuant to Labor Code sections 1197, 1194 and 1194.2 and IWC Wage Order No. 9, (iii) failure to issue complete and accurate itemized wage statements pursuant to Labor Code section 226, (iv) waiting time penalties pursuant to Labor Code section 201-203, (v) violations of California Labor Code §§ 200, 201, 202, 203, 204, 210, 218.5, 226, 558 and 1194; (vi) violations of California Business & Professions Code § 17200 et seq.; (viii) violations of the

EXHIBIT A TO EXHIBIT 1

applicable IWC Wage Orders that apply to split shift premiums and derivative claims as described above, including without limitation the relevant portions of IWC Wage Orders 9-1998, 9-2000 and 9-2001; (ix) as related to the claims referenced above, interest, attorneys' fees and costs, for the duration of the Class Period. ("Released PAGA Claims").

## 13. How do I opt out of the settlement?

To exclude yourself from the Settlement, you must send a signed letter by mail to the Class Administrator stating words to the effect: "I wish to be excluded from the Class." You must also include your name, mailing address, telephone number, and the last four digits of your social security number. Your exclusion request must be postmarked no later than [45 days from mailing] and sent to the Class Administrator at the address in paragraph 7.

If you exclude yourself, you will not receive any money from the Net Settlement Amount for the non-PAGA portion of the Settlement. You cannot object to the Settlement, and you will not be legally bound by non-PAGA portion of the Settlement if approved. Class Members do not have the right to opt-out from the PAGA portion of the Settlement. If you ask to be excluded for the Settlement, and you are a PAGA Member, you will continue to receive your PAGA portion of the Settlement and be bound by the Released PAGA Claims.

## 14. If I don't exclude myself, can I sue Defendants for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Defendants for the claims that this Settlement resolves. If you have a pending lawsuit or the same claims that are being settled against Defendants, speak to your lawyer in that case immediately. You must exclude yourself from *this* Class to continue your own lawsuit if it involves the same claims.

## 15. If I exclude myself, can I get money from this settlement?

If you exclude yourself, you will not receive any money from the Net Settlement Amount, you cannot object to the Settlement, and you will not be legally bound by the Settlement if approved. Class Members shall not have the right to opt-out from the PAGA portion of the Settlement. If you ask to be excluded for the Settlement, and you are a PAGA Member, you will continue to receive your portion of the PAGA Members Payment of the Settlement.

## 16. Who is my lawyer if I am included in the Class?

The Court has appointed as Class Counsel the following attorneys: Hunter Pyle and Katherine Fiester of Hunter Pyle Law, 1300 Broadway, 11th Floor, Oakland, CA 94612, (510) 444-4400, hunter@hunterpylelaw.com, kfiester@hunterpylelaw.com. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. If you have questions about this Settlement, you may contact Class Counsel.

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

## 17. How do I object to the Settlement going forward?

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement because the Court can only approve or reject the Settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

To object to the Settlement, a Class Member must postmark a valid Notice of Objection to the Settlement Administrator on or before the Response Deadline. Any objection to the proposed settlement must be in writing and signed. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers should include: (i) the objector's full name, signature, address, and telephone number; (ii) a written statement of all grounds for the objection accompanied by any legal support for such objection; (iii) copies of any papers, briefs, or other documents upon which the objection is based; and (iv) a statement whether the objector intends to appear at the Final Approval Hearing.

The Parties will file all Notices of Objection with the Court in advance of the Final Approval Hearing.

Any Class Member who does not object in the manner described above shall be deemed to have waived any objections, and shall be foreclosed from objecting to the fairness or adequacy of the proposed Settlement, the payment of attorneys' fees and costs, the service payments to the Class Representative, the claims process, and any and all other aspects of the Settlement. Likewise, even if you file an objection, you will be bound by the terms of the Settlement, including applicable releases as set forth above, unless the Settlement is not finally approved by the Court.

## 18. What Is the difference between objecting and opting out?

Objecting is simply saying that you do not like something about the Settlement and do not want it approved. Opting out is saying that you do not want to be part of the Class and participate in the Settlement. If you opt out, you have no basis to object because the case no longer affects you.

## 19. When and where will the Court decide whether to approve the settlement

The Court will hold a Final Approval Hearing at _____ on _____, [insert court information]. At this hearing, the Court will make a final decision as to whether the Settlement is fair, reasonable, and adequate. If you or other Class Members object to the Settlement, the Court will consider the objections. The Judge will listen to people who have asked to speak at the hearing. At or after the hearing, the Court will decide whether to grant final approval to the Settlement.

The Final Approval Hearing may be continued without further notice to Class Members. You are advised to check the settlement website at [INSERT LINK TO WEBSITE PROVIDED BY ADMINISTRATOR] or the Court's Public Access to Court Electronic Records (PACER) website at https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CACDC site to confirm that the date has not been changed.

### 20. Do I have to come to the hearing?

No. Class Counsel will answer questions the Judge may have. You are welcome to come at your own expense. If you properly submit an objection, you don't have to come to Court to talk about it. As long as you properly submitted your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 21. May I speak at the hearing?

You may ask the Court for permission to speak at the Fairness Hearing. You cannot appear and speak at the hearing if you opt out.

### 22. What happens if I do nothing at all?

If you do nothing, or fail to act timely, you will receive your share of the settlement, but you will be barred from bringing the released claims in paragraph 12 against Defendants.

### 23. No retaliation from Defendants if you are included in Class or opt out to be excluded from Class

California law makes it unlawful to retaliate against an employee for participating in a lawsuit like this one.

### 24. Are there more details about the settlement?

This Notice is intended as a summary and does not fully describe this action, the claims, the defenses, or the proposed Settlement, which is subject to the terms and conditions of the Settlement Agreement filed with the Court and as preliminarily approved by the Court. For further information, you may call or contact the Class Administrator (see paragraph 7 for contact information) or Class Counsel (see paragraph 16 for contact information).

The Class Administrator also maintains a website at which some important documents in this case are available. The link to the website is [insert].

You may also obtain more information by accessing the Court docket in this case through the Public Access to Court Electronic Records (PACER) website https://pacer.uscourts.gov/file-case/court-cmecf-lookup/court/CACDC or by visiting the office of the Clerk of the United States District Court, located on the 1st Floor of the United States District Court, Central District of

QUESTIONS? CALL _____

EXHIBIT A TO EXHIBIT 1

California, Edward R. Roybal Federal Building & U.S. Courthouse located at 255 East Temple Street Los Angeles, CA 90012, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT CONTACT THE CLERK OF THE COURT, THE JUDGE OR DEFENDANTS OR THEIR COUNSEL WITH INQUIRIES.**

Date: _____

This Notice has been approved by the Judge of the United States District Court for the Central District of California responsible for overseeing and deciding this case.

HUNTER PYLE, SBN 191125
KATHERINE FIESTER, SBN 301316
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails:   hunter@hunterpylelaw.com;
          kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated;<br><br>        Plaintiffs,<br><br>    v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 5:19-cv-01669-JGB-SHK<br><br>Class and Collective Action<br><br>**DECLARATION OF MARY DIAZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:      October 18, 2021<br>Time:      9:00 a.m.<br>Ctrm:      1<br>Judge:     Hon. Jesus G. Bernal |

## DECLARATION OF MARY DIAZ

I, Mary Diaz, declare:

1.     I make this statement based on my personal knowledge, except where stated on information and belief. I am prepared and competent to testify to the matters set forth in this declaration.

2.     I worked as an Attendant[1] First Student, Inc., First Student Management, LLC, Firstgroup America, Inc. (collectively "First Student") from approximately July 2016 to approximately June 2019.

3.     As an Attendant, my duties included, among other things, supervising students, ensuring that students' seat belts are properly buckled, strapping down wheelchairs, and helping students transfer to other buses. I was also required to communicate with caregivers, parents, and teachers regarding students' health and other issues.

4.     I stopped working for First Student in approximately June of 2019.

5.     On December 13, 2019, I spoke with my attorney, Hunter Pyle, by telephone. I understood that the duties of a class representative included protecting the interests of the other Attendants as if they were my own interests. I decided that I wanted to be named in the case as a class representative.  I searched for and provided my paystubs and other employment-related documents from First Student to Mr. Pyle including an employee handbook. I also provided information about the way Attendants were paid by First Student.

6.     I have actively been involved in this class action, including gathering documents; speaking with other Attendants about the case; staying up to date about the progress of the case; and helping my lawyers understand the facts of my employment.

---

[1] My job title has also been referred to as a Bus Aide or Bus Monitor.

-1-
**DECLARATION OF MARY DIAZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

7.     I also knew that having my name on a publicly-available lawsuit could negatively affected my ability to work in my chosen industry.  I was concerned that as a whistleblower it would be hard for me to find replacement work in the future. Despite these concerns, it was important to me that I stand up for the other First Student Attendants.

8.     I have exchanged numerous phone calls, emails, and text messages with my lawyers as requested.

9.     I have had at least 10 phone calls with my lawyers over the course of the past two years to be advised of the progress of the case. Each call lasted approximately 20-30 minutes.

10.     I was actively involved in helping Mr. Pyle prepare for mediation.  I answered questions about First Student's pay policies and practices.

11.     I was actively involved with the settlement negotiations for the case. I attended the mediation by Zoom, which took approximately 9 hours. I carefully reviewed the settlement agreement before signing it. I believe that this settlement is a good result for the class members. I accepted settlement only after much consideration and in the spirit of fairness.

12.     When the class action notice is mailed out, I will make myself available by phone, in person and by email to ensure that class members are aware of the suit and its progress and how to be a part of it.

13.     Overall I have made a consistent effort throughout the litigation to stay informed on all of the major developments in this case, and to volunteer my ideas and assistance.

14.     Since the lawsuit was filed, I have made my availability and participation in the lawsuit a priority in my life.

15.     I have placed the interests of the class members before my own interests, including taking time off of work to attend the mediation and taking on

-2-

**DECLARATION OF MARY DIAZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

the risk that I could be responsible for First Student litigation costs if the case was ultimately unsuccessful.

16.    In total, I believe I have spent at least 50 hours working on this case.  I expect to spend another 10 hours on the case between now and final resolution of this case.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed on September 3, 2021, in ___Palmdale___, California.

DocuSigned by:

6BF82D6B80234A0...

Mary Diaz

**DECLARATION OF MARY DIAZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1  **HUNTER PYLE, SBN 191125**
2  **KATHERINE FIESTER, SBN 301316**
   HUNTER PYLE LAW
3  1300 Broadway, Eleventh Floor
   Oakland, California 94612
4  Telephone: (510) 444-4400
   Facsimile: (510) 444-4410
5  Emails:  hunter@hunterpylelaw.com;
6          kfiester@hunterpylelaw.com
7
8  Attorneys for Plaintiffs and the Putative Class
9             **UNITED STATES DISTRICT COURT**
10
11            **CENTRAL DISTRICT OF CALIFORNIA**

12  NORMA LOPEZ, CINDY MITCHELL, | Case No.: 5:19-cv-01669-JGB-SHK
    VADA NEICE, and MARY DIAZ, on
13  behalf of themselves and all others | Class and Collective Action
    similarly situated;
14                                       | **DECLARATION OF NORMA LOPEZ**
15          Plaintiffs,                  | **IN SUPPORT OF PLAINTIFFS'**
                                         | **MOTION FOR PRELIMINARY**
16      v.                               | **APPROVAL OF SETTLEMENT**
17
18  FIRST STUDENT, INC., FIRST           | Date:     October 18, 2021
    STUDENT MANAGEMENT, LLC,             | Time:     9:00 a.m.
19  FIRSTGROUP AMERICA, INC., and        | Ctrm:     1
    DOES 1 through 10, inclusive,        | Judge:    Hon. Jesus G. Bernal
20
21          Defendants.
22

23
24
25
26
27
28

---

**DECLARATION OF NORMA LOPEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# DECLARATION OF NORMA LOPEZ

I, Norma Lopez, declare:

1.      I make this statement based on my personal knowledge, except where stated on information and belief. I am prepared and competent to testify to the matters set forth in this declaration.

2.      I work as an Attendant[1] for First Student, Inc., First Student Management, LLC, Firstgroup America, Inc. (collectively "First Student"). I have worked for First Student from approximately December 2002 to the present.

3.      From at least July 2015, First Student has employed me as an Attendant in Hesperia, California. As an Attendant, my duties include, among other things, supervising students, ensuring that students' seat belts are properly buckled, strapping down wheelchairs, and helping students transfer to other buses. I have also been required to communicate with caregivers, parents, and teachers regarding students' health and other issues.

4.      On June 7, 2019, I met in person with my attorney, Hunter Pyle, in Carson, California. That meeting lasted several hours, and, with travel time, took up most of my day. I understood that the duties of a class representative included protecting the interests of the other Attendants as if they were my own interests. I decided that I wanted to be named in the case as a class representative.

5.      I searched for and provided my wage statements, documents pertaining to my job duties as an Attendant, and other employment-related documents from First Student to Mr. Pyle. I also provided information of about the way Attendants were paid by First Student.

6.      I have actively been involved in this class action, including gathering documents; assisting with the motion for remand; speaking with other Attendants

---

[1] My job title has also been referred to as a Bus Aide or Bus Monitor.

-1-

**DECLARATION OF NORMA LOPEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

about the case; staying up to date about the progress of the case; and helping my lawyers understand the facts of my employment.

7.     I am still employed by First Student. When I was deciding whether or not to proceed with this case, I was concerned that First Student would retaliate against me if I did so. I have seen other Attendants who complained about working conditions get treated less favorably. Despite these concerns, it was important to me that I stand up for the other First Student Attendants.

8.     I also knew that having my name on a publicly-available lawsuit could negatively affected my ability to work in my chosen industry. I was concerned that as a whistleblower it would be hard for me to find replacement work if First Student terminated me.

9.     I have exchanged numerous emails, text messages, and phone calls with my lawyers as requested.

10.     I have had at least approximately 10 phone calls with my lawyers over the course of the past two years to be advised of the progress of the case. Each call lasted approximately 30 minutes.

11.     I was actively involved in helping Mr. Pyle prepare for mediation. I also answered questions about First Student's pay policies and practices. I estimate that I spent approximately 4 hours helping to prepare for the mediation.

12.     I was actively involved with the settlement negotiations for the case. I attended the mediation by Zoom, which took approximately 9 hours. I carefully reviewed the settlement agreement before signing it. I believe that this settlement is a good result for the class members. I accepted settlement only after much consideration and in the spirit of fairness.

13.     When the class action notice is mailed out, I will make myself available by phone, in person and by email to ensure that class members are aware of the suit and its progress and how to be a part of it.

-2-

**DECLARATION OF NORMA LOPEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

14. Overall I have made a consistent effort throughout the litigation to stay informed on all of the major developments in this case, and to volunteer my ideas and assistance.

15. Since the lawsuit was filed, I have made my availability and participation in the lawsuit a priority in my life.

16. I have placed the interests of the class members before my own interests, including taking time off of work to attend the mediation and taking on the risk that I could be responsible for First Student's litigation costs if the case was ultimately unsuccessful.

17. In total, I believe I have spent at least 50 hours working on this case. I expect to spend another 10 hours on the case between now and final resolution of this case.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed on September 3, 2021, in Hesperia, California.



Norma Lopez

**DECLARATION OF NORMA LOPEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

**HUNTER PYLE, SBN 191125**
**KATHERINE FIESTER, SBN 301316**
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails:   hunter@hunterpylelaw.com;
          kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated;<br><br>          Plaintiffs,<br><br>     v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No.: 5:19-cv-01669-JGB-SHK<br><br>Class and Collective Action<br><br>**DECLARATION OF CINDY MITCHELL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:     October 18, 2021<br>Time:     9:00 a.m.<br>Ctrm:     1<br>Judge:    Hon. Jesus G. Bernal |

---

**DECLARATION OF CINDY MITCHELL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

# DECLARATION OF CINDY MITCHELL

I, Cindy Mitchell, declare:

1.    I make this statement based on my personal knowledge, except where stated on information and belief. I am prepared and competent to testify to the matters set forth in this declaration.

2.    I work as an Attendant[1] for First Student, Inc., First Student Management, LLC, Firstgroup America, Inc. (collectively "First Student"). I have worked for First Student from approximately May 2011 to the present.

3.    From at least May 2011, First Student has employed me as an Attendant in Hesperia, California. As an Attendant, my duties include, among other things, supervising students, ensuring that students' seat belts are properly buckled, strapping down wheelchairs, and helping students transfer to other buses. I have also been required to communicate with caregivers, parents, and teachers regarding students' health and other issues.

4.    On June 7, 2019, I met in person with my attorney, Hunter Pyle, in Carson, California. That meeting lasted several hours, and, with travel time, took up most of my day. I understood that the duties of a class representative included protecting the interests of the other Attendants as if they were my own interests. I decided that I wanted to be named in the case as a class representative.

5.    I searched for and provided documents such as my paystubs and other time records, a spreadsheet detailing underpayment of wages owed to me, documents pertaining to my job duties as an Attendant, and other employment-related documents from First Student to Mr. Pyle. I also provided Mr. Pyle information about the way Attendants were paid by First Student.

6.    I have actively been involved in this class action, including gathering documents; assisting with the motion for remand; speaking with other Attendants

---

[1] My job title has also been referred to as a Bus Aide or Bus Monitor.

**DECLARATION OF CINDY MITCHELL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

about the case; staying up to date about the progress of the case; and helping my lawyers understand the facts of my employment.

7. I am still employed by First Student. When I was deciding whether or not to proceed with this case, I was concerned that First Student would retaliate against me if I did so. Despite these concerns, it was important to me that I stand up for the other First Student Attendants.

8. I also knew that having my name on a publicly-available lawsuit could negatively affected my ability to work in my chosen industry. I knew that if someone searched for my name and employer on the internet, this case would likely appear in the search results. I was concerned that as a whistleblower it would be hard for me to find replacement work if First Student terminated me.

9. I have participated in and exchanged numerous phone calls, emails, and text messages with my lawyers as requested.

10. I have had at least 10 phone calls with my lawyers over the course of the past two years to be advised of the progress of the case. Each call lasted approximately 30 minutes.

11. I was actively involved in helping Mr. Pyle prepare for mediation. In addition to providing Mr. Pyle with multiple documents regarding my job duties, I also answered questions about First Student's pay policies and practices. I reviewed damages calculations. I estimate that I spent at least 4 hours helping to prepare for the mediation.

12. Thereafter, I was actively involved with the settlement negotiations for the case. I attended the mediation by Zoom, which took approximately 9 hours. I carefully reviewed the settlement agreement before signing it. I believe that this settlement is a good result for the class members. I accepted settlement only after much consideration and in the spirit of fairness.

**DECLARATION OF CINDY MITCHELL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

DocuSign Envelope ID: EE393B56-DAE7-4D84-BA93-4590188C6888

13.     When the class action notice is mailed out, I will make myself available by phone, in person and by email to ensure that class members are aware of the suit and its progress and how to be a part of it.

14.     Overall I have made a consistent effort throughout the litigation to stay informed on all of the major developments in this case, and to volunteer my ideas and assistance.

15.     Since the lawsuit was filed, I have made my availability and participation in the lawsuit a top priority in my life.

16.     I have placed the interests of the class members before my own interests, including taking time off of work to attend the mediation and taking on the risk that I could be responsible for First Student litigation costs if the case was ultimately unsuccessful.

17.     In total, I believe I have spent at least 60 hours working on this case.  I expect to spend another 10 hours on the case between now and final resolution of this case.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed on September 3, 2021, in Hesperia, California.



Cindy Mitchell

-3-

**DECLARATION OF CINDY MITCHELL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

**HUNTER PYLE, SBN 191125**
**KATHERINE FIESTER, SBN 301316**
HUNTER PYLE LAW
1300 Broadway, Eleventh Floor
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile: (510) 444-4410
Emails:   hunter@hunterpylelaw.com;
               kfiester@hunterpylelaw.com

Attorneys for Plaintiffs and the Putative Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated;<br><br>              Plaintiffs,<br><br>       v.<br><br>FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No.: 5:19-cv-01669-JGB-SHK<br><br>Class and Collective Action<br><br>**DECLARATION OF VADA NEICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date:        October 18, 2021<br>Time:        9:00 a.m.<br>Ctrm:        1<br>Judge:       Hon. Jesus G. Bernal |

# **DECLARATION OF VADA NEICE**

I, Vada Neice, declare:

1.     I make this statement based on my personal knowledge, except where stated on information and belief. I am prepared and competent to testify to the matters set forth in this declaration.

2.     I worked as an Attendant[1] for First Student, Inc., First Student Management, LLC, Firstgroup America, Inc. (collectively "First Student") from at least July 2015 to April 2021.

3.     As an Attendant, my duties included, among other things, supervising students, ensuring that students' seat belts are properly buckled, strapping down wheelchairs, and helping students transfer to other buses. I was also required to communicate with caregivers, parents, and teachers regarding students' health and other issues.

4.     On June 7, 2019, I met in person with my attorney, Hunter Pyle, in Carson, California.  That meeting lasted several hours, and, with travel time, took up most of my day. I understood that the duties of a class representative included protecting the interests of the other Attendants as if they were my own interests. I decided that I wanted to be named in the case as a class representative.

5.     I searched for and provided all the time records and paystubs that I could find from First Student to Mr. Pyle. I also provided information of about the way Attendants were paid by First Student.

6.     I have actively been involved in this class action, including gathering documents; speaking with other Attendants about the case; staying up to date about the progress of the case; and helping my lawyers understand the facts of my employment.

---

[1] My job title has also been referred to as a Bus Aide or Bus Monitor.

-1-

**DECLARATION OF VADA NEICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

7. I also knew that having my name on a publicly-available lawsuit could negatively affect my ability to work in my chosen industry. I was concerned that as a whistleblower it would be hard for me to find replacement work if First Student terminated me. When I was deciding whether or not to proceed with this case, I was concerned that First Student would retaliate against me if I did so. I have seen other Attendants who complained about working conditions get treated less favorably. Despite these concerns, it was important to me that I stand up for the other First Student Attendants.

8. I have exchanged numerous phone calls, emails, and text messages with my lawyers as requested.

9. I have had at approximately 10 phone calls with my lawyers over the course of the past two years to be advised of the progress of the case. Each call lasted approximately 15 minutes.

10. I was actively involved in helping Mr. Pyle prepare for mediation. I answered questions about First Student's pay policies and practices.

11. I was actively involved with the settlement negotiations for the case. I made myself available all day on the day of mediation, which took approximately 9 hours, to stay updated on the status of the negotiations and answer any questions. I carefully reviewed the settlement agreement before signing it. I believe that this settlement is good result for the class members. I accepted the settlement only after much consideration and in the spirit of fairness.

12. When the class action notice is mailed out, I will make myself available by phone, in person and by email to ensure that class members are aware of the lawsuit and its progress and how to be a part of it.

13. Overall I have made a consistent effort throughout the litigation to stay informed on all of the major developments in this case, and to volunteer my ideas and assistance.

-2-

**DECLARATION OF VADA NEICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

14. Since the lawsuit was filed, I have made my availability and participation in the lawsuit a priority in my life.

15. I have placed the interests of the class members before my own interests, including taking time to make myself available to participate in the mediation process and taking on the risk that I could be responsible for First Student's litigation costs if the case was ultimately unsuccessful.

16. In total, I believe I have spent at least 50 hours working on this case. I expect to spend another 10 hours on the case between now and final resolution of this case.

I declare under penalty of perjury under the laws of the State of South Carolina and the United States that the foregoing is true and correct, and that this declaration was executed on September 3, 2021, in ___New ellenton___, South Carolina.

DocuSigned by:

*Vada Neice*

17415DFCD6BE4AE...

Vada Neice

**DECLARATION OF VADA NEICE IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

1 | **HUNTER PYLE, SBN 191125**
2 | **KATHERINE FIESTER, SBN 301316**
  | HUNTER PYLE LAW
3 | 1300 Broadway, Eleventh Floor
4 | Oakland, California 94612
  | Telephone: (510) 444-4400
5 | Facsimile: (510) 444-4410
6 | Email(s):    hunter@hunterpylelaw.com;
  |               kfiester@hunterpylelaw.com
7 |
8 | Attorneys for Plaintiffs and the Putative Class
9 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| NORMA LOPEZ, CINDY MITCHELL, VADA NEICE, and MARY DIAZ, on behalf of themselves and all others similarly situated; | Case No.: 5:19-cv-01669-JGB-SHK |
|---|---|
| Plaintiffs, | **[PROPOSED] ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS AND GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| FIRST STUDENT, INC., FIRST STUDENT MANAGEMENT, LLC, FIRSTGROUP AMERICA, INC., and DOES 1 through 10, inclusive, | Date:      October 18, 2021 |
| | Time:      9:00 a.m. |
| | Ctrm:      1 |
| Defendants. | Judge:     Hon. Jesus G. Bernal |

ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT

On October 18, 2021, the Court heard Plaintiffs Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz's motion for preliminary approval of a proposed class action settlement with Defendant First Student, Inc., First Student Management, LLC, and Firstgroup America, Inc. ("Defendants"). The Court has considered Plaintiffs' motion, the Joint Stipulation of Class and PAGA Representative Action Settlement And Release ("Settlement"), the proposed Class Notice attached thereto as Exhibit A, and the submissions of counsel, and hereby finds and orders as follows:

1. The Court finds on a preliminary basis that the class action settlement memorialized in the Settlement filed with the Court falls within the range of reasonableness and, therefore, meets the requirements for preliminary approval.

2. The Court conditionally certifies, for settlement purposes only, the following settlement Class:

> All individuals employed by First Student, Inc. or First Student Management, LLC in the position of Attendant, Bus Aid or Bus Monitor in the state of California as hourly non-exempt employees at any time from July 11, 2015 to July 24, 2021. (the "Class" or "Class Member(s).")

3. The Court finds that, for settlement purposes only, the requirements of Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b)(3) are satisfied.

4. The Court appoints, for settlement purposes only, Norma Lopez, Cindy Mitchell, Vada Neice, and Mary Diaz, as the Class Representatives.

5. The Court appoints, for settlement purposes only, Hunter Pyle Law as Class Counsel.

6. The Court appoints Simpluris, Inc. as Settlement Administrator.

7. The Court approves, as to form and content, the proposed Class Notice attached to the Settlement as Exhibit A. The Settlement Administrator is ordered to

disseminate the Class Notice to the Class Members as provided in the Settlement and this Order.

8.    Each Class Member who wishes to be excluded from the Class will have forty-five (45) days from the date the Class Notice is originally mailed to opt-out of the Class.

9.    Each Class Member who does not opt-out will have forty-five (45) days after the date on which the Settlement Administrator mails the Class Notice to object to the Settlement by  sending a written objection to the Settlement Administrator. Class Counsel shall file any objections with the Court.

10.    The Court will conduct a Final Approval Hearing on Monday, February 7, 2022 at 9:00 a.m., or as soon thereafter as the matter may be heard, to determine the overall fairness of the settlement and to fix the amount of reasonable attorneys' fees and costs to Class Counsel and service award to the Class Representatives.

11.    The Final Approval Hearing may be continued without further notice to the Class Members. Class Counsel shall file their motion for approval of reasonable attorneys' fees, costs, and the Class Representative service payments sought in the Settlement on or before December 7, 2021. Class Counsel shall file their motion for final approval of the settlement on or before December 20, 2021.

12.    Defendants have complied with the notice requirements of 28 U.S.C. § 1715.

13.    The implementation schedule for further settlement proceedings is as follows:

| Event | Event Date |
|---|---|
| Defendants to provide Class Data List information to Settlement Administrator | November 1, 2021 |
| Settlement Administrator to mail Class Notice to the Settlement Class | November 22, 2021 |
| Class Counsel to file Motion for Attorneys' Fees, Costs, and Class Representative Service Award | December 7, 2021 |

| Class Counsel to file Motion for Final Settlement Approval | December 20, 2021 |
|---|---|
| Objection/Exclusion Deadline | January 6, 2022 |
| Settlement Administrator to provide declaration to the Parties | January 20, 2022 |
| Plaintiffs to file Declaration of Settlement Administrator | January 26, 2022 |
| Final Approval Hearing | February 7, 2022 at 9:00 a.m. |

**IT IS SO ORDERED.**

Dated: _____            _____

Hon. Jesus G. Bernal
United States District Court Judge

**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT**

# EXHIBIT F

| Full Name | Total Payout | State |
|---|---|---|
| Abarca,Sally | $ 837.68 | CA |
| Abdin,Tok H | $ 351.53 | CA |
| Abraham,Ragi W | $ 798.35 | CA |
| Abrams,Michael E | $ 1,017.17 | CA |
| Acevedo,Damaris | $ 505.30 | CA |
| Aceves,Christian | $ 7.48 | CA |
| Acosta,Daniel E | $ 70.65 | CA |
| Acosta,Lisa | $ 70.65 | CA |
| Acosta,Margaret A | $ 1,269.13 | CA |
| Adair,Mary C | $ 688.09 | CA |
| Agapeyev,Vladimir | $ 254.29 | CA |
| Aguiar,Victor D | $ 29.92 | CA |
| Aguilar,Leilani | $ 29.92 | CA |
| Aguilar,Marisa A | $ 49.46 | CA |
| Aguilar,Nancy L | $ 21.20 | CA |
| Aguilar,Yevette | $ 2,551.52 | CA |
| Alba,Jessica J | $ 972.30 | CA |
| Alcala,Julio | $ 231.86 | CA |
| Alejandre,Zulema | $ 2,121.18 | CA |
| Aleman,Pilar | $ 211.95 | CA |
| Alexandre,Elizabeth | $ 2,964.19 | CA |
| Alfaro,Anthony J | $ 321.61 | CA |
| Alfaro,Cheyanne C | $ 493.62 | CA |
| Alfaro,Cruz | $ 894.20 | CA |
| Allen,Joshua | $ 433.79 | CA |
| Almanzar,Nichole | $ 52.36 | CA |
| Almenara,Erendira | $ 14.96 | CA |
| Alter,Samantha | $ 511.53 | CA |
| Alvarado,Vanessa | $ 3,914.08 | CA |
| Alvarez,Alexandria | $ 942.38 | CA |
| Alvarez,Jennifer L | $ 478.67 | CA |
| Alves,Susan L | $ 426.32 | CA |
| Anderson,Carol A | $ 716.37 | NC |
| Anderson,Craig A | $ 82.28 | CA |
| Anderson,Katherine W | $ 741.83 | CA |
| Anderson,Melanie R | $ 2,195.41 | TX |
| Anderson,Sylvia L | $ 2,195.92 | CA |
| Anderson,Travis M | $ 7.48 | CA |
| Anderson,Wendy S | $ 112.19 | CA |
| Andrade,Alejandra | $ 2,924.70 | CA |
| Andrews-Henderson,Brenda O | $ 155.43 | CA |
| Angel,Alison M | $ 42.39 | CA |
| Anguiano,Rocio | $ 953.78 | CA |
| Anguiano,Yadira | $ 2,918.24 | CA |
| Arbayo De Cash,Margarita | $ 643.22 | CA |
| Armendariz,Luis A | $ 97.23 | CA |

| | | |
|---|---|---|
| Arnold,Tyesha L | $ 321.61 | CA |
| Aros,Salina K | $ 438.03 | CA |
| Arreola,Jacqueline | $ 501.57 | CA |
| Arsineda,Maria | $ 800.27 | CA |
| Arzate,Jesus A | $ 1,117.85 | CA |
| Aspurias,Natividad C | $ 1,881.65 | CA |
| Atangan,James D | $ 1,483.13 | CA |
| Atoyebi,Crystal A | $ 197.82 | CA |
| Audette,Danielle M | $ 466.29 | CA |
| Auldridge,Lonnie D | $ 1,822.79 | CA |
| Avalos,Linda | $ 508.58 | CA |
| Avery,Brandy C | $ 127.17 | CA |
| Ayala,Saturnino J | $ 329.08 | CA |
| Ayala,Vicente B | $ 897.51 | CA |
| Babb,Mark R | $ 1,114.87 | CA |
| Ballestracci,Tiffany R | $ 56.52 | CA |
| Banks,Michelle | $ 666.19 | CA |
| Banos,Lincey A | $ 112.19 | CA |
| Banquedano,Jonathan J | $ 35.33 | CA |
| Banquiles,Salvador A | $ 164.54 | CA |
| Barber,Lakeisha S | $ 148.37 | CA |
| Barland,Kim K | $ 560.94 | CA |
| Barnes,Rosalyn R | $ 529.88 | CA |
| Barrientos,Jessica | $ 531.02 | CA |
| Barrios,Joshua J | $ 1,856.26 | CA |
| Bass,Karena S | $ 1,601.87 | CA |
| Bastrup,Cassie L | $ 452.16 | CA |
| Bauders,Linda T | $ 367.38 | CA |
| Baumgardner,Andrew M | $ 7.48 | CA |
| Bautista,Marlisa M | $ 190.76 | CA |
| Beard,Jena R | $ 381.44 | CA |
| Beard,Rashad J | $ 91.85 | CA |
| Becerra,Cindi | $ 155.43 | CA |
| Becerra,Rosalyn | $ 42.39 | CA |
| Becerra,Victoria | $ 1,287.28 | CA |
| Beck,Tami L | $ 3,099.23 | CA |
| Bedgood,Laura J | $ 310.86 | CA |
| Bell,Asha K | $ 522.82 | CA |
| Bell,La'Zhon | $ 52.36 | CA |
| Beltran,Felipe J | $ 219.02 | CA |
| Benavides,Casey J | $ 304.63 | CA |
| Benavidez,Christina L | $ 176.63 | CA |
| Benefield,Beverly J | $ 1,384.22 | CA |
| Benoit,Pamela | $ 35.33 | CA |
| Berry,Marquita S | $ 515.75 | CA |
| Black,Mary A | $ 2,869.00 | CA |
| Blackwell,Loxie L | $ 421.81 | CA |

| | | |
|---|---|---|
| Blair,Charles M | $ 1,238.33 | CA |
| Blaisdell,Taundalea | $ 600.53 | CA |
| Blanco,Melinda | $ 186.98 | CA |
| Blaszak,Felicia Y | $ 275.54 | CA |
| Blaylock,Ola J | $ 7.48 | CA |
| Blunt,Elaine M | $ 560.94 | CA |
| Bolivar,Fanny | $ 987.26 | CA |
| Bradley,Kalysha L | $ 704.73 | CA |
| Bran,Hugo R | $ 593.47 | CA |
| Brisco,Renika S | $ 14.96 | CA |
| Briseno,Christina | $ 284.26 | CA |
| Briseno,Sandra I | $ 583.38 | CA |
| Britto,Frank | $ 2,259.78 | CA |
| Broadbent,Lillie D | $ 6,222.66 | CA |
| Broadnax,Barbara A | $ 815.26 | CA |
| Brooks,Steven | $ 627.11 | CA |
| Brooner,John E | $ 35.33 | CA |
| Brown,Antoinette | $ 233.15 | CA |
| Brown,Carlene | $ 2,107.27 | CA |
| Brown,Elaine | $ 346.19 | CA |
| Brown,Ethel M | $ 1,748.24 | CA |
| Brown,Kathleen | $ 7.48 | CA |
| Brown,Luraline L | $ 70.65 | CA |
| Brown,Vaiee V | $ 2,997.00 | CA |
| Brown,Wordsworth A | $ 902.94 | CA |
| Brown-Williams,Angela G | $ 248.49 | CA |
| Brummel,Ian | $ 149.58 | CA |
| Brunt,Whitney M | $ 1,658.05 | CA |
| Bruton,Debra D | $ 277.17 | CA |
| Buchanan,Loydia J | $ 169.56 | CA |
| Burns,Retania J | $ 2,109.75 | CA |
| Burt,Michael J | $ 2,180.06 | CA |
| Bustamante,Nicholas M | $ 134.24 | CA |
| Butler,Charles L | $ 127.15 | CA |
| Butler,Tamara E | $ 246.82 | CA |
| Butters,Nikole L | $ 98.91 | CA |
| Byrd,Gwendolyn | $ 127.17 | CA |
| Cabrera,Juliana M | $ 1,186.93 | CA |
| Cade,Roy | $ 2,257.56 | CA |
| CALDERON JR,JESUS | $ 563.50 | CA |
| Calderon,Anisley | $ 748.02 | CA |
| Calderon,Barbara J | $ 649.99 | CA |
| Calderon,Hilda | $ 711.48 | CA |
| Calderon,Pablo | $ 12,857.16 | CA |
| Callins,Rachel J | $ 204.89 | CA |
| Camacho,Maria | $ 162.50 | CA |
| Campbell,Belva D | $ 14.96 | CA |

| | | |
|---|---|---|
| Campbell,Sarah M | $ 105.98 | CA |
| Campillo,Maribel | $ 822.42 | CA |
| Campillo,Mercedes | $ 4,738.58 | CA |
| Campos,Andrew L | $ 141.30 | CA |
| Candelaria,Marisela | $ 791.29 | CA |
| Cantu,Amanda | $ 359.00 | CA |
| Carachure,Victoria S | $ 1,422.88 | CA |
| Carasa,Cindy R | $ 996.18 | CA |
| Carbajal,Stephanie | $ 1,328.06 | CA |
| Cardena,Maria D | $ 29.92 | CA |
| Cardenas,Juana | $ 104.71 | CA |
| Cardin,Clare A | $ 7.48 | CA |
| Cardona,Ana | $ 2,256.15 | CA |
| Cardoza,Epifania C | $ 1,572.88 | CA |
| Carlon,Diana | $ 29.92 | CA |
| Carrillo,Adrian R | $ 84.78 | CA |
| Carrillo,Maria F | $ 2,140.11 | CA |
| Carrington,Harry | $ 1,465.32 | CA |
| Carson,Dennis J | $ 21.20 | CA |
| Cartagena,Ana | $ 3,917.01 | CA |
| Carter,Beverly | $ 862.72 | CA |
| Carter,Raquel | $ 466.29 | CA |
| Casanova,Jesse | $ 1,913.59 | CA |
| Casso,Sophia M | $ 2,509.88 | CA |
| Castaneda,Iris I | $ 1,024.44 | CA |
| Castaneda,Maria Y | $ 1,028.41 | CA |
| Castaneda,Monica R | $ 254.34 | CA |
| Castaneda,Rosario | $ 2,928.42 | CA |
| Castillo Jaime,Ivan Rodolfo | $ 198.65 | CA |
| Castillo,Julio C | $ 1,028.04 | CA |
| Castrejon,Linda T | $ 875.07 | CA |
| Castro,Carmen | $ 987.26 | CA |
| Castro,Gina | $ 14.96 | CA |
| Ceballos,Christine | $ 1,397.86 | CA |
| Ceballos,Sandra A | $ 572.27 | CA |
| Cervantes,Stephanie | $ 351.53 | CA |
| Chance,Lona M | $ 332.06 | CA |
| Chand,Priyasheel | $ 14.96 | CA |
| Chapman,Tommy R | $ 1,215.39 | CA |
| Chavez,Edgar | $ 104.71 | CA |
| Chavez,Lisa M | $ 1,396.33 | CA |
| Chavez,Rosa Nelly | $ 213.15 | CA |
| Chayra,Arturo P | $ 2,602.21 | CA |
| Cheeks,Corey | $ 1,466.90 | CA |
| Cheng,Fong P | $ 583.38 | CA |
| Christensen,Kathy M | $ 671.18 | CA |
| Churchill,Jazzmine R | $ 29.92 | CA |

| | | |
|---|---|---|
| Churchill,Lamyha | $ 381.44 | CA |
| Ciampa,Richard | $ 471.19 | CA |
| Clark,Brittiney | $ 52.36 | CA |
| Claussen,Thomas P | $ 261.78 | CA |
| Cleland,Natasha | $ 678.25 | CA |
| Close,Helena | $ 37.40 | CA |
| Clune,Michael | $ 703.05 | CA |
| Coates,Harley | $ 97.23 | CA |
| Cobb,Donye T | $ 357.34 | CA |
| Coker,Olaseni A | $ 556.02 | CA |
| Coleman,Duane R | $ 1,478.54 | CA |
| Coleman,Keyana T | $ 1,060.42 | CA |
| Collier,Carrol | $ 239.33 | IL |
| Collins,Arlene L | $ 240.21 | WV |
| Collinsworth,Wayne R | $ 416.84 | CA |
| Colvin,Wahneeota R | $ 1,628.98 | CA |
| Contreras,Raquel A | $ 183.69 | CA |
| Contreras,Ruben | $ 70.65 | CA |
| Conway,Shemetris S | $ 56.52 | CA |
| Cook,Willie E | $ 42.39 | CA |
| Cooper,Johnny | $ 209.42 | CA |
| Corbeil,Cassie M | $ 169.56 | CA |
| Corbell,Darla M | $ 197.82 | CA |
| Corona,Adrianna A | $ 7.48 | CA |
| Corona,Manuel S | $ 1,077.01 | CA |
| Coronado,Myra Alejandra D | $ 22.44 | CA |
| Coronel,Cecilia | $ 463.71 | CA |
| Corral,Jo A | $ 1,916.68 | CA |
| Corral,Maria | $ 2,035.82 | CA |
| Cortes,Dianell | $ 1,196.67 | CA |
| Cory,Nancy | $ 695.57 | CA |
| Covey,Michael L | $ 523.54 | CA |
| Cox,Carl S | $ 261.41 | CA |
| Coyt,Julio | $ 377.98 | CA |
| Crawford,Denise A | $ 897.19 | CA |
| Cruz,Anel Y | $ 1,800.98 | CA |
| Cruz,Kimberly | $ 52.36 | CA |
| Cruz,Lucy | $ 3,270.48 | CA |
| Cruz,Maria D | $ 1,103.76 | CA |
| Cuccia,Tammy E | $ 77.72 | CA |
| Curry-Luster,DaJuana R | $ 792.07 | CA |
| Cuthbert,Evelyn M | $ 2,220.45 | CA |
| DaCosta,Thelma | $ 1,017.17 | CA |
| Dahlen,Lars E | $ 402.71 | CA |
| Daly,Daniel L | $ 1,186.93 | CA |
| Darensbourg-White,Terry L | $ 1,696.30 | CA |
| Davila,Catalina | $ 2,134.70 | CA |

| | | |
|---|---|---|
| Davila,Jennifer | $ 336.57 | CA |
| Davis,Andrewnettia | $ 353.25 | CA |
| Davis,Geoann | $ 699.44 | CA |
| Davis,Glenisha | $ 670.72 | CA |
| Davis,Lanesha L | $ 658.18 | CA |
| Davis,Lorrie A | $ 2,972.49 | CA |
| De Jesus,Maria E | $ 219.43 | CA |
| De La Cruz,Angela | $ 876.07 | CA |
| De La Cruz,Jeanette | $ 1,005.99 | CA |
| De La O,Lupe | $ 14.96 | CA |
| DE LA RIVA,DENICE | $ 578.88 | CA |
| De La Riva,Mary | $ 1,152.02 | CA |
| De La Torre,Shawnee L | $ 389.41 | CA |
| Dean,Sofia M | $ 1,047.09 | CA |
| Deed,Zachary G | $ 14.96 | CA |
| Degraw,Michele L | $ 97.23 | CA |
| Del Carmen Benitez,Marina | $ 84.78 | CA |
| Dela Rosa,Daniela M | $ 418.83 | CA |
| Deleon,Jorge M | $ 770.09 | CA |
| Delgado,Arlene I | $ 628.26 | CA |
| Delgado,Rita | $ 1,081.08 | CA |
| Delvalle,Lisbette | $ 3,256.30 | CA |
| Dennison,Kathryn | $ 2,170.19 | CA |
| Denton,Cindi E | $ 423.90 | CA |
| Diaz,Alma R | $ 748.90 | CA |
| Diaz,Joseph | $ 240.21 | CA |
| Diaz,Mary D | $ 783.76 | CA |
| DIAZ,VICTOR R | $ 219.02 | CA |
| Dickerson,Courtney L | $ 594.30 | CA |
| Dileo,Charles R | $ 127.17 | CA |
| Dixon,Jewelie L | $ 3,102.89 | CA |
| Dixon,Malaika O | $ 450.04 | CA |
| Dixon,Talazia D | $ 52.36 | CA |
| Do,Richard | $ 7.48 | CA |
| Dominguez,Melania | $ 77.72 | IN |
| Dooley,Clara L | $ 291.69 | CA |
| Dotson,Donald R | $ 2,072.82 | CA |
| Douglas,Curtis | $ 332.01 | CA |
| Drew,Dennis | $ 157.07 | CA |
| Dumas,Sarah N | $ 1,599.00 | CA |
| Dunbar,Yvonne | $ 336.57 | CA |
| Duncan,Leanne | $ 4,235.03 | CA |
| Duoa,Jackson T | $ 381.51 | CA |
| Duran,Robert | $ 987.26 | CA |
| Durio,Jennifer N | $ 664.12 | CA |
| Earnest,Lillie R | $ 478.67 | CA |
| Easter,Pearlie L | $ 988.96 | CA |

| | | |
|---|---|---|
| Echavarria,Laurie M | $ 2,630.45 | CA |
| Edwards,Frank | $ 1,033.06 | CA |
| Edwards,Ivan | $ 190.76 | CA |
| Eha,Richard | $ 2,366.21 | CA |
| Elias,Cecilia | $ 1,732.86 | CA |
| Eller,Kimberly D | $ 241.85 | CA |
| Elliott,Yvette A | $ 492.43 | CA |
| Ellis,Latera U | $ 1,463.15 | CA |
| Enright,Richard A | $ 2,529.12 | CA |
| Eppinger,Tameka R | $ 837.68 | CA |
| Erroa Alvarado,Margarita Reyna | $ 1,096.72 | CA |
| Erwin,Kevin | $ 89.75 | CA |
| Eschen,Kenneth | $ 1,331.43 | CA |
| Escobedo,Raquel E | $ 2,592.22 | CA |
| Eshom,Corey D | $ 7.48 | CA |
| Espinoza,Alexandra K | $ 216.90 | CA |
| Espinoza,Thalia A | $ 812.48 | CA |
| Espinoza,Valerie | $ 344.04 | CA |
| Estes,Tamika L | $ 1,300.34 | CA |
| Estrada,Carmen E | $ 487.49 | CA |
| Evans,Mathew C | $ 339.12 | CA |
| Evans,Robert E | $ 219.02 | CA |
| Fajardo,Wilber | $ 78.53 | CA |
| Falls,Nannette L | $ 754.67 | CA |
| Fantroy,Andranette R | $ 777.84 | CA |
| Farnsworth,George C | $ 2,398.74 | CA |
| Fasciano,Sandra | $ 7.07 | CA |
| Fassbinder,Stephanie E | $ 608.74 | CA |
| Faulk,Ella R | $ 637.47 | CA |
| Ferree,Patrick W | $ 28.26 | CA |
| Fierros,Aime | $ 5,438.02 | CA |
| Fish,James | $ 3,127.49 | CA |
| Fiztgerald,Lucas W | $ 310.86 | CA |
| Flores,Alyssa M | $ 433.79 | CA |
| Fogde,Jason A | $ 2,274.64 | CA |
| Ford,Cameo J | $ 591.32 | CA |
| Ford,Corrine | $ 1,238.75 | CA |
| Fort,Kenneth | $ 869.41 | CA |
| Fort,Keyanna S | $ 1,714.62 | CA |
| Foster,Kenisha D | $ 49.46 | CA |
| Fowler Avila,Daniel | $ 112.19 | CA |
| Francis,Bryanna S | $ 534.78 | CA |
| Franco,Lorraine A | $ 155.43 | CA |
| Franklin,Joycelyn | $ 568.43 | CA |
| Franklin,Quinton D | $ 565.21 | GA |
| Franks,Patricia Kellen L | $ 29.92 | CA |
| Freeman,Robert S | $ 303.80 | CA |

| | | |
|---|---|---|
| Freeman,Walter D | $ 176.63 | CA |
| Freitas,Elaina | $ 1,242.84 | CA |
| French,Gary E | $ 3,906.63 | CA |
| Freteluco,Alma C | $ 998.61 | CA |
| Frields,Bridgette E | $ 233.15 | CA |
| Fuentes,Isabel | $ 4,648.37 | CA |
| Fuentes,Maria D | $ 3,543.04 | CA |
| Fuentes,Maria G | $ 2,288.09 | CA |
| Fulton,Brenda | $ 441.28 | CA |
| Fulton,Jamie | $ 2,376.56 | CA |
| Funches,Sheena Marie | $ 609.64 | CA |
| Galan,Lorena B | $ 1,077.01 | CA |
| Galindo,Bridget C | $ 1,094.37 | CA |
| Gallardo,Dorothy | $ 4,994.12 | CA |
| Gallardo,Nicolle | $ 942.38 | CA |
| Gama,Raquel | $ 867.59 | CA |
| Gamez,Bertha N | $ 755.96 | CA |
| Gant,Richard | $ 91.85 | CA |
| Garcia Jr,David | $ 1,941.87 | CA |
| Garcia,Clelia | $ 814.02 | CA |
| Garcia,Florence | $ 947.86 | CA |
| Garcia,Karina | $ 659.07 | CA |
| Garcia,Maria T | $ 70.65 | CA |
| Garcia,Marlon A | $ 620.77 | CA |
| Garcia,Michael A | $ 3,449.82 | CA |
| Garcia,Susan | $ 530.29 | CA |
| Garcia,Teresa | $ 480.42 | CA |
| Garcia,Yolanda | $ 1,207.08 | CA |
| Garibay,Marissa | $ 89.75 | CA |
| Garner,Brooke N | $ 703.10 | CA |
| Garner,Cody D | $ 7.48 | CA |
| Garza,Tomas E | $ 891.81 | CA |
| Gastelum,Vianna | $ 82.28 | CA |
| Gates,Reevance | $ 7.07 | CA |
| Gergione,Francine | $ 1,620.58 | CA |
| Ghazlo,LaShawndra D | $ 750.09 | CA |
| Gholar,Charlotte D | $ 1,443.34 | CA |
| Gil,Araceli | $ 3,210.61 | CA |
| Gillett,Bradley J | $ 635.86 | CA |
| Gilmore,De'Ann | $ 702.24 | CA |
| Gipson-Farley,Raykenya | $ 1,004.90 | CA |
| Glover,Sherell L | $ 1,116.58 | CA |
| Goddard II,David L | $ 523.54 | CA |
| Godinez,Guadalupe | $ 361.10 | CA |
| Gomez,Janelle M | $ 1,826.37 | CA |
| Gomez,Jesus | $ 1,259.49 | CA |
| Gomez,Kayla I | $ 29.92 | CA |

| | | |
|---|---|---|
| Gomez,Myriam | $ 1,040.18 | CA |
| Gomez,Valeria M | $ 547.69 | CA |
| Gonzales,Anthony M | $ 989.79 | CA |
| Gonzales,Billie J | $ 2,444.71 | CA |
| Gonzales,Christina F | $ 3,012.79 | CA |
| Gonzales,Linda | $ 473.36 | CA |
| Gonzales,Norma L | $ 231.86 | CA |
| Gonzales,Rosalinda | $ 915.83 | CA |
| Gonzalez Crosby,Ricardo U | $ 29.92 | CA |
| Gonzalez,Ana M | $ 541.06 | CA |
| Gonzalez,Maria F | $ 2,366.99 | CA |
| Gonzalez,Maria G | $ 478.67 | CA |
| Gonzalez,Maritza | $ 688.09 | CA |
| Gonzalez,Mercedies | $ 1,899.73 | CA |
| Gonzalez,Miguel | $ 1,062.05 | CA |
| Goodar,Gale | $ 3,359.35 | CA |
| Graham,Philip J | $ 359.00 | CA |
| Granado,Anthony | $ 211.95 | CA |
| Grant,Michelle | $ 381.44 | CA |
| Graves,Irena | $ 721.01 | CA |
| Graves,Sandra K | $ 1,354.62 | CA |
| Gray,Leisa | $ 2,559.46 | CA |
| Green,Antonette P | $ 97.23 | CA |
| Green,Mariya S | $ 359.00 | CA |
| Green,Rhonda R | $ 169.56 | CA |
| GREENFIELD,EBONY | $ 911.39 | CA |
| Grounds,Jamie D | $ 755.40 | CA |
| Guadarrama,Michelle | $ 676.50 | CA |
| Guerra,Elvira | $ 4,445.57 | CA |
| Guerrero Jimenez,Maria G | $ 692.33 | CA |
| Guerrero-Rodriguez,Marcos J | $ 374.45 | CA |
| GUTIERREZ PEREZ,SANDRA | $ 798.35 | CA |
| Gutierrez,Desiree | $ 508.58 | CA |
| Gutierrez,Elvia J | $ 74.79 | CA |
| Gutierrez,Tammy R | $ 2,197.02 | CA |
| Guzman,Darri-Jean | $ 2,197.87 | CA |
| Guzman,Giselle C | $ 2,904.72 | CA |
| Guzman,Jessica | $ 142.11 | CA |
| Guzman,Lorena A | $ 3,000.32 | CA |
| Guzman,Naomie | $ 673.13 | CA |
| Guzman,Richard | $ 2,902.23 | CA |
| Guzman,Sandra | $ 29.92 | CA |
| Guzman,Yvonne | $ 3,306.98 | CA |
| Hagadorn,Rebecca A | $ 7.48 | CA |
| Hagins,Jamesha A | $ 42.39 | CA |
| Haidle,Stephen A | $ 1,047.97 | CA |
| Haley,Marquest | $ 258.05 | CA |

| | | |
|---|---|---|
| Halili,Justin | $ 74.79 | CA |
| Haltom,Alexis M | $ 359.00 | CA |
| Hamidi,Temor | $ 748.90 | CA |
| Hamilton,Danny | $ 183.69 | CA |
| Hardiamon,Malisa T | $ 42.39 | CA |
| Hargrove,Elizabeth M | $ 934.90 | CA |
| Haro,Irma A | $ 1,171.81 | CA |
| Harris,Aleea T | $ 67.32 | CA |
| Harris,Faytavia | $ 847.81 | CA |
| Harris,Wanda J | $ 303.80 | CA |
| Harris,William R | $ 409.77 | CA |
| Harrison,Cynthia | $ 3,283.55 | CA |
| Hartwell,Diane G | $ 113.04 | CA |
| Harvey,Sabrina | $ 448.75 | CA |
| Hasselbrook,Pauline | $ 459.23 | CA |
| Hauffen,Martin | $ 2,719.47 | CA |
| Hayter,Samual T | $ 296.71 | CA |
| Heiberger,Sarah T | $ 42.39 | CA |
| Helms,Neva J | $ 3,024.43 | CA |
| Hendrix,Romona L | $ 7.48 | CA |
| Henry,Gary B | $ 628.79 | CA |
| Henry,Harvey W | $ 448.63 | CA |
| Henry,Sonia M | $ 1,368.82 | CA |
| Henson,Ashley C | $ 1,053.48 | CA |
| Heppner,Brenda G | $ 296.73 | CA |
| Her,Xa | $ 441.28 | CA |
| Hernandes,Jeni | $ 233.15 | CA |
| Hernandez,Aida Z | $ 2,281.41 | CA |
| Hernandez,Barbara G | $ 2,952.13 | CA |
| Hernandez,Elena | $ 856.79 | CA |
| Hernandez,Elizabeth | $ 1,531.83 | CA |
| Hernandez,Francisco | $ 624.99 | CA |
| Hernandez,Luis D | $ 89.75 | CA |
| Hernandez,Mario E | $ 190.76 | CA |
| Hernandez,Tina M | $ 1,040.08 | CA |
| Hernandez-Brito,Sylvia | $ 28.26 | CA |
| Hernandez-Chavez,Francisco J | $ 1,933.39 | CA |
| Hernandez-Lopez,Aurea | $ 673.65 | CA |
| Herrera,Georgiana L | $ 2,111.82 | CA |
| Herrera,Nadine I | $ 82.28 | CA |
| Hesseltine,Yohn D | $ 713.57 | CA |
| Hewitt,Elizabeth A | $ 216.90 | CA |
| Hewlett,Bobby J | $ 183.69 | CA |
| Hewlett,Gwendolyn | $ 1,264.97 | CA |
| Hibbard Jr,Danny | $ 869.00 | CA |
| Hicks,Arkelah | $ 900.06 | CA |
| Hidalgo,Joathan F | $ 176.63 | CA |

| | | |
|---|---|---|
| Hiler,Keenon | $ 346.19 | CA |
| Hill,Carissa L | $ 85.19 | CA |
| Hill,Iesha N | $ 155.43 | CA |
| Hill,Judy | $ 459.23 | CA |
| Hitch,Jeffery L | $ 14.13 | CA |
| Hockman,Erick J | $ 29.92 | CA |
| Hoffman,Donna L | $ 3,556.25 | CA |
| Holley,Jasmine | $ 1,890.73 | CA |
| Holley,Kareema C | $ 572.27 | CA |
| Holmeyer,Antoinette | $ 438.03 | CA |
| Holsey,Chante | $ 536.95 | CA |
| Hopper,Kady | $ 104.71 | CA |
| Horn,Tammy | $ 463.71 | CA |
| Horvath,Kathleen M | $ 2,778.84 | CA |
| Hosseinpour,Askar | $ 456.23 | CA |
| Howard,Sandra M | $ 2,392.28 | CA |
| Howse,Dejone M | $ 134.24 | CA |
| Hueser,Melissa R | $ 564.33 | CA |
| Hughes,Frank L | $ 49.46 | CA |
| Hull,Erica M | $ 900.87 | CA |
| Hull,Rochelle M | $ 1,103.25 | CA |
| HUMPHREYS,ELIJAH J | $ 35.33 | CA |
| Hunnicutt,Felicia D | $ 591.78 | CA |
| Hunter,Michael D | $ 7.48 | CA |
| Huntsman,Chuna | $ 47.78 | CA |
| Huntsman,Ebony | $ 82.28 | CA |
| Hutchings,Cooper N | $ 664.12 | CA |
| Illames,Michael A | $ 254.34 | CA |
| Imhotep,Jasira | $ 82.28 | CA |
| Ingham,Maria M | $ 324.99 | CA |
| Islas,Samantha L | $ 1,685.07 | CA |
| Jackson,Daniel E | $ 7.07 | CA |
| Jackson,Jasmine | $ 809.15 | CA |
| Jackson,Marquise | $ 141.30 | CA |
| Jackson,Shanta M | $ 52.36 | CA |
| Jackson,Tamara | $ 1,106.92 | CA |
| Jackson-Blunt,Brandi | $ 4,073.64 | CA |
| Jacobo,Briana M | $ 1,481.01 | CA |
| Jacobs,Melissa | $ 731.36 | CA |
| James,Me'lisa | $ 216.90 | CA |
| Jamieson,Tina M | $ 1,119.89 | CA |
| Janowski,Lisa | $ 3,537.15 | CA |
| Jaramillo Flores,Marilu | $ 1,279.05 | CA |
| Jardinel,Rudy B | $ 2,855.16 | CA |
| Jauregui,Angela M | $ 2,708.60 | CA |
| Jauss,Christina D | $ 247.28 | CA |
| Jenkins,Tanisha | $ 798.35 | CA |

| | | |
|---|---|---|
| Jensen,Daniel M | $ 332.06 | CA |
| Jimenez,Jovani E | $ 231.86 | CA |
| Jimenez,Juan B | $ 119.67 | CA |
| Jimenez,Maribel S | $ 97.23 | CA |
| Jimenez,Rebecca | $ 14.96 | CA |
| Johnson,Alexis | $ 275.54 | CA |
| Johnson,Dominique M | $ 49.46 | CA |
| Johnson,Ebony M | $ 157.07 | CA |
| Johnson,Kenneth D | $ 995.71 | CA |
| Johnson,Queana S | $ 613.30 | CA |
| Johnson,Sacoda | $ 1,344.73 | CA |
| Johnson,Sazbra L | $ 176.63 | CA |
| Johnson,Susan V | $ 2,034.10 | CA |
| Johnson,Ted | $ 942.38 | CA |
| Johnson-Moore,Cecilia A | $ 2,675.64 | CA |
| Joiner,Julie A | $ 35.33 | CA |
| Jones,Christian D | $ 52.36 | CA |
| Jones,Estelle M | $ 673.13 | CA |
| Jones,Jasmine | $ 1,817.63 | CA |
| Jones,Jasmine C | $ 105.98 | CA |
| Jones,Keyana E | $ 688.09 | CA |
| Jones,Krystale R | $ 155.43 | CA |
| Jones,Latisha T | $ 6,921.52 | CA |
| Jones,Naizjai J | $ 1,772.31 | CA |
| Jones,Patricia A | $ 897.61 | CA |
| Jones,Rhoneisha | $ 204.89 | CA |
| Jones,Timekia C | $ 699.34 | CA |
| Jones,Victoria L | $ 254.34 | CA |
| Jordan,Asiyah N | $ 186.98 | CA |
| Jose,Gene L | $ 2,964.09 | CA |
| Juarez,Veronica M | $ 1,257.58 | CA |
| Jufiar,Renee J | $ 239.33 | CA |
| Kahler,Lynn D | $ 261.41 | CA |
| Karimipour,Mohammadreza | $ 516.07 | CA |
| Kavanaugh,Timothy J | $ 1,284.07 | CA |
| Kelley,Dannisha L | $ 113.04 | CA |
| Kelly,Bobbie | $ 511.94 | CA |
| Kennedy,Andrea D | $ 437.54 | CA |
| Kenner,Lisa A | $ 246.82 | CA |
| Kerbo,Alfred | $ 52.36 | CA |
| Kerr,Sandra | $ 478.67 | CA |
| Khatoon,Rizwana | $ 374.45 | CA |
| Kim,Ashley M | $ 1,120.67 | CA |
| Kimbell,Samuel | $ 563.11 | CA |
| King,Austri N | $ 52.36 | CA |
| King,Cortinae | $ 1,256.51 | CA |
| King,Latora E | $ 3,793.20 | CA |

| | | |
|---|---|---|
| Kintz,Maryse L | $ 416.84 | CA |
| Kirk,Roy L | $ 29.92 | CA |
| Kirkendoll,Demetris | $ 183.69 | CA |
| Kirkendoll,Jonnee | $ 876.07 | CA |
| Kivlin Iii,William P | $ 452.16 | CA |
| Kivlin,Kathleen P | $ 635.86 | CA |
| Klokeid,Denise | $ 1,500.18 | CA |
| Kochan,Stephen G | $ 725.48 | CA |
| Krueger,Gary E | $ 2,368.18 | CA |
| La Beaf,Kathryn J | $ 770.36 | CA |
| Laflamme,Jennifer A | $ 403.87 | CA |
| Lafontant,Quiana N | $ 14.13 | CA |
| Lance,Darrell | $ 1,198.01 | CA |
| Landin,Joseph | $ 149.58 | CA |
| Landry,Jennie L | $ 381.51 | CA |
| Lane,Ashley M | $ 913.78 | CA |
| Langlois,Walter A | $ 607.60 | CA |
| Lara,Desirie M | $ 899.18 | CA |
| Larios Alvarado,Esmeralda | $ 47.58 | CA |
| Larson,Isaac | $ 373.96 | CA |
| Laster,Angela M | $ 538.51 | CA |
| Laverde,Jeremiah | $ 538.51 | CA |
| Lawcock,Bridget A | $ 361.12 | CA |
| Lazo,Raquel | $ 816.57 | CA |
| Leal,Gloria | $ 84.78 | CA |
| Ledesma,Antonio C | $ 21.20 | CA |
| Ledet,Santa L | $ 22.44 | CA |
| Lee,Kenyonta | $ 49.46 | CA |
| Lee,Natasha A | $ 357.37 | CA |
| Lee,Xai | $ 473.36 | CA |
| Leon,Maria De La Luz | $ 1,317.35 | CA |
| Leon,Richard A | $ 2,063.20 | CA |
| Leonard,Charkee R | $ 719.76 | CA |
| Lett,Latish J | $ 338.69 | CA |
| Lewis,Tara D | $ 112.19 | CA |
| Leyva,Shavon G | $ 321.61 | CA |
| Liddell,Ayanna L | $ 529.83 | CA |
| Lilly,Michael | $ 727.65 | CA |
| Lindsay,Shainie R | $ 558.55 | CA |
| Lish,Anita M | $ 1,469.70 | CA |
| Logsdon,Kathy I | $ 2,980.92 | CA |
| Lomas,Lizette | $ 67.32 | CA |
| Lomeli,Tammy | $ 22.44 | CA |
| Lopez,Bronlio F | $ 2,682.10 | CA |
| Lopez,Jose F | $ 565.21 | CA |
| Lopez,Marie A | $ 6,688.81 | CA |
| Lopez,Norma D | $ 5,715.97 | CA |

| | | |
|---|---|---|
| Lopez,Tonya M | $ 204.89 | CA |
| Lopez-Cuevas Jr,Rodolfo | $ 211.95 | CA |
| Loshbaugh,Russell W | $ 239.33 | CA |
| Lotomau,Refina L | $ 388.58 | CA |
| Love,Summer C | $ 14.13 | CA |
| Love,Timothy R | $ 1,002.68 | CA |
| Loya,Leticia | $ 37.40 | CA |
| Lozano,Suzanne M | $ 3,283.73 | CA |
| Lucero,Jill | $ 5,384.31 | CA |
| Luna,Crystal | $ 692.38 | CA |
| Luna,Isaias | $ 1,634.45 | CA |
| Lutz,Nicole A | $ 516.07 | CA |
| Orosco,Jennifer R | $ 1,836.92 | OR |
| Maakestad,Leslie R | $ 755.40 | CA |
| Machado,Tammie L | $ 1,424.59 | CA |
| Maddox,Jessica D | $ 508.69 | CA |
| Mairena,Nidia E | $ 1,894.90 | CA |
| Maldonado,Edward A | $ 598.03 | CA |
| Malvido,Maria A | $ 3,345.22 | CA |
| Mann,Bradly L | $ 1,258.29 | CA |
| Manzo-Maravilla,Sergio R | $ 334.93 | CA |
| Marmol-Cazarez,Toni C | $ 29.92 | CA |
| Marquez,Marisela | $ 275.54 | CA |
| Marquez,Ramon | $ 755.96 | CA |
| Martes,Jennifer | $ 1,077.01 | CA |
| Martin,Adrian J | $ 289.67 | CA |
| Martin,Kiyana A | $ 50.70 | CA |
| Martinez Ibarra,Lucila | $ 1,084.49 | CA |
| Martinez,Alejandra | $ 608.01 | CA |
| Martinez,Alejandra | $ 176.63 | CA |
| Martinez,Alejandro | $ 1,114.41 | CA |
| Martinez,Juan | $ 1,096.60 | CA |
| Martinez,Juan C | $ 179.50 | CA |
| Martinez,Lady J | $ 1,017.17 | CA |
| Martinez,Natalie M | $ 560.94 | CA |
| Martinez,Olga L | $ 1,130.41 | CA |
| Martinez,Olivia V | $ 2,129.29 | CA |
| Martinez,Omedia T | $ 1,838.16 | CA |
| Martinez,Paul | $ 176.63 | KY |
| Martinez,Sheila | $ 388.92 | CA |
| Martinez,Tiffany M | $ 52.36 | CA |
| Martinez,Victor | $ 299.17 | CA |
| Mathews,Angela | $ 1,032.13 | CA |
| Mathews,Derrick L | $ 2,644.53 | CA |
| Mau,Barbara | $ 164.54 | CA |
| Maupin,David G | $ 1,679.37 | CA |
| Maxey,Monique N | $ 56.52 | CA |

| McCammon,Lori L | $ | 452.16 | CA |
|---|---|---|---|
| McColery,Robert D | $ | 275.54 | CA |
| McCririe,Rebecca L | $ | 226.08 | CA |
| McDaniel,Tanishsa A | $ | 1,943.46 | CA |
| Mcdonald,Christian | $ | 807.76 | CA |
| McDowell,Jerry | $ | 3,450.71 | CA |
| McElroy,Elaine B | $ | 847.81 | CA |
| McGill,Quineshia J | $ | 29.92 | CA |
| McKenzie,Brandon D | $ | 89.75 | CA |
| McKinney Jr,Donald | $ | 1,714.89 | CA |
| McKinney,Darcel | $ | 409.77 | CA |
| McMillen,Shaylynn | $ | 226.91 | CA |
| Mcnamm,Savannha | $ | 590.86 | CA |
| Means,Susanne M | $ | 344.04 | CA |
| Medel,Jacqueline S | $ | 127.15 | CA |
| Medina,Hector G | $ | 72.31 | CA |
| Medina,Luis A | $ | 981.51 | CA |
| Medina,Patrosinio | $ | 720.98 | CA |
| Medina,Rafael | $ | 3,302.74 | CA |
| Mejia,Margarita I | $ | 162.50 | CA |
| MEJORADO,DALIA | $ | 2,593.00 | CA |
| Mendoza,Johanna Ivette | $ | 1,102.15 | CA |
| Mendoza,Nereida | $ | 14.13 | CA |
| Mercado,Blanca E | $ | 1,838.38 | CA |
| Mercedes,Patricia | $ | 219.02 | CA |
| Merrida,Barbara A | $ | 869.27 | CA |
| Mestaz,Ruth J | $ | 348.26 | CA |
| Meyer,Rachel E | $ | 98.91 | CA |
| Meza,Alejandra | $ | 33.65 | CA |
| Michelson,Rachael L | $ | 812.48 | CA |
| Mignanwande,Kpedetin | $ | 172.03 | CA |
| Miller Jr,Brian | $ | 4,580.27 | CA |
| Miller,Tammy L | $ | 523.54 | CA |
| Miller,Valerie | $ | 14.13 | CA |
| Milo,Kamilah | $ | 613.30 | CA |
| Miranda,Maria | $ | 67.32 | CA |
| Mitchell,Arlanda L | $ | 172.03 | CA |
| Mitchell,Cindy | $ | 7,144.19 | CA |
| Mizell,Jordan M | $ | 209.42 | CA |
| Moctezuma,Miguel | $ | 373.96 | CA |
| Molina,David | $ | 1,498.42 | CA |
| Molina,Fatima L | $ | 1,069.53 | CA |
| Molina,Irma | $ | 2,488.31 | CA |
| Molina,Laura | $ | 14.13 | CA |
| Molina,Victor A | $ | 289.67 | CA |
| Monjaras,Lidia N | $ | 164.54 | CA |
| Monroe,Nicholas R | $ | 233.15 | CA |

| | | |
|---|---|---|
| Monroe,Niya | $ 63.59 | CA |
| Monroe,Tyiana | $ 44.87 | CA |
| Monterrosa,Emma | $ 508.69 | CA |
| Montes,Chantel L | $ 4,467.40 | CA |
| Montgomery,Molly K | $ 792.80 | CA |
| Montoya,Christine R | $ 119.67 | CA |
| Moore,Cierra N | $ 276.73 | CA |
| Moore,Jylinn D | $ 1,737.35 | CA |
| Moore,Michael J | $ 7.48 | CA |
| Moore,Precious S | $ 59.83 | CA |
| Moore,Shelli | $ 315.42 | CA |
| Morales Gutierrez,Karen T | $ 837.68 | CA |
| Morales,Seidy | $ 2,507.86 | CA |
| MORENO,KIMBERLY | $ 367.38 | CA |
| Moreno,Sharron L | $ 994.73 | CA |
| Moreno,Suyen H | $ 950.45 | CA |
| Moreno,Teresa M | $ 1,926.52 | CA |
| Morgan,Christine E | $ 1,188.44 | CA |
| Morgan,David H | $ 49.46 | CA |
| Morton,Tamarh S | $ 379.80 | CA |
| Mota,Jackelyn | $ 353.25 | CA |
| Mouton,Lanae | $ 224.37 | CA |
| Mouton,Patience | $ 339.12 | CA |
| Muckelroy,Rachel M | $ 466.29 | CA |
| Multani,Yadira L | $ 82.28 | CA |
| Muniz,Mayela H | $ 1,894.90 | CA |
| Muniz,Rick J | $ 1,476.60 | CA |
| Munoz,Alex | $ 1,891.59 | CA |
| Munoz,Rosa Martha | $ 67.32 | CA |
| Munoz,Yanely | $ 924.94 | CA |
| Muse,Elizabeth | $ 536.95 | CA |
| Nagem,Georgene | $ 332.06 | CA |
| Naimi,Seyed A | $ 657.88 | CA |
| Nanthavong-Rashaad,Bonny | $ 583.38 | CA |
| Navarro,Darel | $ 869.00 | CA |
| Navarro,Raquel | $ 1,321.75 | CA |
| Neice,Vada | $ 4,792.16 | CA |
| Nelson,D'Quan M | $ 155.43 | CA |
| Netherly,Kiyana | $ 1,735.18 | CA |
| Newson,Augusta | $ 21.20 | CA |
| Newton,Lynette | $ 197.82 | CA |
| Nichols,Betty S | $ 1,503.60 | CA |
| Nichols,Roshunda | $ 575.90 | CA |
| Nickelberry,Margaret | $ 162.50 | TX |
| Nickerberry,Channel L | $ 834.80 | CA |
| Nickerson,Gloria M | $ 6,672.17 | CA |
| Ninke,Jon C | $ 155.43 | CA |

| | | |
|---|---|---|
| Nizo,Esmeralda | $ 373.96 | CA |
| Noble,Robert J | $ 240.21 | CA |
| Noonan,Patricia T | $ 233.15 | CA |
| Noone,Therese | $ 49.46 | CA |
| Norman,Darlene | $ 487.49 | TX |
| Norman,Rickisha L | $ 3,784.36 | CA |
| Norton,Maria V | $ 441.32 | CA |
| Nourgoster,Masroor | $ 28.26 | CA |
| Nouri,Hamid | $ 1,371.33 | CA |
| Nuells,Charlies R | $ 1,045.63 | CA |
| Nuells,Karmetria D | $ 261.41 | CA |
| Nunez,Nelson | $ 714.26 | CA |
| Octamendez,Julio G | $ 538.58 | CA |
| Ofisa,Japeth I | $ 438.03 | CA |
| Ohara,Mikiko | $ 441.28 | CA |
| O'Kelly,Debra A | $ 433.79 | CA |
| Olamendi,Sergio | $ 52.36 | CA |
| Olguin,Christine | $ 725.48 | CA |
| Oliveros,Daniela | $ 861.89 | CA |
| Olson,Cora | $ 49.46 | CA |
| O'Neal,Mary | $ 162.50 | CA |
| Oneil,Hansel S | $ 56.10 | CA |
| Ordaz,Brenda J | $ 119.67 | CA |
| Ordaz,Stephanie M | $ 119.67 | CA |
| Orellana,Maria N | $ 724.68 | CA |
| Orolfo,Nathaniel H | $ 1,123.35 | CA |
| Orozco,Juan Y | $ 14.96 | CA |
| Orr,Donna M | $ 186.98 | CA |
| Ortega,Samuel R | $ 1,188.57 | CA |
| Ortega,Stella | $ 3,023.61 | CA |
| Overman,Mila | $ 1,191.32 | CA |
| Overton,Janis | $ 2,357.46 | CA |
| Owens,William G | $ 508.20 | CA |
| Pacheco Sandoval,Abel B | $ 29.92 | CA |
| Packard,Martha E | $ 261.41 | CA |
| Page,Cynthia | $ 1,316.34 | CA |
| Palacios,Carlos R | $ 500.76 | CA |
| Palos,Linda G | $ 7.48 | CA |
| Panos,James | $ 1,883.57 | CA |
| Pardo,Carmen | $ 148.37 | CA |
| Paredes Sanchez,Emanuel | $ 1,709.16 | CA |
| Paredes Sanchez,Grisell | $ 1,264.50 | CA |
| Parker,Carole S | $ 984.52 | CA |
| Parker,Elizabeth F | $ 3,248.85 | CA |
| Parker,Ramona K | $ 240.21 | CA |
| Pasillas,Olivia | $ 3,130.80 | CA |
| Patrick,Okema N | $ 28.26 | CA |

| | | |
|---|---|---|
| Payne,Shay E | $ 157.07 | CA |
| Pelayo,Jesenia L | $ 82.28 | CA |
| Pena Cervantes,Ramona | $ 906.67 | CA |
| Pepper,Samantha | $ 792.80 | CA |
| Pepper,Sarah | $ 52.36 | CA |
| Perez,Carmen P | $ 915.00 | CA |
| Perez,Fernando | $ 29.92 | CA |
| Perez,Juan P | $ 1,109.22 | CA |
| Perez,Juana T | $ 284.21 | CA |
| Perez,Lourdes I | $ 2,529.08 | CA |
| Perez,Margot | $ 84.78 | CA |
| Perez,Ruben V | $ 1,671.79 | CA |
| Perez,Ruth | $ 2,716.08 | CA |
| Perez,Samuel | $ 35.33 | CA |
| Perez,Suri S | $ 329.08 | CA |
| Perkins,Cassandra D | $ 197.82 | CA |
| Perkins,Ruth M | $ 2,242.35 | CA |
| Perrin,Sandy K | $ 316.22 | CA |
| Phillips,Erica J | $ 9,151.31 | CA |
| Piceno,Alejandro | $ 1,271.71 | CA |
| Pina,Graciela | $ 3,476.54 | CA |
| Pineda,Yevonne R | $ 148.37 | CA |
| Plank,Ramona L | $ 3,134.58 | CA |
| Plaza,Cynthia M | $ 56.52 | NM |
| Pollock,Kiara | $ 1,517.09 | CA |
| Pompa,Horacio | $ 282.60 | CA |
| Pope,Fannie | $ 3,184.91 | CA |
| Portillo,Ana L | $ 1,526.06 | CA |
| Pounds,Michael L | $ 89.75 | CA |
| Powers,Emmett C | $ 2,253.76 | CA |
| Preston,Sharon | $ 576.83 | CA |
| Price,James P | $ 1,049.21 | CA |
| Proitte,Jeffery A | $ 2,687.95 | CA |
| Pryor,Beverly J | $ 1,473.97 | CA |
| Pulley,Laura A | $ 254.34 | CA |
| Pummill,Alyssa | $ 14.96 | CA |
| Quave,Lisa M | $ 42.39 | CA |
| Quigley,Marie H | $ 97.23 | CA |
| Quiles,Rose G | $ 883.13 | CA |
| Quinonez,Wendy L | $ 321.61 | CA |
| Quintana,Gabriela A | $ 1,024.65 | CA |
| Quintanilla Payes,Jorge A | $ 396.40 | CA |
| Quintanilla,Jackeline V. | $ 1,813.53 | CA |
| Quintanilla,Judith A | $ 531.02 | CA |
| Rainbolt,Nina H | $ 1,157.70 | CA |
| Ramirez Sevier,Carolyn L | $ 1,858.77 | CA |
| Ramirez,Alexander X | $ 98.91 | CA |

| | | |
|---|---|---|
| Ramirez,Christina D | $ 84.78 | CA |
| Ramirez,Kara | $ 359.00 | CA |
| Ramirez,Mario A | $ 3,741.85 | CA |
| Ramirez,Martha | $ 127.15 | CA |
| Ramirez,Rosanna | $ 381.44 | CA |
| Ramirez,Sarah E | $ 21.20 | CA |
| Ramirez,Virginia M | $ 4,124.36 | CA |
| Ramirez,Viviana M | $ 29.92 | CA |
| Ramirez,Yvonne | $ 600.53 | CA |
| Ramos Ayala,Jose I | $ 1,510.80 | CA |
| Ramos,Bianca | $ 142.11 | CA |
| Ramos,Lizet | $ 1,252.03 | CA |
| Ramos,Vasti | $ 183.69 | CA |
| Ratcliff,Shanita D | $ 70.65 | CA |
| Ray,Karolyn D | $ 2,218.17 | CA |
| Ray,Ylda Y | $ 388.58 | CA |
| Raya,Susan A | $ 773.38 | CA |
| Reams,Yolanda | $ 97.23 | CA |
| Reck,Stephen M | $ 7.07 | CA |
| Reddy,Kenyanda S | $ 2,945.52 | CA |
| Rees,Amber L | $ 204.89 | CA |
| Reidel,Joyce M | $ 1,564.11 | CA |
| Reyes Jr.,Johnnie S | $ 3,132.60 | CA |
| Rezvanpour,Behrouz | $ 1,380.05 | CA |
| RHODES,NAOMI T | $ 564.33 | CA |
| Richardson,Charlena R | $ 1,653.01 | CA |
| Richardson,Janay S | $ 59.83 | CA |
| Richardson,Stephanie L | $ 847.81 | CA |
| Riddle,Jacque A | $ 568.43 | CA |
| Riddle,Julie R | $ 359.00 | CA |
| Ridley,Lakisha D | $ 743.02 | CA |
| Rios,Ena | $ 987.26 | CA |
| Rishi,Gevin | $ 127.17 | CA |
| Rivas Bonilla,Miguel E | $ 725.48 | CA |
| Rivas,Emiliana | $ 3,765.28 | CA |
| Rivera,Daisy | $ 226.08 | CA |
| Rizk,Fady | $ 299.17 | CA |
| Roberson,Tess | $ 14.96 | CA |
| Roberts,Kathleen E | $ 324.99 | CA |
| Robinson,Ariyanna C | $ 44.87 | CA |
| Robinson,Barry | $ 28.26 | CA |
| Robinson,Deaconess C | $ 2,701.98 | CA |
| Robinson,Javeil | $ 416.84 | CA |
| Robinson,Tonette | $ 785.32 | CA |
| Robinson,Toya | $ 1,194.24 | CA |
| Robles,Irma M | $ 322.04 | CA |
| Rodriguez,Almanzor D | $ 1,864.98 | CA |

| | | |
|---|---|---|
| Rodriguez,Anita | $ 3,222.25 | CA |
| Rodriguez,Ascension | $ 2,863.99 | CA |
| Rodriguez,Eric | $ 261.78 | CA |
| Rodriguez,Juan Carlos | $ 2,488.31 | CA |
| Rodriguez,Marco A | $ 2,923.87 | CA |
| Rodriguez,Nancy C | $ 112.19 | CA |
| Rodriguez,Raquel | $ 127.17 | CA |
| Rodriguez,Regina L | $ 91.85 | CA |
| Roja,William | $ 3,295.70 | CA |
| Rojas,Elian A | $ 747.93 | CA |
| Romby,Latisha N | $ 258.46 | CA |
| Romero,Michelle | $ 1,154.38 | CA |
| Rosan,Yvonne | $ 706.51 | CA |
| Rosas,Louise A | $ 1,780.25 | CA |
| Rosas,Roselie R | $ 583.38 | CA |
| Rosenfeld,Dianna S | $ 4,628.74 | CA |
| Ross,Nina K | $ 194.46 | CA |
| Rowe,Linda S | $ 289.67 | CA |
| Ruiz De Castilla,Rochelle E | $ 1,103.66 | CA |
| Ruiz,Carmen V | $ 590.11 | CA |
| Ruiz,Cristina | $ 1,613.59 | CA |
| Ruiz,Jessica L | $ 211.95 | CA |
| Ruiz,Nicholas E | $ 70.65 | CA |
| Ruiz,Pauline C | $ 67.32 | CA |
| Russ,Edwin | $ 2,280.50 | CA |
| Russell,Diana | $ 303.80 | CA |
| Ruvalcaba,Elizabeth A | $ 240.21 | CA |
| Ryant,Kendall | $ 3,214.70 | CA |
| Saddler,Alicia N | $ 84.78 | CA |
| Sagahon,Sandra | $ 3,135.82 | CA |
| Sage,Mary | $ 4,527.90 | CA |
| Salas,Nubia Y | $ 324.53 | CA |
| Salas,Velicia A | $ 21.20 | CA |
| Salas-Espinoza,Aida | $ 568.43 | CA |
| Salazar,Alexander | $ 22.44 | CA |
| Salazar,Jamie M | $ 1,618.68 | CA |
| Salgado,Iliana E | $ 2,120.60 | CA |
| Salih,Ibrahim M | $ 1,083.56 | CA |
| Salinas,Irma Del Carmen | $ 1,923.60 | CA |
| Sallady,Janelle D | $ 332.06 | CA |
| San Nicolas,Trina D | $ 2,248.57 | CA |
| Sanchez Espindola,Bertha A | $ 1,560.26 | CA |
| Sanchez,Gilbert E | $ 14.96 | CA |
| Sanchez,Rafael | $ 28.26 | CA |
| Sandoval,Alexus C | $ 388.92 | CA |
| Sandoval,Diana | $ 67.32 | CA |
| Sandoval,Rodolfo | $ 1,513.84 | CA |

| | | |
|---|---|---|
| Santiago,Maria | $ 2,459.25 | CA |
| Santos,Nicole | $ 480.42 | CA |
| Saulsberry,Gene A | $ 5,740.44 | CA |
| Savedra,Daniel J | $ 149.58 | CA |
| Schaumann,Sarah C | $ 1,042.71 | CA |
| Schindewolf,Cindy M | $ 142.11 | CA |
| Schindewolf,Thomas A | $ 119.67 | CA |
| Scott,James A | $ 120.11 | CA |
| Scott,Joseph O | $ 14.13 | CA |
| Scott,Rhonda C | $ 791.29 | AZ |
| Scott,Vicki L | $ 1,102.15 | CA |
| Seals,Rosa E | $ 4,161.41 | CA |
| Sean,Saruon | $ 142.11 | CA |
| Searcy,Regina A | $ 276.73 | CA |
| Sedano,Griselda | $ 35.33 | CA |
| Seeman-Larson,Charlene M | $ 409.77 | CA |
| Segura,Yiry | $ 367.38 | CA |
| Seilbach,Kimberly | $ 142.11 | CA |
| Seip,Tara M | $ 1,009.69 | CA |
| Servera,Ernesto | $ 486.15 | CA |
| Sgarlata,Merry | $ 7.07 | CA |
| Shackelford,Jacqueline | $ 1,301.46 | CA |
| Sheridan,Wendy J | $ 6,657.11 | CA |
| Shollenberger,William S | $ 336.57 | NV |
| Short,Ashley M | $ 2,330.89 | CA |
| Siders,Evette D | $ 600.92 | CA |
| Sieg,Debra | $ 2,965.28 | CA |
| Siler,Jason A | $ 296.73 | CA |
| Silva,MaryAnn | $ 1,900.72 | CA |
| Silva,Patricia L | $ 201.94 | CA |
| Silva,Rosa E | $ 134.24 | CA |
| Silva-Gonzalez,Leslie E | $ 186.98 | CA |
| Simmons,Rebecca E | $ 157.07 | CA |
| Simon,Angela D | $ 77.72 | CA |
| Simon,Matthew | $ 162.50 | CA |
| Simpson,Krystal | $ 254.29 | CA |
| Simpson,Lanace Joe | $ 1,354.27 | CA |
| Sims,Dante J | $ 798.35 | CA |
| Skidmore,Mary | $ 409.77 | CA |
| Skillman,June | $ 1,045.63 | CA |
| Slone,Rita R | $ 1,843.98 | CA |
| Smalls,Theresa A | $ 263.07 | CA |
| Smith,Audra | $ 3,063.24 | CA |
| Smith,Cynthia | $ 673.13 | CA |
| Smith,Cynthia D | $ 346.56 | CA |
| Smith,Damita | $ 112.19 | NY |
| Smith,Shaunte | $ 63.59 | CA |

| | | |
|---|---|---|
| Smythe,Christine L | $ 42.39 | CA |
| Solis,Lori A | $ 359.86 | CA |
| Soltero,Vanessa | $ 670.30 | CA |
| Soria Medrano,Aimee | $ 197.82 | CA |
| Soto,Adilene | $ 710.52 | CA |
| Soto,Mario H | $ 291.69 | CA |
| Soto,Pablo | $ 3,262.94 | CA |
| Spangler,Rebecca | $ 748.90 | CA |
| Sparks,Ross E | $ 113.04 | CA |
| Spears,Jermira | $ 777.84 | CA |
| Spencer,Roy | $ 1,126.95 | CA |
| Spight,Eric | $ 3,067.65 | CA |
| Stampley,Danielle E | $ 395.64 | CA |
| Stanley,Alice Y | $ 427.19 | CA |
| Staples,Vivianna S | $ 144.61 | CA |
| Stepney,Beverly | $ 220.26 | CA |
| Steury,Thomas M | $ 509.44 | CA |
| Stevens,Shameema J | $ 42.39 | CA |
| Stevenson,Shandra J | $ 1,727.51 | CA |
| Still,Joe Junior | $ 551.08 | CA |
| Stout,Tiffany Ann | $ 1,966.89 | CA |
| Street,David W | $ 3,072.03 | CA |
| Styles,Nathaniel L | $ 1,350.89 | CA |
| Suarez,Claudia E | $ 291.69 | CA |
| Sumler,Kari | $ 3,146.59 | CA |
| Svindland,Keith | $ 7.07 | CA |
| Swain,Damian R | $ 1,660.39 | CA |
| Swank,Cheryl | $ 134.24 | CA |
| Swanson,Kathleen A | $ 1,427.85 | CA |
| Tabar,Robin D | $ 29.92 | CA |
| Tate,William G | $ 310.86 | CA |
| Tatum,Tisha M | $ 819.09 | CA |
| Taylor,Ashlei R | $ 494.55 | CA |
| Taylor,Cheryl K | $ 2,025.85 | CA |
| Taylor,Jessica | $ 4,207.85 | CA |
| Taylor,Lentoi | $ 813.67 | CA |
| Tellechea Avila,Lisbeth C | $ 426.32 | CA |
| Thayer,Harold L | $ 183.69 | CA |
| Thomas Jr,James W | $ 994.73 | CA |
| Thomas,Janae L | $ 725.99 | CA |
| Thomas,Matthew D | $ 1,423.68 | CA |
| Thompson Jr,Kenneth | $ 2,322.46 | CA |
| Thompson,Jasmine | $ 1,077.01 | CA |
| Thompson,Jill L | $ 303.80 | CA |
| Thompson,Rayshawn | $ 42.39 | CA |
| Tijerino,Alicia | $ 1,477.25 | CA |
| Todd,Gay R | $ 493.62 | CA |

| | | |
|---|---|---|
| Toliver,Debra | $ 1,208.13 | CA |
| Torrence,Sandra M | $ 1,129.37 | CA |
| Torres,Gregory Jr. | $ 994.73 | CA |
| Torres,Irene | $ 1,573.71 | CA |
| Torres,Laura E | $ 2,486.70 | CA |
| Touch,Siphathavie | $ 501.11 | CA |
| Tovmasian,Fredrick | $ 60.05 | CA |
| Tran,Kevin H | $ 388.58 | CA |
| Trujillo,Oscar A | $ 614.66 | CA |
| Turner,Chanell | $ 2,009.15 | CA |
| Turner,Debra Kay | $ 1,948.13 | CA |
| Turner,Jacqueline | $ 303.80 | CA |
| Turner,Lorece G | $ 529.88 | CA |
| Tyler,Cindy L | $ 70.65 | CA |
| Tyree,Debbie | $ 120.11 | CA |
| Ubongen,Leonardo N | $ 614.66 | CA |
| Uribe,Elbia M | $ 2,817.06 | CA |
| Uzueta,Amanda L | $ 1,270.37 | CA |
| Valdepena,Vanessa J | $ 424.27 | CA |
| Valdez,Dinora A | $ 336.57 | CA |
| Valdivia,Patricia | $ 49.46 | CA |
| Valencia,Marco | $ 284.21 | CA |
| Valenzuela,Rosemary | $ 1,549.17 | CA |
| Van Dusen,Rebecca M | $ 240.21 | CA |
| Vargas Jr,Juan | $ 538.51 | CA |
| Vargas,Delmy | $ 1,786.51 | CA |
| Vargas-Blanco,Stephanie | $ 89.75 | CA |
| Vaughn,Pamela G | $ 261.41 | CA |
| Vazquez Martinez,Grisel | $ 198.23 | CA |
| Vazquez,Jose | $ 289.67 | CA |
| Velazques,Domitila | $ 254.34 | CA |
| Velazquez,Olga | $ 523.54 | CA |
| Vera,Alexandra A | $ 56.52 | CA |
| Verdugo,Rachelle | $ 3,998.72 | CA |
| Villa,Michael | $ 21.20 | CA |
| Villahermosa,Hendrick | $ 792.80 | CA |
| Villarreal,Andrea Ramirez | $ 1,985.91 | CA |
| Villatoro,Wendy | $ 97.23 | CA |
| Villeda,Laura | $ 459.23 | CA |
| Virruete Navarro,Luz | $ 1,472.70 | CA |
| Vochatzer,Thomas P | $ 2,189.56 | CA |
| Voss,John | $ 95.38 | CA |
| Vox,Dorene A | $ 21.20 | CA |
| Walker,Gloria L | $ 98.91 | CA |
| Walker,Natalie Y | $ 2,985.01 | CA |
| Walker,Nikkita M | $ 105.98 | CA |
| Wardrop,Ashirae L | $ 1,301.38 | CA |

| | | |
|---|---|---|
| Warren,Delilah L | $ 2,337.07 | CA |
| Warren,Pamela | $ 268.47 | CA |
| Weathers,Percy | $ 583.38 | CA |
| Weaver,Amena | $ 14.96 | CA |
| Weddles,Aaranay A | $ 14.96 | CA |
| Wesley,Pinky M | $ 1,567.40 | CA |
| Wesley,Reina | $ 28.26 | CA |
| Whelan,JayAnn | $ 1,203.38 | CA |
| White,Cody M | $ 1,846.57 | CA |
| White,Lynette A | $ 21.61 | CA |
| White,Melissa A | $ 1,200.02 | CA |
| White,Mykeisha J | $ 747.58 | CA |
| White,Tisha L | $ 381.51 | CA |
| White,Vicky G | $ 97.23 | CA |
| Wilbon,Ethel M | $ 1,835.09 | CA |
| Wilds,Richard S | $ 35.33 | CA |
| Wiley Jr,Vincent | $ 296.73 | CA |
| Wilhelmson,Gwyndolyn | $ 423.90 | CA |
| Wilkiewiecz,Ernestina | $ 770.09 | CA |
| Williams,Briana R | $ 67.32 | CA |
| Williams,Cynthia M | $ 1,216.33 | CA |
| Williams,Ellisse | $ 349.50 | CA |
| Williams,Frederick R | $ 764.22 | CA |
| Williams,Joyce | $ 339.12 | CA |
| Williams,Regina M | $ 515.75 | CA |
| Williams,Tyesha L | $ 21.20 | CA |
| Williamson,Lila | $ 164.54 | CA |
| Willis,Amber P | $ 89.75 | CA |
| Willis,Gervaise N | $ 59.83 | CA |
| Wilson,James D | $ 671.18 | CA |
| Wilson,Jennifer | $ 1,711.26 | CA |
| Wilson,John S | $ 441.28 | CA |
| Wilson,Unieve J | $ 7.48 | CA |
| Wilson-Harper,Raquel O | $ 157.07 | CA |
| Winston,Courtney M | $ 2,574.54 | CA |
| Winzer,Nicole S | $ 402.71 | CA |
| Wise,Caitlynn C | $ 837.68 | CA |
| Wong,Dolores L | $ 572.27 | CA |
| Wooles,Yvette | $ 1,672.96 | CA |
| Worthen,Theresa L | $ 683.19 | CA |
| Wyrick,Roslind Y | $ 169.56 | CA |
| Ybarra Sr,Steven D | $ 1,159.72 | CA |
| Young Waggoner,Toni T | $ 890.02 | CA |
| Young,Allen | $ 2,090.33 | CA |
| Young,Bridgett L | $ 1,597.46 | CA |
| Young,Jasmine J | $ 911.39 | CA |
| Young,Kay | $ 673.13 | CA |

| | | |
|---|---|---|
| Zabala,Maria C | $ 1,170.20 | CA |
| Zamarripa,Noemy | $ 483.25 | CA |
| Zamarripa,Richard | $ 70.65 | CA |
| Zamilpa-Martinez,Esther | $ 1,002.22 | CA |
| Zapian,Sonia | $ 720.64 | CA |
| Zaragoza,Annahi | $ 770.36 | CA |
| Zarerenani,Nematollah | $ 224.37 | CA |
| Zepeda,Maria E | $ 14.96 | CA |

1   DAVID J. DOW, Bar No. 179407
    ddow@littler.com
2   LITTLER MENDELSON, P.C.
    501 W. Broadway
3   Suite 900
    San Diego, CA  92101.3577
4   Telephone: 619.232.0441
    Facsimile:  619.232.4302
5
    Attorneys for Defendants
6   FIRST STUDENT, INC.; FIRST STUDENT
    MANAGEMENT, LLC; and FIRSTGROUP
7   AMERICA, INC.

8

9                   UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11   NORMA LOPEZ, CINDY                  Case No. 5:19-cv-01669-JGB-SHK
     MITCHELL, and VADA NEICE, on
12   behalf of themselves and all others  **DECLARATION OF SERVICE**
     similarly situated,
13
                  Plaintiffs,
14
15   v.

16   FIRST STUDENT, INC., FIRST
     STUDENT MANAGEMENT, LLC,
17   FIRST AMERICA, and DOES 1
     through 10, inclusive,
18
                  Defendants.
19

20

21

22

23

24

25

26

27

28

1

2          I, David J. Dow, declare:

3          I am, and was at the time of service of the papers herein referred to, over the age

4    of 18 years, and not a party to this action.  My business address is 501 West Broadway,

5    Suite 900, San Diego, California 92101.

6          On September 27, 2021, I served the following document(s):

7          **NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**

8          **PURSUANT TO THE CLASS ACTION FAIRNESS ACT,**
           **28 U.S.C. § 1715**

9

10   on the parties listed herein

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **BY U.S. MAIL:**  I placed a true and correct copy of the above document(s) in a sealed

2  envelope, addressed as indicated above.  I am readily familiar with the firm's practice

3  of collection and processing correspondence for mailing.  It is deposited with the U.S.

4  Postal Service on that same day in the ordinary course of business with postage thereon

5  fully prepaid.  I am aware that on motion of party served, service is presumed invalid if

6  postal cancellation date or postage meter date is more than one day after date of deposit

7  for mailing in affidavit.

8      I declare under penalty of perjury under the laws of the State of California that

9  the foregoing is true and correct and that this declaration was executed on

10  September 27, 2021 at San Diego, California.

11

12

13  _____

14  DAVID J. DOW

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| ATTORNEY GENERAL OFFICES |
|---|
| **OFFICE OF THE ATTORNEY GENERAL**<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 |
| |
| Office of the Attorney General<br>Phoenix Office<br>2005 N Central Ave<br>Phoenix, AZ 85004-2926 |
| CAFA Coordinator<br>Office of the Attorney General<br>Consumer Law Section<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102 |
| Office of the Attorney General<br>40 Capitol Square, SW<br>Atlanta, GA 30334 |
| Office of the Attorney General<br>100 North Carson Street<br>Carson City, NV 89701 |
| New Mexico Attorney General Hector Balderas<br>Office of the Attorney General<br>408 Galisteo Street<br>Villagra Building<br>Santa Fe, NM 87501 |
| Oregon Attorney General Ellen F. Rosenblum<br>Oregon Office of the Attorney General<br>Oregon Department of Justice<br>1162 Court Street NE<br>Salem, OR 97301-4096 |

LITTLER MENDELSON, P.C.
501 W. Broadway
Suite 900
San Diego, CA  92101.3577
619.232.0441

| ATTORNEY GENERAL OFFICES |
|---|
| North Carolina Attorney General Josh Stein<br>Office of the Attorney General<br>9001 Mail Service Center<br>Raleigh, NC 27699-9001 |
| Texas Attorney General Ken Paxton<br>Office of the Attorney General<br>PO Box 12548<br>Austin, TX 78711-2548 |
| Illinois Attorney General Kwame Raoul<br>Office of the Attorney General<br>100 West Randolph Street<br>Chicago, IL 60601 |
| Kentucky Attorney General Daniel Cameron<br>Office of the Attorney General<br>700 Capital Avenue, Suite 118<br>Frankfort, Kentucky 40601 |
| Attorney General Patrick Morrisey<br>State Capitol Complex<br>Bldg. 1, Room E-26<br>Charleston, WV 25305 |
| Attorney General Todd Rokita<br>302 W. Washington St., 5th Floor<br>Indianapolis, IN 46204 |
| Attorney General Letitia James<br>28 Liberty St.<br>New York, NY 10005 |

4832-8389-6061.1 / 070991-1175